## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IAN O'DONNELL and DAVID JOLICOEUR, ON BEHALF OF THEMSELVES AND ALL OTHERS SIMILARLY SITUATED,<br><br>     Plaintiffs,<br><br>v.<br><br>ROBERT HALF INTERNATIONAL INC. and ROBERT HALF CORPORATION<br><br>     Defendants. | CIVIL ACTION NO.: 04-12719 NMG |

---

## MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION TO FACILITATE §216(b) NOTICE

### I.  INTRODUCTION

At issue is whether Plaintiffs Ian O'Donnell and David Jolicoeur, on behalf of themselves and all others similarly situated ("Plaintiffs"), are entitled to issuance of a Court-approved notice of the pending litigation to those employees who were denied overtime wages. Plaintiffs are entitled to such a notice if they have shown a reasonable basis for their allegation that a class of similarly situated persons may exist. Plaintiffs can meet this burden by making a modest factual showing that Plaintiffs and the Potential Class Members were victims of a common policy or plan that violated the law. All that need be shown is that some identifiable factual or legal nexus binds together the various claims of the class members in such a way that hearing the claims

together promotes judicial efficiency and comports with the broad remedial policies underlying the FLSA.

The merits of Plaintiffs' underlying claim for overtime wages are not at issue in this Motion.

## II.    FACTUAL BACKGROUND

Defendants Robert Half International, Inc., and Robert Half Corporation (collectively, "Defendants" or "Robert Half") are a large specialized staffing firm with over 300 offices worldwide and 5 offices in Massachusetts (http://www.rhi.com).  Each plaintiff worked for Robert Half as a Staffing Manager, Account Executive, or Account Manager within the past three years.  First Amended Complaint ¶¶ 9-10; O'Donnell Aff., ¶ 2; Jolicoeur Aff., ¶ 2.  Robert Half regularly required Plaintiffs to work in excess of forty (40) hours in a work week.  First Amended Complaint ¶ 15; O'Donnell Aff., ¶ 5; Jolicoeur Aff., ¶ 5.  Defendants paid Plaintiffs on a salary basis and did not pay them overtime wages.  First Amended Complaint, ¶ 15; O'Donnell Aff., ¶ 4; Jolicoeur Aff., ¶ 4.

Plaintiffs claim entitlement to overtime wages because they were not subject to a bona fide exemption to the Fair Labor Standards Act (29 U.S.C. § 201 *et seq.*).  Specifically, Plaintiffs maintain that they were not subject to the administrative exemption because their primary responsibility was to make sales calls, which is not related to the management or operations of Robert Half or its customers.  Each Plaintiff spent the day according to a regimented, prescribed schedule set by Defendants in which they spent most of each day making outbound sales calls, and exercised little or no discretion in the execution of their job

responsibilities.  O'Donnell Aff., ¶¶ 6-12; Jolicoeur Aff., ¶¶ 6-12.  Therefore, Plaintiffs were

production workers rather than administrators, and Defendants misclassified their exempt status.

A.    **Argument**

1.    **The District Court is Authorized to Issue Notice to the Potential Opt-Ins**

The FLSA allows an employee to bring an action on his or her own behalf and on behalf

of all others "similarly situated."  29 U.S.C. §216(b).  However, putative participants in the

FLSA collective action must affirmatively "opt-in" to be covered by the suit.  Id.; Kane v. Gage

Merchandising Services, Inc., 138 F.Supp.2d 212, 214 (D. Mass. 2001); Hipp v. Liberty National

Life insurance Co., 252 F.3d 1208, 1217 (11th Cir. 2001).  The statute of limitations for each

putative potential class member is not tolled until he or she individually opts into the litigation.

29 U.S.C. §216(b); Partlow v. Jewish Orphans' Home of Southern California, Inc., 645 F.2d 757,

759 (9th Cir. 1981) (abrogated on other grounds by Hoffman-La Roche Inc. v. Richard Sperling

et al., 493 U.S. 165 (1989)).  To address the problem of FLSA rights made stale through lack of

knowledge, the Supreme Court has held that courts may facilitate the issuance of a notice

informing potential opt-in plaintiffs of the pending FLSA collective action.  Kane v. Gage, 138

F.Supp.2d at 214 (citing Hoffman La Roche Inc., 493 U.S. at 170).  Court approval and

facilitation of notice serve the goals of "avoiding a multiplicity of duplicative suits and setting

cutoff dates to expedite disposition of the action."  Hoffman-La Roche, 493 U.S. at 171.[1]

---

[1] In Pirrone v. North Hotel Associates, 108 F.R.D. 78, 82 (E.D. Pa. 1985), for example, the court held that notice to
all similarly situated employees was appropriate "in light of the broad remedial purpose of the FLSA, the explicit
provision in the Act for representative actions, the practical realities of management of class actions, and the courts'
interest in avoiding multiplicity of lawsuits."  In so holding, the court recognized that "the FLSA was enacted to
protect employees  . . . The class action procedure, however, would have little or no significance if notice was not
permitted in some form."  Id. 108 F.R.D. at 82.  See also Lambert v. Ackerley, 180 F.3d 997, 1003 (9th Cir. 1999),
cert. denied, 528 U.S. 1116 (2000) (noting that "[t]he FLSA is remedial and humanitarian in purpose. . . Such a
statute must not be interpreted or applied in a narrow, grudging manner") (citations omitted).

**2.      Issuance of Notice Is Appropriate, As Plaintiffs Meet the Similarly Situated Standard**

   *a.  Plaintiffs need only make a modest factual showing that similarly situated employees may exist.*

For an opt-in class to be created under Section 216(b) and for notice to issue, Plaintiffs must demonstrate that similarly situated potential class members exist. Grayson v. K Mart Corp., 79 F.3d 1086, 1096 (11th Cir. 1996), cert. denied, 519 U.S. 982 (1996); Reeves v. Alliant Techsystems, Inc., 77 F.Supp.3d 242 (D.R.I. 1999). Neither the FLSA nor the applicable regulations define the term "similarly situated." However, the majority of courts, as well as recent decisions in this circuit, agree that certification should be administered using the two-step approach articulated by the Fifth Circuit in Mooney v. Aramco, 54 F.3d 1207 (5th Cir. 1995). See Kane v. Gage, 138 F.Supp.2d at 214. Under this two-step approach, the court first preliminarily certifies a collective action, orders notice to the potential opt-ins based on a modest evidentiary showing, and permits an opt-in period. During this "'notice stage,' the court usually relies 'only on the pleadings and any affidavits which have been submitted' … [and] some courts have held that, at the 'notice' stage, plaintiffs need only make substantial allegations that the putative class members were subject to a single decision, policy, or plan that violated the law." Id. (citing Mooney, 54 F.3d at 1214). Second, after discovery, the court reviews the preliminary certification and determines whether the case should proceed as a collective action. Id. At both stages, the court assesses whether plaintiffs and the potential opt-ins are similarly situated. At the first stage, however, "this determination is made using a fairly lenient standard, and typically

results in 'conditional certification' of a representative class." <u>Mooney</u>, 54 F.3d at 1213-14.[2]

Plaintiffs need not be identical to the putative class members, but need only be similar.  <u>Grayson</u>,

79 F.3d at 1097.[3]   It is well-settled that the preliminary notice motion is not a ruling on the

merits of the Plaintiffs' claims, and that courts should not inquire into the merits of the case at

the "notice" stage.  <u>Grayson</u>, 79 F.3d at 1099 n.17; <u>Hyman v. First Union Corp.</u>, 982 F.Supp. 1,

3-5 (D.D.C. 1997); <u>Eisen v. Carlisle & Jacquelin</u>, 417 U.S. 156, 177 (1974).

>    *b.  Plaintiffs have easily met their burden of establishing that similarly*
>    *situated employees may exist, and are therefore entitled to collective*
>    *action notice*

A plaintiff may demonstrate that similarly situated class members may exist by making a

"modest factual showing sufficient to demonstrate that [plaintiffs] and potential plaintiffs

together were the victims of a common policy or plan that violated the law." <u>Hoffman v. Sbarro,</u>

<u>Inc.</u>, 982 F.Supp. 249, 261 (S.D.N.Y. 1997).  All a plaintiff needs to show "is that some

identifiable factual or legal nexus binds together the various claims of the class members in a

way that hearing the claims together promotes judicial efficiency and comports with the broad

remedial policies underlying the FLSA." <u>Ballaris v. Wacker Siltronic Corp.</u>, 2001 U.S. Dist.

LEXIS 13354, 144 Lab. Case (CCH) P34351 (D. Or. Aug. 24, 2001) (<u>citing</u> <u>Wertheim v. State of</u>

<u>Arizona</u>, 1993 WL 603552 (D.Ariz. 1993)).  Here, the alleged violations were suffered across the

board by Robert Half Account Managers, Staffing Managers, and Account Executives who

---

[2] The standard at the 'notice' stage "is considerably 'less stringent' than the proof required pursuant to Fed. R. Civ. P. 20(a) for joinder or Fed. R. Civ. P. 23 for class certification." <u>Grayson</u>, 79 F.3d at 1096.

[3] Indeed, allowing early notice and full participation by the opt-ins "assures that the full 'similarly situated' decision is informed, efficiently reached, and conclusive."  <u>Sperling v. Hoffman-LaRoche</u>, 118 F.R.D. 392, 406 (D.N.J. 1998).  Once the notice and opt-in period is complete, the Court will have the benefit of knowing the actual makeup of the collective action.  Thus, early notice will help the court to manage the case because it can "ascertain the contours of the action at the outset." <u>Hoffman-La Roche</u>, 493 U.S. at 172-73.

worked for Robert Half throughout the nation, regardless of when and where employed. These violations arise from a company-wide policy or practice of Defendants and, as such, establish a basic factual scenario experienced not only by the current named Plaintiffs, but also by each Potential Class Member.

Specifically, Plaintiffs' First Amended Complaint and the attached affidavits (<u>Exhibits 1-2</u>) establish the following:

- Staffing Managers, Account Executives, and Account Managers worked in excess of forty hours per week. <u>See</u> First Amended Complaint ¶ 15; O'Donnell Aff., ¶ 5; Jolicoeur Aff., ¶ 5;

- Staffing Managers, Account Executives, and Account Managers were classified as exempt employees, and did not receive overtime for hours worked in excess of forty per week. <u>See</u> First Amended Complaint, ¶ 15; O'Donnell Aff., ¶ 4; Jolicoeur Aff., ¶ 4;

- Staffing Managers, Account Executives, and Account Managers spent 85% of their time telephoning businesses at the direction of Defendants to inquire about their staffing needs and make a sales pitch regarding Robert Half's personnel placement services. Defendants gave them specific lists of companies in certain geographical areas and told them to whom they should direct each call to each business (i.e., Human Resources Department, Line Managers, etc.). <u>See</u> O'Donnell Aff., ¶ 7; Jolicoeur Aff., ¶ 7.

- Defendants informed Staffing Managers, Account Executives, and Account Managers of what they should be working on at every moment of the day, on an

hour-by-hour and sometimes minute-by-minute basis.  <u>See</u> O'Donnell Aff., ¶ 10-11; Jolicoeur Aff., ¶ 10-11.

- Staffing Managers, Account Executives, and Account Managers did not have the authority to formulate, affect, interpret or implement management policies or operating practices.  <u>See</u> O'Donnell Aff., ¶ 13; Jolicoeur Aff., ¶ 13;

- Staffing Managers, Account Executives, and Account Managers did not carry out major assignments in conducting the operations of the business.  <u>See</u> O'Donnell Aff., ¶ 14; Jolicoeur Aff., ¶ 14;

- Staffing Managers, Account Executives, and Account Managers did not perform work that affected business operations to a substantial degree.  <u>See</u> O'Donnell Aff., ¶ 15; Jolicoeur Aff., ¶ 15;

- Staffing Managers, Account Executives, and Account Managers did not have authority to waive or deviate from established policies and procedures.  <u>See</u> O'Donnell Aff., ¶ 16; Jolicoeur Aff., ¶ 16;

- Staffing Managers, Account Executives, and Account Managers did not provide consultation or expert advice to management.   <u>See</u> O'Donnell Aff., ¶ 17; Jolicoeur Aff., ¶ 17;

- Staffing Managers, Account Executives, and Account Managers were not involved in planning business objectives of any kind.  <u>See</u> O'Donnell Aff., ¶ 18; Jolicoeur Aff., ¶ 18;

- Staffing Managers, Account Executives, and Account Managers did not investigate or resolve matters of significance on behalf of management.  See O'Donnell Aff., ¶ 19; Jolicoeur Aff., ¶ 19; and

- Plaintiffs are familiar with other current and former employees of Robert Half who work or worked in similar positions with similar duties and regularly worked in excess of forty (40) hours in a work week, and Plaintiffs believe that many of these individuals would be interested in participating in this litigation because Plaintiffs frequently heard such employees complain that they were working too many hours without being sufficiently compensated.  See O'Donnell Aff., ¶ 20-21; Jolicoeur Aff., ¶ 20.

Collective action authorization and notice to the class is well warranted here, as Plaintiffs have more than demonstrated a "reasonable basis" for the class allegations.  See Grayson, 79 F.3d at 1097.  In the similar case of Kane v. Gage, this Court held that affidavits suggesting "that the Defendants had a policy of treating at least some of a discrete class of employees … as exempt from the FLSA overtime requirements" was a sufficient showing "to determine that a 'similarly situated' group of potential plaintiffs exist[ed] given the adopted lenient standard for court-facilitated notice" and granted conditional certification.  138 F.Supp.2d at 215.  In this case, Plaintiffs have provided detailed allegations in their First Amended Complaint and have amply supported them with affidavits from the named plaintiffs.  Such a showing more than satisfies the "lenient" standard for collective action notice.  Id.; see also Mooney, 54 F.3d at 1213-14.  The pleadings and affidavits show that Robert Half had a policy of treating Staffing Managers, Account Managers, and Account Executives as exempt from the FLSA overtime

requirements and that Plaintiffs believe that other similarly situated individuals exist who may be interested in participating in this litigation, and these allegations suffice to establish a reasonable basis for the assertion that a class of similarly situated persons may exist.  Id. See also Grayson, 79 F.3d at 1097; Zhao v. Benihana, 2001 U.S. Dist. LEXIS 10678 (S.D.N.Y. May 7, 2001) (one affidavit based on plaintiff's "best knowledge" sufficient); Allen v. Marshall Field & Co., 93 F.R.D. 438, 442-45 (N.D. Ill. 1982) (allegations in complaint sufficient for issuance of notice to putative class).

### 3.    Notice Should Be Expedited Due to the Running of the Statute of Limitations

Notice to the putative class should be expedited in this action in order to prevent the wasting of the employees' claims due to the running of the FLSA statute of limitations.  The employees' claims are governed by a two-year statute of limitations, or in the case of "willful" violations, a three-year limitations period.  29 U.S.C. §256(a).  The statute of limitations is generally not tolled for any individual class member until that individual has filed a written consent form with the Court.  29 C.F.R. §790.21(b)(2); Grayson, 79 F.3d at 1105-06.

Robert Half has denied its Staffing Managers, Account Managers, and Account Executives overtime compensation for well over three years.  Consequently, the statute of limitations is potentially diminishing the value of the employees' claims with each day that passes.  The information contained in the proposed notice (Exhibit 3) should therefore be issued as soon as possible to allow these non-exempt employees to act to protect their interests. Without notice, the Potential Class Members are unaware of the pendency of the action and their right to opt-in, and are powerless to prevent their claims from wasting away.  Moreover, as many

of the Potential Class Members no longer work for Robert Half, their whereabouts will be

increasingly difficult to track, and evidence may be lost with the passing of time.  Therefore,

notice should be expedited in this action to the maximum extent feasible, and should be sent to

all Staffing Managers, Account Managers, and Account Executives employed by Robert Half

during the three-year potential liability period.  See Belcher v. Shoney's, Inc, 927 F.Supp. 249,

252 (M.D. Tenn. 1996) (ordering notice to all employees who were employed within three-year

limitations period); Herrera v. Unified Mgmt, 2000 U.S. Dist. LEXIS, 12406 (N.D. Ill. 2000).

### 4.    The Proposed Notice is Fair and Adequate

A collective action depends "on employees receiving accurate and timely notice

concerning the pendency of the collective action, so that they can make informed decisions about

whether to participate."  Hoffman-La Roche Inc., 493 U.S. at 170.  Use of a Court-approved

notice prevents "misleading communications."  Id. at 172.  Plaintiffs' proposed notice to

potential opt-ins is "timely, accurate and informative," as required.  Id.; see the proposed notice

and opt-in form attached hereto as Exhibit 3.  It provides notice of the pendency of the action and

of the opportunity to opt-in.  Plaintiffs' legal claims are accurately described.  The proposed

notice advises potential opt-ins that the Court has made no finding as to the merits of the case

and that they are not required to participate.  The notice also provides clear instructions on how

to opt-in and accurately states the prohibitions against retaliation or discrimination for

participation in an FLSA action.  See 29 U.S.C. §215(a)(3).

### 5.    The Proposed Limited Discovery is Essential to Ensure Timely Notice

Discovery of a mailing list for class members is a routine component of notice in

collective actions.  Hoffman-LaRoche, 493 U.S. at 1470 ("District Court was correct to permit

discovery of the names and addresses…"); <u>Grayson,</u> 79 F.3d at 1111 (ordering production of

mailing list); <u>Belcher</u>, 927 F.Supp. at 252 (same).  Indeed, such a mailing list is essential to

timely notice.  <u>Hoffman-LaRoche</u>, 493 U.S. at 170 ("timely notice" required).  Therefore, this

Court should order Robert Half to produce a computer-readable data file containing the names,

last known mailing and e-mail addresses, telephone numbers, and dates of employment for all

Staffing Managers, Account Managers, and Account Executives employed anywhere in the

United States within the three years preceding the filing of this action.

**C.    CONCLUSION**

For the foregoing reasons, this Court should grant Plaintiffs' Motion.


Dated:  May 11, 2005

Respectfully submitted,

s/Shannon Liss-Riordan
Shannon Liss-Riordan, BBO #640716
Alfred Gordon, BBO #630456
PYLE, ROME, LICHTEN, EHRENBERG
& LISS-RIORDAN, P.C.
18 Tremont Street, Ste. 500
Boston, MA 02108
(617) 367-7200

THIERMAN LAW FIRM
7287 Lakeside Drive
Reno, NV  89501
(775) 284-1500 (phone)
(775) 703-5027 (fax)

APPEL HILAIRE LLP
Mika M. Hilaire
1503 Ventura Blvd, Suite 400
Sherman Oaks, CA  91403
(818) 728-6006 (phone)
(818) 728-6007 (fax)

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 11, 2005, I caused a copy of this document to be served by first class mail on all counsel of record.

s/Shannon Liss-Riordan
Shannon Liss-Riordan, Esq.

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IAN O'DONNELL and DAVID JOLICOEUR, ON BEHALF OF THEMSELVES AND ALL OTHERS SIMILARLY SITUATED,<br><br>Plaintiffs,<br><br>v.<br><br>ROBERT HALF INTERNATIONAL INC. and ROBERT HALF CORPORATION<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>`<br>    CIVIL ACTION NO.: 04-12719 NMG |

## AFFIDAVIT OF DAVID JOLICOEUR

Pursuant to 28 U.S.C. § 1746, I, David Jolicoeur, hereby declare under penalty of perjury under the laws of the United States that the following is true and correct:

1. My name is David Jolicoeur. I reside at 195 Park Ridge Drive in Easton, Pennsylvania. I am over the age of eighteen (18) and otherwise competent to testify. All statements in this declaration are made solely for use in this litigation. Unless expressly stated otherwise, the statements made in this declaration are based upon my personal knowledge.

2. I worked as a staffing manager in Defendants' Boston office from June 2002 until August 2003.

3. I make this affidavit in support of Plaintiffs' Motion to Facilitate 216(b) Notice.

4.      The Defendants classified staffing managers as exempt employees and paid

them on a salary basis.  Thus, I did not receive overtime compensation for

hours worked in excess of forty (40) hours in a work week.

5.      While employed by Defendants as a staffing manager, I regularly worked

more than forty (40) hours in a work week.

6.      My primary duty as a staffing manager, known as the "sales function," was to

sell the Company's staffing services.  I was required to make between 20 and

25 sales connections per day, and I regularly made approximately 100

outbound sales calls per day.

7.      I spent at least 85 percent of my time telephoning businesses at the direction

of the Company to inquire about their staffing needs and make a sales pitch

regarding the Company's personnel-placement service.  The Company gave

me specific lists of companies to call in a specified geographic area.  The

Company also told me to whom I should direct each call within each business

(e.g., the human resources department, line manager, etc.).

8.      My branch manager also provided me with additional lists of companies to

call that were not on my original Company-provided list.

9.      I exercised little, if any, discretion or independent judgment in making my

sales calls.  I exercised little, if any, discretion with respect to how I chose to

spend my time.

10.     The Company planned my day such that I arrived at the office at 7:45 a.m.,

planned my morning calls until 8 a.m., and made outbound sales calls non-

stop from 8 a.m. until 11 a.m.  From 11 a.m. to 12 noon, I sent out marketing

materials from the morning's calls and took a bathroom break.  From 12 noon

to 12:30 p.m., I ran out to get lunch, which I ate at my desk.  From 1 p.m. to 4
p.m., I made outbound sales calls non-stop.  From 4 p.m. to 5 p.m., I sent out
marketing materials from the afternoon's calls and took a bathroom break.
From 5 p.m. to 6 p.m., I planned out my next day's calls.  From 6 p.m. to 7
p.m., I tried to call CFOs and other high-level managers at the Company's
current and prospective clients.

11.     The Company instructed me as to what I should be working on at every
moment of the day, on an hour-by-hour and sometimes minute-by-minute
basis.

12.     The activities I performed during any given day were entirely prescribed by
the Company.  My division director, branch manager, and/or regional director
planned my daily work activities.  The Company held at least one or two
weekly meetings and sent e-mails setting my daily activities, including the
length of time of my breaks.  I had no discretion to deviate from this schedule.
Every afternoon, I was told to print out my daily activity report and report to
the group how many calls and connects I made, as well as any success stories.
Once a month, I would meet with my Division Director and branch manager
to review my monthly activity.  This meeting was known as a sales activity
report.  I was told whom to call in each company and asked why I did not get
business from companies that I marketed on a regular basis.  At the end of the
meeting, I was given tasks to complete for the next meeting.  The Company
sent a detailed 2-3 page written sales report to all managers.

13.     I did not have the authority to formulate, affect, interpret, or implement
management policies or operating practices.

14.    I did not carry out major assignments in conducting the operations of the business.

15.    I did not perform work that affected business operations to a substantial degree.

16.    I did not have the authority to waive or deviate from established policies and procedures.

17.    I did not provide consultation or expert advice to management.

18.    I was not involved in planning business objectives of any kind.

19.    I did not investigate or resolve matters of significance on behalf of management.

20.    I am familiar with other current and former employees of the Company who work or worked in similar positions with similar duties and regularly worked in excess of forty (40) hours in a work week. I believe that many of these individuals would be interested in participating in this litigation, because while I worked at the Company alongside many of these current and former employees, I frequently heard them complain that we were all working too many hours without being sufficiently compensated for them.

Signed under pains and penalties of perjury, this ____ day of _____, 2005.

s/David Jolicoeur_____
David Jolicoeur

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| IAN O'DONNELL and DAVID JOLICOEUR, ON BEHALF OF THEMSELVES AND ALL OTHERS SIMILARLY SITUATED,<br><br>Plaintiffs,<br><br>v.<br><br>ROBERT HALF INTERNATIONAL INC. and ROBERT HALF CORPORATION<br><br>Defendants. | CIVIL ACTION NO.: 04-12719 NMG |

### AFFIDAVIT OF IAN O'DONNELL

Pursuant to 28 U.S.C. § 1746, I, Ian O'Donnell, hereby declare under penalty of perjury under the laws of the United States that the following is true and correct:

1. My name is Ian O'Donnell. I reside at 27 Willow Drive, Easton, Pennsylvania. I am over the age of eighteen (18) and otherwise competent to testify. All statements in this declaration are made solely for use in this litigation. Unless expressly stated otherwise, the statements made in this declaration are based upon my personal knowledge.

2. I worked as a staffing manager in Defendants' Danbury, Connecticut, and Westborough and Boston, Massachusetts, offices from January 2002 until August 2003.

3. I make this affidavit in support of Plaintiffs' Motion to Facilitate 216(b) Notice.

4.     The Defendants classified staffing managers as exempt employees and paid

them on a salary basis.  Thus, I did not receive overtime compensation for

hours worked in excess of forty (40) hours in a work week.

5.     While employed by Defendants as a staffing manager, I regularly worked

more than forty (40) hours in a work week.

6.     My primary duty as a staffing manager, known as the "sales function," was to

sell the Company's staffing services.  I was required to make between 25 and

30 sales connections per day, and I regularly made approximately 100

outbound sales calls per day.

7.     I spent at least 85 percent of my time telephoning businesses at the direction

of the Company to inquire about their staffing needs and make a sales pitch

regarding the Company's personnel-placement service.  The Company gave

me specific lists of companies to call in a specified geographic area.  The

Company also told me to whom I should direct each call within each business

(e.g., the human resources department, line manager, etc.).

8.     My branch manager also provided me with additional lists of companies to

call that were not on my original Company-provided list.

9.     I exercised little, if any, discretion or independent judgment in making my

sales calls.  I exercised little, if any, discretion with respect to how I chose to

spend my time.

10.    The Company planned my day such that I arrived at the office at 7:45 a.m.,

planned my morning calls until 8 a.m., and made outbound sales calls non-

stop from 8 a.m. until 11 a.m.  From 11 a.m. to 12 noon, I sent out marketing

materials from the morning's calls and took a bathroom break.  From 12 noon

to 12:30 p.m., I ran out to get lunch, which I ate at my desk.  From 1 p.m. to 4 p.m., I made outbound sales calls non-stop.  From 4 p.m. to 5 p.m., I sent out marketing materials from the afternoon's calls and took a bathroom break. From 5 p.m. to 6 p.m., I planned out my next day's calls.  From 6 p.m. to 7 p.m., I tried to call CFOs and other high-level managers at the Company's current and prospective clients.

11.    The Company instructed me as to what I should be working on at every moment of the day, on an hour-by-hour and sometimes minute-by-minute basis.

12.    The activities I performed during any given day were entirely prescribed by the Company.  My division director, branch manager, and/or regional director planned my daily work activities.  The Company held two daily and two weekly meetings and sent e-mails setting my daily activities, including the length of time of my breaks.  I had no discretion to deviate from this schedule. Every afternoon, I was told to print out my daily activity report and report to the group how many calls and connects I made, as well as any success stories. Once a month, I would meet with my Division Director and branch manager to review my monthly activity.  This meeting was known as a sales activity report.  I was told whom to call in each company and asked why I did not get business from companies that I marketed on a regular basis.  At the end of the meeting, I was given tasks to complete for the next meeting.  The Company sent a detailed 2-3 page written sales report to all managers.

13.    I did not have the authority to formulate, affect, interpret, or implement management policies or operating practices.

3

14.  I did not carry out major assignments in conducting the operations of the business.

15.  I did not perform work that affected business operations to a substantial degree.

16.  I did not have the authority to waive or deviate from established policies and procedures.

17.  I did not provide consultation or expert advice to management.

18.  I was not involved in planning business objectives of any kind.

19.  I did not investigate or resolve matters of significance on behalf of management.

20.  I am familiar with other current and former employees of the Company who are not listed as named plaintiffs in this case but who have stated that they would be interested in participating in this litigation.  These current and former employees work or worked in similar positions with similar duties and did not receive overtime compensation for hours worked in excess of forty (40) hours in a work week despite regularly working in excess of forty (40) hours in a work week.

21.  Throughout my employment with the Company, at each of the three offices of the Company where I worked, other employees in positions similar to mine stated that they were extremely dissatisfied with their level of compensation. Many of these employees stated that they believed that they should receive overtime pay because of the nature of their jobs and the long hours they worked.  I believe that many of these current and former employees of the Company would be interested in participating in this litigation.

4

Signed under pains and penalties of perjury, this _____ day of _____, 2005.


s/Ian O'Donnell
Ian O'Donnell

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

This is a court-authorized notice and is not a solicitation from a lawyer.
The Court has made no finding as to the merits of the case at this time.

If you are or were employed as a staffing manager, account manager, or account executive by Robert Half International, Inc., and/or Robert Half Corp. (collectively, "Robert Half"), in any state except California, a collective action lawsuit may affect your rights.

Former employees (the "Plaintiffs") have sued Robert Half in federal court in Massachusetts, alleging that Robert Half improperly classified them as overtime-exempt administrators and deprived them of overtime pay.  The Plaintiffs claim that Robert Half owes them overtime pay at one and one-half times their normal hourly wage for all hours they worked in excess of forty (40) hours per week during their employment with Robert Half.  The case name is Ian O'Donnell, et al., v. Robert Half International, Inc., and Robert Half Corp., Civil Action No. 04-12719-NMG.

The Court has permitted the Plaintiffs to send Notice to all similarly situated current and former employees so that they may be permitted to "opt in" to, or join, this lawsuit to assert their similar legal rights.

The Court has not yet decided whether Robert Half has done anything wrong.  There is no money available now, and there are no guarantees that there will be.  However, you have the choice to assert your legal rights in this case.  If you do, federal law prohibits Robert Half from firing or discriminating against you for exercising your rights under the FLSA.

**YOUR LEGAL RIGHTS AND OPTIONS**

<u>Do Nothing</u>:  Do Nothing.  Lose Nothing (except resulting from the passage of time).  By doing nothing, you retain your legal rights to bring a separate suit against Robert Half for unlawful failure to pay overtime.  If money or benefits are later awarded in this case, you will not share in them.

---

<u>Ask to Be Included</u>:  Complete the Opt-In Consent Form.  By "opting in," you gain the possibility of getting money or benefits that may result from a trial or settlement, but you give up the right to sue Robert Half separately for the same claims brought in this lawsuit.

---

Your options are included in this Notice. To opt-in, you must complete the Opt-In Consent Form and forward it to the attorneys designated in the Notice on or before _____.  If you have any questions or concerns, please contact:

Shannon Liss-Riordan, Esq.
Pyle, Rome, Lichten, Ehrenberg & Liss-Riordan, P.C.
18 Tremont Street, Suite 500
Boston, MA 02108
617-367-7200
sliss@prle.com

Mark R. Thierman
Thierman Law Firm
7287 Lakeside Drive
Reno, NV 89511
775-284-1500
laborlawyer@pacbell.net

OPT-IN CONSENT FORM
Ian O'Donnell, et al., v. Robert Half International, Inc., and Robert Half Corporation,
Civil Action No. 04-12719-NMG

Complete and Mail to:     Shannon Liss-Riordan, Esq.
                          Pyle, Rome, Lichten, Ehrenberg & Liss-Riordan, P.C.
                          18 Tremont Street, Suite 500
                          Boston, MA 02108

Name: _____S.S.# (optional): _____

Address: _____

Telephone: _____(home)_____(work)_____(cell)

E-Mail: _____

CONSENT TO JOIN COLLECTIVE ACTION
Pursuant to the Fair Labor Standards Act, 29 U.S.C. § 216(b)

1.      I consent and agree to pursue my claims arising out my employment at Robert Half in connection with the above-referenced lawsuit.

2.      I work/worked in the position(s) of _____ from on or about _____ (month, year) to on or about _____ (month, year).

3.      During the above time period, Robert Half paid me strictly on a salary basis and did not pay me overtime pay at one and one-half my usual hourly wage for my hours worked in excess of forty (40) hours per week.

4.      I understand that this lawsuit is brought under the Fair Labor Standards Act, 29 U.S.C. § 201, et seq.  I hereby consent, agree, and "opt in" to become a plaintiff herein and to be bound by any judgment by the Court or any settlement of this action.

5.      I hereby designate Shannon Liss-Riordan, Esq., of Pyle, Rome, Lichten, Ehrenberg & Liss-Riordan, P.C., 18 Tremont Street, Suite 500, Boston, MA 02108, and Mark R. Thierman, Esq., of Thierman Law Firm, 7287 Lakeside Drive, Reno, NV 89511 (Plaintiffs' Counsel), to represent me for all purposes in this action.

6.      I also designate Ian O'Donnell and David Jolicoeur, the collective action representatives, as my agents to make decisions on my behalf concerning the litigation, including the method and manner of conducting this litigation, entering into settlement agreements, entering into an agreement with Plaintiffs' Counsel concerning attorneys' fees and costs (with the understanding that Plaintiffs' Counsel are being paid on a contingency fee basis, which means that if there is no recovery, there will be no attorneys' fees), and all other matters pertaining to this lawsuit.

Signature: _____ Date Signed: _____
Print Name: _____

**NOTE**
Statute of limitations concerns mandate that you return this form
as soon as possible in order to preserve your rights.