**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

|  |  |  |
|---|---|---|
| IAN O'DONNELL AND DAVID JOLICOEUR, on behalf of themselves and all others similarly situated, | ) ) ) ) ) | |
| Plaintiffs, | ) ) | CIVIL ACTION NO.  04-CV-12719 NMG |
| v. | ) ) | |
| ROBERT HALF INTERNATIONAL INC. AND ROBERT HALF CORPORATION, | ) ) ) | |
| Defendants. | ) ) ) | |

**DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION**
**TO PLAINTIFFS' MOTION TO FACILITATE § 216(b) NOTICE**

Defendants Robert Half International Inc. and Robert Half Corporation (collectively "RHI" or the "Company") submit this memorandum in opposition to Plaintiffs' Motion to Facilitate § 216(b) Notice (the "Motion").  Both Plaintiffs worked for RHI in the same job classification, in a single division of the Company, in one narrow geographic region, until their resignations nearly two years ago.  Notwithstanding these facts, they seek to represent a class of thousands of current and former RHI employees in any of three different job classifications, in any of several different divisions, in any of the Company's hundreds of branch offices in 43 states.  They do so without offering any evidence whatsoever that they are similarly situated to, or appropriate representatives of, the putative class they now ask the Court to conditionally certify.  Despite their utter failure to meet even the lightest burden of proof that any court has adopted in conditionally certifying an exemption case as a collective action, they seek to impose on RHI the burden of identifying and providing notice to thousands of individuals, a task that

would consume and be a pointless waste of economic and judicial resources.  The Court should

not sanction such an abuse of the judicial process and should deny the Motion.

## FACTUAL BACKGROUND

### I.    RHI and its Business

RHI is a specialized staffing company, providing services on a temporary, project, and

full-time basis to its clients through several divisions.  Accountemps, the only division in which

the Plaintiffs worked, provides experienced accounting and finance services on a temporary basis

to client companies.[1]

RHI has more than 260 branch offices throughout the United States.  Affidavit of Ken

Gitlin ("Gitlin Aff."), ¶ 4.  These offices are grouped into 82 Regions, each overseen by a

Regional Manager.  *Id.*  The Regions are organizationally combined into 14 Districts, each

managed by a District Director.  *Id.*  RHI has grouped the Districts into four geographic zones:

an Eastern Zone, a Central Zone, a Western Zone, and an International Zone.  *Id.*  Throughout

their employment, the Plaintiffs worked in the New England District, within the Eastern Zone.

Affidavit of William T. Hayes ("Hayes Aff."), ¶ 4.

### II.    Plaintiffs' Employment History with RHI

RHI hired Plaintiff Ian O'Donnell ("O'Donnell") as an Accountemps Staffing Manager,

effective January 3, 2002.  Hayes Aff, ¶ 2.  He initially worked in RHI's Danbury, Connecticut

office, and transferred to the Westborough, Massachusetts office on or about July 1, 2002.  *Id.*

On February 1, 2003, he transferred to the Boston, Massachusetts office, and resigned from RHI

on August 16, 2003.  *Id.*  He remained an Accountemps Staffing Manager throughout his

---

[1] RHI has several other divisions, each of which provides staffing services in a different specialized industry or field.
Gitlin Aff., ¶ 3.  For example, the Robert Half Technology Division focuses on providing computer programming
and other information technology services on a project and full-time basis, and The Creative Group provides
creative, web, marketing, and advertising services on a freelance basis.  *Id.*

employment.   The Westborough and Boston offices are overseen by the same Regional

Manager.

RHI hired Plaintiff David Jolicoeur ("Jolicoeur") as an Accountemps Staffing Manager

on July 22, 2002.  Hayes Aff., ¶ 3.  He was promoted to Senior Staffing Manager on July 16,

2003.  *Id.*  He resigned his employment two months later, on September 20, 2003.  Throughout

Jolicoeur's tenure with RHI, he worked in the Company's Accountemps division and in its

Boston office.

As exempt employees pursuant to the FLSA's administrative exemption, both Plaintiffs

were paid a salary and were not eligible for overtime pay.  *See* First Amended Class Action

Complaint ("Amended Complaint"), ¶ 15.

### III.    Accountemps Staffing Managers' Job Duties[2]

The primary function of all Accountemps Staffing Managers is to manage the flow of

services from RHI to its clients.  Gitlin Aff., ¶ 3.  The duties and tasks they regularly perform,

and the amount of time they spend on those duties and tasks, differ substantially from the work

done by Staffing Managers, Account Managers, and Account Executives in RHI's other

divisions because of differences between the industries and fields in which the various divisions

specialize.  Accountemps Staffing Managers' job duties also vary considerably based on

differences in local management and market conditions.  *See* Gitlin Aff, ¶¶ 9-12, 16, 20.

The vast majority of Accountemps Staffing Managers have substantial education,

training, and/or experience in the accounting and finance field.  Gitlin Aff., ¶ 7.  They use their

knowledge of the accounting discipline and their connections in the industry in the day-to-day

---

[2] For purposes of this Opposition, RHI focuses on the job duties only of its Accountemps Staffing Managers because
neither Plaintiff worked in any division of the Company other than Accountemps.  Hayes Aff., ¶ 4.   Neither
Plaintiff ever worked for RHI as an Account Executive or Account Manager, the two other job classifications listed
in the Amended Complaint that Plaintiffs seek to include in the putative class.  Hayes Aff., ¶¶ 2-3.

performance of their job duties, which require fluency in accounting terminology and a substantive understanding of the work performed by various classifications of employees in the accounting field. *Id.* This stands in contrast to Staffing Managers, Account Managers, and Account Executives in other RHI divisions, who must each develop and maintain an expertise in the particular industries and fields on which they focus. Gitlin Aff., ¶ 8. For example, Robert Half Technology Account Executives must develop and apply an in-depth understanding of computer programming or database administration in order to match candidates to the orders that division receives from its clients. *Id.*

Accountemps Staffing Managers have three basic areas of responsibilities in managing the flow of services to Accountemps' clients: marketing and sales, desk, and recruiting. Gitlin Aff., ¶ 9. In addition, Accountemps Staffing Managers are responsible for dealing with human resource issues that arise during candidates' assignments. *Id.* Local market conditions, which vary by geographic location, dictate the amount of time they spend on each area of responsibility. *Id.* They work in teams of varying sizes with other Staffing Managers, frequently sharing the responsibilities in a rotation. *Id.* Implementation of this rotation varies, based on the local unemployment rate, the nature of the business territory, and the volume and complexity of orders from new and existing clients. For example, an Accountemps Staffing Manager in the Boston office may focus on his or her marketing and sales responsibilities for one week, followed by one week on desk duty, followed by one week of recruiting duty. A Staffing Manager in the Westborough office, however, may spend a greater portion of his or her time on recruiting if local market conditions have produced an excess of orders relative to the number of available candidates. Even the number of phases in the rotation varies from office-to-office and from time-to-time. Gitlin Aff., ¶ 10. The Accountemps divisions in some offices use a three-

phase rotation, while divisions in other offices group the desk and recruiting functions and use a two-phase rotation. *Id.* Accountemps Staffing Managers work together with other local managers to assess prevailing market conditions and allocate resources to best adapt to those conditions. As a result of such market assessments, the rotation implemented within a particular office may be adjusted on a regular basis. Thus, the distribution of Accountemps Staffing Managers' job duties may vary within each office and between offices in a given Region or District. Some offices operate without any rotation of responsibilities. *Id.*

While performing the marketing and sales responsibilities of their position, Accountemps Staffing Managers research and analyze the market and contact client company hiring authorities to secure orders for temporary accounting and finance services provided by RHI's service professionals ("candidates"). Gitlin Aff., ¶ 12. This process differs from the manner in which Staffing Managers, Account Executives, and Account Managers in other divisions may perform the same responsibilities, because each division tailors its sales and marketing efforts to the substantive field and market in which it operates. For example, Accountemps Staffing Managers may develop and cultivate clients by participating in accounting professional organizations. By contrast, Account Managers in The Creative Group rely on specific candidates' portfolios of work to promote the division's marketing, advertising and creative services, and demonstrate how the Company can meet each individual client's needs. *Id.*

While on desk duty, Accountemps Staffing Managers use their knowledge and experience in the accounting field to identify the best candidate to fill each order for temporary accounting services in accordance with the unique requirements detailed by the client. Gitlin Aff., ¶ 13. Often, Accountemps' clients do not meet or interview the candidate before the assignment begins, but instead rely upon the Staffing Managers to make an appropriate selection

based on their experience and expertise. *Id.* Staffing Managers, Account Executives, and Account Managers in RHI's other divisions must use the distinctions unique to the subject matter in which they specialize in matching candidates to clients' orders for services. Gitlin Aff., ¶ 14. These differences, in turn, may lead to different approaches to filling job orders. For example, Account Executives in the Robert Half Technology division will often arrange an Initial Client Meeting to ensure that the candidate's specialized skills match the client's specific needs. *Id.*

The recruiting duty of the Accountemps Staffing Manager position involves interviewing and assessing prospective candidates who possess the appropriate professional skill sets and work experience for use in filling accounting assignments with client companies. Gitlin Aff., ¶ 15. When interviewing prospective candidates, they rely on their expertise and experience in the finance and accounting field to evaluate each prospective candidate's skills, determine the precise services he or she is qualified to perform, and, ultimately, decide whether to include each prospect in the Company's database of candidates. The avenues by which Accountemps Staffing Managers pursue candidates and the techniques they use to interview candidates vary from office-to-office and from district-to-district, based on local customs and local management preferences. Gitlin Aff., ¶ 16. The approach to recruiting also differs considerably from division-to-division because each division must use techniques appropriate to the industry or field in which it specializes. Gitlin Aff., ¶ 17. For example, some Account Executives in the Robert Half Technology division utilize a multi-dimensional "matrix" to catalogue and evaluate candidates' skills and experience in the highly-specialized technology field. *Id.*

Each Accountemps Staffing Manager is also responsible on a continuing basis for managing the candidate assignments they have made and dealing with human resource issues that arise during an assignment. Gitlin Aff., ¶ 18. They regularly verify that the clients'

6

expectations are being met and ensure the candidates' satisfaction with their assignments. Accountemps Staffing Managers also address such issues as attendance and tardiness, proper dress, failure to perform assigned tasks adequately, or excessive personal telephone calls. *Id.* Similarly, Accountemps Staffing Managers also intervene if candidates complain about harassment or discrimination, need a reasonable accommodation for a disability, or are asked to do something inappropriate. Gitlin Aff., ¶ 19. The amount of time spent performing this task varies between the divisions and from office-to-office, based on the nature and number of clients and candidates managed by each individual Staffing Manager, Account Executive and Account Manager. Gitlin Aff., ¶ 20. For example, a Staffing Manager who handles a single, large volume client may devote as much as 50% of his or her time to this task and less time to marketing activities, while another Staffing Manager who has a single candidate placed with a number of small employers for short-term assignments may need to devote less time to managing candidates' performance and human resources issues. *Id.*

## IV.    Plaintiffs' Class Allegations

Plaintiffs argue in their Motion that the Court should conditionally certify this case as a collective action pursuant to 29 U.S.C. § 216(b), and issue notice of the pending action to potential class members, including all Staffing Managers, Account Executives, and Account Managers ("staffing professionals") who worked for RHI within the last three years.[3] They argue that they have met their burden of showing that they are similarly situated to the potential

---

[3] Plaintiffs have provided conflicting descriptions of the group they seek to notify of the pendency of this case. In their Amended Complaint, they assert their claims on behalf of all staffing professionals "employed by Defendants in any of their divisions in any state except Massachusetts and California, within three (3) years of the filing of this Complaint . . ." Amended Complaint, ¶ 27 (emphasis added). In Plaintiffs' Motion, they propose notice to all staffing professionals "employed in any state other than California within the last three (3) years immediately preceding the filing of the Complaint." Plaintiffs' Motion, p. 1 (emphasis added). In Plaintiffs' Memorandum, they argue for an order requiring RHI to provide information on staffing professionals "employed anywhere in the United States within the three years preceding the filing of this action." Plaintiffs' Memorandum, p. 11 (emphasis added).

class members, in that they allegedly were subject to a common policy or plan that purportedly violated the law.  In support of their Motion, O'Donnell and Jolicoeur submitted affidavits ("O'Donnell Aff." and "Jolicoeur Aff.") describing their job duties and stating their unfounded belief that "many [other Staffing Managers, Account Executives and Account Managers] would be interested in participating in this litigation."  O'Donnell and Jolicoeur Affs., ¶ 20.  Finally, Plaintiffs argue that the content of their proposed notice to the potential class members is "fair and adequate," and they seek discovery of the names and addresses of all potential class members.

## ARGUMENT

As argued below, the Court should deny Plaintiffs' Motion to Facilitate § 216(b) Notice, for several reasons.  First, Plaintiffs have mischaracterized the legal standard applicable to conditional certification of collective actions, arguing in favor of a more lenient standard than is appropriate or fair to RHI.  Second, Plaintiffs have failed to make any showing whatsoever that they are similarly situated to members of the putative class, an essential prerequisite to certifying any collective action, even preliminarily.  Third, Plaintiffs have failed to show that any members of the putative class have any interest in joining this action.  Fourth, even if Plaintiffs had shown that they were similarly situated to any group of putative class members with an interest in this litigation, this case still would be inappropriate for collective action treatment because Plaintiffs' claims implicate the administrative exemption, and therefore require an individualized inquiry into each employee's job duties, discretion, judgment, and hours worked, making it impossible to handle the matter efficiently on a collective basis.  Finally, Plaintiffs' proposed notice is misleading and inappropriate.

**I.      Plaintiffs Have Not Shown that They Are Similarly Situated to Members of the Putative Class.**

Plaintiffs style their motion as one to "Facilitate § 216(b) Notice."  In fact, Plaintiffs' Motion seeks conditional certification of this matter as a collective action under the two-tiered approach to class certification in § 216(b) collective action cases.[4]  *See* Plaintiff's Memorandum at p. 4 (citing cases discussing conditional certification of FLSA collective actions).  Courts have recognized that the effect of conditionally certifying an FLSA collective action is to authorize notice to members of the putative class of the pendency of the case.  *See Hoffman-La Roche v. Sperling*, 493 U.S. 165, 170 (1989) (holding that benefits of conditional certification under § 216(b) are allowing employees to receive notice of pendency of collective action); *Mooney v. Aramco Servs. Co.*, 54 F.3d 1207, 1213-14 (5th Cir. 1995) (referring to the conditional certification stage as the "notice stage") (citing *Lusardi v. Xerox Corp.*, 118 F.R.D. 351, 352 (D. N.J. 1987).  Plaintiffs' motion is therefore, in effect, a motion for conditional certification.

**A.      Plaintiffs misconstrue their burden of proof.**

Plaintiffs argue that, in order to meet their burden in moving for conditional certification, they need only show that similarly situated potential plaintiffs may exist and were subject to a common policy or practice.  This argument misconstrues the cases on which they rely and ignores a multitude of other cases in which courts have applied a greater level of scrutiny at the conditional certification stage.  In fact, Plaintiffs are required to substantiate their allegations that

---

[4] Most courts have adopted a two-tiered approach for determining whether an FLSA case is appropriate for class treatment that examines whether certification would serve the purposes and putative benefits of a collective action in terms of efficient case management. *See, e.g.*, *Kane v. Gage Merch. Servs., Inc.*, 138 F. Supp. 2d 212 (D. Mass. 2001); *Bayles v. Am. Med. Response of Colorado, Inc.*, 950 F. Supp. 1053 (D. Colo. 1996); *Lusardi v. Xerox Corp.*, 122 F.R.D. 463 (D. N.J. 1988).  The first step in this two-tiered approach has been called the "notice stage."  At this stage, the Court decides whether to authorize notice of the pendency of the case to potential class members.  *Bayles*, 950 F. Supp. at 1066.  In the second step, the Court determines whether it is appropriate for the case to proceed as a collective action "after discovery is largely complete and the case is ready for trial."  *Thiessen v. Gen. Elec. Capital Corp.*, 267 F.3d 1095, 1102-03 (10th Cir. 2001); *see also Morisky v. Public Serv. Elec. & Gas Co.*, 111 F. Supp. 2d 493, 497 (D. N.J. 2000).

they are similarly situated to members of the putative class with admissible evidence.

In essence, Plaintiffs argue that they are required to make no factual showing at all to support their claim that they are similarly situated to members of the putative class. Their argument suggests that their mere allegation that RHI treated some of its employees as exempt from the FLSA's overtime requirements entitles them to an order that would impose a burden on the Company of researching and assembling the identities and contact information of every member of any putative class Plaintiffs choose to define. Plaintiffs' Memorandum, p. 8-9. They cite this Court's decision in *Kane v. Gage Merchandising Services, Inc.* in support of this far-reaching argument and, in so doing, misstate the holding of that case. In *Kane*, the Court recognized that plaintiffs in FLSA collective action cases cannot meet their burden of showing that they are similarly situated to members of the putative class at the conditional certification stage merely by alleging that their employer misclassified some defined group of employees as exempt. Rather, the Court noted that plaintiffs must show that members of the putative class "were subject to a single decision, policy, or plan *that violated the law*." *Kane*, 138 F. Supp. 2d at 214 (emphasis added) (citing *Mooney v. Aramco Servs. Co.*, 54 F.3d 1207, 1213-14 (5th Cir. 1995)). The plaintiff in that case sought to represent a small and homogeneous class of employees and provided evidence that the employer had *improperly* classified a discrete group of employees by deciding which employees to classify as exempt based on whether its clients were willing to absorb the cost of overtime payments to the employees at issue, rather than on the employees' duties. *See Kane*, 138 F. Supp. 2d. at 215. In the present case, Plaintiffs seek to represent a potentially massive and diverse group of current and former employees and have offered no evidence that any of RHI's practices were a violation of the FLSA or any other law.[5]

---

[5]Several courts have held that employers have correctly classified employees with positions similar to Accountemps Staffing Managers as exempt administrative employees. *See, e.g., Hudkins v. Maxim Healthcare Servs., Inc.*, 39 F.

This Court's holding in *Kane* therefore in no way supports Plaintiffs' Motion.

In addition to misconstruing the law, Plaintiffs' proposed standard also would impose a pointless drain on the courts' and employers' resources. Courts have recognized that if plaintiffs are not required to produce at least some evidence of a similarly situated class, the notice and certification process becomes nothing more than a tool for plaintiffs to create litigation. For example, the court in *Freeman v. Wal-Mart Stores, Inc.*, refused to permit notice to class members where, as here, the plaintiffs failed to show that employees with different job titles were in fact similarly situated:

> Plaintiffs' view seems to be that all salaried Wal-Mart employees below officer level are similarly situated no matter what their job duties are: the employees are similarly situated simply because they claim violations of the law by the same employer. Adopting plaintiff's view would require us to conclude that if an employer has two or more non-officer, salaried employees who allegedly are not being paid overtime by the Act, then a collective action would be appropriate under 216(b).

256 F. Supp. 2d 941, 945 (W.D. Ark. 2003). *See also, England v. New Century Fin. Corp.*, 2005 U.S. Dist. LEXIS 8403 (M.D. La.) (holding that "it would be a waste of the Court's and the litigants' time and resources to notify a large and diverse class only to later determine that the matter should not proceed as a collective action because the class members are not similarly situated"); *D'Anna v. M/A-COM, Inc.*, 903 F. Supp. 889, 894 (D. Md. 1995) (holding that "an employer should not be unduly burdened by a frivolous fishing expedition conducted by plaintiff at the employer's expense"). The Court should not allow Plaintiffs to impose the burden of a potentially massive nationwide collective action on RHI and the Court in the absence of a factual showing that they are similarly situated to members of the class they seek to represent.

---

Supp. 2d 1349 (M.D. Fla. 1998) (holding that recruiters who provided nursing staffing services to medical facilities and private homes properly classified as exempt under administrative exemption), *aff'd*, 176 F.3d 493 (11th Cir. 1999); *Smith v. Tradesmen International, Inc.*, Civ. Action No. 03-21663 (S.D. Fla. 2004) (holding that a project coordinator responsible for providing construction staffing services to employer's clients was properly classified as exempt administrator), copy attached at Exhibit A.

A substantial body of caselaw requires plaintiffs to support a claim that they are similarly situated to the members of the group they seek to represent with a factual showing before they can prevail on a motion for conditional class certification. *Holt v. Rite Aid Corp.*, 333 F. Supp. 2d 1265, 1270 (M.D. Ala. 2004) (to justify conditional certification, plaintiffs "must make some rudimentary showing of commonality between the basis for [their] claims and that of the potential claims of the proposed class, beyond the mere facts of job duties and pay provisions.") (collecting authorities); *Levinson v. Primedia Inc.*, 2003 U.S. Dist. LEXIS 20010, *4-5 (S.D.N.Y.) (denying motion to notify potential class members where plaintiffs "failed to make a sufficient showing" of improper treatment of other employees); *Camper v. Home Quality Mgmt., Inc.*, 200 F.R.D. 516, 519-20 (D. Md. 2000) (holding plaintiffs are required to make a preliminary factual showing that a similarly situated group of potential plaintiffs exists); *Michaelson v. Arrow Transp. Co.*, 1997 U.S. Dist. LEXIS 23665, *2-3 (D. Ore.) (denying certification and notice to class members where plaintiff failed to provide supporting affidavits regarding challenged policy or practice or job responsibilities of employees sought to be included). Plaintiffs are therefore required to offer admissible evidence that they are similarly situated to members of the putative class, in order to meet their burden of proof in moving for conditional certification of this case as a collective action.

**B.    Plaintiffs have offered no evidence that they are similarly situated to members of the putative class, under any legal standard.**

Plaintiffs rely only on self-serving affidavits rife with conclusory allegations, speculation, and hearsay in an attempt to show that they are similarly situated to members of the putative class.[6] Even if credited, the testimony in these affidavits is insufficient to show that O'Donnell

---

[6] The Court should disregard all statements in Plaintiffs' affidavits that are not founded on personal knowledge, including statements that refer discussions with unidentified current or former RHI employees. *See Mike v. Safeco,*

and Jolicoeur bear any similarity to the members of the class they seek to represent.  In fact, the only <u>evidence</u> before the Court indicates that there are likely to be substantial differences among members of the putative class.

The unsupported, conclusory allegations in Plaintiffs' affidavits are insufficient to meet their burden.  In his affidavit, O'Donnell states that, "I am familiar with other current and former employees of the Company who . . . work or worked in similar positions with similar duties. . ." O'Donnell Aff., ¶ 20.  Similarly, Jolicoeur states in his affidavit, "I am familiar with current and former employees of the Company who work or worked in similar positions with similar duties . . ." Jolicoeur Aff., ¶ 20.  These unsupported allegations and hearsay statements, even coupled with Plaintiffs' unsworn Amended Complaint, fail to meet even the most lenient burden of proof. *See Nisenbaum v. Milwaukee County,* 333 F.3d 804, 810 (7th Cir. 2003) ("Allegations in a complaint are not evidence."); *Holt*, 333 F. Supp. 2d at 1272 (ultimately determining that evidence concerning plaintiffs' job duties was "merely anecdotal" and specific to them, and thus did not show that they were similarly situated to potential class members); *Horne v. United Servs. Auto. Ass'n*, 279 F. Supp. 2d 1231 (M.D. Ala. 2003) (statement in affidavit in support of certification that plaintiff "believes" that other similarly situated employees exist is not sufficient); *Freeman*, 256 F. Supp. 2d at 945 (although plaintiff's burden is "not heavy," "unsupported allegations of widespread violations are not sufficient"); *Hall v. Burk, M.D.*, 2002 WL 413901, *2 (N.D. Tex.) ("Unsupported assertions of widespread violations are not sufficient to meet Plaintiff's burden."); *H & R Block v. Housden*, 186 F.R.D 399, 400 (E.D. Tex. 1999) (denying plaintiff's request for notice because the plaintiffs failed to offer anything more than conclusory affidavits); *Camper*, 200 F.R.D. at 519 (D. Md. 2000) ("Mere allegations in the

---

*Ins. Co. of Am.*, 274 F. Supp. 2d 216, 219 n. 4 (D. Conn. 2003) (disregarding statements in plaintiffs' affidavits not founded on personal knowledge).

complaint are not sufficient; some factual showing by affidavit or otherwise must be made") (collecting authorities); *Pfahler v. Consultants for Architects, Inc.*, 2000 U.S. Dist. LEXIS 1772 at *6 (N.D. Ill.) (plaintiff's "belief" regarding duties of other employees "not sufficient to meet the similarly situated requirement. [Plaintiff] must point to something concrete aside from his belief."). Plaintiffs' unsupported allegations are therefore insufficient to show that they are similarly situated to members of the putative class they seek to represent.

Furthermore, even if credited for purposes of this motion, the allegations in Plaintiffs' affidavits pertain only to their <u>own</u> job duties as Accountemps Staffing Managers, and their affidavits noticeably lack any evidence regarding the job duties of other members of the putative class. Plaintiffs each, for short periods of time, held one relevant job title (Staffing Manager), worked in one division of the Company (Accountemps), and worked in one narrow geographic region (the greater Boston metropolitan area).[7] Nevertheless, they now seek to represent thousands[8] of current and former employees who held any of three different job titles, worked in any of the Company's divisions, and were employed in any of RHI's more than 260 offices in any of 43 states. In their nearly identical affidavits, O'Donnell and Jolicoeur simply list their

---

[7] O'Donnell also worked for RHI in Danbury, Connecticut for a short period of time. However, the Court should disregard O'Donnell's work for RHI in Connecticut because it occurred outside the statute of limitations period applicable to this case. The statute of limitations applicable to FLSA claims is two years. 29 U.S.C. § 255(a) (statute of limitations on FLSA claims is two years, unless the alleged violation was willful). The Complaint in this matter was filed December 1, 2004, and O'Donnell's consent to participate in this matter as a plaintiff was filed on January 19, 2005. O'Donnell's FLSA claims prior to December 1, 2002 (or, arguably, January 19, 2003) are therefore time barred. O'Donnell transferred from Danbury to Westborough, Massachusetts on July 1, 2002, approximately 6 months before the earliest date for which he could assert FLSA claims against RHI. The time he worked in RHI's Danbury, Connecticut, office is therefore outside the statute of limitations period applicable to his FLSA claims, and the Court should disregard it.

[8] RHI has not yet calculated the number of employees in the putative class. Because of the broad criteria Plaintiffs used to define the putative class, merely calculating the number of employees in the class would require the Company to expend substantial resources. Gitlin Aff., ¶ 6. Based on the Company's current size and its estimated turnover in the positions at issue, RHI estimates that the putative class may include thousands of people. *Id.* RHI estimates that no more than a few hundred of these putative class members worked as Accountemps Staffing Managers in Massachusetts, like O'Donnell and Jolicoeur. *Id.*

own job duties and describe their work schedules (O'Donnell & Jolicoeur Affs., ¶¶ 6-12). Their affidavits are noticeably bereft of any mention of the specific job duties performed by any potential class member. Plaintiffs have failed to provide any evidence that they bear any similarity to the potentially massive and diverse group they seek to represent.

Indeed, the only evidence before the Court establishes that members of the putative class in fact are not similarly situated. Within the Accountemps division, Staffing Managers' duties may vary within each office and between offices based on local market conditions. Gitlin Aff., ¶¶ 9-11. Also, the manner in which Accountemps Staffing Managers perform the duties associated with their three basic areas of responsibility – marketing and sales, desk and recruiting – differs from the duties performed by other staffing professionals in other divisions. *See* Gitlin Aff., ¶¶ 12-17. In addition to having any of three different job titles[9] and working in any of several different divisions, the putative class members work or worked at numerous locations in many states, under hundreds of different managers. Gitlin Aff., ¶ 4. These differences in local management are evidence that members of the putative class are, in fact, not similarly situated. *See Belcher v. Shoney's, Inc.*, 927 F. Supp. 249, 252 (M.D. Tenn. 1996) (denying certification as to other restaurants owned by defendant, where none of the plaintiffs had worked at those restaurants); *Dionne v. The Ground Round*, 1994 U.S. Dist. LEXIS, *12 (D. Mass.) (denying motion for certification where putative class members worked in different states, for various supervisors, at different job levels, and in different divisions and departments).

Indeed, Plaintiffs' own affidavits state that their day-to-day activities were governed not

---

[9] Even if Plaintiffs shared a job title with all members of the putative class, that fact would be insufficient, as a matter of law, to meet Plaintiffs' burden of showing that they are similarly situated to the members of the group they seek to represent. *See, e.g., Mike*, 274 F. Supp. 2d at 221 (denying certification even where putative class members shared the same job description); *Tumminello v. United States*, 14 Cl. Ct. 693, 697 (Cl. Ct. 1988) ("even persons sharing the same job series and title may not necessarily both be exempt or nonexempt").

by nationwide corporate policy, but that their local "division director, branch manager, and/or regional director planned [their] daily work activities."  O'Donnell and Jolicoeur Affs., ¶ 12. Courts have recognized that, where local managers have discretion in determining their subordinates' hours of work and day-to-day job duties, employees working in different locations will have different job duties and work different hours from one another.  For example, in *England v. New Century Financial Corp.*, the court noted the difficulty in certifying a class in which the putative members worked in a variety of environments and denied certification:

> [P]laintiffs in this case have not met their burden of showing that they are "similarly situated."  <u>It is clear that this case involves a multitude of different managers at different geographical locations across the country.</u>  It is also clear that individual inquiries must predominate in this case because of the different locations, managers, and factual situations at each location…. If liability is found, damages would necessarily require a case by case inquiry, thereby rendering it impossible to try this case as a collective action.

2005 U.S. Dist. LEXIS 1804, *19 (M.D. La.) (emphasis added).  *See also, Horne*, 279 F. Supp. 2d at 1235 ("a plaintiff must demonstrate that employees outside of the work location for which the plaintiff has provided evidence were similarly affected by the alleged work policies in order for the court to certify a collective action which extends beyond the plaintiff's own work location"); *Pfahler*, 2000 U.S. Dist. LEXIS 1772, *8 (where potential class members worked in offices of different clients, similarities in the manner in which they were hired and paid not dispositive to similarly-situated analysis); *Reeves v. Alliant Techsystems, Inc.*, 77 F. Supp. 2d 242 (D. R.I. 1999) (named plaintiffs not similarly situated to opt-in plaintiffs where they had different managers).  Because members of the putative class worked in a number of different divisions, in hundreds of different offices, and reported to hundreds of different supervisors, it would be unreasonable to assume that they are similarly situated to one another in any material respect.

16

## II.   Plaintiffs have not shown that any putative class member is interested in opting into this case.

In addition to showing that they are similarly situated to members of the putative class, plaintiffs in an FLSA collective action must show that members of the putative class are interested in participating in the litigation to justify conditional certification of a class. *See, e.g., Pfohl v. Farmers Ins. Group*, 2004 U.S. Dist. LEXIS 6447, *31 (C.D. Cal.) (denying conditional certification of class in part because plaintiffs had failed to show that any members of the putative class were likely to assert similar claims); *Horne*, 279 F. Supp. 2d at 1236 (holding that before conditionally certifying an FLSA collective action, "the court must at least satisfy itself that there are other persons who are similarly situated *and who desire to opt-into this case*.") (emphasis added) (citing *Dybach v. Florida Dep't of Corr.*, 942 F.2d 1562, 1567-68 (11th Cir. 1991)).

Plaintiffs' affidavits are insufficient to meet their burden of showing that members of the putative class are interested in joining this case.  In their affidavits, each Plaintiff avers that he is "familiar with other current and former employees of the Company," and that he "believe[s]" many of these people would be interested in participating in this litigation.[10]  Plaintiffs do not

---

[10] O'Donnell's affidavit states:

> I am familiar with other current and former employees of the Company who are not listed as named plaintiffs in this case but who have stated that they would be interested in participating in this litigation.  These current and former employees work or worked in similar positions with similar duties and did not receive overtime compensation for hours worked in excess of forty (40) hours in a work week despite regularly working in excess of forty (40) hours in a week.

> Throughout my employment with the Company, at each of the three offices of the Company where I worked, other employees in positions similar to mine stated that they were extremely dissatisfied with their level of compensation.  Many of these employees stated that they believed that they should receive overtime pay because of the nature of their jobs and the long hours they worked. I believe that many of these current and former employees of the Company would be interested in participating in this litigation.

O'Donnell Aff., ¶¶ 20-21.

identify by name (or even a vague description) a single member of the putative class whom they believe desires to participate in the case.  As a preliminary matter, the Court should disregard the allegations in Plaintiffs' affidavits about their "beliefs" that there are members of the putative class that desire to participate in the case because those allegations are based at best on hearsay, and more likely on sheer speculation, and are not founded on personal knowledge.  Even if the Court were to overlook these evidentiary deficiencies, Plaintiffs' allegations about their personal beliefs are insufficient as a matter of law to satisfy their burden of proof.  *Horn*, 279 F. Supp. 2d at 236-37 (holding that plaintiff's affidavit testimony that he "believes" other similarly situated putative class members exist and desire to opt into the case was insufficient to meet his burden in moving for conditional certification).  *See also, Pfahler*, 2000 U.S. Dist. LEXIS 1772, *6; *H & R Block*, 186 F.R.D. at 400.  The Court therefore should disregard Plaintiffs' affidavit testimony regarding their beliefs about other peoples' interest in this case.

Even if taken at face value, however, Plaintiffs' affidavit testimony does not support a claim that anyone would opt into this case if the Court ordered notice to members of the putative class.  Plaintiffs essentially argue that they have overheard complaints by members of the putative class about being overworked and underpaid.  Such conversations can be overheard in most workplaces, and certainly do not suggest that people making such commonplace complaints about their level of pay would opt into a federal lawsuit after receiving an explanation of the

---

Jolicoeur's affidavit states:

> I am familiar with other current and former employees of the Company who work or worked in similar positions with similar duties and regularly worked in excess of forty (40) hours in a work week.  I believe that many of these individuals would be interested in participating in this litigation, because while I worked at the Company, alongside many of these current and former employees, I frequently heard them complain that we were all working too many hours without being sufficiently compensated for them.

Jolicoeur Aff., ¶ 20.

claims and defenses at issue and the obligations they may face as party plaintiffs.

The fact that no one has opted into this case also belies Plaintiffs' allegation that members of the putative class are interested in participating in the litigation. In his affidavit, O'Donnell states that he has spoken with putative class members "who have stated that they would be interested in participating in this litigation." O'Donnell Aff., ¶ 20. Notwithstanding this assertion, this case has been pending for almost 6 months and not a single member of the putative class has filed a consent to join this case.[11] Courts have interpreted such a lack of consents to become plaintiffs as evidence of a lack of interest in the litigation among members of the putative class. *See Pfohl*, 2004 U.S. Dist. LEXIS 6447, *31-32 (holding that plaintiffs failed to meet burden of showing interest among putative class members where they had solicited opt-ins and "failed to come up with significant numbers of allegedly similarly situated employees who are likely to assert similar claims"); *Davis v. Charoen Pokphand (USA), Inc.*, 303 F. Supp. 2d 1272, 1276-77 (M.D. Ala. 2004) (holding that plaintiffs failed to meet burden of showing interest among putative class members where Plaintiffs had not submitted affidavits from putative class members, consents to join, or expert evidence); *Horne*, 279 F. Supp. 2d at 1236-38 (same). This inference is amplified by the fact that putative class members' claims are losing value as the statute of limitations continues to run, as Plaintiffs acknowledge.[12] Plaintiffs' Memorandum at 9-10 (citing 29 C.F.R. § 790.21(b)(2); *Grayson v. K Mart Corp.*, 79 F.3d 1086,

---

[11] Members of the putative class may file a consent to join this case at any time, and need not wait until a collective action is certified. *Kuhn v. Philadelphia Elec. Co.*, 475 F. Supp. 324, 327 (E.D. Pa. 1979) (holding that even consents that were filed before complaint was filed are valid). *See also, Garner v. G.D. Searle Pharm. & Co.*, 802 F. Supp. 418, 422 (M.D. Ala. 1991) (holding that plaintiffs may gather consents to join before case is certified as collective action).

[12] The statute of limitations is generally tolled for a putative class member's FLSA claims as of the date he or she files a notice of consent to join the case, even if no class has been certified as of that date. *See Kuhn*, 487 F. Supp. at 975-76 (holding statute of limitations tolled by filing of complaint and consent to join, even when case has not yet been certified as collective action).

1105-06 (11th Cir. 1996)).  If Plaintiffs were in contact with members of the putative class who were interested in participating in this case, they would be acting in derogation of those individuals' interests by not encouraging them to file the consents necessary to preserve their claims at the earliest possible opportunity.

Other evidence also demonstrates that members of the putative class are likely to be aware of Plaintiffs' claims against RHI and lack interest in joining this suit.  The pendency of this action was publicized in RHI's filings with the U.S. Securities and Exchange Commission. In the Company's January 27, 2005 Form 8-K filing, RHI disclosed the fact that Plaintiffs had brought suit against the Company; provided a summary of Plaintiffs' claims on behalf of themselves and other Staffing Managers, Account Executives, and Account Managers for alleged unpaid overtime under federal and Massachusetts law; and stated that the case was pending before this Court. Gitlin Aff., ¶ 5.[13]  The Company included similar disclosures regarding this case in its Annual Report on Form 10-K for 2004 (filed with the SEC on February 23, 2005), and its Quarterly Report on Form 10-Q for the first quarter of 2005 (filed with the SEC on May 5, 2005).  *Id.*[14]  Each of these filings is readily available to the general public through RHI's corporate website (www.rhi.com), in addition to being posted on the SEC's website (www.sec.gov).  *Id.*  Almost five months have passed since RHI's first public disclosure of this suit, and no one has filed a consent to join this action.  The complete lack of consents to join this action, particularly in the face of RHI's public disclosure and description of the case to an audience that certainly includes current and former Staffing Managers, Account Executives, and Account Managers, is further evidence that there is no interest in joining this case among

---

[13] A copy of RHI's January 27, 2005 Form 8-K filing is attached to the Affidavit of Ken Gitlin as Exhibit 1.

[14] Excerpted copies of these filings are attached to the Affidavit of Ken Gitlin as Exhibits 2 and 3, respectively.

members of the putative class Plaintiffs seek to represent.

## III. Collective action treatment of this case would be inefficient.

In general, exemption cases under the FLSA are ill-suited to collective action treatment because each employee holds an exemption on an individualized basis, requiring analysis of all the factual circumstances regarding his or her employment. *See* 29 C.F.R. § 542.201(b)(2) (exemption status of any employee must "be determined on the basis of whether his duties, responsibilities and salary meet all of the requirements of the appropriate section of the regulations"). Numerous courts have recognized the difficulty inherent in allowing exemption cases to proceed on a collective basis, and therefore have refused to certify them as collective actions. *See Holt*, 333 F. Supp. 2d at 1271 (denying certification where exemption required "fact-intensive determination" and examination of employees' day-to-day tasks); *Mike*, 274 F. Supp. 2d at 221 (denying motion for conditional certification in administrative exemption case where the court "would have to apply the regulations on an individual basis"); *Dean v. Priceline.com*, 2001 U.S. Dist. LEXIS 24982, *7 (D. Conn.) (denying certification because "from a practical standpoint, litigating [a case involving administrative exemption] as a collective action would be extremely difficult, at best" because of the fact-intensive inquiries involved); *Donihoo v. Dallas Airmotive, Inc.*, 1998 WL 91256, *1 (N.D. Tex.) ("In deciding whether an employee fits into one of the many exempt categories delineated in the FLSA, the Court must conduct an inquiry into the employee's specific job duties. Such an inquiry is not appropriate for a class lawsuit under Section 216(b)"); *Tumminello*, 14 Cl. Ct. at 697 ("The determination of whether an exemption applies to a given individual, however, is a very fact-specific exercise."). The fact-intensive nature of the exemption analysis renders this case inappropriate for certification as a collective action.

### A.    The administrative exemption requires individualized analysis of each employee's job duties, and exercise of discretion and independent judgment.

The primary exemption at issue in this case makes it especially inappropriate for collective action treatment.  Defendants classified Plaintiffs as FLSA exempt pursuant to the administrative exemption and compensated them on a salaried basis.  29 U.S.C. § 213(a)(1).  Of the various white-collar exemptions available, the administrative exemption is the most complicated.  As an initial matter, the Court must assess whether each employee's primary job duty involves the performance of office or non-manual work directly related to the management or general business operations of RHI or its clients.  29 C.F.R. § 541.2(a)(1) (2003); 29 C.F.R. § 541.200 (2005).[15]  This individualized, fact-intensive inquiry would require the Court to look at the specific work done by each member of the putative class.  *Morisky*, 111 F. Supp. 2d at 499 ("exempt or non-exempt status of potentially hundreds of employees would need to be determined on a job-by-job, or more likely, an employee-by-employee basis"); *Cooke v. Gen. Dynamics Corp.*, 993 F. Supp. 56, 59-61 (D. Conn. 1997) (noting the "necessarily fact-intensive" analysis necessary to determine whether an individual employee performs work meeting requirements of administrative exemption).

The administrative exemption analysis is further complicated by the requirement that the Court determine the degree to which each RHI Staffing Manager, Account Executive, and Account Manager exercises discretion and independent judgment "with respect to matters of significance," a similarly fact-intensive inquiry likely to yield varying conclusions between employees.  *See* 29 C.F.R. §§ 541.2(b), 541.207(a) (2003); 29 C.F.R. § 541.202(a) (2005).

---

[15] The Department of Labor revised the regulations pertaining to the FLSA's white-collar exemptions effective August 23, 2004.  The regulations pertaining to the administrative exemption were reorganized and edited in an attempt to provide greater clarity, but the substantive requirements of the administrative exemption appear not to have changed significantly.

Discretion and independent judgment entails "the comparison and the evaluation of possible courses of conduct and acting or making a decision after the various possibilities have been considered . . . . [It] implies that the person has the authority or power to make an independent choice, free from immediate direction or supervision and with respect to matters of significance." 29 C.F.R. § 541.207. Although Plaintiffs have sought to characterize their jobs as lacking discretion and independent judgment (*See* O'Donnell and Jolicoeur Affs., ¶ 9), Accountemps Staffing Managers in general exercise such discretion and judgment.[16] *See* Gitlin Aff. ¶¶ 7-8, 12-15, 19-20. In order to determine whether potential opt-in plaintiffs were properly classified as exempt, the Court would need to scrutinize the daily activities, level of supervision and decision-making authority of potentially thousands of employees. *Morisky*, 111 F. Supp. 2d at 499. Because such a fact-intensive inquiry would be complicated and inefficient, collective treatment is not appropriate here. *Pfahler*, 2000 U.S. Dist. LEXIS 1772 at *4 (denying plaintiffs' motion for conditional certification where class treatment would require court to make "a fact-intensive, individual determination as to the nature of each potential claimant's employment relationship"). In sum, the complicated, individualized inquiry into the job duties and exercise of discretion and independent judgment of employees classified as exempt pursuant to the administrative exemption renders this case inappropriate for collective action treatment.

**B.    Collective action treatment of Plaintiffs' claims would require numerous individualized assessments of the hours worked by each putative class member.**

Beyond an individualized analysis of each employee's exempt status, the Court would also need to conduct a large number of individualized damage assessments if this case were certified for collective action treatment. Plaintiffs acknowledge that their day-to-day activities,

---

[16] Although Defendants sharply dispute Plaintiffs' assertions regarding their alleged failure to exercise discretion and judgment, RHI will not address the merits of that argument here, at the conditional certification stage.

including the hours they worked, were subject to the discretion of local management. *See* O'Donnell and Jolicoeur Affs., ¶12. There is therefore every reason to expect that the hours worked by putative class members – who worked in different offices and reported to different local managers – varied substantially between employees who worked under different job market conditions, for different managers, in different offices, regions, states, and zones, and in different divisions; these differences undermine any suggestion that members of the class are similarly situated to one another. If all of RHI's staffing professionals ever were deemed to be non-exempt, the Court would be required to examine the hours worked by each member of the putative class to determine whether he or she ever worked more than forty hours in a workweek during the statute of limitations period, and if so, the amount of damages due to each such employee. Courts have recognized that cases requiring such individualized damages inquiries are not appropriate for collective treatment. *England*, 2005 U.S. Dist. LEXIS 8403, *19 (where damages analysis required case-by-case inquiry, certification inappropriate). Accordingly, class treatment of this case is improper and does not further the interests of judicial economy underlying the collective action provisions of the FLSA.

## IV.    Plaintiffs are not proper representatives of the putative class.

The Court also should deny Plaintiffs' motion to certify a collective action because they are not even members of the class they seek to represent. In order to bring an FLSA claim on behalf of members of a putative class, a named plaintiff must be a member of the class he or she seeks to represent. *See Schlesinger v. Reservists Comm. to Stop the War*, 418 U.S. 208, 216 (1974) ("To have standing to sue as a class representative, it is essential that a plaintiff must be a part of that class. . ."); *Prado-Steiman v. Bush*, 221 F.3d 1266, 1279 (11th Cir. 2000) (holding that a class representative must be part of the class he seeks to represent) (collecting authorities); *Pfohl*, 2004 U.S. Dist. LEXIS 6447, *32-33 (declining to conditionally certify collective action

24

where plaintiffs were not adequate representatives of putative class they sought to represent).

Neither O'Donnell nor Jolicoeur is a member of the putative class they have asked this Court to conditionally certify.  In their Amended Complaint, Plaintiffs purport to assert their claims under the FLSA "on behalf of themselves and on behalf of all persons similarly situated within the class of Staffing Managers, Account Executives, and Account Managers employed by Defendants in any of their divisions in any state except Massachusetts and California, within three (3) years of the filing of this Complaint until the entry of judgment at trial."[17]  Amended Complaint ¶ 27.  Jolicoeur is not a member of this class because he worked for RHI exclusively in Massachusetts, one of two states expressly excluded from the class.[18]  O'Donnell also worked for RHI primarily in Massachusetts.  He worked in the Company's Danbury, Connecticut, office for a short period of time at the beginning of his tenure with RHI.  However, the few months that he worked in Connecticut are outside the statute of limitations applicable to his claims.[19]  O'Donnell therefore has no viable claim to assert as a member of the putative FLSA class.  Because neither Plaintiff is a member of the class he seeks to represent, the Court should deny their motion to conditionally certify this matter as a collective action.

---

[17] Plaintiffs assert a separate claim for violations of the Massachusetts statute requiring overtime pay to non-exempt employees on behalf of all persons in these job classifications who worked for RHI in Massachusetts.  *See* Amended Complaint ¶¶ 26, 36-41.  Plaintiffs' counsel has also asserted a claim on behalf of people in these job classifications under California law for, among other things, unpaid overtime in a separate action pending in the California Superior Court for the County of Los Angeles.  *See Lafitte v. Robert Half Int'l Inc.*, Case No. BC 321317.

[18] Plaintiffs' decision to exclude people who worked for RHI in Massachusetts from the putative class was not a drafting error.  In fact, Plaintiffs amended their Complaint in order to clarify an ambiguity in their original Complaint regarding the scope of the class they seek to represent.  In so doing, Plaintiffs reaffirmed their intent to exclude Staffing Managers, Account Executives, and Account Managers who worked for RHI in Massachusetts from the putative class.

[19] As argued more fully at pages 31-32 below, Plaintiffs have provided no evidence or substantial allegations to support their claim that a three-year statute of limitations is applicable to their FLSA claims against RHI.  They have utterly failed to meet their burden of showing that RHI's alleged violations of the statute were willful.  Were the Court to conditionally certify this case as a collective action, it should limit the scope of the class to Accountemps Staffing Managers who worked for RHI in Massachusetts in the last two years.

**V.    Plaintiffs' proposed notice is inappropriate.**

Even if the Court were to conditionally certify a class in this case, the notice Plaintiffs propose is inappropriate in several respects.  First, the means by which Plaintiffs propose to send notices to members of the putative class is improper because it unnecessarily impinges on the privacy interests of RHI's current and former employees.  Second, the content of Plaintiffs' proposed notice misrepresents the nature of this case and the obligations that may be imposed on putative class members who opt into the case.  Third, the notice ought to direct class members to promptly file a consent to join this action if they want to participate in it.  Finally, the group to whom Plaintiffs propose to send notice is temporally overbroad.

**A.    Plaintiffs' proposed means of providing notice to putative class members is improper.**

Through their motion for conditional certification, Plaintiffs seek an order requiring RHI to produce a list containing the names and contact information of its current and former Staffing Managers, Account Managers, and Account Executives (collectively "staffing professionals").  Such an order is both unnecessary and improper.

The list that Plaintiffs seek unduly jeopardizes the privacy interests of RHI's current and former employees.  Plaintiffs seek a list of the names, addresses, and employment histories of RHI's current and former staffing professionals.  This information is protected by a panoply of state and federal laws.  *See, e.g.*, 18 U.S.C. §§ 2721-2725 (prohibiting disclosure of records constituting "personal information," including name and address, maintained by certain state agencies); Mass. Gen. Laws ch. 214, § 1B (affording citizens of the Commonwealth a general right to be free from interference with their privacy).  Putative class members' names, addresses, and employment information therefore ought not be provided to Plaintiffs' counsel in the absence of a legitimate need for the information.

26

The order Plaintiffs seek here is unnecessary because there are less intrusive means available to notify members of the putative class of the pendency of this action. If the Court conditionally certifies a class of staffing professionals in this matter, RHI would be willing to send the notice approved by the Court directly to the last known residential address of each member of any certified class at the Company's expense. Other courts have recognized that it is appropriate for the employer to send out notices to members of a conditionally certified class in an FLSA collective action. *See, e.g.*, *De Asencio v. Tyson Foods, Inc.*, 2002 WL 1805534, *2-3 (E.D. Pa.). In the alternative, RHI would be willing to absorb the cost of having a neutral third party provide court approved notice to members of any class the Court certifies.[20] Plaintiffs therefore have no legitimate need for a list of RHI's current and former employees.

Further, any order that required RHI to provide Plaintiffs' counsel with contact information for its current and former employees also should limit communication between Plaintiffs or their counsel and members of the class to the notice itself, unless and until each class member files a consent to join the suit and selects Plaintiffs' counsel to represent him or her. The Court has a duty to protect members of the putative class from receiving unwelcome or inappropriate communications from Plaintiffs' counsel. *Hoffman-La Roche, Inc. v. Sperling*, 493 U.S. 165, 171 (1989) (noting potential for abuse in unsupervised communications between counsel for named plaintiffs in FLSA collective action and putative class members). *See also, Hipp v. Liberty Nat'l Life Ins. Co.*, 164 F.R.D. 574, 576 (M.D. Fla. 1996) (limiting communications between plaintiffs or their counsel and putative class members); *Tucker v. Labor Leasing, Inc.*, 872 F. Supp. 941, 949-50 (M.D. Fla. 1994) (ordering that no

---

[20] For example, RHI could provide a list of the names and last known addresses of each member of the certified class to a vendor, who would be instructed to mail the Court-approved notice to each address on the list and certify to the Court that it had done so.

communications between plaintiffs' counsel and putative class members be made without leave of court). Though O'Donnell states that he has spoken to some putative class members whom he believes might be interested in participating in this case, there are doubtless other members of the putative class who do not desire to become party plaintiffs and who prefer not to be contacted by Plaintiffs' counsel.

**B.    The form of Plaintiffs' proposed notice is improper.**

The form that Plaintiffs propose for providing notice to class members is improper in several respects. The Court therefore should require substantial revisions to the form before it is used to provide notice of the pendency of this case to the members of any class the Court may conditionally certify.

First, the proposed notice does not accurately inform putative class members of the consequences of opting in to the case as a party plaintiff. It states that "By 'opting in' you gain the possibility of getting money or benefits that may result from a trial or settlement, but you give up the right to sue Robert Half separately for the same claims brought in this lawsuit." Plaintiffs' Notice, p. 1. This statement does not accurately inform prospective class members of the obligations of being an opt-in plaintiff. Any notice the Court approves should include a statement that, as opt-in plaintiffs, individuals who file consents to opt in will be subject to discovery obligations, which may include providing deposition or trial testimony under oath, responding to document requests, and/or responding to other requests for information. *See, e.g., Rosen v. Reckitt & Colman, Inc.,* 77 Fair. Emp. Prac. Cas. (BNA) 370, 373 (S.D.N.Y. 1994) (authorizing defendant to take depositions of all opt-in plaintiffs in addition to propounding written discovery); *Kass v. Pratt & Whitney*, 1991 WL 158943, *5 (S.D. Fla.) (authorizing defendant to propound interrogatories, document requests, and deposition notices on opt-in plaintiffs). Prospective opt-in plaintiffs should also be informed that they could be liable for

28

RHI's costs of defending the case if the Company ultimately prevails in the matter.  *See*

Fed.R.Civ.P. 54(d).  An accurate account of the implications of joining the case as a plaintiff is

essential to allow each potential opt-in plaintiff to make an informed decision about whether to

participate.

      Plaintiffs' proposed notice is also misleading because it presents a one-sided view of the

case.  Any notice the Court issues should include a summary not only of Plaintiffs' claims

against RHI, but also of the Company's defenses.  *See, e.g., Belcher*, 927 F. Supp. at 253

(authorizing notice that included statement of employer's affirmative defenses); *Garza v.*

*Chicago Transit Auth.*, 2001 WL 503036 (N.D. Ill.) (authorizing notice including statement that,

if the court rules in favor of defendant, opt-ins will be entitled to nothing).   If the Court

authorizes notice to any conditionally certified class, the content of the notice form should be

balanced with a statement of RHI's defenses in this matter.

      In addition, any notice the Court approves should require prospective opt-in plaintiffs to

provide detailed information about their employment with RHI and should require them to sign

the form under the pains and penalties of perjury.  Requiring prospective opt-in plaintiffs to

provide their dates and locations of employment with RHI, the supervisors to whom they

reported, whether they were paid hourly or as exempt, their annual income during each year of

the statute of limitations period, and other essential information about the facts underlying their

claims will assist the parties in efficiently eliminating non-meritorious claims and allow the

parties to more quickly value the respective claims.[21]  Moreover, requiring that opt-in plaintiffs

sign the form under the pains and penalties of perjury will provide a stronger disincentive against

---

[21] If the Court were to conditionally certify a class, RHI requests that the Court allow a brief period of time for the
Company to propose a form to be used to provide notice of the pendency of this action to members of the putative
class and discuss the form with Plaintiffs' counsel in an attempt to narrow any disputes regarding the content of the
notice.

frivolous or fraudulent claims than a form that merely requires recipients to fill in a few blanks.

Finally, the Court should not authorize a notice that requires opt-in plaintiffs to select Thierman and Liss-Riordan as their counsel.[22]  Opt-in plaintiffs are not required to accept representation by Plaintiffs' counsel in order to participate in this case.  *See, e.g., Schwed v. Gen. Elec.*, 159 F.R.D. 373, 380 (N.D.N.Y. 1995) (holding that each opt-in plaintiff is entitled to be represented by plaintiffs' attorneys or by an attorney of his or her own choosing); *King v. ITT Continental Baking Co.*, 1986 WL 2628, *6 (N.D. Ill.) (same); *Allen v. Marshall Field & Co.*, 93 F.R.D. 438, 445 (N.D. Ill.) (same).  Any notice the Court approves should therefore clearly indicate that each opt-in plaintiff is entitled to representation by counsel of his or her choice, and is not required to enter into any arrangement with Plaintiffs' counsel.

### C.    Putative class members should be required to return their opt-in notices within a short period of time.

If the Court conditionally certifies any class in this case, it should limit the time period in which members of the class may file consents to join the suit.  A short window during which class members may opt into the case will allow the parties to conduct discovery and prepare the case for trial in a timely and efficient matter.  Courts often afford members of a conditionally certified class 30 days or less from the date class is certified to file consents to join the litigation.  *See, e.g.*, *King*, 1986 WL 2628, *6 (authorizing class members to file consents to join within thirty days from the date notice was mailed); *Held v. Nat'l R.R. Passenger Corp.*, 101 F.R.D. 420, 425 (D. D.C. 1984) (certifying class and authorizing class members to file consents to join "no later than thirty days from the entry of this order"); *Watkins v. Milliken & Co.*, 613 F. Supp. 408, 420 (W.D. N.C. 1984) (denying notice and ordering that all consent forms be filed within

---

[22] The form attached to Plaintiffs' proposed notice requires opt-in plaintiffs to sign a form stating "I hereby designate Shannon Liss-Riordan . . . and Mark R. Thierman . . . to represent me for all purposes in this action." Plaintiffs' Notice, p. 2.

30 days of order); *Johnson v. Am. Airlines, Inc.*, 531 F. Supp. 957, 961 (N.D. Tex. 1982) (authorizing notice to members of conditionally certified class and providing 21-day timeframe in which they may file consents to join).  The Court should therefore set a short and definite period of time in which members of the class may respond to the notice, and should order that any notice sent to class members contain a conspicuous statement that any class member who wishes to participate in the litigation must file a consent to join the lawsuit within that period.

> **D.  Any notice the Court authorizes should be sent only to staffing professionals who have worked for RHI within two years of the date of the Court's order on Plaintiffs' Motion.**

Plaintiffs seek to provide notice to a class of staffing professionals who have worked for RHI within three years of their filing of this action.  The temporal scope of the class Plaintiffs seek to notify is improper in two respects.  First, any class the Court certifies should be limited to staffing professionals who worked for the Company in the last two years because Plaintiffs have made no showing that the FLSA violations they allege were willful.  Second, the date used to define the temporal scope of any class the Court certifies should be the date of the Court's order conditionally certifying the case as a collective action, and not the date that this action was filed.

The Court should not allow notice to a class of employees who have worked for RHI in the past three years because Plaintiffs have presented no evidence indicating that RHI's alleged violation of the FLSA was willful.  The statute of limitations under the FLSA is two years, unless the employer's violation was "willful," in which case it is three years.  29 U.S.C. § 255(a). A violation of the FLSA is willful where "the employer knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute."  *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1998).  The burden of showing that the employer's alleged violation of the FLSA was willful is on the plaintiff seeking to invoke the extended statute of limitations. *See, e.g., Walton v. United Consumers Club, Inc.*, 786 F.2d 303, 308 (7th Cir. 1986); *Terwilliger*

31

*v. Home of Hope*, 21 F. Supp. 2d 1305, 1308 (N.D. Okla. 1998); *Abbott v. United States*, 41 Fed.

Cl. 553, 569 (Ct. Cl. 2000) (citing *Bankston v. State of Illinois*, 60 F.3d 1249, 1253 (7th Cir,

1995)).  In Plaintiffs' Memorandum, O'Donnell and Jolicoeur do not even argue that RHI's

alleged violation of the statute was willful, but merely make an unsupported assertion that a

three-year statute of limitations should be presumed for purposes of providing notice to members

of the putative class.  *See* Plaintiffs' Memorandum, p. 10.  Similarly, Plaintiffs' Amended

Complaint contains unsupported conclusory assertions that RHI's alleged violations were willful,

but alleges no facts that would support this legal conclusion.  *See* Amended Complaint ¶¶ 6, 46.

Plaintiffs have therefore provided no evidence that they have any reasonable expectation of

proving that RHI's alleged violations of the FLSA were willful within the meaning of the statute.

The group of people to whom Plaintiffs seek to provide notice of the pendency of this suit is

therefore overbroad.

Regardless of the statute of limitations period applied, the time period for any notice the

Court authorizes should be measured from the date of the Court's order.  As Plaintiffs point out

in their memorandum, the statute of limitations is not tolled for putative class members' claims

until they file consents to join the action with the Court, regardless of when the Complaint was

filed.  Plaintiffs' Memorandum, p. 9.  It therefore would be pointless to send notice of the

pendency of this action to former RHI staffing professionals whose employment with the

Company terminated more than two years before the date on which notice is sent because those

individuals are time barred from asserting FLSA claims against the Company.  Because it has

been approximately six months since Plaintiffs filed their Complaint, and because RHI employs

thousands of staffing professionals at any given time, measuring the temporal scope of the class

from the date of the Complaint, rather than the date of the Court's order, could result in sending

notices to a substantial number of individuals who are precluded from asserting claims against the Company.

## <u>CONCLUSION</u>

The Court should deny Plaintiff's Motion to Facilitate § 216(b) Notice because Plaintiffs have made no showing whatsoever that they are similarly situated to the putative class they seek to represent, and have provided no evidence that there are any members of that putative class who are interested in participating in this litigation.  Even if Plaintiffs had met their burden of proof on these issues, conditional certification of this case as a collective action would be inappropriate because of the individualized, fact-intensive inquiry that would be necessary to determine whether the FLSA's administrative exemption applies to each member of the putative class, which in turn would create gross inefficiencies and intractable case management problems. Finally, if the Court does conditionally certify some class in this matter, it should refrain from providing notice to individuals who have no reasonable likelihood of asserting colorable FLSA claims against RHI and should require that the content of the notice form be accurate, balanced, and consistent with procedural standards established by the courts.

WHEREFORE, Defendants Robert Half International Inc. and Robert Half Corporation respectfully request that this Court deny Plaintiffs' Motion to Facilitate § 216(b) Notice.

Respectfully submitted,

ROBERT HALF INTERNATIONAL INC.
AND ROBERT HALF CORPORATION
By their Attorneys,

_/s/ Richard L. Alfred
Richard L. Alfred (BBO # 015000)
Krista G. Pratt (BBO # 644741)
Barry J. Miller (BBO # 661596 )
SEYFARTH SHAW LLP
World Trade Center East
Two Seaport Lane, Suite 300
Boston, MA 02210-2028
Telephone:    (617) 946-4800
DATED:  June 24, 2005                Telecopier:    (617) 946-4801

CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document was hand delivered to Alfred Gordon, Esq., an attorney of record for Plaintiffs on June 24, 2005.

/s/ Krista Green Pratt
Krista Green Pratt, Esq.



FILED by ___ D.C.

MAY 1 2 2004

CLARENCE MADDOX
CLERK U.S. DIST. CT.
S D. OF FLA. MIAMI

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

JAMES W. SMITH, III,                    **CASE NO. 03-21663-CIV-KING**

     Plaintiff,

v.

TRADESMEN INTERNATIONAL, INC.,
a foreign for-profit corporation,

     Defendant.

_____/

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

     THIS CAUSE comes before the Court upon Defendant's Motion for Summary Judgment, filed April 14, 2004. On April 26, 2004, Plaintiff filed his Response. On April 30, 2004, Defendant filed its Reply.

### BACKGROUND

     Defendant is a construction labor support company that recruits, hires, and employs skilled and unskilled laborers ("field workers") to work on its clients' construction sites.[1] Defendant leases its field workers to its clients on an as-needed basis. Defendant bills its clients for all hours worked by Defendant's field workers at a higher hourly rate than Defendant pays its field workers.

     In October of 2002, Plaintiff was hired as a Project Coordinator with Defendant's Miami field office. Plaintiff's duties as Project Coordinator included recruiting field workers for employment with Defendant. Maureen Lopez ("Lopez"), General Manager of Defendant's Miami field office, was

_____

[1]These facts are undisputed and primarily taken from the parties' Joint Pretrial Stipulation, DE # 60, filed April 26, 2004.

Plaintiff's supervisor until April 28, 2003.[2]  On June 13, 2003, Tom Sara ("Sara") assumed the position of acting General Manager of Defendant's Miami field office.

On June 19, 2003, Plaintiff filed his Complaint against Defendant for unpaid overtime wages in violation of § 207 of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 et seq.  On July 10, 2003, Plaintiff was fired.  On August 27, 2003, Plaintiff amended his Complaint to include one count of retaliation in violation of § 215 of the FLSA.[3]

In its current Motion, Defendant argues that it is entitled to summary judgment as to Plaintiff's claim for unpaid overtime wages because Defendant properly classified Plaintiff as an exempt administrative employee.  Defendant further argues that it is entitled to summary judgment as to Plaintiff's retaliation claim because Defendant fired Plaintiff for legitimate reasons, and Plaintiff cannot demonstrate that a causal connection existed between the filing of Plaintiff's Complaint and Plaintiff's subsequent termination.  In his Response, Plaintiff argues that Defendant has failed to prove that Plaintiff was an exempt employee under the applicable regulations, and a genuine issue of fact exists as to the causal connection between Defendant's knowledge of Plaintiff's Complaint and Plaintiff's subsequent termination.

## LEGAL STANDARD

Summary judgment is appropriate only where it is shown that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law.  Fed.R.Civ. P. 56; Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  If the record as a whole could not lead

---

[2] On April 28, 2003, Lopez took maternity leave.  Lopez returned to work from maternity leave on July 7 or 8, 2003.

[3] This case is proceeding on Plaintiff's Second Amended Complaint, DE # 29, filed September 22, 2003.

2

a rational fact-finder to find for the non-moving party, there is no genuine issue for trial. <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986). On a motion for summary judgment, the court must view the evidence and resolve all inferences in the light most favorable to the non-moving party. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 255 (1986). There is no requirement that the trial judge make findings of fact. <u>Id.</u> at 251.

The party seeking summary judgment always bears the initial burden of pointing to that part of the record which shows the absence of a genuine issue of material fact. <u>Celotex</u>, 477 U.S. at 323; <u>Hairston v. Gainesville Sun Pub. Co.</u>, 9 F.3d 913, 918 (11th Cir. 1993). If the movant meets its burden, the burden then shifts to the non-moving party to establish that a genuine dispute of material fact exists. <u>Hairston</u>, 9 F.3d at 918. To meet this burden, the non-moving party must go beyond the pleadings and "come forward with significant, probative evidence demonstrating the existence of a triable issue of fact." <u>Chanel, Inc. v. Italian Activewear of Florida, Inc.</u>, 931 F.2d 1472, 1477 (11th Cir. 1991). If the evidence relied on is such that a reasonable jury could return a verdict in favor of the non-moving party, then the court should refuse to grant summary judgment. <u>Hairston</u>, 9 F.3d at 919. A mere scintilla of evidence in support of the non-moving party's position is insufficient, however, to defeat a motion for summary judgment. <u>Anderson</u>, 477 U.S. at 252. If the evidence is merely colorable or is not significantly probative, summary judgment is proper. <u>Id.</u> at 249-50.

## DISCUSSION

I.      <u>Plaintiff's Claim for Overtime Wages Under the FLSA</u>

The FLSA generally requires employers to pay overtime wages to employees who work more than forty hours per week. 29 U.S.C. § 207(a)(1). However, the Act provides an exemption to the overtime pay requirement where the employee is employed in "a bona fide executive, administrative,

3

or professional capacity" as defined by the Department of Labor's ("DOL") regulations. § 213(a);
Hogan v. Allstate Ins. Co., 361 F.3d 621, 625 (11th Cir. 2004). Moreover, the employer bears the
burden of proving that the exemption requirements are met, and the exemption is narrowly construed
against the employer. Hogan, 361 F.3d at 625. Finally, DOL regulations require that the employer
satisfy both a "salary basis" test and a "duties" test in order to claim the exemption for an individual
employee. Id.

A.    Salary Basis Test

A defendant satisfies the "salary basis" test by showing that an employee "regularly receives
each pay period on a weekly, or less frequent basis, a predetermined amount constituting all or part
of his compensation, which amount is not subject to reduction because of variations in the quality or
quantity of the work performed.'" Id. (quoting 29 C.F.R. §§ 541.118(a) and 541.212) (internal
quotations omitted). However, an employer may make deductions from an employee's salary "when
the employee absents himself from work for a day or more for personal reasons, other than sickness
or accident" without affecting the employee's status as a salaried employee. 29 C.F.R. §
541.118(a)(2).

In the instant case, the Court finds as a matter of law that Plaintiff was paid "on a salary basis"
within the meaning of the regulations. The record reflects that Plaintiff received a predetermined bi-
weekly gross salary of $1,153.84 based upon a presumption of eighty hours worked.[4] Moreover, the
only deduction made from Plaintiff's gross salary occurred on January 31, 2003,[5] when Plaintiff took

---

[4] Pl.'s Ex. 11, Def.'s Earning Registry for Plaintiff; Pl.'s Resp. at 10 ¶ 35.

[5] Pl.'s Ex. 11, Def.'s Earning Registry for Plaintiff at 7.

4

a personal day to observe the Martin Luther King, Jr., holiday on January 20, 2003.[6] Thus, the Court finds that Defendant has satisfied the "salary basis" test.[7]

**B.   Duties Test**

To determine whether an employee is an exempt administrative employee under the "duties" test, the DOL has established a "short" test and a "long" test. Hogan, 361 F.3d at 626 (citing 29 C.F.R. § 541.2). Here, there is no dispute that Plaintiff qualifies under the "short test."[8] Thus, Defendant need only satisfy the short test for purposes of the administrative exemption.

Under the short test for the administrative exemption, the employer is required to show: 1) that the employee's "primary duty" consisted of "[t]he performance of office or non-manual work directly related to management policies or general business operations of his employer or his employer's customers; and 2) that the employee performed work that required "the use of discretion and independent judgment." 29 C.F.R. §§ 541.2(a)(1) and (e)(2); Hogan, 361 F.3d at 626, n.2.[9] The regulations specifically describe "administrative operations of the business" to include "the work performed by so-called white-collar employees employed in 'servicing' a business as, for example,

---

[6] Def.'s Reply at 6.

[7] Plaintiff argues that Defendant deducted sick pay from Plaintiff's January 3, 2003, and June 20, 2003 paychecks. (Pl.'s Resp. at 17.) However, the record clearly reflects that Plaintiff received his predetermined bi-weekly gross salary of $1,153.84 on these dates. (Pl.'s Ex. 11, Def.'s Earning Registry for Plaintiff at 6 & 8.)

[8] Def.'s Mot. at 16; Pl.'s Resp. at 16. An employee must be paid more than $250.00 per week to qualify under the "short test." 29 C.F.R. §§ 541.1(f) and 541.2(e)(2). Plaintiff's predetermined base salary was $30,000.00 per year. Pl.'s Resp. at 10. Thus, Plaintiff easily meets this requirement.

[9] Courts have held that where the "plaintiff's work was predominately intellectual in nature and involved little, if any manual labor or mechanical work, the administrative exemption applies." Mathews, 2001 WL at * 3 (citing Cowart v. Shipbuilding, Inc., 213 F.3d 261 (5th Cir. 2000).

5

advising the management, . . . [and] representing the company. . .," as distinguished from "'production' . . . or 'sales' work." 29 C.F.R. §§ 541.205(a) and (b); Mathews, 2001 WL at *3. Moreover, the primary work the employee performed must be of "'substantial importance' to the management or operation of the business." 361 F.3d at 626-27 (quoting 29 C.F.R. § 541.205(a)). Work of "substantial importance" includes work "directly related to [business] operations, and at the heart of Defendant's success." Mathews v. Professional Golfers' Assoc. of Am., 2001 WL 1336334, at *4 (S.D. Fla. 2001).

Under the regulations, an employee exercises discretion and independent judgment if his work "involves the comparison and evaluation of possible courses of conduct and acting or making a decision after the various possibilities have been considered." 29 C.F.R. § 207(a). Additionally, the term discretion and independent judgment "implies that the person has the authority or power to make an independent choice, free from immediate direction or supervision and with respect to matters of significant." Id.[10] Specifically relevant to this case are the regulations that distinguish an employee who merely "screens" applicants based on standards set by the company from an employee who performs similar functions but then hires one of the qualified applicants. 29 C.F.R. § 541.207(c)(5). Notably, "when the interviewing and screening are performed by the [same employee] who does the hiring they constitute exempt work, even though routine, because this work is directly and closely related to the employee's exempt functions." Id.

In the instant case, the Court finds that Plaintiff's primary duties consisted exclusively of non-manual labor directly related to Defendant's business operations as a construction labor supply

---

[10]Furthermore, the employees decisions need not be final, but instead, "may consist of recommendations for action rather than the actual taking of action." Mathews, 2001 WL at *4. (citing Spinden v. GS Roofing Products Co., Inc., 94 F.3d 421, 429 (8th Cir. 1996).

company.[11] However, Plaintiff argues that he did not exercise discretion and independent judgment while performing his duties, and that his duties were not of substantial importance to Defendant because ninety-five percent (95%) of the applicants Plaintiff hired were never placed with one of Defendant's clients.[12] The Court finds Plaintiff's arguments unpersuasive.

First, it is undisputed that Plaintiff's primary duties as a Project Coordinator included escorting new field workers to their job sites and introducing the worker to Defendant's clients.[13] In addition, Plaintiff would "prospect" job sites to determine what workers Defendant's clients needed and then discuss this information with his supervisor.[14] Finally, the record clearly reflects that Plaintiff independently evaluated job sites for safety hazards and made specific recommendations to Defendant and its employees on how best to address these safety issues.[15]

Secondly, in his duties as a recruiter, Plaintiff interviewed prospective field workers, called their references, and determined whether they met Defendant's hiring criteria.[16] If the applicants did, Plaintiff would hire them.[17] Furthermore, the record clearly indicates that Plaintiff's decision to hire

---

[11]Plaintiff attempts to argue that part of his employment duties included "manual labor" because he helped keep the office clean and helped set-up, clean-up, and cook at Defendant's monthly cookouts. (Pl.'s Resp. at 6 ¶ 19.) The Court finds Plaintiff's argument to be without merit.

[12]Pl.'s Resp. at 25.

[13]Pl.'s Resp. at 2-3, Pl.'s Stat. of Undisputed Facts ¶ 4.

[14]Id.

[15]Def.'s Ex. X; Def.'s Ex. AA; Pl.'s Dep., Vol. II at 292.

[16]Pl.'s Dep. At 96-98, 109, and 191-92.

[17]Id. at 109-10. In fact, Plaintiff was Defendant's sole recruiter of field workers from March 5, 2003, until he was fired on July 10, 2003.

field employees was not based solely on objective criteria set by Defendant. Instead, Plaintiff was required to subjectively evaluate field employees at the interview based on their attitude, perceived reliability, work ethic & pride, and then rank them on a three level scale. Moreover, once these employees were actually working at the job sites, it was primarily left to Plaintiff to evaluate whether they were performing their jobs adequately and up to Tradesmen standards.[18] If they were not, it was up to Plaintiff to fire them.[19] Based on this evidence, the Court finds that Plaintiff exercised independent judgment and discretion while performing his primary duties for Defendant.

The Court also finds that Plaintiff's primary duties were of substantial importance to Defendant's business. Defendant is a construction labor support company. It's sole source of skilled labor came from the applicants Plaintiff decided to hire. Even if Defendant only had enough clients to actually employ five percent (5%) of these applicants, this does not detract from the fact that this workforce was the foundation Defendant's business and thus, of "substantial importance" to Defendant. In addition, it follows that the evaluation, safety, and firing of these employees, all duties that Plaintiff admittedly performed, was also of substantial importance to Defendant's business operations. Therefore, the Court finds that Defendant has satisfied the "duties" test for the administrative exemption.

Defendant has satisfied both the "salary basis" test and the "duties" test and thus, has met its burden of proving that Plaintiff was an exempt administrative employee. Therefore, the Court concludes that Plaintiff is not entitled to overtime compensation under the FLSA.

II.    Plaintiff's Claim for Retaliation

---

[18]Def.'s Ex. R; Def.'s Ex. X, 2-11.

[19]Id.

8

It is a violation of the FLSA "to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter, . . ." 29 U.S.C. § 215(a)(3). In order to establish a *prima facie* case of retaliation under the Act, the plaintiff must show that: "(1) "[he] engaged in activity protected under the act; (2) [he] subsequently suffered adverse action by the employer; and (3) a causal connection existed between the employee's activities and the adverse action." Wolf v. Coca-Cola Co., 200 F.3d 1337, 1342-43 (11th Cir. 2000).

Once the plaintiff establishes a *prima facie* of retaliation, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the adverse employment action. Farley, 197 F.3d at 1337. If the defendant meets its burden, the burden shifts back to the plaintiff to "demonstrate that [he] will be able to establish at trial that the employer's proffered [ ] reasons are a pretextual ruse designed to mask retaliation." Id. (quoting Stewart v. Happy Herman's Cheshire Bridge, Inc., 117 F.3d 1278, 1287 (11th Cir. 1997)) (internal quotations omitted). Furthermore, at the summary judgment stage, the plaintiff need not show by a preponderance of the evidence that the reasons stated are pretextual. Id. at 1337 (citing Hairston v. Gainesville Sun Publishing Co., 9 F.3d 913, 921 (11th Cir. 1993). So long as the plaintiff presents sufficient evidence of pretext to create a genuine issue of fact as to the truth of the defendant's proffered reasons, the plaintiff's retaliation claim is entitled to survive summary judgment. Id.

Here, it is undisputed that Plaintiff has satisfied the first two elements of his *prima facie* case. Namely, that Plaintiff engaged in protected activity when he filed his Complaint on June 19, 2003, and subsequently suffered adverse employment action when Defendant fired him on July 10, 2003. As to the third element, causation, Defendant argues that because Plaintiff cannot prove that the

9

person who actually fired him, Sara, knew of Plaintiff's lawsuit prior to his termination, Plaintiff has failed to establish his *prima facie* case .[20] In contrast, Plaintiff argues that a genuine dispute of material fact exists as to Sara's knowledge of Plaintiff's Complaint and Plaintiff's subsequent termination.[21]

Under the law of this circuit, "[t]he general rule is that close temporal proximity between the employee's protected conduct and the adverse employment action is sufficient circumstantial evidence to create a genuine issue of material fact of a causal connection." Brungart v. BellSouth Telecomm. Inc., 231 F.3d 791, 799 (11th Cir. 2000). See also Bechtel Constr. Co. v. Secretary of Labor, 50 F.3d 926, 934 (11th Cir. 1995) (stating that "[p]roximity in time is sufficient to raise an inference of causation"). However, the Eleventh Circuit clarified in Brungart, that "temporal proximity alone is insufficient to create a genuine issue of fact as to causal connection where there is *unrebutted evidence* that the decision maker did not have knowledge that the employee engaged in protected conduct." 231 F.3d at 799 (emphasis added).

In the instant case, the Court finds that Plaintiff has come forward with sufficient evidence to establish a *prima facie* case of retaliation. First, it is uncontested that Plaintiff was fired twenty days after Defendant became aware of Plaintiff's lawsuit. The close timing between Defendant's awareness of Plaintiff's lawsuit and Plaintiff's termination is sufficient circumstantial evidence to at least create an inference of causation under the law of this circuit. Moreover, Defendant's reliance on Brungart is misplaced. Here, there is a genuine dispute as to whether the decision maker, Sara, knew of Plaintiff's lawsuit before he fired Plaintiff. Specifically, Sara testified at his deposition that

---

[20]Def.'s Mot. for Summ. J. at 25.

[21]Pl.'s Resp. at 11.

10

*he could not remember* if he knew of Plaintiff's lawsuit prior to firing Plaintiff.[22] Additionally, there

is evidence in the record that suggests that Sara *did know* of Plaintiff's lawsuit before he fired

Plaintiff.[23] Therefore, the Court finds that a genuine issue of material fact exists as to whether Sara

knew about Plaintiff's lawsuit prior to his termination and concludes that Plaintiff has come forward

with sufficient circumstantial evidence of causation to establish his *prima facie* case.

The Court further finds that Plaintiff has come forward with sufficient evidence of pretext to

create a genuine issue of fact for trial. In the instant case, Defendant has proffered that Plaintiff was

fired because he eavesdropped on a private conversation between Sara and Lopez, improperly

removed documents from Lopez's office while she was on maternity leave, and generally had a bad

attitude around the office.[24] However, Plaintiff denies the eavesdropping incident ever occurred, and

while he admits that he removed documents from Lopez's office, Plaintiff argues that he merely

copied these documents as part of his legitimate job duties.[25] Moreover, Plaintiff points out that the

---

[22]Sara Dep. at 10, attached to Pl.'s Resp. as Ex. 7.

[23]Lopez Dep. Vol. II at 213-14, DE # 57, 4/26/04. Lopez, Plaintiff's General Manager
while at Tradesmen, testified that she discussed Plaintiff's case with Sara *prior to* Plaintiff's
termination. *Id.* Lopez's deposition testimony states:

> Q: Before Tom Sara terminated Mr. Smith, did he tell you that he was going to do that?
> Lopez: Yes, he did.
> Q: At that time, did he tell you - - did he include in his reasons the eavesdropping episode?
> Lopez: No. What Tom Sara told me was that he had planned on terminating James Smith. He
> didn't care whether or not he had filed a lawsuit against Tradesmen. He was tired of putting up
> with him and that he would deal with that later. *Id.*

Sara admitted at his deposition that he had this conversation with Lopez, but he could not recall
the content of the conversation nor when the conversation occurred. Sara Dep. at 11.

[24]Def.'s Reply at 4.

[25]Pl.'s Resp. at 13.

11

alleged improper document removal occurred two months prior to his termination.[26]

Plaintiff further notes that Lopez, who was Plaintiff's supervisor from the time Plaintiff was hired until approximately two (2) months before his termination, testified that Plaintiff "was very reliable, dressed professionally [and] had a very professional manner, overly sensitive to the employee's needs. . . . he was what the company was founded on."[27] Lopez further testified that there were no negative reports with respect to Plaintiff's employment during her tenure as General Manager.[28] Finally, Defendant has not come forward with any documentary evidence[29] that Plaintiff ever received negative performance evaluations or disciplinary reports prior to his termination.

In addition, Lopez, one of Defendant's own witnesses,[30] testified at her deposition that she believed Plaintiff was fired because he filed the instant lawsuit against Defendant.[31] Lopez further testified that upon her return to Tradesmen from maternity leave, she became aware that Plaintiff had filed the instant case and was notifying other employees about his lawsuit against Defendant.[32] Lopez stated that Defendant subsequently did a "clean sweep" of the office[33] because "there were employees

---

[26]Id.

[27]Lopez Dep. Vol. II at 53, DE # 57, 4/26/04.

[28]Id. at 54.

[29]According to Lopez, any negative evaluations and disciplinary reports are customarily placed in an employee's personnel file. Id. at 54.

[30]Def.'s List of Trial Witnesses, attached to the parties' Joint Pretrial Stipulation as Ex. D.

[31]Lopez Dep. Vol. II at 60, attached to Def.'s Reply as Ex. A.

[32]Id. at 225.

[33]Sara fired several employees around the same time Plaintiff was fired. See Sara Dep. at 52-53, attached to Def.'s Resp. as Ex. B.

12

that were joining [Plaintiff's lawsuit] and [Defendant] didn't want it to get out of control."[34] Thus, the Court concludes that Plaintiff has come forward with sufficient evidence of pretext to survive summary judgment as to his retaliation claim.

## CONCLUSION

Accordingly, after a careful review of the record, and the Court being otherwise fully advised, it is

ORDERED and ADJUDGED that Defendant's Motion for Summary Judgment be, and the same is hereby, GRANTED in part and DENIED in part. Plaintiff's claim for overtime wages under the FLSA is hereby DISMISSED with prejudice in its entirety. Plaintiff's claim for retaliation remains PENDING.

DONE and ORDERED in chambers at the James Lawrence King Federal Justice Building and United States District Courthouse, Miami, Florida, this 11th day of May, 2004.

JAMES LAWRENCE KING
U.S. DISTRICT JUDGE
SOUTHERN DISTRICT OF FLORIDA

---

[34]Lopez Dep. Vol. II at 225, attached to Def.'s Reply as Ex. A.

13

cc:  Vincent T. Norwillo, Esq.
     Scott A. Moorman, Esq.
     9760 Shepard Road
     Macedonia, OH 44056-1124
     FTS: 440-349-3941

     Gil Haddad, Esq.
     Gil Haddad, P.A.
     Bristol Bank Building
     1493 Sunset Drive
     Miami, FL 33143-5824
     FTS: 305-667-7779

     Samara R. Bober
     Bober & Bober, P.A.
     1930 Tyler Street
     Hollywood, FL 33020
     FTS: 954-925-7816

14