# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IAN O'DONNELL AND DAVID JOLICOEUR, on behalf of themselves and all others similarly situated,<br><br>                    Plaintiffs,<br><br>v.<br><br>ROBERT HALF INTERNATIONAL INC. AND ROBERT HALF CORPORATION,<br>                    Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

CIVIL ACTION NO.  04-CV-12719 NMG

## DEFENDANTS' SURREPLY IN FURTHER OPPOSITION TO PLAINTIFFS' MOTION TO FACILITATE § 216(b) NOTICE

Defendants Robert Half International Inc. and Robert Half Corporation (together "Defendants" or "RHI") submit this Surreply in response to Plaintiffs' Reply to Defendants' Opposition to Motion to Facilitate §216(b) Notice (the "Reply").[1]  As discussed more fully below, Plaintiffs' Reply does nothing to assist them in meeting their burden of showing that members of the putative class are similarly situated.  The Court should, therefore, deny Plaintiffs' Motion to Facilitate § 216(b) Notice (the "Motion to Facilitate").

### BACKGROUND

Plaintiffs filed their Motion to Facilitate on May 27, 2005, seeking conditional certification of this matter as a collective action pursuant to 29 U.S.C. § 216(b).  The Court addressed that motion at a Scheduling Conference held on August 19, 2005.[2]  During the conference, the Court expressed considerable doubt that Plaintiffs had "given [the Court] sufficient cause to believe that the other [members of the putative FLSA class] are similarly

---

[1] The Court granted Defendants leave to file this Surreply at the hearing in this matter held on August 19, 2005. After Plaintiffs requested and were granted an extension of time in which to file their Reply, the Court granted Defendants' motion to clarify its October 5, 2005 Order to state that this Surreply was due on or before December 2, 2005.  *See* Electronic Order of the Court dated October 21, 2005.

[2] A copy of the Transcript from that conference is attached hereto as Exhibit A.

situated."[3]  Trans. 7:19-25.  In light of the Court's stated reluctance to certify the class based on the evidence supplied in Plaintiffs' Motion to Facilitate, Plaintiffs requested an additional month for the purpose of conducting discovery on the issues presented by their motion and filing a reply brief to support their claim that members of the putative class are similarly situated.  Trans. 8:18 – 9:12, 12:8-11.  The Court granted Plaintiffs' request and gave them through September 30, 2005, to conduct discovery and file a reply.  Trans. 14:1-15.  On September 30, the day that their Reply was due, Plaintiffs filed a motion requesting an additional three weeks to file their Reply.  The Court granted Plaintiffs' requested extension, and Plaintiffs filed their Reply on October 21, 2005.  Despite the seven weeks that Plaintiffs had to prepare their Reply, they have taken no discovery and marshaled no new evidence bearing on whether members of the putative class are similarly situated.  Consequently, they have failed to meet their burden in moving for conditional collective action certification, and the Court should deny their Motion to Facilitate.

**I.** **The Documents Filed with Plaintiffs' Reply Do Not Establish that Members of the Putative Class are Similarly Situated.**

Plaintiffs sought leave to take discovery and file their Reply because they believed "the reply would provide to the Court indications of similarities between the positions that [members of the putative class] hold . . . both within their job title and across the other two job titles that are mentioned and then across other divisions of the company."  Trans. 8:18-25.  To date, Plaintiffs have conducted no discovery whatsoever in this matter.[4]  Instead, Plaintiffs submitted with their Reply: (1) twenty-three pages printed from publicly-accessible websites maintained by RHI's

---

[3] *See also* Trans. 11:9-10 ("I don't see that there's enough that I have to establish this putative class.").

[4] In fact, Plaintiffs have not even responded to document requests that Defendants propounded on June 2, 2005, six months before the date of this Surreply.  They have failed to produce documents or written responses to RHI's requests, despite the Court's Order at the August 19 hearing that they respond to Defendants' requests "forthwith."  Trans. 15:14-18.  Plaintiffs' failures to respond to Defendants' discovery requests and to comply with the Court's August 19 Order is the subject of a Motion to Compel Production of Documents and for Sanctions filed on November 30, 2005.

various divisions, and (2) two pages of disclaimers from an employee handbook applicable to all

RHI employees.  Reply Exs. 1 and 2, respectively.  Plaintiffs fail to explain why they required

seven weeks to submit their Reply, when the website materials were always publicly available,

and the handbook documents were produced with Defendants' Initial Disclosures and hand-

delivered to Plaintiffs' counsel on June 2, 2005.[5]  Indeed, both exhibits attached to Plaintiffs'

Reply were available at least two months <u>before</u> the Court's August 19 Scheduling Conference.

Most importantly, these very general documents are not probative of any similarities or

differences between the job duties of the members of the putative class.

### A.    The Internet Job Postings on which Plaintiffs Rely Do Not Establish that Putative Class Members are Similarly Situated.

Plaintiffs attempt to distract the Court from their failure to conduct the discovery they

requested by submitting irrelevant documents and arguing that RHI's general, one-paragraph

internet job postings constitute evidence that putative class members are similarly situated.

Reply, p. 2-4.  Plaintiffs printed from RHI's websites and submitted with their Reply internet

pages soliciting applications for Staffing Manager, Account Executive, and Account Manager

positions.  *See* Reply Ex. 1, pp. 2-16.  These documents have no relevance to the similarly-

situated analysis and do not describe the putative class members' job duties with any degree of

specificity.  They are nothing more than the internet equivalent of "help wanted" ads; their

purpose is not to provide a detailed "job description" or summary of the duties performed by

every person holding a position with that title.  Nonetheless, with absolutely no factual support,

Plaintiffs implausibly and erroneously argue that "[t]hese descriptions make clear on their face

that these are all the same jobs."  Reply, p. 4.  In fact, these documents provide no probative

---

[5] Exhibit 2 to the Reply (an excerpt from an RHI employee handbook) consists of documents that were hand delivered to Plaintiffs' counsel with Defendants' Initial Disclosures pursuant to Fed.R.Civ.P. 26(a)(1) on June 2, 2005.  Exhibit 1 to the Reply consists of pages printed from publicly available websites that Plaintiffs could have accessed at any time.

evidence of the job duties of members of the putative class, and therefore do not help Plaintiffs meet their burden of showing that those individuals are similarly situated.

Plaintiffs' burden in moving for conditional certification is to establish that the members of the class are "similarly situated." *See, e.g.*, *Bayles v. Am. Med. Response of Colorado, Inc.*, 950 F. Supp. 1053, 1062-1063 (D. Colo. 1996); *Dybach v. Florida Dep't of Corr.*, 942 F.2d 1562, 1567-68 (11th Cir. 1991). To meet this burden, Plaintiffs must demonstrate that they are similarly situated to putative class members in terms that are relevant to liability under the FLSA. In an exemption case such as this, "'similarly situated'…must be analyzed in terms of the nature of the job duties performed by each class member, as the ultimate issue to be determined is whether each employee was properly classified as exempt." *Morisky v. Public Serv. Elec. & Gas Co.*, 111 F. Supp. 2d 493, 498 (D. N.J. 2000); s*ee also Dean v. Priceline.com, Inc.*, 2001 U.S. Dist. LEXIS 24982, *5-7 (D. Conn. 2001) (denying motion for collective action certification because of differences in duties that would determine employees' exempt status).

An October 25, 2005 Opinion Letter issued by the Department of Labor concerning Staffing Managers at a temporary staffing agency indicates that the job duties influencing exempt status for such jobs relate to "the amount of selectivity exercised in matching persons seeking employment with the requirements of the job opening and in deciding which employee to send to any particular employer for consideration." DOL Opinion Letter FLSA2005-45 (October 25, 2005) ("Op. Ltr.") (copy attached as Exhibit B) (emphasis supplied). The Opinion Letter also emphasizes the fact-intensive nature of the inquiry in determining the exempt status under the administrative exemption, particularly in evaluating the degree to which an employee exercises "discretion and independent judgment." *See* Op. Ltr., at 2 and 29 C.F.R. § 541.202(b).[6]

---

[6] "Factors to consider when determining whether an employee exercises discretion and independent judgment with respect to matters of significance include, but are not limited to: "whether the employee has authority to formulate

Plaintiffs have utterly failed to offer any evidence bearing on this fact-intensive inquiry involving "the nature of the job duties performed by each class member" and whether those job duties are similar. *Morisky v. Public Serv. Elec. & Gas Co.*, 111 F. Supp. 2d at 498. The internet postings on which Plaintiffs rely offer no details about the jobs, do not address the selectivity and discretion exercised by employees in the positions at issue, and merely contain generalizations about "Prospecting for new client business . . .", "Providing customer service . . .", and "Strategizing with teammates . . ." Reply Ex. 1, p. 3. Accordingly, the Court should deny Plaintiffs' Motion to Facilitate. *See Holt v. Rite Aid Corp.*, 333 F. Supp. 2d 1265, 1271 (M.D. Ala. 2004) (company-wide job description not relevant to the "similarly situated" inquiry since it is not determinative of day-today tasks); *Mike v. Safeco, Ins. Co. of Am.*, 274 F. Supp. 2d 216, 221 (D. Conn. 2003) (same).

> **B.      That RHI's Various Divisions Maintain Office Space in the Same Building Does Not Establish that Members of the Putative Class are Similarly Situated.**

In addition to the job postings discussed above, Plaintiffs also submit several pages from websites maintained by RHI's various divisions that show an uncontroversial and wholly irrelevant fact: several of RHI's divisions maintain a mailing address in the same Boston high-rise office tower at 101 Arch Street. *See* Reply Ex. 1, pp. 17-23. Plaintiffs attempt to argue that this fact demonstrates "centralized management" of all divisions of the Company and therefore establishes that members of the putative class are similarly situated. Reply, p. 5. This argument

---

… or implement management policies or operating practices; whether the employee carries out major assignments …; whether the employee performs work that affects business operations to a substantial degree …; whether the employee has authority to commit the employer in matters that have significant financial impact; whether the employee has authority to waive or deviate from established policies and procedures without prior approval; whether the employee has authority to negotiate and bind the company on significant matters; whether the employee provides consultation or expert advice to management; whether the employee is involved in planning long or short-term business objectives; whether the employee investigates and resolves matters of significance on behalf of management; and whether the employee represents the company in handling complaints, arbitrating disputes or resolving grievances." *See* Op. Ltr. at 2; 29 C.F.R. § 541.202(b).

misses the mark by a wide margin for two reasons.  First, Plaintiffs' excessive reliance on

"centralized management" ignores the other (more important) factor relevant to the similarly-

situated analysis: the specific job duties performed by putative class members.  Second, this

argument – based on nothing more than speculation and conjecture – proves nothing.  The office

tower in question is over twenty stories tall and is comprised of more than 400,000 square feet.[7]

The fact that staffing professionals in several of RHI's divisions work in the same building does

not establish that they are in any respect similarly situated, any more than it shows that Plaintiffs

O'Donnell and Jolicoeur are similarly situated to the employees of Verizon Wireless or Boston

Coffee Exchange, who also work in the same building.[8]

### C.  General Disclaimers of Contractual Liability in RHI's Employee Handbook Do Not Establish that Putative Class Members are Similarly Situated.

Plaintiffs also argue that members of the putative class are similarly situated because the

same employee handbook applies to staffing professionals in all of RHI's various divisions.  As

with the web pages discussed above, the information in the employee handbook from which

Plaintiffs submit excerpts is very general.[9]  Reply, pp. 5-6.  Also, the handbook pages Plaintiffs

submit as an exhibit do not address or describe the job duties of any employees.  In fact, as with

most employers, <u>the handbook RHI maintains applies to all of its employees, not only staffing</u>

<u>professionals,</u> including the Division Directors and Branch Managers who supervise members of

the putative class, and the non-exempt administrative support staff.  Given the broad

applicability of the handbook to all RHI employees, the handbook does not constitute evidence

that the putative class members are similarly situated.  These pages from the handbook are not

---

[7] *See* http://www.101arch.com/buildinginfo/Property_Profile.htm

[8] *See* http://www.101arch.com/buildinginfo/Building_Amenities.htm

[9] Plaintiffs did not submit any of the policies that they claim pertain to members of the putative class in common. Instead, they submitted two pages from the handbook containing only an account of RHI's corporate history and disclaimers to the effect that the document is not a contract.  *See* Reply, Ex. 2.

BO1 15747503.3

specific to the positions at issue, and they shed no light on the job duties of the putative class members. *Reeves v. Alliant Techsystems, Inc.*, 77 F. Supp. 2d 242, 249 (D. R.I. 1999) (company-wide corporate policies do not justify certification of company-wide class where implementation of policies varies between offices).

## II.    O'Donnell's Work Outside of RHI's Boston Office Does Not Help Plaintiffs Establish that Members of the Putative Class are Similarly Situated.

As a last, weak attempt to meet their burden of showing that members of the putative class are similarly situated, Plaintiffs point out that O'Donnell worked in RHI's Danbury, Connecticut and Westborough, Massachusetts offices, in addition to his work for RHI in Boston, arguing that this helps them meet their burden in moving for conditional certification.[10]  Reply, p. 4-5.  This argument is unavailing.  First, O'Donnell's work in other RHI offices does not alter the fact that Plaintiffs base their claim that members of the putative class share the same job duties entirely on their own testimony.  They have not presented affidavits from any other member of the putative class or any independent evidence of those individuals' job duties.  Many courts have held that named plaintiffs' anecdotal statements regarding the job duties of other employees is insufficient to establish that members of a putative class are similarly situated.[11]  Even the cases that Plaintiffs cite in support of their Motion to Facilitate (including the cases

---

[10] As indicated in Defendants' Opposition, the Court should disregard O'Donnell's work for RHI in Danbury, Connecticut, because it occurred outside the statute of limitations period applicable to this case.  *See* Opp., n. 7.  In addition, O'Donnell worked in Westborough, Massachusetts for only seven months.  His experience in Westborough is therefore limited and undermined by the passage of time.

[11] *See, e.g., Holt*, 333 F. Supp. 2d at 1265, 1272 (M.D. Ala. 2004) (characterizing evidence concerning plaintiffs' job duties as "merely anecdotal," the court found that plaintiffs were not similarly situated to potential class members); *Horne v. United Servs. Auto. Ass'n*, 279 F. Supp. 2d 1231 (M.D. Ala. 2003) (statement in affidavit in support of certification that plaintiff "believes" that other similarly situated employees exist is not sufficient); *H & R Block v. Housden*, 186 F.R.D 399, 400 (E.D. Tex. 1999) (denying plaintiff's request for notice because the plaintiffs failed to offer anything more than conclusory affidavits); *Pfaahler v. Consultants for Architects, Inc.*, 2000 U.S. Dist. LEXIS 1772 at *6 (N.D. Ill.) (plaintiff's "belief" regarding duties of other employees "not sufficient to meet the similarly situated requirement.  [Plaintiff] must point to something concrete aside from his belief.").

7

cited in the Reply) require evidence that extends beyond Plaintiffs' own self-serving affidavits.[12]

The Court should not certify a potentially massive collective action in this matter based on

evidence as weak and unreliable as the named-Plaintiffs' self-serving affidavit testimony.

Second, even if O'Donnell's testimony were not discounted as self-serving, his ability to

observe the job duties of members of the putative class was very limited.  O'Donnell worked

only in RHI's Accountemps division,[13] and all of the offices in which he worked were in the

same District under the supervision of the same District Director, William Hayes.  Affidavit of

William T. Hayes, ¶¶ 1, 2, 4 (filed with Court on June 24, 2005 in support of Defendants'

Opposition to Plaintiffs' Motion to Facilitate).  Moreover, RHI's Danbury and Westborough

offices provided O'Donnell with very limited exposure to members of the putative class.  Both of

those offices were (and are) very small.  *See* Exhibit C, Supplemental Affidavit of William T.

Hayes ("Hayes Suppl. Aff."), ¶¶ 2-3.  RHI maintains only Accountemps and OfficeTeam

divisions in those offices. Hayes Suppl. Aff., ¶¶ 2-3.  At the time O'Donnell worked in the

Danbury office, he was the only staffing professional working there.  Hayes Suppl. Aff., ¶ 2.

There were a total of approximately eight staffing professional positions in the Westborough

office when O'Donnell worked there from July 2002 through February 2003.  Hayes Suppl. Aff.,

¶ 3.  Thus, even if O'Donnell's brief experiences in RHI's Danbury and Westborough offices

---

[12] In some of the cases cited in the Reply, the plaintiffs submitted affidavits from other members of the putative class that provided the court with some basis for a preliminary assessment as to whether the members of the putative class were similarly situated.  *See, e.g., Pendlebury v. Starbucks Coffee Co.*, 2004 WL 84500, *2 (S.D. Fla. 2005) (relying on affidavits from four former employees, other than named plaintiffs, regarding job duties of position at issue); *Brown v. Money Tree Mortgages, Inc.*, 222 F.R.D. 676, 681 (D.Kan.,2004) (relying on affidavits from two former employees, other than named plaintiffs, containing specific allegations regarding allegations of illegal "comp time" policy).  In others, plaintiffs produced specific evidence of policies that applied to the entire putative class and were probative of the exempt status of the positions at issue.  *See, e.g., Patton v. Thomson Corp.*, 364 F. Supp. 2d 263, 267 (E.D.N.Y. 2005) (relying on highly detailed job description that made express reference to overtime).  None of the cases Plaintiffs cite provide a basis for the Court to certify a conditional class in this matter based on the Plaintiffs' own speculative testimony about the job duties of other members of the putative class.

[13] As previously argued in Defendants' Opposition to the Motion to Facilitate (p. 14), both Plaintiffs only worked in the Accountemps division.  They have offered no specific evidence regarding the job duties of the other putative class members who worked in divisions other than Accountemps.

familiarized him with the job duties of the staffing professionals in those offices, O'Donnell's exposure to less than ten members of the putative class while employed in Danbury and Westborough provides him with no basis for knowledge regarding the job duties performed by thousands of staffing professionals. As discussed in detail in Defendants' Opposition, the putative class consists of potentially thousands of staffing professionals who worked for RHI in any of more than 250 other offices in approximately 40 other states. O'Donnell had absolutely no contact with those staffing professionals, and the Court should disregard his speculative affidavit testimony regarding those individuals' job duties.

## **CONCLUSION**

WHEREFORE, Defendants Robert Half International Inc. and Robert Half Corporation respectfully request that this Court deny Plaintiffs' Motion to Facilitate § 216(b) Notice.

Respectfully submitted,

ROBERT HALF INTERNATIONAL INC.
AND ROBERT HALF CORPORATION
By their Attorneys,

        /s/ Richard L. Alfred
Richard L. Alfred (BBO # 015000)
Krista G. Pratt (BBO # 644741)
Barry J. Miller (BBO # 661596 )
SEYFARTH SHAW LLP
World Trade Center East
Two Seaport Lane, Suite 300
Boston, MA 02210-2028
Telephone:    (617) 946-4800
DATED:  December 1, 2005        Telecopier:    (617) 946-4801

BO1 15747503.3

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing document was served by first class mail to Shannon Liss-Riordan, Esq., an attorney of record for Plaintiffs on December 1, 2005.

_____/s/ Barry J. Miller_____

Barry J. Miller

1              UNITED STATES DISTRICT COURT
                 DISTRICT OF MASSACHUSETTS
2

3

4    IAN O'DONNELL, On Behalf of        )
     Himself and all Others            )
5    Similarly Situated, et al.,       )
                      Plaintiffs,      )  CA No. 04-12719
6                                      )
                                       )
7    vs.                               )
                                       )
8                                      )
     ROBERT HALF INTERNATIONAL,        )
9    INC., et al.,                     )
                      Defendants.      )
10

11

     BEFORE:   THE HONORABLE NATHANIEL M. GORTON
12

13

                    SCHEDULING CONFERENCE
14

15

16

           John Joseph Moakley United States Courthouse
17                    Courtroom No. 4
                    One Courthouse Way
18                   Boston, MA 02210
                  Friday, August 19, 2005
19                     2:50 P.M.

20

21

22              Cheryl Dahlstrom, RPR, RMR
                   Official Court Reporter
23        John Joseph Moakley United States Courthouse
             One Courthouse Way, Room 3209
24                   Boston, MA 02210
            Mechanical Steno - Transcript by Computer
25

 1    APPEARANCES:

 2         PYLE, ROME, LICHTEN & EHRENBERG, P.C.
           By:  Alfred Gordon, Esq.
 3         18 Tremont Street, Suite 500
           Boston, Massachusetts 02108
 4         On behalf of the Plaintiffs.
           Also Present:  Steven Young, Esq.

 5

 6         SEYFARTH SHAW
           By:  Richard L. Alfred, Esq., and
 7         Krista G. Pratt, Esq.
           Two Seaport Lane, Suite 300
 8         Boston, Massachusetts 02210-2028
           On behalf of the Defendants.

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1               P R O C E E D I N G S

2          THE CLERK:  This is Civil Action 04-12719, Ian

3     O'Donnell vs. Robert Half International, et al.  Counsel please

4     identify themselves for the record.

5          MR. GORDON:  Alfred Gordon for the plaintiffs.  With

6     me is Steven Young, whose admission before this Court is

7     pending.

8          THE COURT:  Good afternoon, Mr. Gordon, and Mr. Young.

9          MR. ALFRED:  Richard Alfred from the firm of Seyfarth

10    Shaw.  With me, Krista Pratt, also with the firm Seyfarth Shaw,

11    for the defendants.

12         THE COURT:  Good afternoon to you, Mr. Alfred, and

13    Miss Pratt.

14         We are here not only on a scheduling conference but,

15    also, on the motion of the defendant to facilitate the 216(b)

16    notice or, in other words, to certify a class.  And it does

17    make sense to deal with that matter either before or at the

18    time of the scheduling conference because it will have a

19    dramatic impact on how the case proceeds, obviously.

20         As I understand it -- and you certainly are free to

21    correct me if I'm wrong -- the plaintiffs seek to certify a

22    class under Title 29 of the United States Code, Section 216,

23    which permits employee plaintiffs to represent similarly

24    situated employees in an action for violation of the Fair Labor

25    Standards Act.

1          And in this particular case, the plaintiffs allege

2    that their employer, or former employer -- I don't know which

3    -- but Robert Half International, is a staffing firm based in

4    California, that they are former staffing managers in the

5    Account Temps Division here in Boston.  And they allege that

6    the employer has deprived them of overtime pay to which they

7    are entitled even though they were improperly characterized as

8    exempt employees under the Fair Labor Standards Act.

9          The plaintiffs' claim is that they were

10   tightly-controlled telephone operators who had no discretion or

11   managerial authority and were, therefore -- should have been

12   treated as overtime eligible employees.

13         They filed a complaint at the end of last year

14   alleging violation of the state statute, which mandates payment

15   of overtime wages, and of the Fair Labor Standards Act under

16   the federal statute.  The defendant, Robert Half, removed to

17   this court; and then more recently, in May, the plaintiffs

18   filed to conditionally certify a proposed class, including all

19   current and former staffing managers, account executives or

20   account managers, employed in any state other than California

21   within the past three years, immediately preceding the filing

22   of the complaint.

23         The defendant has opposed that motion and contends

24   that the employees of the putative class are not similarly

25   situated, that there's no credible evidence that the members of

1    the putative class are interested in joining the suit, that

2    corrective treatment would be inefficient, and that the

3    plaintiffs aren't a proper representative of such class and

4    that notice -- that the notice form, in any event, was biased.

5    Do I basically have the matter in mind?

6         MR. ALFRED:  Your Honor, if I could say, there was an

7    agreement among counsel and then an order by the Court issued

8    on July 27, the day before my vacation, to continue the hearing

9    on the motion to facilitate notice.

10        And the reason that we requested that continuance was

11   that, in addition to the procedure, which I think is correct,

12   the defendants, after submitting their initial disclosures,

13   also served discovery, written -- document requests and

14   deposition notices on the plaintiffs, at least for the limited

15   purpose of deposing the plaintiffs on the issue of

16   substantially similar, whether they were substantially similar

17   to the class that they purport to represent.  We wanted to take

18   -- and we still do want to take -- those depositions before the

19   hearing on the motion to facilitate notice.

20        So because there was an issue about scheduling -- and,

21   in fact, that issue is expressed to us orally -- but there is

22   no motion for a protective order filed with the Court with

23   respect to any of that discovery, I couldn't take the

24   depositions while I was to be on vacation, and the schedule

25   didn't work for me to take them this week before this hearing.

1    So as of this moment, I think what we have addressed in our

2    submission to the Court on the status conference is --

3           THE COURT:  You mean on the scheduling conference?

4           MR. ALFRED:  I'm sorry, the scheduling conference --

5    thank you, your Honor -- is some discovery issues that relate

6    to the period of time before the hearing on the motion to

7    facilitate notice.  And then --

8           THE COURT:  Well, you've given me sort of open-ended,

9    you know, two months after, six months after, so on and so

10   forth, with respect to the scheduling conference, both sides.

11   You haven't been able to agree on what that ought to be, but

12   that's what I get from both of you.  Right?

13          MR. ALFRED:  Yes, but --

14          THE COURT:  So you're rising to say that we should not

15   be here on a scheduling conference?

16          MR. ALFRED:  No.  The scheduling conference is

17   scheduled.  That, we're here for.  The issue is whether or not

18   the Court will hear today the motion to facilitate notice.

19   That's the issue.

20          THE COURT:  Okay.  I wanted to get the matter off dead

21   center on to some sort of a scheduling format.

22          MR. ALFRED:  Agreed.

23          THE COURT:  And it is appropriate that we resolve this

24   issue of this conditional -- or whatever you want to call it --

25   certification.  And you have briefed those matters, both sides,

1  right?

2         MR. ALFRED:  That's correct, your Honor.

3         THE COURT:  The question that I had more for the

4  plaintiff than for you was whether there is any evidence or at

5  least sufficient evidence to determine at this stage that there

6  are similar -- that the putative class of plaintiffs are

7  similarly situated.  Mr. Gordon, what do you have to back that

8  up?  It doesn't seem like there's a lot that comes through to

9  me.

10        MR. GORDON:  The motion is supported by the affidavits

11 of the two plaintiffs regarding the work that they did for the

12 company, for the defendant.  The similarity -- their affidavits

13 also, I believe, address the similarity between what they do

14 and what other members of the putative class do as well.  I

15 hesitate to delve too deeply into argument out of deference to

16 the agreement that we reached with counsel.  I know counsel

17 wanted the opportunity to depose the plaintiffs in advance of

18 that.

19        THE COURT:  Well, I guess the first burden is on the

20 plaintiff to demonstrate to me that I -- that they have

21 sufficient evidence to justify a class certification of the

22 sort that you're asking for at this time.  And I don't see, at

23 least in my initial reading of your papers, that you have given

24 me sufficient cause to believe that the other folks that you

25 claim are part of your putative class are similarly situated.

1    And I really need to have you demonstrate to me or tell me

2    whether they are similarly situated with the employees who are

3    now staffing managers who do not work in Massachusetts or who

4    do not work for the Account Temps Division.

5         MR. GORDON:  Yes, your Honor.  Those issues, which

6    were, of course, brought up in the opposition to the

7    plaintiffs' motion to facilitate notice, have yet to be

8    addressed by the plaintiffs.

9         In an order -- or in a motion granted by this Court

10   back in May, when the parties had initially agreed that we

11   would be arguing the motion to facilitate at the same time we

12   did the scheduling conference, we had agreed that if the

13   plaintiffs needed to file a reply they would do so one week

14   prior to the -- to those arguments.  As we had put off the

15   issue of those arguments because the defendants wanted the

16   opportunity to depose the plaintiffs, we have yet to file that

17   reply.

18        I believe the reply would provide to the Court

19   indications of the similarities between the positions that

20   these individuals hold in the -- both within their job title

21   and across the other two job titles that are mentioned and then

22   across other divisions of the company.

23        THE COURT:  So you're expecting -- do I understand

24   that you're expecting that the depositions of your two

25   plaintiffs will be sufficient to demonstrate to the Court that

1    the other -- that the members of the putative class are

2    similarly situated?

3              MR. GORDON:  That, as of this time, as further

4    affidavits have not been taken and the depositions have not

5    been scheduled, I cannot say for sure today.

6              THE COURT:  How long do you think it's going to take

7    both parties to be in a position to offer this Court any

8    guidance with respect to the certification of this putative

9    class?  The minimum amount of time, let me put it that way.

10             MR. GORDON:  I believe that we could, within one

11   month's time, have all the information that's necessary to do

12   that, provided, of course --

13             THE COURT:  What about your response, Mr. Alfred?

14             MR. ALFRED:  Well, your Honor, given the Court's view

15   -- our view, actually, and the predicament that we were in,

16   was, we believe, as we said in our opposition, that the

17   plaintiffs haven't met their burden.  They haven't even come

18   close.  They're not even in themselves the FLSA putative class.

19   And we explained why, because the FLSA putative class excludes

20   Massachusetts individuals, and these two plaintiffs are

21   Massachusetts individuals.

22             THE COURT:  Why does it exclude?

23             MR. ALFRED:  There are two counts in the complaint,

24   your Honor.  Count 1 is under Massachusetts law, Chapter 151.

25   They're both wage-and-hour claims.  They're both substantively

| | |
|---|---|
| 1 | about the same.  The Count 2 is the Fair Labor Standards Act |
| 2 | claim, and the Fair Labor Standards Act class, putative class, |
| 3 | carves out Massachusetts and California employees.  These two |
| 4 | individuals, these two individual plaintiffs, are Massachusetts |
| 5 | employees, so they're carved out of the Fair Labor Standards |
| 6 | Act class. |
| 7 | The position that we were in was, the plaintiff had |
| 8 | said months ago that they were going to file a reply.  Now, |
| 9 | they've had two months.  They haven't even filed a motion to |
| 10 | file a reply, let alone attempt to submit a reply.  We didn't |
| 11 | want to be effectively sandbagged a day or two before a hearing |
| 12 | on the motion for -- the motion to facilitate. |
| 13 | THE COURT:  Maybe I'm missing something.  You say |
| 14 | reply to what? |
| 15 | MR. ALFRED:  Reply to the opposition. |
| 16 | THE COURT:  I have your memorandum -- I have the |
| 17 | plaintiffs' memorandum in support of its motion to facilitate |
| 18 | and your memorandum in opposition. |
| 19 | MR. ALFRED:  Correct.  What we have not seen is the |
| 20 | reply or even a motion to the Court, asking leave of Court. |
| 21 | THE COURT:  For leave to file a reply to your |
| 22 | opposition? |
| 23 | MR. ALFRED:  Exactly, your Honor.  And what we've now |
| 24 | heard is that they intend to file some reply. |
| 25 | The reason we wanted to take the deposition, or have |

1   the opportunity to take the deposition, really was connected to
2   whether or not we were going to see a reply.

3           And the only issue is, as the record stands today, the
4   plaintiffs clearly have not met their burden.  And so if the
5   Court is inclined to go forward and to rule on the motion --
6   consider the motion and rule on the motion on the present
7   record, because there's been no reply, we don't need to take
8   the plaintiffs' deposition.

9           THE COURT:  Put it this way:  I don't see that there's
10  enough that I have to establish this putative class.  On the
11  other hand, I'm not going to, at least at this stage, foreclose
12  the plaintiff from -- if they can tell me they can do it in a
13  relatively brief period of time -- making an effort to persuade
14  me that there is a putative class.

15          Now, Mr. Gordon says he can do it in one month.  On
16  the basis of what?  Are you going to take somebody's
17  deposition, Mr. Gordon?  Or are you just going to let the
18  defendant take your plaintiffs' deposition?

19          MR. GORDON:  I would have to consider that question
20  very carefully.  I don't believe that the depositions of the
21  plaintiffs would satisfy that, so there would be some other
22  discovery that we may have to engage in in order to do that,
23  although it may be that these plaintiffs have sufficient
24  information to establish the -- to meet the lenient standard
25  that this Court has adopted in these types of cases.  Hearing

1  what I'm hearing from the Court today --

2         THE COURT:  Well, the standard that I adopt -- and I

3  don't know whether anybody else has -- but in the Kane case,

4  which I think you're both familiar with, wasn't as lenient as

5  you might imagine.  It seems to me, that was quite a distinct

6  -- a distinguishing case from the one that you presented to me

7  so far.

8         MR. GORDON:  Then hearing what I'm hearing from the

9  Court today, it's incumbent on the plaintiffs to, in our reply,

10  have the opportunity to develop the record fully for your Honor

11  to address that.  I did want to note one thing.

12         THE COURT:  Why didn't you file a reply brief or at

13  least motion for leave to file one?

14         MR. GORDON:  The parties submitted a joint motion to

15  this Court on May 13, 2005, which this Court granted on the

16  17th.

17         THE COURT:  A joint motion?

18         MR. GORDON:  To postpone the scheduling conference and

19  extend the time for the defendants to oppose our notice.  And

20  in that joint motion, the parties noted that -- or suggested

21  that the plaintiffs be given an opportunity to file a reply

22  brief, if needed, one week prior to the scheduled arguments on

23  that brief which were to be scheduled at this time.

24         We made arrangements several weeks ago, after the

25  emergency motion was filed, an agreement among counsel that we

1   would not be arguing that motion today. Therefore, we did not

2   file a reply brief at that time.

3           THE COURT: I guess it's time to cut to the chase

4   here. What I would propose to do is to give both sides 60 days

5   to address this issue. And I'm going to give the defendants

6   the opportunity to take the plaintiffs' depositions with

7   respect to this issue, carving out anything else. If it later

8   turns out the plaintiffs are not members of a class and are

9   going to go forward as individuals, then you will have reserved

10   to you the right to take their depositions with respect to the

11   merits but not with respect to this putative class issue.

12           MR. ALFRED: Could I ask the Court one question, your

13   Honor?

14           THE COURT: Yes.

15           MR. ALFRED: It would be very helpful, I think, and it

16   would expedite the process, if we could have a deadline,

17   perhaps 30 days from today, for the plaintiffs to submit any

18   reply materials. That will then inform us as to whether or not

19   we need to take the plaintiffs' depositions, because, as I said

20   to the Court, as the record stands today, we don't need to take

21   the plaintiffs' deposition.

22           THE COURT: Any problem with that, Mr. Gordon?

23           MR. GORDON: To the extent that we might need to

24   engage in some limited discovery from the defendants in order

25   to meet out burden, 30 days might not give us sufficient time.

1          THE COURT:  All right.  Here we go.  On or before

2     September 30th, the plaintiffs will conduct any discovery they

3     believe they need to determine the similarity of the other

4     members of the putative class.  That's the issue that is to be

5     resolved first.

6          Then the defendants will have until October 31st to

7     take any countermeasures of discovery, i.e., the depositions of

8     the plaintiffs, and to submit any other information that needs

9     to be submitted in connection with that issue.

10         Then we will -- we'll consider whatever submissions

11    are at the court by the end of October on this issue.  And I

12    will schedule a hearing if I think one is necessary.  If one is

13    not necessary, we don't need a hearing.  But that will put us

14    into November until we can resolve the issue of the putative

15    class.

16         At that stage, if there is a putative class that is

17    certified, we will have a scheduling conference and determine

18    the dates on that occasion.  Otherwise, if it's just to be the

19    two individual plaintiffs that are going to go forward, we can

20    have a -- either you can agree to a scheduling order and I'll

21    issue it, or we'll have to have another scheduling conference.

22    Any problem with that outline?

23         MR. ALFRED:  No, your Honor.  I think that's a fine

24    outline.  It makes a lot of sense.  The only thing that I would

25    ask is, we have had document requests outstanding.  We served

1     them at the beginning of June.  They were due -- the responses

2     were due the beginning of July.  We haven't had any response.

3     We haven't had any --

4          THE COURT:  This is discovery only with respect to

5     this issue of putative class?

6          MR. ALFRED:  Well, many of the documents relate

7     directly to the putative class issue.

8          THE COURT:  Because the plaintiff actually was not

9     without some authority to avoid discovery before a scheduling

10    conference was held.  I mean, you could agree to exchange

11    discovery if you wish, but the way I interpret the rule is

12    that, before a scheduling conference is had, no discovery is

13    actually ripe.

14         Now, in this case you've submitted discovery with

15    respect to the issues that are now before the Court, and those

16    are ripe; and, therefore, Mr. Gordon will respond to those

17    written discovery pleadings forthwith --

18         MR. GORDON:  Yes, sir.

19         THE COURT:  -- so we don't have another problem 30 or

20    45 days from now.  But that doesn't mean that discovery on the

21    merits of the claim are to be going forward at this time.

22         MR. ALFRED:  I have no problem with that, your Honor.

23    Could your Honor also schedule a date by which -- I would

24    suggest I think what we're talking about was the end of

25    September, September 30.

1                   THE COURT:   For?

2                   MR. ALFRED:   For a reply memorandum from the

3       plaintiffs.

4                   THE COURT:   So that any response to your discovery on

5       this limited issue and a reply to your opposition to the

6       certification --

7                   MR. ALFRED:   Would be due --

8                   THE COURT:   -- will be due on or before September

9       30th.

10                  MR. GORDON:   Thank you, your Honor.

11                  MR. ALFRED:   Thank you, your Honor.

12                  THE COURT:   Is there anything I've left undone that I

13      should have scheduled that I can't --

14                  MR. ALFRED:   Could we also have the opportunity, by

15      October 31, to file sur reply if we need to, given the

16      discovery?

17                  THE COURT:   Well, as long as both of these briefs are

18      limited to ten pages or less.

19                  MR. ALFRED:   Both briefs, fine.

20                  THE COURT:   Ten pages or less.  I have enough to read

21      without that.

22                  MR. ALFRED:   Understood, your Honor.

23                  THE COURT:   And this means that the matter will be

24      submitted to me as of October 31st on the question of whether

25      or not to certify the class, right?

1          MR. ALFRED:  Yes, your Honor.

2          THE COURT:  Does it make sense, while we're here, to

3    try to rough out a scheduling order in both events, i.e., one,

4    I certify a class; two, I don't?

5          MR. ALFRED:  Your Honor, there are so many variables.

6    For example, if you don't certify a class, will the Court

7    retain supplemental jurisdiction over the Massachusetts state

8    law claim?  The Massachusetts state law claim is pleaded as a

9    Rule 23 class action.

10          If the Court decides at that point not to exercise

11   supplemental jurisdiction and remands the case to state court,

12   then we have two plaintiffs.  We can do discovery very quickly.

13   If the Court retains that state law claim, then we have a very

14   different animal.

15          THE COURT:  All right.  I hear you, and I think it

16   perhaps makes sense to cross that bridge when we get there.

17   Any problem with that, Mr. Gordon?

18          MR. GORDON:  No problem with that.  Your Honor, I did

19   have one other point that I needed to at least address.  The

20   scheduling for this date, through no fault of anyone, really

21   got pushed and pushed and pushed.  Now we're putting together a

22   time frame, a rapid one but a time frame, pushing this even

23   further out.

24          Of course, the rules -- 216(b) certification

25   requirements, they're done rather quickly in order to alleviate

1    the fact that the Statute of Limitations does not hold upon the

2    filing of a claim.  The plaintiffs would, therefore, have to

3    ask if there's any way to toll the Statute of Limitations as we

4    wrench through the remainder of this discovery process on this

5    issue.

6              THE COURT:  You mean for other members of the

7    putative --

8              MR. GORDON:  For anyone who might opt in, yes, your

9    Honor.

10             THE COURT:  Well, what is the -- three-year statute?

11             MR. GORDON:  Three years for a claim of willful -- a

12   willful violation, two years for a non-willful violation.

13             THE COURT:  Any problem with tolling the statute from

14   this date forward, Mr. Alfred?

15             MR. ALFRED:  Yes, your Honor.  We can't agree to that.

16   I find it interesting.  The case was filed the end of December.

17   It was brought by two named plaintiffs.  There have been,

18   atypical of these kinds of cases -- and we do quite a few of

19   them.  There have been no opt-ins whatsoever, none at all.

20   People are free to opt in and, immediately, by opting in, toll

21   the Statute of Limitations.

22             Plaintiffs were free -- although we had an agreement

23   they could have up till a week before an argument to file a

24   reply, they were free to file a reply at any time.  They had

25   lots of time.  They didn't file the motion to certify,

1    essentially, to conditionally certify the class or to

2    facilitate notice, until months, six months, after they filed

3    the initial lawsuit.

4        So the situation that they're in, and the time frame

5    that we're talking about, doesn't seem to be unreasonable

6    given, first, the continuing right the people have to opt in

7    should they so desire and the plaintiffs' own conduct of the

8    case and the schedule that the plaintiffs have followed.

9        Had plaintiffs filed a reply and had we known today

10   that the issues that they were putting before the Court were no

11   closer to establishing that they were -- that the plaintiffs

12   were substantially similar to the putative class, we would be

13   able today to go forward with the motion because we wouldn't

14   need to do any discovery.

15       So the discovery that's -- that they now say they want

16   to do, which is a 180-degree reversal of their prior

17   position -- because they previously said absolutely no

18   discovery before the hearing on the motion to facilitate

19   notice -- wouldn't be necessary if they had --

20       THE COURT: All right. Mr. Gordon, if you feel that

21   you need this, you can file a motion and I'll consider it, but

22   -- I'm not encouraging you to do that, but I'm not going to

23   deal with it today.

24       Anything else that needs to come to my attention in

25   this regard?

1          MR. ALFRED:  No, your Honor.

2          THE COURT:  Thank you, counsel.

3     (Whereupon, at 3:16 p.m. the hearing concluded.)

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1              C E R T I F I C A T E

2

3

4              I, Cheryl Dahlstrom, RPR, RMR, and Official Reporter

5     of the United States District Court, do hereby certify that the

6     foregoing transcript, from Page 1 to Page 20, constitutes, to

7     the best of my skill and ability, a true and accurate

8     transcription of my stenotype notes taken in the matter of

9     Civil Action No. 04-12719, Ian O'Donnell, et al vs. Robert Half

10    International, et al.

11

12

13

14

15

16    _____

17              Cheryl Dahlstrom, RPR, RMR

18              Official Court Reporter

19

20

21

22

23

24

25

**U.S. Department of Labor**
Employment Standards Administration
Wage and Hour Division
Washington, D.C. 20210

**October 25, 2005**                                                                                          **FLSA2005-45**

Dear *Name\**,

This is in response to your letter requesting an opinion concerning whether Staffing Managers employed by your client, Company X, qualify for the executive or administrative exemption under section 13(a)(1) of the Fair Labor Standards Act (FLSA). You seek this opinion in light of the final rules at 29 C.F.R. Part 541 implementing minimum wage and overtime pay exemption that went into effect on August 23, 2004.

Section 13(a)(1) of the FLSA provides a complete minimum wage and overtime pay exemption for any employee employed in a bona fide executive, administrative, or professional capacity, as those terms are defined in 29 C.F.R. Part 541. An employee may qualify for exemption if all of the pertinent tests relating to duty, salary level and salary basis, as discussed in the appropriate section of the regulations, are met. Please note that revisions to 29 C.F.R. Part 541 were published as a final rule in the *Federal Register* on April 23, 2004 (69 Fed. Reg. 22122) and became effective on August 23, 2004 (copy enclosed).

You state that Company X is a temporary staffing agency. It provides temporary labor in various clerical, accounting, human resource, computer and similar white collar functions to clients who have a need for such personnel. The primary duty of a Staffing Manager is to manage this function. In doing so, a Staffing Manager confers with the client to evaluate what kind of skills are needed: for example, will a certified public accountant be necessary, or will someone with basic accounting and bookkeeping skills fulfill the services required. Once a job description is decided, the Staffing Manager negotiates the terms for the placement and the fee for Company X. Thereafter, the Staffing Manager recruits, interviews and hires the employee to provide the services. In recruiting and selecting employees to fill assignments, Staffing Managers do not simply check off a few minimal requirements, but must evaluate the potential worker's education, skills acquired in prior employment, personality fit and ability to work within a particular organization. Staffing Managers then make recommendations to the client companies for placement of employees at particular assignments. The Staffing Managers' recommendations are typically followed. Staffing Managers also negotiate the wage to be paid by Company X to the employee. Once the employee is placed, the Staffing Manager continues to supervise the services of the employee with the client. The Staffing Manager stays in contact with the client and the employee to evaluate the employee's performance. As the situation calls for, the Staffing Manager decides whether counseling or disciplining an employee is necessary. If the employee fails to respond to counseling or discipline, the Staffing Manager may decide to transfer the employee to another placement, or if necessary, terminate his or her employment with Company X. Staffing Managers typically supervise about thirty employees. Staffing Managers have full authority to discipline, fire, promote and assign to various tasks the employees they supervise. Although the employees of Company X report to a supervisor at the client location for the details of their work, they report to the Staffing Manager for matters relating to length of assignment; position held; performance issues; complaint and grievance issues; counseling; discipline; pay adjustments and termination of employment. In carrying these duties, Staffing Managers work under very little supervision; they make decisions and accomplish their tasks without prior approval and with broad range of discretion.

In addition, Staffing Managers decide if advertising for the position is needed to find certain candidates. They determine where to place the advertisement and negotiate the costs of such placement. Staffing Managers are paid at least $455 per week on a salary basis.

As discussed in 29 C.F.R. § 541.200(a), the term "employee employed in a bona fide administrative capacity" in section 13(a)(1) of the FLSA means "any employee":

1) Compensated on a salary or fee basis of at least $455 per week … ;
2) Whose primary duty is the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers; and
3) Whose primary duty includes the exercise of discretion and independent judgment with respect to matters of significance.

*Id.* "The phrase 'directly related to management or general business operations' refers to the type of work performed by the employee. To meet this requirement, an employee must perform work directly related to assisting with the running or servicing of the business, as distinguished, for example, from working on a manufacturing production line or selling a product in a retail or service establishment." 29 C.F.R. § 541.201(a).

"Work directly related to management or general business operations includes, but is not limited to, work in functional areas such as tax; finance; accounting; budgeting; auditing; insurance; quality control; purchasing; procurement; advertising; marketing; research; safety and health; personnel management; human resources; employee benefits; labor relations; public relations; government relations; computer network, internet and database administration; legal and regulatory compliance; and similar activities." 29 C.F.R. § 541.201(b).

"An employee may qualify for the administrative exemption if the employee's primary duty is the performance of work directly related to the management or general business operations of the employer's customers. Thus, for example, employees acting as advisers or consultants to their employer's clients or customers (as tax experts or financial consultants, for example) may be exempt." 29 C.F.R. § 541.201(c).

"To qualify for the administrative exemption, an employee's primary duty must include the exercise of discretion and independent judgment with respect to matters of significance. In general, the exercise of discretion and independent judgment involves the comparison and the evaluation of possible courses of conduct, and acting or making a decision after the various possibilities have been considered. The term 'matters of significance' refers to the level of importance or consequence of the work performed." 29 C.F.R. § 541.202(a).

"The phrase 'discretion and independent judgment' must be applied in the light of all the facts involved in the particular employment situation in which the question arises. Factors to consider when determining whether an employee exercises discretion and independent judgment with respect to matters of significance include, but are not limited to: whether the employee has authority to formulate, affect, interpret, or implement management policies or operating practices; whether the employee carries out major assignments in conducting the operations of the business; whether the employee performs work that affects business operations to a substantial degree, even if the employee's assignments are related to operation of a particular segment of the business; whether the employee has authority to commit the employer in matters that have significant financial impact; whether the employee has authority to waive or deviate from established policies and procedures without prior approval; whether the employee has authority to negotiate and bind the company on significant matters; whether the employee provides consultation or expert advice to management; whether the employee is involved in planning long or short-term business objectives; whether the employee investigates and resolves matters of significance on behalf of management; and whether the employee represents the company in handling complaints, arbitrating disputes or resolving grievances." 29 C.F.R. § 541.202(b).

As the preamble to the final rule explained, 69 Fed. Reg. 22122, 22143 (April 23, 2004) (copy enclosed), federal courts generally find that employees who meet at least two or three of these factors mentioned above are exercising discretion and independent judgment, although a case-by-case analysis is required.

In performing the Staffing Managers' primary duty of recruiting, hiring and managing the temporary labor pool of Company X's clients, the Staffing Managers perform work in the functional areas of personnel management, human resources and labor relations. *See* 29 C.F.R. § 541.201(b). Thus, it appears that the Staffing Managers' primary duty meets the requirement that such office or non-manual work be directly related to the management or general business operations of the employer's clients.

Whether a Staffing Manager exercises discretion and independent judgment within the meaning of the regulations would depend, to a great extent, on the amount of selectivity exercised in matching persons seeking employment with the requirements of the job opening and in deciding which employee to send to any particular employer for consideration, as opposed to referring to the employer several prospects who generally meet the qualifications for the job. *See* WH Opinion Letters dated August 11, 1970 and October 14, 1983 (copies enclosed). It appears that Staffing Managers who recruit; interview; hire and recommend placement of employees to particular assignments; manage the client's temporary labor pool; provide advice on personnel issues; handle complaints; resolve grievances; and terminate employees on behalf of the client's management, exercise the requisite discretion and independent judgment with respect to matters of significance. *See* 29 C.F.R. § 541.202(b). The final rule identifies human resources managers, who perform similar duties interpreting and implementing employment policies, as exempt and it distinguishes as nonexempt those personnel clerks who simply screen applicants to obtain data regarding qualifications and to identify those who do not meet the minimum required standards. *See* 29 C.F.R. § 541.203(e).

Based on analysis of the information provided, it is our opinion that Staffing Managers employed by Company X qualify for the administrative exemption under the final rule at 29 C.F.R. § 541.200. We are unable to make a determination regarding the applicability of the executive exemption to Staffing Managers in this case, because there is insufficient information as to whether the Staffing Managers' primary duty is management of a customarily recognized department or subdivision with a permanent status and a continuing function, or a mere collection of employees assigned from time to time to a specific job or series of jobs. *See* 29 C.F.R. § 541.103(a).

This opinion is based exclusively on the facts and circumstances described in your request and is given based on your representation, express or implied, that you have provided a full and fair description of all the facts and circumstances that would be pertinent to our consideration of the question presented. Existence of any other factual or historical background not contained in your letter might require a conclusion different from the one expressed herein. You have represented that this opinion is not sought by a party to pending private litigation concerning the issue addressed herein. You have also represented that this opinion is not sought in connection with an investigation or litigation between a client or firm and the Wage and Hour Division or the Department of Labor. This opinion is issued as an official ruling of the Wage and Hour Division for purposes of the Portal-to-Portal Act, 29 U.S.C. § 259. *See* 29 C.F.R. §§ 790.17(d), 790.19; *Hultgren v. County of Lancaster*, 913 F.2d 498, 507 (8th Cir. 1990).


**U.S. Department of Labor**
Employment Standards Administration
Wage and Hour Division
Washington, D.C. 20210

We trust that this letter is responsive to your inquiry.

Sincerely,


Alfred B. Robinson, Jr.
Deputy Administrator

Enclosures:

29 C.F.R. Part 541
69 Fed. Reg. 22143
WH Opinion Letters dated August 11, 1970 and October 14, 1983


*\* Note: The actual name(s) was removed to preserve privacy in accordance with 5 U.S.C. 552 (b)(7).*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IAN O'DONNELL AND DAVID JOLICOEUR, on behalf of themselves and others similarly situated<br><br>                Plaintiffs,<br><br>v.<br><br>ROBERT HALF INTERNATIONAL INC. AND ROBERT HALF CORPORATION<br><br>                Defendants. | )<br>)<br>)<br>)<br>)  CIVIL ACTION NO. 04-CV-12719 NMG<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## SUPPLEMENTAL AFFIDAVIT OF WILLIAM T. HAYES

I, William T. Hayes, being duly sworn, hereby depose and state as follows:

1.     I submit this Supplemental Affidavit in support of Defendants' Surreply in Further Opposition to Plaintiffs' Motion to Facilitate §216(b) Notice.

2.     In my capacity as District Director for Robert Half International Inc. ("RHI"), I am familiar with RHI's Danbury, Connecticut, office in which Ian O'Donnell ("O'Donnell") worked from approximately January 3, 2002, until approximately July 1, 2002. Since January 2002, the Company has maintained only Accountemps and OfficeTeam divisions in the Danbury office. At the time O'Donnell began working as a Staffing Manager in the Danbury office, he was the only staffing professional employed in that office. There are currently a total of two staffing professional positions in the Danbury office.

3.     I am also familiar with RHI's Westborough, Massachusetts, office in which O'Donnell worked from approximately July 1, 2002, until approximately February

1

1, 2003. Since July 2002, the Company has maintained only Accountemps and OfficeTeam divisions in its Westborough office. At the time O'Donnell was employed as a Staffing Manager in the Westborough office, there were a total of approximately eight staffing professional positions in that office. There are currently a total of eleven staffing professional positions in the Westborough office.

4. Some of the other RHI offices under my supervision are larger and house a greater number of divisions and staffing professionals than the Danbury or Westborough offices. For example, the Boston, Massachusetts, office currently houses seven divisions and forty-five staffing professionals. Similarly, the Burlington, Massachusetts, office currently houses five divisions and fifteen staffing professionals.

Signed under the pains and penalties of perjury this 30 day of November, 2005.

_William T. Hayes_
William T. Hayes