# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

IAN O'DONNELL AND DAVID )
JOLICOEUR, on behalf of themselves and all )
others similarly situated, )
                        Plaintiffs, )
v. )     CIVIL ACTION NO.  04-CV-12719 NMG
                               )
ROBERT HALF INTERNATIONAL INC. )
AND ROBERT HALF CORPORATION, )
                      Defendants. )

## DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO AMEND COMPLAINT

Defendants Robert Half International Inc. and Robert Half Corporation (together "Defendants" or "RHI") hereby oppose Plaintiffs' Motion to Amend Complaint ("Motion to Amend").  Plaintiffs seek to amend the Complaint ("Complaint") for a second time, to dramatically expand the scope of the lawsuit by adding two new and potentially massive classes of Defendants' employees.  After a substantial delay following the filing of this case one year ago, Plaintiffs also seek to assert a brand-new theory of liability.  This Court should deny Plaintiffs' belated Motion to Amend because the request (i) arises after "undue delay," (ii) would cause RHI undue prejudice, (iii) is made in bad faith, and (iv) is futile.  *See Carmona v. Toledo*, 215 F.3d 124, 136 (1st Cir. 2000).  As set forth below, Plaintiffs' eleventh-hour, transparent attempt to amend the Complaint for the second time is purely tactical, designed to forestall an adverse decision by the Court on the fully-briefed issue of conditional class certification.  Clearly, Plaintiffs would like to begin the case anew while still taking advantage of the filing date of the original complaint.  Accordingly, Defendants respectfully request that this Court deny Plaintiffs' Motion to Amend.

## BACKGROUND

Plaintiffs initiated this action by filing a complaint on December 1, 2004.  Before Defendants responded to their initial complaint, Plaintiffs filed their First Amended Complaint on January 19, 2005, alleging that RHI failed to pay its Staffing Managers, Account Executives, and Account Managers overtime compensation in violation of federal and Massachusetts law. Defendants filed their Answer to the Amended Complaint on February 4, 2005.

Before discovery commenced, Plaintiffs filed a Motion to Facilitate Notice ("Motion to Facilitate") on May 11, 2005, seeking conditional certification of this matter as a collective action pursuant to 29 U.S.C. § 216(b).  Defendants filed their Opposition to the Motion to Facilitate Notice ("Opposition") on June 24, 2005.  The Court heard argument on the Motion to Facilitate at a Scheduling Conference held on August 19, 2005.  During the conference, the Court expressed considerable doubt that Plaintiffs had "given [the Court] sufficient cause to believe that the other [members of the putative FLSA class] are similarly situated."  Trans. 7:19-25.  In light of the Court's stated reluctance to certify the class based on the evidence supplied in Plaintiffs' Motion to Facilitate, Plaintiffs requested an additional month to conduct discovery on the issues presented by their motion and to file a reply brief to support their claim that members of the putative class are similarly situated.  Trans. 8:18 – 9:12, 12:8-11.  The Court granted Plaintiffs' request and gave them a full six weeks, through September 30, 2005, to conduct discovery and file a reply.  Trans. 14:1-15.

During the six-week extension, Plaintiffs took absolutely no discovery on any issues raised by their Motion to Facilitate.[1]  On September 30, the day that their Reply was due,

---

[1]  In addition, Plaintiffs have refused to respond to Defendants' discovery requests, despite this Court's August 19, 2005, Order to respond to the Requests "forthwith" and prior to September 30, 2005.  Therefore, on November 30, 2005, Defendants filed a Motion to Compel Production

Plaintiffs filed a motion requesting an additional three weeks to file their Reply. The Court granted Plaintiffs' request for a further extension, and Plaintiffs filed their Reply on October 21, 2005. In the Reply, Plaintiffs cited documents RHI had produced months before, on June 2, 2005, as part of their Rule 26 Initial Disclosures, and referenced RHI's publicly accessible website. However, Plaintiffs' reply referenced no "new" evidence.

On November 30, two days before the deadline for Defendants to file a surreply to the Motion to Facilitate, Plaintiffs filed the instant Motion, along with (i) a proposed Second Amended Complaint and (ii) a Renewed Motion to Facilitate §216(b) Notice and a Memorandum in Support Thereof ("Renewed Motion to Facilitate"). The Second Amended Complaint seeks to include an additional job classification, that of Recruiting Manager, to the purported class and to add an additional named Plaintiff. In addition, the proposed Second Amended Complaint contains two new allegations of FLSA and state law wage and hour violations. Plaintiffs claim that (1) the "CHOICE Time Off" ("CTO") policies set forth in Defendants' employee handbook violate the salary basis test and (2) RHI's policies violate the salary basis test by requiring employees to take off a full day of work even if available to work a partial day. *See* Second Amended Complaint ¶¶ 51, 52, 59, 60. Plaintiffs seek to bring these new claims on behalf of <u>all</u> salaried employees of RHI.[2] *Id*. ¶¶ 9, 10, 35, 36. Defendants filed a

---

of Documents and for Sanctions. Plaintiffs served insufficient document responses on December 2, 2005, asserting a panoply of objections and failing to produce a single document. Later, Plaintiffs supplemented their response by producing a handful of documents on December 7, 2005. Because the sufficiency of Plaintiffs' responses is still disputed, the motion to compel remains pending. Plaintiffs' Opposition to the Motion to Compel is due on January 9, 2006.

[2] Plaintiffs' Renewed Motion to Facilitate, which is based solely on the new allegations set forth in the proposed Second Amended Complaint, seeks conditional certification of a greatly enlarged class of all salaried employees of Defendant.

Surreply in Further Opposition to the Motion to Facilitate ("Surreply") on December 1, 2005.[3]

Accordingly, the Motion to Facilitate has been fully briefed by the parties.

## ARGUMENT

### A.    THE PROPOSED AMENDMENTS ARE SOUGHT BY PLAINTIFFS AFTER UNDUE DELAY, ARE IN BAD FAITH, AND WILL UNDULY PREJUDICE DEFENDANTS.

The Court should not allow Plaintiffs' last-ditch attempt to amend the Complaint and avoid what they clearly anticipate will be an adverse ruling on the Motion to Facilitate. Although requests to amend are frequently allowed, courts generally deny leave to amend when factors are present "such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment." *Foman v. Davis*, 371 U.S. 178, 182 (1962). Other factors a court should consider include judicial economy, the court's ability to manage the case, and whether the moving party has previously amended the pleading or had the opportunity to do so. Moore's Federal Practice § 15.15[1], at 15-42.1 (3d ed. 2005); *see also Little v. Liquid Air Corp.*, 952 F.2d 841, 846 (5th Cir. 1992), *aff'd* 37 F.3d 1069 (1994) (court could not manage the case if leave to amend was granted because it would establish a new factual basis for claim, and the delay would be excessive); *Perrian v. O'Grady*, 958 F.2d 192, 195 (7th Cir. 1992) (factors justifying denial of leave include prejudice to the judicial system and the public's interest in prompt resolution of disputes, even when there is no prejudice to the non-moving party); *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 186 n. 3 (9th Cir. 1987) (court has especially broad discretion when plaintiff has already

---

[3] The Court granted Defendants a short extension of time to file their Opposition to the Motion to Amend, through January 9, 2006.

been given opportunities to amend); *Chitimacha Tribe of La. v. Harry L. Laws Co.*, 690 F.2d 1157, 1163 (5th Cir. 1982), *cert. denied*, 464 U.S. 814 (1983) (judicial economy is a factor in deciding motion to amend).

The Courts have also denied leave to amend where the party sought the amendment for purely strategic or tactical reasons, particularly when there is prejudice to the defendants.  *See Carmona*, 215 F.3d at 124, 136; *Cotton Bros. Baking Co. v. Indus. Risk Insurers,* 941 F.2d 380 (5th Cir. 1991) (affirming decision to deny amendment seeking to change name of defendant from subsidiary corporation to parent corporation as eleventh-hour ploy to defeat compulsory counterclaim); *SATCOM Int'l Group v. ORBCOMM Int'l Partners L.P.*, 2000 U.S. Dist. LEXIS 7739, *72-73 (S.D.N.Y.) (denying motion to amend where timing of motion suggests attempt to forestall ruling on summary judgment motion); *Windsor Card Shops v. Hallmark Cards,* 957 F. Supp. 562 (D.N.J. 1997) (denying motion to amend where motion appeared to be based on strategic considerations);  *see also Ferguson v. Roberts,* 11 F.3d 696 (7th Cir. 1993) (denying motion to amend where motion appeared to be delay tactic).

Each of the factors discussed above are present here and warrant denial of Plaintiffs' Motion to Amend.  Specifically, the Court should deny leave to amend because (i) Plaintiffs seek to amend after undue delay, (ii) the Motion to Amend was filed in bad faith, and (iii) the proposed amendments are unduly prejudicial to Defendants.

## 1.      Plaintiffs' Have Unduly Delayed in Seeking to Amend Complaint.

Plaintiffs seek to amend the Complaint after an unjustifiable delay.  As stated above, Plaintiffs still have not conducted discovery in this case, despite their representations to the Court months ago that they needed to do so before filing their Reply to RHI's Opposition to the Motion to Facilitate.  Their proposed amendments to the Complaint are, therefore, not based on any "new" evidence.  To the contrary, Plaintiffs have had access to the documents on which they

claim to base the new allegations for at least six months, since Defendants produced the documents as part of their Initial Disclosures on June 2, 2005.  Plaintiffs provide no explanation to the Court as to why the proposed amendment was not sought months ago. Plaintiffs initiated this case one year ago, and, as described above, the parties have engaged in extensive briefing of a number of issues during this time.  Most significantly, the Plaintiffs' own Motion to Facilitate has been briefed by the parties and the Court has already heard argument on that Motion on August 19.  RHI would be unfairly prejudiced by Plaintiffs' undue delay, because Defendants have incurred considerable expense in drafting and filing the twelve-page Answer to the First Amended Complaint, the thirty-four-page Opposition to the Motion to Facilitate, and the ten-page Surreply to the Motion to Facilitate.  In addition, Plaintiffs' Motion to Facilitate Notice was based on claims and facts alleged in the First Amended Complaint.  If Plaintiffs are granted leave to file their Motion to Amend, Defendants will incur the costs not only of responding to the Second Amended Complaint, but also of briefing the issue of class certification yet again to address the new arguments Plaintiffs raise in the Renewed Motion to Facilitate.  Plaintiffs' delay of one year between the original complaint and the current Motion to Amend is inexplicable.  In short, Plaintiffs seek a third opportunity, without justification and to RHI's detriment, to amend the Complaint and restart the case.

### 2.    Plaintiffs Filed the Motion to Amend in Bad Faith.

Plaintiffs' unjustified delay is aggravated by the strategic timing of their Motion to Amend to avoid what they expect will be an adverse ruling on the Motion to Facilitate.  Courts have consistently held that an attempt to forestall a ruling by filing a motion to amend the pleadings is evidence of bad faith and justifies denial of leave to file it.  *See MCI Telecomms. Corp. v. Premium Mktg. Sys.*, 1992 U.S. Dist. LEXIS 304, *10 (N.D. Ill.) (filing a motion to amend in attempt to forestall ruling is "a motive warranting denial of [plaintiff's] motion to

amend"); *Prince v. Suffolk County Dep't of Health Servs.*, 1995 U.S. Dist. LEXIS 4206, *20 (S.D.N.Y.) (denying motion to amend based in part on fact that only plausible explanation for plaintiffs' delay was bad faith); *Reisner v. Gen. Motors Corp.,* 511 F. Supp. 1167, 1172 (S.D.N.Y. 1981), *aff'd*, 671 F.2d 91 (2d Cir. 1982), *cert. denied*, 459 U.S. 858 (1982) (filing a new complaint in an attempt to forestall ruling on a motion for summary judgment may evidence bad faith).  Plaintiffs' Motion to Amend, along with the Amended Complaint and Renewed Motion to Facilitate, are transparent attempts to circumvent the Rules of Civil Procedure and forestall the Court's decision on the fully-briefed issue of conditional class certification.[4] Plaintiffs filed the Motion to Amend only <u>after</u> both parties had briefed the issue of certification and only <u>after</u> the Court stated its reluctance to certify a class in this case.  As Defendants argued in their Opposition and Surreply to the Motion to Facilitate, Plaintiffs have not produced sufficient evidence to support their contention that the putative class members are similarly situated, despite the fact that the Court gave them an extensive amount of time after the August 19 hearing to take discovery and attempt to marshal such evidence.  Instead, they seek to recharacterize the basis of their claims and re-argue the class certification issue.  That Plaintiffs contemplated amending the Complaint more than a month before filing their Motion and on the eve of Defendants' deadline for filing the Surreply to the Motion to Facilitate further underscores the opportunistic timing of the Motion to Amend.[5]  The only plausible explanation for Plaintiffs' delay is that they seek to forestall an unfavorable ruling by the Court, change the focus of the

---

[4] Contemporaneous with the filing of this opposition, Defendants filed a Motion to Stay the Renewed Motion to Facilitate pending the Court's decision regarding the proposed Second Amended Complaint.

[5] *See* October 21, 2005, Email to Steve Young, attached as Exhibit C to Defendants' Memorandum in Support of Motion to Compel Documents and for Sanctions (filed on November 30, 2005).

case, drastically enlarge the number of potential class members, and buy more time to find the nonexistent evidence with which they hope to be able to argue that the putative class members are similarly situated. The Court should therefore deny Plaintiffs' Motion to Amend.

> **3.      Plaintiffs' Proposed Amendments Would Unduly Prejudice Defendants.**

Plaintiffs' belated attempt to amend the Complaint, over one year after the original complaint was filed, unquestionably and unduly prejudices Defendants.  Prejudice to the nonmoving party is one of the key factors courts consider when ruling one motion for leave to amend.  Moore's Federal Practice § 15.15[2], at 15-43 (3d ed. 2005); *see also Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 330-331 (1971) (court must consider prejudice to nonmoving party that would result by allowing movant to amend pleadings) (citing Moore's).  Here, RHI has already expended significant time and resources in drafting and filing the Answer to the First Amended Complaint, the Opposition, and the Surreply.  If Plaintiffs' Motion to Amend is allowed, Defendants' efforts will largely have been for naught, and the case will essentially begin anew.  Allowing Plaintiffs to amend the Complaint would be wasteful of the Court's time and resources as well.  *See Reisner*, 511 F. Supp. at 1172 (where amendment would be prejudicial to defendants and wasteful of Court's and attorneys' time, denial of motion to amend justified) (citing cases).  By seeking to add a number of allegations that Defendants have violated the FLSA and state law salary basis tests, Plaintiffs seek to change the focus of the case dramatically.  In addition, Plaintiffs seek to bring these new claims on behalf of <u>all</u> salaried employees of RHI – not merely the three positions currently at issue, i.e., Staffing Managers, Account Managers, and Account Executives – thereby creating a much larger potential class that subsumes and dwarfs the current putative class.  In short, Plaintiffs are attempting to bring a very different case, with new theories of recovery and new putative classes, under the guise of an

amendment.[6]  Courts have recognized that prejudice is likely if the amendment at issue involves

new theories of recovery.  *See, e.g., Bell v. Allstate Life Ins. Co.,* 160 F.3d 452, 454 (8th Cir.

1998) (finding prejudice where issues raised by proposed amendment involved new factual and

legal issues, which would require additional discovery).  Plaintiffs proposed amendments would

be extremely prejudicial to Defendants, and Plaintiffs' Motion to Amend should therefore be

denied.

**B.      THE PROPOSED AMENDMENT IS FUTILE.**

        The Court should reject Plaintiffs' attempt to amend the complaint further because their

proposed amendments are futile.  Courts will not grant a motion to amend where "the proposed

amendment is legally insufficient and it would be futile to grant leave to amend." Moore's

Federal Practice § 15.15[3], at 15-48 (3d ed. 2005); *see also Correa-Martinez v. Arrillaga-*

*Belendez*, 903 F.2d 49, 59 (1st Cir. 1990) ("Where an amendment would be futile or serve no

purpose, the district court should not needlessly prolong matters."); *Rodgers v. Lincoln Towing*

*Serv., Inc.*, 771 F.2d 194, 204 (7th Cir. 1985) ("[R]efusal [of motion to amend] is proper 'where

the proposed amendment fails to allege facts which would support a valid theory of liability, or

where the party moving to amend has not shown that the proposed amendment has substantial

merit.'") (citing *Verhein v. South Bend Lathe, Inc.*, 598 F.2d 1061, 1063 (7th Cir. 1979)); *Elliott*

*Assocs. L.P. v. Hayes,* 141 F. Supp. 2d 344 (S.D.N.Y. 2000) (denying motion to amend securities

fraud complaint to add claim where the proposed new claim was futile).  In reviewing for

---

[6] In their Motion, Plaintiffs state their intent to file a separate law suit if the Motion is not
allowed. Motion, n. 1.  Leave to amend should not be granted based on such a threat. At this
stage of the litigation, it would be preferable for Plaintiffs to file a separate suit.  Plaintiffs
transparently seek to take advantage of the fact that any amendment granted may relate back to
the original Complaint, for statutes of limitations purposes.

"futility," the Court should apply the same standard of legal sufficiency that it applies to a Rule 12(b)(6) motion. *See* Moore's Federal Practice § 15.15[3], at 15-48 (3d ed. 2005).

Plaintiffs' proposed Second Amended Complaint contains numerous inconsistencies, rendering it difficult to ascertain what Plaintiffs specifically intend to allege. Nevertheless, none of Plaintiffs' new claims satisfy the standard of legal sufficiency that applies to a Rule 12(b)(6) motion, under any legal theory. Plaintiffs focus their attention on RHI's CTO policy, claiming that it somehow violates the FLSA's salary basis test, which requires that any employee classified as exempt be compensated for his services "on a salary basis at not less than $455 per week." 29 C.F.R. § 541.200 (2004). Plaintiffs' Second Amended Complaint nonetheless fails to state an actionable claim for violation of the salary basis test, for several reasons.

The allegations in Plaintiffs' proposed Second Amended Complaint are inconsistent regarding the amount of CTO time purportedly deducted when an employee is absent. ¶¶ 34, 51, 59. RHI's policy states that absences of less than two hours do not result in a deduction from the employee's CTO bank. *See* RHI Employee Handbook: CHOICE Time Off, attached as Exhibit D to Plaintiffs' Renewed Motion to Facilitate ("CTO Policy"), p. 10 (bates labeled RHI 0000148). Similarly, the CTO policy states – and Plaintiffs allege in the Second Amended Complaint – that any absences of more than two hours will result in a deduction from the CTO bank of a full (8 hour) day. *Id.*; Second Amended Complaint, ¶ 34. In both instances, however, employees receive their full pay. To the extent that Plaintiffs claim that RHI cannot deduct time from an exempt employee's CTO leave bank, their argument fails as a matter of law. The Department of Labor has made clear that, as long as the employee receives pay equal to his or

her salary, deductions from a leave bank are permissible and do not violate the salary basis test.[7]
*See Preamble to August 2004 Final Salary Basis Regulations*, 69 Fed. Reg. 22,178 ("We agree that employers, without affecting their employees' exempt status, may take deductions from accrued leave accounts"); *Dept. of Labor Wage & Hour Opinion Letter dated April 14, 1992,* 1992 WL 845095 ("Where an employer has bona fide sick leave and vacation pay benefit plans, it is permissible to substitute or reduce the accrued leave in the plans…without affecting the salary basis of payment" as long as the employee receives his or her guaranteed salary).  Further, to the extent that Plaintiffs argue that RHI improperly made partial day deductions from employees' CTO banks, that practice also would not violate the salary basis test.  The Department of Labor clearly distinguishes between improper partial day deductions from salary, and permissible partial day deductions from a leave bank.  *See Dept. of Labor Wage & Hour Opinion Letter FLSA2005-7, dated January 7, 2005*, 2005 WL 330606 (partial day or full day deduction from leave banks allowed because "the one or more full-day deduction requirement applies to deductions from an employee's salary, as opposed to a leave bank.") (emphasis in original).

The Second Amended Complaint further alleges that RHI's policies violate the salary basis test by "forcing" employees who would be willing and able to work a partial day to be absent from work for the full day in order to comply with the CTO Policy.  According to Plaintiffs, "[t]hese full-day deductions from employees who would have worked for partial days constitute deductions from salary for 'absences occasioned by the employer,' and therefore,

---

[7] Plaintiffs also allege that employees were not paid their guaranteed salary when leave was deducted from CTO.  See ¶ 51.  This appears to be a misstatement, Plaintiffs provide no evidence to support this allegation, and this allegation is inconsistent with RHI's stated policy and practice.  RHI's employees were and are paid their full salary when leave is deducted from their leave bank.

Salaried Employees subject to the CTO policy are 'not paid on a salary basis,' as required by the FLSA." Second Amended Complaint, ¶ 59.  RHI's policy, however, does not require that employees take a full day off if they are absent for more than two hours but rather that any deductions from an employee's CTO bank will only be made in full day (8-hour) increments. CTO Policy, p. 10.  This claim also fails as a matter of law because (1) the salary basis test only prohibits employers from making deduction from an employee's <u>salary</u> for absences occasioned by the employer; (2) an employer may require that employees debit their leave banks when they are absent from work regardless of whether the absence is employer-occasioned; and (3) an absence from work for personal reasons is not an employer-occasioned absence, and an employer may take deductions from an employee's salary or leave bank when the employee is absent for personal reasons.  *See U.S. Dept. of Labor Wage & Hour Opinion Letter dated October 24, 2005*, 2005 WL 3308612 (Even during office closures due to inclement weather, an employer may direct exempt staff to take leave bank deductions without jeopardizing the employees' exempt status, since "there is no prohibition on an employer giving vacation time and later requiring that such vacation time be taken on a specific day(s)"); *U.S. Dept. of Labor Wage & Hour Opinion Letter dated February 16, 2001*, 2001 WL 1558766 (when an employee is absent from work for personal reasons, employer may deduct full or partial day from leave bank; in addition, employer can deduct from salary for full day absences for personal reasons).

To the extent that Plaintiffs' claims are premised on the assumption that vacation time is compensation, the argument fails as a matter of law because it is well-settled that the term "compensation" refers to salary not accrued vacation time.  *See, e.g.*, *Webster v. Pub. Sch. Employees of Wash., Inc.*, 247 F.3d 910 (9th Cir. 2001) (holding that term "compensation" in FLSA refers to salary, not accrued leave time, even when accrued leave can later be converted

into cash); *Aiken v. County of Hampton*, 977 F. Supp. 390, 397 (D.S.C. 1997) (holding that vacation days are fringe benefits, "not a part of the predetermined pay Plaintiffs receive each work week.").

Finally, Plaintiffs claim that RHI's policy of recouping "borrowed" CTO time from an employee's final paycheck (*i.e.*, where the employee had insufficient CTO time available and RHI advanced the time to the employee) violates the salary basis test similarly fails. The FLSA's regulations permit recovery of full-day leave advances, where the leave is covered by Section 541.02(b) exceptions. *See* 69 Fed. Reg. 22,178 (2004) (recovery for full-day leave is permissible if such leave is covered by one of the § 541.602(b) exceptions); *see also* 29 C.F.R. § 541.602(b) (exceptions to prohibition against deductions for pay in salary basis requirement include, *inter alia*, absences for one or more full days due to personal reasons, sickness or disability, disciplinary suspensions for violations of work conduct rules, leave under the Family and Medical Leave Act, etc.). Here, since any deductions from the CTO bank are in full-day increments per RHI's policy, and an employee may utilize CTO time for personal, medical or other similar reasons, such deductions from the final paycheck would not violate the salary basis test. *See* CTO Policy, p. 11; *see also*, *U.S. Dept. of Labor Wage & Hour Opinion Letter FLSA2004-17NA, dated October 6, 2004*, 2004 WL 3177901 (negative leave balances can be recouped from employees if they have been informed of the unearned vacation time policy, since the amount of wages advanced as paid vacation is similar to a bona fide loan).

It is clear that Plaintiffs' proposed amendments to the Complaint fail to state a claim under any legal theory or set of facts. Since the proposed amendments are futile, the Court should deny Plaintiffs' Motion to Amend.

**C.     IN THE EVENT THAT THE COURT WERE TO GRANT THE MOTION TO AMEND, IT SHOULD AWARD RHI THE COSTS, INCLUDING ATTORNEYS' FEES, IT HAS INCURRED TO DATE.**

If, despite the futility, delay, bad faith, and prejudice attendant to the proposed amendments, the Court were to permit Plaintiffs to file a Second Amended Complaint, this Court should require Plaintiffs to pay the costs, including attorneys' fees, Defendants have incurred in drafting and filing the Answer to the First Amended Complaint, the Opposition to the Motion to Facilitate, and the Surreply to the Motion to Facilitate, and in preparing for and attending the August 19 hearing.  Courts often impose costs on the movant as a condition of leave to amend when a proposed amendment forces the non-moving party to undertake additional preparation in order to respond to new issues or theories. 6A Wright, Miller, & Kane, Federal Practice and Procedure § 1485 (3d ed. 2005).  This award may include costs incurred by the non-moving party in briefing issues rendered moot by the amendments. *Id*; *see also Campania Mgmt. Co. v. Rooks, Pitts & Poust*, 290 F.3d 843, 849 (7th Cir. 2002) (trial court may deny leave to amend when amendment would cause non-moving party to assume additional costs of litigating new issue and moving party does not offer to reimburse the non-moving party for its expenses); *Hayden v. Feldman,* 159 F.R.D. 452, 454 (S.D.N.Y. 1995) (requiring plaintiffs, as condition on grant of  motion to amend, to pay defendants' attorney fees and costs incurred in preparing unnecessary motion to dismiss third amended complaint); *Kronfeld v. First Jersey Nat'l Bank*, 638 F. Supp. 1454, 1460 (D.N.J. 1986) (awarding costs of preparation of previous filing rendered moot by amendment); *Green v. Walsh*, 21 F.R.D. 15, 20 (E.D. Wis. 1957) (same); s*ee also Pollux Marine Agencies v. Louis Dreyfus Corp.*, 455 F. Supp. 211, 216 (S.D.N.Y. 1978) (awarding costs of all attorney's fees incurred by non-moving party prior to amendment).  If Plaintiffs are allowed to file their Second Amended Complaint, this case will essentially begin anew.  Much of Defendants' previous pleadings and briefs will be rendered moot.  Therefore, if

the Court were to grant Plaintiffs' Motion to Amend, such permission should be conditioned on the requirement that Plaintiffs pay Defendants their costs, including attorneys' fees, incurred in defending this action to date.

## **CONCLUSION**

WHEREFORE, Defendants Robert Half International Inc. and Robert Half Corporation respectfully request that this Court deny Plaintiff's Motion to Amend the (First) Amended Complaint.

Respectfully submitted,

ROBERT HALF INTERNATIONAL INC.
AND ROBERT HALF CORPORATION
By their Attorneys,

_/s/ Richard L. Alfred_____
Richard L. Alfred (BBO # 015000)
Krista G. Pratt (BBO # 644741)
Barry J. Miller (BBO # 661596 )
SEYFARTH SHAW LLP
World Trade Center East
Two Seaport Lane, Suite 300
Boston, MA 02210-2028
Telephone:    (617) 946-4800
DATED:  January 9, 2006                    Telecopier:    (617) 946-4801

---

### CERTIFICATE OF SERVICE

I hereby certify that this document was filed through the Court's ECF system
and that a true copy of the above document was served
on Shannon Liss-Riordan, an attorney for Plaintiffs, Pyle, Rome, Lichten,
Ehrenberg, & Liss-Riordan, 18 Tremont Street, Suite 500, Boston, MA 02109,
by first class mail on January 9, 2006.

_____/s/ Barry J. Miller_____
Barry J. Miller

---