# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| IAN O'DONNELL AND DAVID JOLICOEUR, ON BEHALF OF THEMSELVES AND ALL OTHERS SIMILARLY SITUATED, ) ) ) ) ) )  |  |
| Plaintiffs, ) )  | CIVIL ACTION NO.: 04-12719 NMG |
| v. ) )  |  |
| ROBERT HALF INTERNATIONAL INC. and ROBERT HALF CORPORATION ) ) )  |  |
| Defendants. ) ) )  |  |

## PLAINTIFFS' RENEWED MOTION TO FACILITATE §216(b) NOTICE AND MEMORANDUM IN SUPPORT THEREOF

## I.   INTRODUCTION

In this renewed motion, Plaintiffs Ian O'Donnell and David Jolicoeur,[1] on behalf of

themselves and all others similarly situated ("Plaintiffs"), demonstrate that, based on

their allegation that Defendants Robert Half International, Inc., and Robert Half

Corporation ("Defendants") violate the "salary basis" test for all their salaried

employees, as set forth in Plaintiffs' Second Amended Complaint, they are entitled to

issuance of a Court-approved notice of the pending litigation to all Defendants' salaried

employees who were denied overtime wages.

---

[1] Plaintiffs have filed a Motion to Amend and a Second Amended Complaint which adds an additional lead plaintiff.

In their original motion, Plaintiffs alleged that they are entitled to notice based on their allegations that Defendants violate the "duties" test by failing to pay overtime to their Staffing Managers, Recruiting Managers, Account Executives, and Account Managers despite requiring employees in these positions to perform duties that do not qualify for any exemption from overtime pay.  In this renewed motion, Plaintiffs allege that Defendants' explicit written policies violate the "salary basis" test by requiring their salaried employees to take full-day deductions from paid leave for partial-day absences and requiring that negative paid-leave balances be deducted from salaried employees' final paychecks.  Since the class of Staffing Managers, Recruiting Managers, Account Executives, and Account Managers is included as a subset of the class of similarly situated salaried employees, this Court should approve a single notice to address both theories of liability under the FLSA, to be issued as soon as possible to all individuals employed by Defendants as salaried employees within the three years preceding the filing of this action.

Plaintiffs are entitled to such a notice if they have shown a reasonable basis for their allegation that a class of similarly situated persons may exist.  Plaintiffs can meet this burden by making a modest factual showing that Plaintiffs and the potential class members were victims of a common policy or plan that violated the law.  At the hearing in this matter on August 19, 2005, the Court expressed concern that Plaintiffs had not met this modest burden with respect to their allegations that Defendants' policies violate the "duties" test.  However, establishing a violation of the "duties" test requires evidence concerning the actual duties of Plaintiffs and similarly situated Staffing Managers,

Recruiting Managers, Account Executives, and Account Managers, while Plaintiffs'
allegations that Defendants' policies violate the "salary basis" test are based on explicit,
uniformly applied policies in Defendants' Employee Handbook.  Plaintiffs contend, as
explained below, that the evidence submitted with this motion is sufficient to
demonstrate that Defendants' policies violate the "salary basis" test on their face.
However, the focus of the inquiry at this stage is on whether the proposed plaintiffs are
"similarly situated," not on the merits of the plaintiffs' claims, and the evidentiary exhibits
attached to this motion need only – and clearly do – meet the Plaintiffs' modest burden
at the conditional certification stage.

## II.    BACKGROUND

### A.    Defendants and Their Policies

Defendants own and operate a large specialized staffing firm with over 300
offices worldwide and 5 offices in Massachusetts (http://www.rhi.com).  Each named
plaintiff worked for Robert Half as a Staffing Manager, Recruiting Manager, Account
Executive, or Account Manager within the past three years.  Second Amended
Complaint ¶¶ 11-13; O'Donnell Aff., ¶ 2 (attached as Exhibit A); Jolicoeur Aff., ¶ 2
(attached as Exhibit B); Moore Aff., ¶ 2 (attached as Exhibit C).  Robert Half regularly
required Plaintiffs to work in excess of forty (40) hours in a work week.  Second
Amended Complaint ¶ 18; O'Donnell Aff., ¶ 5; Jolicoeur Aff., ¶ 5; Moore Aff., ¶ 5.
Defendants classified Plaintiffs as exempt employees, paid them on a salary basis, and
did not pay them overtime wages.  Second Amended Complaint, ¶ 18; O'Donnell Aff., ¶
4; Jolicoeur Aff., ¶ 4; Moore Aff., ¶ 4.

Defendants maintain an Employee Handbook (attached as Exhibit D) to acquaint their employees with their policies and benefits, and they provide their employees with this employee handbook as a reference guide to their employment policies and practices.  Ex. D, p. 119, 123.  The Employee Handbook sets forth "Employee Classifications" "[f]or purposes of salary administration and eligibility for overtime payments and employee benefits," and one of these classifications is defined as follows: "Exempt Employees are employees in positions which are exempt from legal overtime pay requirements.  Exempt employees are expected to work whatever hours are necessary to do their jobs properly."  Ex. D, p. 129.

The Employee Handbook sets forth Defendants' "CHOICE Time Off (CTO)" policies, which provide "employees with paid time away from the job for such things as vacation, outside activities, illness, personal business and family matters" and which explicitly apply to both "Exempt and Non-Exempt" employees of Defendants.  Ex. D, p. 137.  Defendants' "policy is to record time off in full day increments for exempt employees."  Ex. D, pp. 147-48.  Pursuant to Defendants' CTO policies, "CTO may be taken before it is actually earned," but "[s]hould employment end before used CTO has been earned, that time will be owed back to [Defendants] and deducted from the final paycheck or other amounts payable to the employee."  Ex. D., p. 137.  Defendants' CTO policies also provide that "[t]o the extent that an exempt employee has personal business that results in an absence from work of more than 2 hours, [Defendants'] practice is that the day will be considered a full day of CTO."  Ex. D., p. 148.  Defendants' CTO policies further provide that "[u]p to 5 days for exempt employees or

… may be taken in advance of earning the time off.  However, if [employees] terminate before [they] have earned the CHOICE Time Off [they] have taken, the amount [they] owe the company will be deducted from [their] final paycheck[s] or any other amounts payable to [them]."  Ex. D, p. 148.

Defendants' policy of deducting unearned CTO from exempt employees' final paychecks is unambiguous and clearly communicated to Defendants' exempt employees.  This policy is not only listed in the Employee Handbook, as quoted above, but also repeated on Defendants' "Corporate Employee Exempt Absence Record" (time sheet), which requires exempt employees to sign under the statement, "If your employment terminates while you have a negative CTO balance, the amount you owe the company will be deducted from your final paycheck or any other amounts payable to you," and "Exempt Employee Time Off Request" form, which requires exempt employees to sign under the affirmation, "I understand that if my employment terminates when I have negative CHOICE Time Off balance, the amount I owe the company will be deducted from my final paycheck."  See Defendants' Human Resources forms, attached as Exhibit E, pp. 105, 115.  Defendants also clearly have an actual practice of deducting negative CTO balances from employees' final paychecks, as their final paychecks and termination worksheets direct Defendants' payroll employees to make these deductions, and Plaintiff Ian O'Donnell's termination documents (attached as Exhibit F) show that his unearned CTO balance of 28 hours (equivalent to $484.62 in gross salary) was, in fact, deducted from the total amount due on his final paycheck.  Ex. F, pp. 32, 34, 42, 44.

**B.**     <u>Plaintiffs' Claims</u>

Plaintiffs claim entitlement to overtime wages because they were not subject to a bona fide exemption to the Fair Labor Standards Act (29 U.S.C. § 201 et seq.) or the Massachusetts Wage Act.  In order to qualify for such an exemption, "an employee must satisfy both a 'duties test' and a 'salary basis' test."  <u>Scholtisek v. Eldre Corporation</u>, 229 F.R.D. 381, 387 (W.D.N.Y. 2005) (citing 29 C.F.R. §§ 541.100, 541.200, 541.300); <u>see also</u> <u>Auer v. Robbins</u>, 519 U.S. 452, 456 (1997).  Plaintiffs allege that they, as well as all similarly situated Staffing Managers, Recruiting Managers, Account Executives, and Account Managers employed by Defendants, did not meet the "duties" test, and that they, as well as all employees of Defendants who were classified as exempt, did not meet the "salary basis" test.

**C.**     <u>Defendants' Violation of the "Duties" Test</u>

With respect to the "duties" test, Plaintiffs maintain their original allegation that they were not subject to the administrative exemption because their primary responsibility was to make sales calls, which is not related to the management or operations of Robert Half or its customers.  Each Plaintiff spent the day according to a regimented, prescribed schedule set by Defendants in which they spent most of each day making outbound sales calls, and exercised little to no discretion in the execution of their job responsibilities.  O'Donnell Aff., ¶¶ 6-12; Jolicoeur Aff., ¶¶ 6-12; Moore Aff., ¶¶ 6-13.  Therefore, Plaintiffs were production workers rather than administrators, and Defendants misclassified their exempt status.  Defendants' violation of the "duties" test is more thoroughly explained in Plaintiffs' original Motion to Facilitate 216(b) Notice and

their Reply to Defendants' Opposition to Plaintiffs' Motion to Facilitate 216(b) Notice, and it is supported by Plaintiffs' pleadings and affidavits and the exhibits attached to their original Motion and Reply.

###	D.	Defendants' Violation of the "Salary Basis" Test

Plaintiffs do not need to prove the merits of their claims at the outset, but in this motion, they provide more evidence and argument than is ordinarily required at the conditional certification stage in order to demonstrate to the Court the strength of their new theory of Defendants' FLSA liability, namely that a violation of the "salary basis" test is clear on the face of the policies set forth in Defendants' Employee Handbook. Plaintiffs allege that Defendants' employment policies and practices violate the "salary basis" test because they render Defendants' exempt employees subject to reductions in salary for partial-day absences.  29 CFR § 541.602(b)(1); see Caperci v. Rite Aid Corp., 43 F.Supp.2d 83, 86 (D. Mass. 1999) ("It is generally understood … that an employee is not paid on a salary basis if the employer has a policy or regular practice of reducing the amount of the employee's weekly or other periodic paycheck to reimburse the employer for partial day absences.") (citing Donovan v. Carls Drug Co., Inc., 703 F.2d 650, 652 (2d Cir. 1983)).  Specifically, as set forth above, Defendants' policies subject Defendants' exempt employees to reductions in salary for partial-day absences by requiring them to deduct time away from the office from their accrued paid leave in full-day increments only, even if they work for part of a day; requiring employees without sufficient accrued paid leave who take time off to "borrow" paid leave; and requiring

deductions from exempt employees' final paychecks for negative paid-leave balances. Id.

As set forth above, Defendants' policies requiring full-day deductions for partial-day absences and deductions for unearned CTO from exempt employees' final paychecks are unambiguous and clearly communicated to Defendants' salaried employees through Defendants' Employee Handbook and time-off request forms.  See Ex. D, pp. 137, 147-48; Ex. E, pp. 105-06, 108, 115.  Therefore, Defendants' policies render exempt employees' salary "subject to reduction" for partial-day absences, and such deductions violate the "salary basis" test.  29 CFR 541.602(a); Auer v. Robbins, 519 U.S. at 461.  As the Department of Labor recently explained, "[r]ecovery of partial-day leave advances [from an employee's final pay] … essentially are deductions for personal absences and would constitute an impermissible deduction.  Whether recovery for a full-day leave is permissible depends on whether such a leave is covered by one of the section 541.602(b) exceptions."  Defining and Delimiting the Exemptions for Executive, Administrative, Professional, Outside Sales, and Computer Employees, 69 FR 22122, 22178 (April 23, 2004).  Section 541.602(b) lists exceptions to "[t]he prohibition against deductions from pay in the salary basis requirement," including "when an employee is absent from work for one or more full days for personal reasons." 29 CFR § 541.602(b)(1).  However, the regulation does not list an exception for full-day deductions for partial-day absences, so Defendants' policies requiring such deductions and requiring recovery for full-day leave advances from exempt employees' final paychecks violate the "salary basis" test.  Id.; 69 FR at 22178; see also DOL Opinion

Letter dated January 7, 2005, 2005 WL 330606 ("[p]ayment of the employee's guaranteed salary *must* be made, even if an employee has no accrued benefits in the leave plan and the account has a negative balance, where the employee's *absence* is for less than a full day") (emphasis added); DOL Opinion Letter dated April 9, 1993 ("[d]eductions from the salaries of otherwise exempt employees for partial day absences after they have exhausted their vacation or sick time benefits have never been permitted under the Regulations").

As discussed above, it is clearly illegal to make partial-day deductions for partial-day absences,[2] but Defendants purport to comply with the FLSA by instead making *full-day* deductions for partial-day absences, even though it is apparent that this is an even more egregious violation of the FLSA.  The FLSA regulations clearly state that the FLSA only permits "[d]eductions from pay … when an exempt employee *is absent* from work for one or more full days," 29 C.F.R. § 541.602(b)(1) (emphasis added), and "[i]t is generally understood … that an employee is not paid on a salary basis if the employer has a policy or regular practice of reducing the amount of the employee's weekly or other periodic paycheck to reimburse the employer for partial day *absences*."  Caperci v. Rite Aid Corp., 43 F.Supp.2d at 86 (emphasis added); see also Spradling v. City of Tulsa, 95 F.3d 1492, 1501 (10th Cir. 1996) (holding that policy of reducing leave time for

---

[2] Plaintiffs recognize that, as discussed in the preceding paragraph, deductions from leave for partial-day absences may only be illegal where the employee's final paycheck is also "subject to reduction" for leave advances.  However, since Defendants do, in fact, maintain a policy and practice of deducting unearned CTO from their employees' final paychecks, Plaintiffs will occasionally, for the sake of brevity, refer to the prohibition against such partial-day deductions as if all partial-day deductions were *per se* illegal, instead of repeating the proviso, "where, as here, employees' salaries are also subject to reduction."

partial-day absences and subjecting pay to docking if employee lacked sufficient leave time was "inconsistent with the salary test"), cert. denied, 519 U.S. 1149 (1997); Kinney v. District of Columbia, 994 F.2d 6, 11 (D.C. Cir. 1993) ("Employees paid under a system that subjects them, even theoretically, to docking for absences by the hour lack one of the characteristics explicitly identified in the Department's regulation on salaried pay"); Martin v. Malcolm Pirnie, Inc., 949 F.2d 611, 615 (2d Cir. 1991) (holding that "an employee who can be docked pay for missing a fraction of a workday must be considered an hourly, rather than a salaried, employee"), cert. denied, 506 U.S. 905 (1992); 69 FR at 22178 ("partial day deductions generally are inconsistent with the salary basis requirement").

Defendants' CTO policies clearly require employees who are not absent from work for a full day – and are, in fact, present for part of the day – to be subject to a full-day reduction in salary nonetheless, and this violates the "salary basis" test's requirement that full-day deductions only be permitted "when an exempt employee *is absent* from work for one or more full days."  29 C.F.R. § 541.602(b)(1) (emphasis added).  Defendants' policies could not be any plainer on this point.  In response to the question, "What should an exempt employee who works less than a full day record as time off?", Defendants' Employee Handbook answers as follows:

> "To the extent that an exempt employee has personal business that results in an absence from work of more than 2 hours our practice is that the day will be considered a full day of CTO.  Eight hours of CTO should be recorded for payroll records."

See Ex. D, p. 148.

Defendants then state that "[a]s with any employee on CTO, there is no requirement that the employee be present in the office for any part of that day." Id. However, if Defendants "suffer or permit" an employee to work on a given day, he or she is entitled to be paid for his or her work on that day. See 29 U.S.C. § 203(g) (stating that "'[e]mploy' includes to suffer or permit to work").  On the other hand, if Defendants forbid salaried employees who take partial days off from working before or after their time off and then take full-day deductions for those days, they violate the "salary basis" test by making "deductions from the employee's predetermined compensation … for absences occasioned by the employer."  29 C.F.R. § 541.602(a). Therefore, Defendants' policies make it impossible for a salaried employee to so much as request a partial day off without causing Defendants to violate the "salary basis" test.

In the similar case of Sholtisek v. Eldre Corp., 229 F.R.D. 381 (W.D.N.Y. 2005), conditional certification was granted where the plaintiff alleged that the defendant's practices of "(1) docking salaried employees in partial-day increments when the employees have not worked a full day; (2) maintaining a policy that creates a significant likelihood of improper deductions from the pay of exempt employees; and (3) instructing exempt employees not to report to work for certain days … and then reducing those employees' weekly pay" violated the "salary basis" test.  229 F.R.D. at 388.  The defendant's employee handbook contained a provision which stated, under the heading, "Exempt Employees," "that if an employee who has used up all his sick, personal and vacation time is absent from work for more than three hours on any given day, 'the employee cannot and will not be allowed to come to work.  The employee will not be

paid for the entire day.'" Id., at 390.  There, as Plaintiffs allege of Defendants' policies in the instant matter, the plaintiff alleged that this "policy violate[d] the regulatory provision that salaried employees' pay cannot be docked for absences occasioned by the employer."  Id. (citing 29 CFR § 541.602(a); Baudin v. Courtesy Litho Arts, Inc., 24 F.Supp.2d 887, 890 (N.D. Ill. 1998) (employer "cannot dock a salaried employee's pay 'for absences occasioned by the employer'"); Thomas v. County of Fairfax, Va., 803 F.Supp. 1142, 1148 (E.D. Va. 1992) ("an FLSA-exempt executive's pay may not vary as a function of the number of hours worked"), aff'd 16 F.3d 408 (4th Cir. 1994)).  Based on the plaintiff's allegations and some limited discovery, the court granted conditional certification of a class of all salaried employees employed by the defendant within the previous three years, noting that "insofar as the policy is concerned, all employees subject to it would be similarly situated regardless of whether their pay was actually docked."  Id. at 390 (citing Auer v. Robbins, 519 U.S. at 461; Hoffman, 982 F.Supp. at 262 ("plaintiffs need not have each suffered actual deductions to show that they and other managers were 'subject to' improper reductions in compensation by virtue of a common policy")).

The following hypothetical example further illustrates the consequences of Defendants' policies:  A salaried employee of Defendants wishes to take care of some personal business on Wednesday morning.  As required by Defendants' policies, she submits a "Time Off Request Form" to her manager, requesting permission to be absent from work between 8:30 a.m. and 1:30 p.m. on Wednesday.  She does not need or want to take the afternoon off, but wants to go to work after lunch on Wednesday to

fulfill her responsibilities and is ready, willing, and able to do so.  If Defendants permit

her to take the morning off and work for a few hours in the afternoon and then deduct a

full day of CTO, even though she was not absent for a full day, they violate the "salary

basis" test, as explained above.  If they forbid her from coming into the office after she

takes the morning off and then deduct a full day of CTO, they are making a full-day

deduction for a partial-day "absence occasioned by the employer," which violates the

"salary basis" test.  29 CFR § 541.602(a).

Furthermore, Plaintiffs have evidence showing that Defendants occasionally

make full-day deductions for two combined partial-day absences, which also violates

the "salary basis" test.  29 CFR § 541.602(b)(1); <u>Caperci v. Rite Aid Corp.</u>, 43

F.Supp.2d at 86.  For example, Plaintiff Stacey Moore asked Defendants for permission

to take two afternoons off in July 2003, when she was moving to a new home, so that

she could work during the mornings and move in the afternoons.  Moore Aff., ¶ 23.  Her

supervisors urged her to "just take both days off," but Ms. Moore did not want to use

that much vacation time or be absent from work for that much of the week.  Even

though her supervisors strongly encouraged her to take both full days off, Ms. Moore

came in and worked in the mornings and took two half days off, and Defendants

deducted one full day from her accrued CTO for that pay period.  Moore Aff., ¶ 23.

In short, Defendants' CTO policies require salaried employees who work partial

days and are absent from work for more than two hours for personal reasons to take

full-day deductions from their accrued CTO and require any resulting shortfall in

accrued CTO to be deducted from salaried employees' final paychecks.  Therefore,

Defendants' salaried employees' salaries are "subject to reduction" for partial-day

absences, in violation of the FLSA's "salary basis" test.  29 C.F.R. 541.602(a); Auer v.

Robbins, 519 U.S. at 461.  Therefore, Plaintiffs and all other exempt employees of

Defendants were not paid on a salary basis, and Defendants misclassified their exempt

status and violated the FLSA and the Massachusetts Wage Act by failing to pay them

time and one-half for their hours worked in excess of forty (40) hours per week.

Furthermore, Defendants' CTO policies violate the "salary basis" test not only by

subjecting their salaried employees to inappropriate deductions, but also by denying

their employees the discretion to manage their time and plan their workweeks.  As the

Department of Labor recently explained, the practice of paying executive,

administrative, and professional employees on a salary basis "reflects the widely-held

understanding that employees with the requisite status to be bona fide executives,

administrators or professionals have discretion to manage their time.  Such employees

are not paid by the hour or task, but for the general value of services performed."  69 FR

at 22177 (citing Kinney v. D.C., 994 F.2d at 11; Brock v. Claridge Hotel & Casino, 846

F.2d 180, 184 (3d Cir.), cert. denied, 488 U.S. 925 (1988)).  Defendants' CTO policies

completely undermine this rationale by penalizing salaried employees who wish to

exercise any "discretion to manage their time" that deviates from Defendants'

predetermined office hours.  Defendants do not pay overtime to their salaried

employees for coming in early or working late, but they insist on being reimbursed for

any absences during office hours through full-day deductions from salaried employees'

CTO and corresponding deductions from their final paychecks, and they urge salaried

employees not to come to work at all if they want to take partial days off. These policies render it extremely difficult and undesirable for Defendants' salaried employees to plan workweeks that involve any absences during Defendants' normal office hours, and this, in turn, undermines their discretion to manage their time. Thus, Defendants' policies deny their salaried employees both the protection of the FLSA's overtime provisions and the status and discretion that justify and form the basis for the exemption. See 69 FR at 22177; Kinney v. D.C., 994 F.2d at 11 ("The [salary basis] regulation is intended, after all, to divide employees into classes based on their status, not to identify employees deserving compensation for individual losses. Payment on salary basis … indicates employees who are given discretion in managing their time and their activities and who are not answerable merely for the number of hours worked or number of tasks accomplished.").

III.    **ARGUMENT**

   A.    **The District Court Is Authorized to Issue Notice to Potential Opt-Ins**

   As set forth in Plaintiffs' original Motion to Facilitate 216(b) Notice, the FLSA allows an employee to bring an action on his or her own behalf and on behalf of all others "similarly situated." 29 U.S.C. §216(b). However, putative participants in the FLSA collective action must affirmatively "opt-in" to be covered by the suit. Id.; Kane v. Gage Merchandising Services, Inc., 138 F.Supp.2d 212, 214 (D. Mass. 2001); Hipp v. Liberty National Life insurance Co., 252 F.3d 1208, 1217 (11th Cir. 2001). The statute of limitations for each putative potential class member is not tolled until he or she individually opts into the litigation. 29 U.S.C. §216(b); Partlow v. Jewish Orphans'

Home of Southern California, Inc., 645 F.2d 757, 759 (9th Cir. 1981) (abrogated on other grounds by Hoffman-La Roche Inc. v. Richard Sperling et al., 493 U.S. 165 (1989)).  To address the problem of FLSA rights made stale through lack of knowledge, the Supreme Court has held that courts may facilitate the issuance of a notice informing potential opt-in plaintiffs of the pending FLSA collective action.  Kane v. Gage, 138 F.Supp.2d at 214 (citing Hoffman La Roche Inc., 493 U.S. at 170).  Court approval and facilitation of notice serve the goals of "avoiding a multiplicity of duplicative suits and setting cutoff dates to expedite disposition of the action."  Hoffman-La Roche, 493 U.S. at 171.

**B.    Issuance of Notice Is Appropriate, As Plaintiffs Meet the Similarly Situated Standard**

> *i.    Plaintiffs need only make a modest factual showing that similarly situated employees may exist.*

As discussed in Plaintiffs' original Motion, for an opt-in class to be created under Section 216(b) and for notice to issue, Plaintiffs must demonstrate that similarly situated potential class members may exist.  Grayson v. K Mart Corp., 79 F.3d 1086, 1096 (11th Cir. 1996), cert. denied, 519 U.S. 982 (1996); Reeves v. Alliant Techsystems, Inc., 77 F.Supp.2d 242 (D.R.I. 1999).  Neither the FLSA nor the applicable regulations define the term "similarly situated."  However, the majority of courts, as well as recent decisions in this circuit, agree that certification should be administered using the two-step approach articulated by the Fifth Circuit in Mooney v. Aramco, 54 F.3d 1207 (5th Cir. 1995).  See Kane v. Gage, 138 F.Supp.2d at 214.  Under this two-step approach, the court first preliminarily certifies a collective action, orders notice to the potential opt-

ins based on a modest evidentiary showing, and permits an opt-in period.  During this

"'notice stage,' the court usually relies 'only on the pleadings and any affidavits which

have been submitted' … [and] some courts have held that, at the 'notice' stage, plaintiffs

need only make substantial allegations that the putative class members were subject to

a single decision, policy, or plan that violated the law." Id. (citing Mooney, 54 F.3d at

1214).  Second, after discovery, the court reviews the preliminary certification and

determines whether the case should proceed as a collective action. Id.  At both stages,

the court assesses whether plaintiffs and the potential opt-ins are similarly situated.  At

the first stage, however, "this determination is made using a fairly lenient standard, and

typically results in 'conditional certification' of a representative class." Mooney, 54 F.3d

at 1213-14.[3]  Plaintiffs need not be identical to the putative class members, but need

only be similar. Grayson, 79 F.3d at 1097.[4]  It is well-settled that the preliminary notice

motion is not a ruling on the merits of the Plaintiffs' claims, and that courts should not

inquire into the merits of the case at the "notice" stage. Grayson, 79 F.3d at 1099 n.17;

Hyman v. First Union Corp., 982 F.Supp. 1, 3-5 (D.D.C. 1997); Eisen v. Carlisle &

Jacquelin, 417 U.S. 156, 177 (1974).

---

[3] The standard at the 'notice' stage "is considerably 'less stringent' than the proof required pursuant to Fed. R. Civ. P. 20(a) for joinder or Fed. R. Civ. P. 23 for class certification." Grayson, 79 F.3d at 1096.

[4] Indeed, allowing early notice and full participation by the opt-ins "assures that the full 'similarly situated' decision is informed, efficiently reached, and conclusive." Sperling v. Hoffman-LaRoche, 118 F.R.D. 392, 406 (D.N.J. 1998).  Once the notice and opt-in period is complete, the Court will have the benefit of knowing the actual makeup of the collective action.  Thus, early notice will help the court to manage the case because it can "ascertain the contours of the action at the outset." Hoffman-La Roche, 493 U.S. at 172-73.

      ii.     *Plaintiffs have easily met their lenient burden and made a modest factual showing to demonstrate that similarly situated class members may exist.*

As discussed in the original Motion, it is clear that Plaintiffs face only a "modest" or "lenient" burden at this early stage.  Although this Court previously expressed concern that Plaintiffs had not met this burden with respect to their allegation that Defendants' policies violate the "duties" test, Plaintiffs have since bolstered their evidentiary support for the "duties" test allegation.[5]  In this Renewed Motion to Facilitate 216(b) Notice, Plaintiffs advance the allegation that Defendants' policies violate the "salary basis" test, which is much more readily demonstrable, as Plaintiffs need only demonstrate that there may be other current and former employees of Defendants who are similarly situated in that they are or were (1) salaried, (2) not paid overtime, and (3) subject to Defendants' company-wide CTO policies, rather than having to demonstrate that Plaintiffs and other potential class members may have similar duties.  Plaintiffs may demonstrate that similarly situated class members may exist by making a "modest factual showing sufficient to demonstrate that [plaintiffs] and potential plaintiffs together were the victims of a common policy or plan that violated the law."  <u>Hoffman v. Sbarro, Inc.</u>, 982 F.Supp. 249, 261 (S.D.N.Y. 1997).  All a plaintiff needs to show "is that some identifiable factual or legal nexus binds together the various claims of the class members in a way that hearing the claims together promotes judicial efficiency and comports with the broad remedial policies underlying the FLSA."  <u>Ballaris v. Wacker</u>

---

[5] See Plaintiffs' Reply to Defendants' Opposition to Plaintiffs' Motion to Facilitate 216(b) Notice and the evidentiary materials submitted with it.

Siltronic Corp., 2001 U.S. Dist. LEXIS 13354, 144 Lab. Case (CCH) P34351 (D. Or.

Aug. 24, 2001) (citing Wertheim v. State of Arizona, 1993 WL 603552 (D.Ariz. 1993)).

Here, the plaintiffs allege that Defendants' company-wide policies violate the

"salary basis" test with respect to all salaried employees of Defendants.  Although the

evidence submitted herewith is sufficient to demonstrate Defendants' violation of the

"salary basis" test, the merits of Plaintiffs' claims are not at issue here, as the focus at

the notice stage "is not on whether there has been an actual violation of law but rather

on whether the proposed plaintiffs are 'similarly situated' under 29 U.S.C. 216(b) with

respect to their allegations that the law has been violated."  Young v. Cooper Cameron

Corp., 229 F.R.D. 50, 54 (S.D.N.Y. 2005).  On this decisive point, there can be no

question that Plaintiffs are "similarly situated" to all other exempt employees subject to

Defendants' policies:  Plaintiffs allege, and Defendants admit, that they are classified as

exempt and are not paid overtime (Second Amended Complaint ¶¶ 6-7, 18; O'Donnell

Aff., ¶ 4; Jolicoeur Aff., ¶ 4; Moore Aff., ¶ 4; Defendants' Answer, ¶ 15); Plaintiffs allege,

and Defendants admit through their employee handbook, that Defendants employ other

individuals classified as "Exempt Employees" who are not paid overtime (Second

Amended Complaint ¶¶ 6-7, 18; Ex. D, p. 129); and Plaintiffs allege that they and other

exempt employees of Defendants frequently worked more than 40 hours per week

(Second Amended Complaint ¶ 18; O'Donnell Aff., ¶ 4; Jolicoeur Aff., ¶ 4; Moore Aff., ¶

4), which is supported by Defendants' statements that Exempt Employees "are

expected to work whatever hours are necessary to do their jobs properly" (Ex. D, p.

129); that "[a]s a general rule, RHI offices are open Monday through Friday from 8:30

a.m. to 5:30 p.m. as normal operating hours and phones are answered from 7:30 a.m. to 6:00 p.m.," i.e., that to be present for Defendants' normal operating hours would require exempt employees to be present for 45 hours per week (Ex. D, p. 129), and that "Defendants admit that RHI's Staffing Managers, Account Executives, and Account Managers are paid a salary and that, as exempt employees, they worked as necessary to perform their job duties" (Defendants' Answer, ¶ 15).  Furthermore, Defendants' Employee Handbook makes clear that it applies to all regular employees and that the policies therein – which Plaintiffs allege violate the "salary basis" test for the reasons set forth above – apply to exempt as well as non-exempt employees.  Ex. D, pp. 119, 123, 137, 147-48.  Therefore, there can be no question that Plaintiffs have satisfied their modest burden of showing that a class of similarly situated employees may exist. Indeed, Defendants cannot plausibly deny that within the past three years, they have employed individuals classified as exempt from overtime who were subject to the company-wide policies set forth in Defendants' Employee Handbook, many of whom may have worked more than 40 hours in a week.  Since the merits of the plaintiffs' overtime claims are not at issue here, and their allegation that Defendants have employed similarly situated salaried employees is so readily and conclusively established herein, this Court should grant Plaintiffs' motion for leave to send an opt-in notice to these similarly situated salaried employees.

In another misclassification case quite similar to the instant action, Patton v. Thomson Corp., 364 F.Supp.2d 263, 267 (E.D.N.Y. 2005), the sole plaintiff alleged a nationwide class action on behalf of similarly situated Client Service Managers ("CSM"),

and notice was granted based on the plaintiff's allegations that she was not paid overtime, that she was misclassified as exempt, and "that all CSMs have the same job duties and assignments and that they are paid in the same manner"; the defendant's admission in its answer that CSMs were paid on a salary basis and classified as exempt (which Defendants in the instant case also admitted with respect to Plaintiffs in their Answer, at ¶ 15); and the plaintiff's job description.  Similarly, in Gjurovich v. Emmanuel's Marketplace, Inc., 282 F.Supp.2d 101 (S.D.N.Y. 2003), notice was approved based on the allegations in the complaint and the sworn declaration of the sole named plaintiff that he was not paid overtime, that he was misclassified as exempt, and that other employees were also misclassified and not paid overtime.

Many other recent cases have granted conditional certification at the notice stage based on the plaintiffs' allegations alone.  See, e.g., Dietrich v. Liberty Square, LLC, 230 F.R.D. 574 (N.D. Iowa 2005) (notice granted based on allegations in two affidavits); Clarke v. Convergys Customer Management Group, Inc., 370 F.Supp.2d 601 (S.D. Tex. 2005) (notice granted based on detailed allegations in pleadings and affidavits); Neagley v. Atascosa County EMS, 2005 WL 354085 (W.D. Tex. 2005) (notice granted based on allegations in complaint alone); Pendlebury v. Starbucks Coffee Co., 2005 WL 84500 (S.D. Fla. 2005) (notice granted in exemption case based on allegations in complaint and declarations of four former employees); Brown v. Money Tree Mortgages, Inc., 222 F.R.D. 676 (D. Kan. 2004) (notice granted based on complaint and two affidavits); Reeves v. Alliant Techsystems, Inc., 77 F.Supp.2d 242 (D.R.I. 1999) (notice

granted based solely on plaintiffs' "alleging that the putative class members were together the victims of a single decision, policy or plan").

In this case, Plaintiffs have provided detailed allegations in their pleadings and affidavits; cited Defendants' admissions in their responsive pleadings; and provided evidentiary support for their allegations concerning Defendants' policies by attaching evidentiary exhibits drawn from Defendants' website materials, Employee Handbook, and Human Resources forms, as well as from Plaintiff O'Donnell's employment records, to this Renewed Motion and their Reply to Defendants' opposition to their original motion.  Such a showing more than satisfies the "lenient" standard for collective action notice.[6]  See Kane v. Gage, 138 F.Supp.2d at 215; Mooney, 54 F.3d at 1213-14.

### C.    Notice Should Be Expedited Due to the Running of the Statute of Limitations

Notice to the putative class should be expedited in this action in order to prevent the wasting of the employees' claims due to the running of the FLSA statute of limitations.  The employees' claims are governed by a two-year statute of limitations, or in the case of "willful" violations, a three-year limitations period.  29 U.S.C. §256(a).  The statute of limitations is generally not tolled for any individual class member until that

---

[6] With respect to Plaintiffs' allegations that Defendants violated the "duties" test and therefore misclassified its Staffing Managers, Recruiting Managers, Account Executives, and Account Managers as exempt, Plaintiffs rely upon their pleadings and affidavits, their earlier Motion to Facilitate 216(b) Notice and Reply to Defendants' Opposition to Plaintiffs' Motion to Facilitate 216(b) Notice, and the evidence submitted as exhibits in connection with the foregoing documents.  As set forth in the earlier briefing on this issue, these alleged violations of the "duties" test arise from company-wide policies or practices of Defendants and were suffered by Plaintiffs as well as all other similarly situated Staffing Managers, Recruiting Managers, Account Executives, and Account Managers, regardless of their division, office location, and dates employed.

individual has filed a written consent form with the Court.  29 C.F.R. §790.21(b)(2);

Grayson, 79 F.3d at 1105-06.

In this motion, the plaintiffs have set forth evidence and legal argument that more

than meets their modest burden for conditional certification, and Plaintiffs submit that

their allegation that there may be other employees of Defendants who are "similarly

situated" in that they are also exempt, not paid overtime, and subject to Defendants'

company-wide policies cannot seriously be denied.  Therefore, Plaintiffs' Renewed

Motion to Facilitate 216(b) Notice should be granted immediately, without need for

further discovery or briefing, in order to allow Defendants' salaried employees to opt in

as quickly as possible to protect their interests and prevent the statute of limitations

from potentially diminishing the value of their claims.  Since a grant of notice to the class

of similarly situated exempt employees subject to Defendants' alleged violations of the

"salary basis" test is appropriate at this time, and since the class of similarly situated

exempt Staffing Managers, Recruiting Managers, Account Executives, and Account

Managers is a subset of the class of all exempt employees, it would be most efficient for

this Court to approve Plaintiffs' proposed notice, which refers to Plaintiffs' allegations of

Defendants' violations of both the "duties" test and the "salary basis" test, at this time.

Permitting Defendants to engage in further discovery and briefing related to Plaintiffs'

allegations with respect to the "duties" test would be unnecessary and would lead to

further delay.

Defendants have misclassified their salaried employees as exempt and denied

them overtime compensation for well over three years.  Consequently, the statute of

limitations is potentially diminishing the value of the employees' claims with each day

that passes. The information contained in the proposed notice (attached as Exhibit G)

should therefore be issued as soon as possible to allow these non-exempt employees

to act to protect their interests. Without notice, the potential class members are

unaware of the pendency of the action and their right to opt in, and are powerless to

prevent their claims from wasting away. Moreover, as many of the potential class

members no longer work for Defendants, their whereabouts will be increasingly difficult

to track, and evidence may be lost with the passing of time. Therefore, notice should be

expedited in this action to the maximum extent feasible, and should be sent to all

salaried employees employed by Defendants during the three-year potential liability

period. See Belcher v. Shoney's, Inc, 927 F.Supp. 249, 252 (M.D. Tenn. 1996)

(ordering notice to all employees who were employed within three-year limitations

period); Herrera v. Unified Mgmt, 2000 U.S. Dist. LEXIS, 12406 (N.D. Ill. 2000).

### D.    The Proposed Notice is Fair and Adequate

A collective action depends "on employees' receiving accurate and timely notice

concerning the pendency of the collective action, so that they can make informed

decisions about whether to participate." Hoffman-La Roche Inc., 493 U.S. at 170. Use

of a Court-approved notice prevents "misleading communications." Id. at 172.

Plaintiffs' proposed notice to potential opt-ins is "timely, accurate and informative," as

required. Id.; see the proposed notice and opt-in form attached as Exhibit G. It

provides notice of the pendency of the action and of the opportunity to opt-in. Plaintiffs'

legal claims are accurately described. The proposed notice advises potential opt-ins

that the Court has made no finding as to the merits of the case and that they are not required to participate.  The notice also provides clear instructions on how to opt-in and accurately states the prohibitions against retaliation or discrimination for participation in an FLSA action.  See 29 U.S.C. §215(a)(3).

      **E.**    **The Proposed Limited Discovery is Essential to Ensure Timely Notice**

Discovery of a mailing list for class members is a routine component of notice in collective actions.  Hoffman-LaRoche, 493 U.S. at 1470 ("District Court was correct to permit discovery of the names and addresses…"); Grayson, 79 F.3d at 1111 (ordering production of mailing list); Belcher, 927 F.Supp. at 252 (same).  Indeed, such a mailing list is essential to timely notice.  Hoffman-LaRoche, 493 U.S. at 170 ("timely notice" required).  Therefore, this Court should order Defendants to produce a computer-readable data file containing the names, last known mailing and e-mail addresses, telephone numbers, and dates of employment for all salaried employees employed by Defendants anywhere in the United States within the three years preceding the filing of this action.[7]

---

[7] If this Court finds that the grant of notice to all Defendants' salaried employees should only refer to Defendants' alleged violation of the "salary basis" test, Plaintiffs will, after the Court is satisfied that notice regarding Defendants' alleged violation of the "duties" test is appropriate, request a separate data file providing the names and contact information for all Staffing Managers, Recruiting Managers, Account Executives, and Account Managers in order to provide notice to these employees of this separate claim.

## IV.    CONCLUSION

For the foregoing reasons, this Court should grant Plaintiffs' Renewed Motion to

Facilitate 216(b) Notice.

<div style="margin-left: 40%;">

Respectfully submitted,
IAN O'DONNELL and DAVID JOLICOEUR,
ON BEHALF OF THEMSELVES AND ALL
OTHERS SIMILARLY SITUATED,
By their attorneys,


_s/Shannon Liss-Riordan_____
Shannon Liss-Riordan, BBO #640716
Stephen Young, BBO #662914
PYLE, ROME, LICHTEN, EHRENBERG
    & LISS-RIORDAN, P.C.
18 Tremont Street, Ste. 500
Boston, MA 02108
(617) 367-7200

</div>

Dated:  November 30, 2005