# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IAN O'DONNELL, DAVID JOLICOEUR, AND STACEY MOORE, on behalf of themselves and all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> ROBERT HALF INTERNATIONAL INC. AND ROBERT HALF CORPORATION, <br><br> Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)   CIVIL ACTION NO.  04-CV-12719 NMG<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## DEFENDANTS' MEMORANDUM OF LAW
## IN SUPPORT OF THEIR MOTION FOR PARTIAL SUMMARY JUDGMENT

Defendants Robert Half International Inc. and Robert Half Corporation (collectively "RHI" or the "Company") submit this Memorandum of Law in support of their Motion for Partial Summary Judgment and ask that the Court dismiss all claims in Plaintiffs' Second Amended Complaint based on the so-called "salary basis test" because the undisputed facts demonstrate that each of the named Plaintiffs received his or her full salary for each week in which he or she worked, and no impermissible deductions were made from any of their salaries.

### INTRODUCTION

In their Second Amended Complaint, Plaintiffs make a weak and speculative attempt to argue that RHI violated the Federal Fair Labor Standards Act ("FLSA") by taking deductions from employees' final paychecks.[1]  Plaintiffs offer a convoluted and highly technical theory by which it <u>might</u> be possible for an employee to work a partial day but have a full day deducted

---

[1] Plaintiffs do not allege that RHI took deductions from any paychecks other than final paychecks.

from his or her allotted leave, which <u>might</u> give rise to a deduction from allotted leave that would cause the employee to incur a negative leave balance, which <u>might</u> result in that unearned leave being deducted from the employee's final paycheck.  Plaintiffs further argue that if this series of theoretical events had occurred, RHI would have violated the salary basis test.  Notwithstanding this speculation, the undisputed facts show that <u>none</u> of the Plaintiffs were even arguably subject to improper deductions that affected their exempt status under the FLSA's salary basis test.  Indeed, two of the three Plaintiffs received <u>gratuitous payments</u> for accrued but unused leave time, and the third Plaintiff was not subject to any impermissible deductions from his weekly salary.  In addition, Plaintiffs' argument that RHI compromised the salary basis test by "forcing" them to be absent is wholly without support.  Only one Plaintiff even alleges that she was subjected to a "forced absence," and the undisputed evidence clearly demonstrates that the allegations upon which she bases this claim are untrue.  Moreover, even if the facts alleged by Plaintiffs were true, as a matter of law those facts do not give rise to a salary basis test violation.  Indeed, the Court has already rejected Plaintiffs' attempt to assert their salary basis claims as a collective action because they have failed to provide any substantive evidence of a salary basis violation.  *See* docket no. 60 (May 10, 2007, Memorandum and Order denying Plaintiffs' Renewed Motion to Facilitate § 216(b) Notice).  Plaintiffs' salary basis claims fail, and the Court should grant Defendants' motion for partial summary judgment.

SUMMARY OF FACTUAL BACKGROUND

**I.     RHI's CHOICE Time Off Policy and Salary Continuation Payments**

RHI's "CHOICE Time Off" ("CTO") benefit includes what are commonly referred to as vacation days, sick days, and other personal days off.  Statement of Undisputed Material Facts ("SOF") ¶ 2.  RHI employees accrue CTO leave on an incremental basis throughout the year according to a schedule.  *Id.*  The Company maintains CTO "banks" for employees that track

2

accrued days off. *Id.* Partial-day deductions from CTO banks are not permitted under the policy. SOF ¶ 4. Generally, an exempt employee who leaves work after working a substantial part of the day does not use any CTO for the time away from work. *Id.* If approved by the employee's individual supervisor, an exempt employee may borrow up to five days of unearned CTO, which are advanced only in full-day increments. SOF ¶ 5. If the Company allows an employee to borrow CTO time and the employee's employment is terminated before he or she earns the borrowed CTO, the Company may, in certain circumstances, deduct the amount owed from the employee's final paycheck, subject to the employee's manager's discretion. SOF ¶ 6.

"Salary continuation" is a gratuitous payment that RHI typically pays to an employee when he or she provides advance notice of resignation, and the Company chooses not to require or allow the employee to work through his or her notice period. SOF ¶ 7. Generally, RHI pays the employee through the notice period but asks him or her to leave the same day the resignation is tendered. *Id.*

## II.    Plaintiffs' Employment with RHI

RHI employed Plaintiff David Jolicoeur ("Jolicoeur") from July 22, 2002, until he resigned his employment on September 20, 2003. SOF ¶ 8. No deductions were taken from his final paycheck, dated September 30, 2003. SOF ¶ 9. In fact, in his final paycheck, Jolicoeur received payment for thirty-two hours of accrued CTO time and his full salary for two days that he did not work. *Id.*

Similarly, RHI took no deductions from Plaintiff Stacey Moore's ("Moore") final paycheck. Moore resigned her employment on February 2, 2004. SOF ¶ 10. Moore's last paycheck, dated February 3, 2004, shows that she received payment – not a deduction – for twelve hours of accrued CTO time. SOF ¶ 11.

BO1 15833894.2

Moore also makes several allegations in her affidavit that are apparently intended to evidence "forced" absences.  Affidavit of Stacey Moore ("Moore Aff."), ¶ 23 (attached to Second Amended Complaint). Moore's affidavit states that "[w]henever I would ask to take part of a day off, my supervisors would urge me to take the whole day off, and this usually discouraged me from taking any time off at all" and that, when she wanted to take two half days off, "my supervisors said something to the effect that I 'should just take both days off' and charge them to my paid leave."  *Id.*  However, Moore also alleges that, despite her supervisors' suggestions that she take both days off when moving, she chose not to do so and worked for half-days, regardless of RHI's CTO policy.  *Id.*  She similarly alleges that, instead of "forcing" her to take time off, the policy usually resulted in her not taking any time off.  *Id.*  Moore further alleges that when she took the two half-days off in or about July 2003 to move, she received one full-day deduction from her CTO bank.  *Id.*  However, no time was deducted from Moore's CTO bank in June, July, or August 2003.  SOF ¶ 15.  If Moore took the two half-days off as she alleges, she received them for free, without any reduction in her available paid leave.  SOF ¶ 16.

Plaintiff Ian O'Donnell ("O'Donnell") resigned his employment with RHI in August 2003.  SOF ¶ 12.  His last day at work was August 6, 2003; however, RHI paid his regular salary through August 15, 2003.  *Id.*  O'Donnell's last paycheck, dated August 20, 2003, shows a deduction for twenty-eight hours of overdrawn CTO time.  SOF ¶ 13.  However, in addition to his salary, O'Donnell received salary continuation in the amount of $946.15, amounting to seven days' pay for days he did not work.  SOF ¶¶ 12-13.  Therefore, O'Donnell's weekly salary was not decreased by the deduction of CTO time from the check.  SOF ¶ 14.  In fact, there is no week in which O'Donnell worked for RHI for which he did not receive his full weekly salary.  *Id.*

4

<u>**ARGUMENT**</u>

### I.    Standard of Review

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) (summary judgment is a procedural device "to isolate and dispose of factually unsupported claims or defenses."). "[C]onclusory allegations, improbable inferences, and unsupported speculation" are insufficient to defeat summary judgment. *Medina-Munoz v. R.J. Reynolds Tobacco Co.*, 896 F.2d 5, 8 (1st Cir. 1990). Here, the material undisputed facts establish that RHI did not take deductions that compromised the salary basis test.

### II.    Plaintiffs' Salary Basis Test Claims Are Conclusively Refuted by Documentary Evidence

In order to meet the requirements of the FLSA's white collar exemptions, an employee must be paid on a salary basis. *See, e.g.*, 29 C.F.R. § 541.200. An employee is paid on a salary basis "if the employee regularly receives each pay period on a weekly, or less frequent basis, a predetermined amount constituting all or part of the employee's compensation, which amount is not subject to reduction because of variations in the quality or quantity of the work performed."[2] 29 C.F.R. § 541.602(a); *Cowart v. Ingalls Shipbuilding, Inc.*, 213 F.3d 261, 264-65 (5th Cir. 2000). An employer may take certain deductions, such as deductions for absences of a day or more due to personal reasons or illness, from an employee's salary without destroying that employee's exempt status. *See* 29 C.F.R. § 541.602(b)(2). Moreover, an employer need not pay

---

[2] Massachusetts has adopted the FLSA's definitions of the white-collar exemptions, of which the salary basis test is part. *See* 455 Mass. Code Regs. 2.02(3) (2003).

a resigning employee's full salary for the final week in which he or she works, and may prorate the salary to pay only for the days actually worked. 29 C.F.R. § 541.602(b)(6). In addition, deductions from leave banks, including partial-day deductions, do not compromise the salary basis test. *See U.S. Dept. of Labor Wage & Hour Opinion Letter FLSA2005-7, dated January 7, 2005*, 2005 WL 330606 (partial-day deductions from leave banks allowed) (attached as Exhibit A).

In their Second Amended Complaint, Plaintiffs allege that RHI violated the salary basis test, and therefore the FLSA, allegedly because (1) the CTO policy set forth in RHI's employee handbook might, in some circumstances, give rise to a violation of the salary basis test if certain deductions were made from an employee's final pay after he or she took leave in excess of the accruals in his or her CTO bank, and (2) RHI's policy violates the salary basis test by creating an incentive for an employee to take off a full day of work, even if he or she is available to work a partial day. *See* Second Amended Complaint ¶¶ 51, 52, 59, 60. As described in detail below, Plaintiffs' hypothetical scenarios and sheer speculation fall far short of demonstrating any violation of the salary basis test because no Plaintiff was subject to improper deductions from his or her final pay, and even if RHI had made deductions of the type about which Plaintiffs speculate, the deductions would not violate the salary basis test.

First, Plaintiffs allege that Defendants violated the salary basis test by taking what they argue are impermissible deductions from employees' salaries, but they provide <u>no</u> evidence that such deductions ever occurred. Plaintiffs merely theorize that (1) it <u>might</u> have been possible for an employee to work a partial day but have a full day deducted from his or her leave bank, (2) that such a deduction from an employee's leave bank <u>might</u> have caused him to accrue a negative balance in his leave bank, and (3) if both of these events had occurred, RHI <u>might</u> have deducted

the negative leave balance for the full-day absence from the employee's final paycheck. Plaintiffs argue that if all three of these theoretical events were to have occurred, RHI would have violated the salary basis test by taking a partial-day deduction from the employee's salary. However, notwithstanding Plaintiffs' speculation about what <u>might</u> have occurred, the undisputed evidence establishes that no impermissible deductions were taken from <u>any</u> Plaintiff's salary.

Plaintiffs go to great lengths to avoid the reality that none of them were subject to even a single impermissible deduction. Their Second Amended Complaint does not allege that Plaintiffs themselves were subject to impermissible deductions from their salaries, and the affidavits submitted by O'Donnell and Jolicoeur in support of Plaintiffs' Renewed Motion to Facilitate § 216(b) Notice ("Renewed Motion") make no mention of the CTO policy or any claimed deductions from their salaries. Moore's affidavit, also submitted in support of the Renewed Motion, states only that her supervisors urged her to take full days off as opposed to partial days. Moore Aff., ¶ 23. She does not claim – and cannot claim – that there were any improper deductions from her paycheck. As discussed in detail below, both Jolicoeur and Moore received <u>payouts</u> for unused CTO time in their final paychecks, and the deduction for CTO time taken from O'Donnell's final paycheck did not reduce his salary for that pay period.

In addition, Plaintiffs attempt to base their salary basis claim on Moore's allegation that she was "encouraged" to take full days off work. This argument fails because (1) Moore also alleges that, despite her supervisors' encouragement to take full days off, she took two half days; (2) the evidence shows that Moore was charged for <u>no</u> vacation days during the time she alleges she took the half-days off; and (3) even if true, Moore's allegations do not give rise to a violation of the salary basis test.

7

### A.     Deductions From Leave Banks Cannot Compromise Employees' Exempt Status Under the FLSA

Even if RHI had made partial-day deductions from employees' CTO banks, that practice would not compromise the employees' exempt status by violating the salary basis test.  The Department of Labor has made clear that deductions from a leave bank are permissible and do not violate the salary basis test.  *See Preamble to August 2004 Final Salary Basis Regulations*, 69 Fed. Reg. 22,178 ("We agree that employers, without affecting their employees' exempt status, may take deductions from accrued leave accounts"); *Dept. of Labor Wage & Hour Opinion Letter dated April 14, 1992,* 1992 WL 845095 ("Where an employer has bona fide sick leave and vacation pay benefit plans, it is permissible to substitute or reduce the accrued leave in the plans . . . without affecting the salary basis of payment" as long as the employee receives his or her guaranteed salary) (attached as Exhibit B).  Furthermore, the Department of Labor clearly distinguishes between improper partial-day deductions <u>from salary</u>, and permissible partial-day deductions <u>from a leave bank</u>.  *See U.S. Dept. of Labor Wage & Hour Opinion Letter FLSA2005-7, dated January 7, 2005*, 2005 WL 330606 (partial-day or full-day deduction from leave banks allowed because "the one or more <u>full-day</u> deduction requirement applies to deductions from an employee's <u>salary</u>, as opposed to a leave bank.") (emphasis in original).  *See also Webster v. Public Sch. Employees of Wash.*, 247 F.3d 910, 917 (9th Cir. 2001) ("'amount' and 'compensation' in the regulation refers to salary and therefore a reduction in the paid leave time does not affect the Plaintiffs' status as salaried employees ... [b]ecause leave time is not salary" ); *Cooke v. Gen. Dynamics Corp.*, 993 F. Supp. 50, 54-55 (D. Conn. 1997) ("where the only deductions for partial-day absences are to an employee's paid leave accounts ... the salaried status of an employee has not been violated"); *Wolfslayer v. Ikon Office Solutions, Inc.*, 2004 WL 2536833, *6 (E.D. Pa.) (partial day deductions from vacation leave do not violate salary basis

test).  In their Renewed Motion, Plaintiffs cite *Caperci v. Rite Aid* for the proposition that partial-day deductions may compromise exempt status, but *Caperci* deals with deductions from <u>pay</u>, and does not apply to deductions from leave banks. 43 F. Supp. 2d 83 (D. Mass. 1999).

**B.     Plaintiffs Moore and Jolicoeur Were Subject to No Deductions**

Jolicoeur and Moore cannot show that there were deductions from their final pay because there were none.  In fact, the evidence conclusively shows that both individuals received <u>payment</u> for accrued CTO time in their final paychecks.  SOF ¶¶ 9, 11.  In addition, Jolicoeur received a gratuitous payment for days in which he did not work.  Because Plaintiffs' salary basis claim is premised on impermissible deductions from final payment of salary, and neither Jolicoeur nor Moore had <u>any</u> deductions taken from their final pay, it is clear that there was no violation of the FLSA's salary basis test with regard to these individuals.

**C.     O'Donnell Was Subject to No Impermissible Deductions From His Salary**

Plaintiffs offer O'Donnell's final paycheck, attached to their Renewed Motion, as evidence that an impermissible deduction was taken. Renewed Motion, Exhibit F.  However, Plaintiffs offer no evidence (and do not allege) that O'Donnell ever had a full day deducted from his CTO bank when he worked a partial day.  Further, full-day deductions from leave banks for full-day absences are permissible under the FLSA.  While O'Donnell's last paycheck, dated August 20, 2003, shows a deduction for twenty-eight hours of borrowed CTO time, it also shows that O'Donnell received a gratuitous severance payment in the amount of $946.15 for days on which he did not work.  SOF ¶¶ 12-13.  Therefore, O'Donnell received the full amount of his regular salary for each week in which he worked for RHI.  His <u>salary</u> was not decreased by the setoff of borrowed CTO time from the check.  Instead, it was the gratuitous severance payment that was reduced.  The salary basis test's prohibition against improper deductions from an employee's weekly <u>salary</u> does not extend to additional, <u>non-salary</u> compensation – such as the

9

gratuitous severance payment – an employer may provide to exempt employees.  *See U.S. Dept. of Labor Wage & Hour Opinion Letter FLSA2006-24, dated July 6, 2006*, 2006 WL 2792438 (employer can make deductions from commission payments to employees without affecting exempt status) (attached as Exhibit C); *U.S. Dept. of Labor Wage & Hour Opinion Letter FLSA2006-24NA, dated November 3, 2006*, 2006 DOLWH LEXIS 59, *5 (deductions from bonus payments of exempt employees permissible) (attached as Exhibit D).  Because the deduction from O'Donnell's gratuitous severance payment did not reduce his weekly salary, O'Donnell cannot establish a violation of the FLSA based on the salary basis test.

> **D.  Plaintiffs Cannot Establish a Salary Basis Test Violation Based on a Claim of "Forced Absences"**

Plaintiffs further allege that RHI's CTO policy violates the salary basis test by "forcing" employees who may have been willing and able to work a partial day to be absent from work for the full day.  According to Plaintiffs, "[t]hese full-day deductions from employees who would have worked for partial days constitute deductions from salary for 'absences occasioned by the employer,' and therefore, salaried employees subject to the CTO policy are 'not paid on a salary basis,' as required by the FLSA."  Second Amended Complaint, ¶ 59.  However, even apart from the fact that such deductions from leave banks are permissible (*supra*, at 7-8) Plaintiffs also present no evidence whatsoever that RHI's CTO policy "forced" any employee to be absent from work at any time.

Moore makes several allegations in her affidavit that are apparently intended to evidence such "forced" absences.  They do nothing of the sort.  Moore's affidavit states that "[w]henever I would ask to take part of a day off, my supervisors would urge me to take the whole day off, and this usually discouraged me from taking any time off at all" and that, when she wanted to take two half days off, "my supervisors said something to the effect that I 'should just take both days

off' and charge them to my paid leave." Moore Aff., ¶ 23. Even if true, neither of these statements provides evidence of "forced" absences. To the contrary, Moore alleges that, despite her supervisors' suggestions that she take both days off when moving, she chose not to do so and worked for half-days regardless of RHI's CTO policy. *Id*. She similarly claims that, instead of "forcing" her to take time off, the policy usually resulted in her not taking any time off. *Id*. Regardless of any time off that Moore may have taken or of any conversations she may have had with her supervisors, the undisputed evidence shows that no time was deducted from Moore's CTO bank "in or about" July 2003 as she claims. SOF ¶ 15. If she took the two half-days off as she alleges, she received them for free, without any reduction in her available paid leave. SOF ¶ 16.

Moreover, even if Moore's allegations were true, or if Plaintiffs could demonstrate that some employees chose to take a full day off rather than a partial day, that showing would not establish a violation of the FLSA's salary basis test for three reasons. First, Plaintiffs' arguments fail because, as explained above, the salary basis test only pertains to deductions from an employee's salary for absences occasioned by the employer. Plaintiffs argue that RHI's CTO policy forced full-day absences that were deducted from employees' CTO banks – not from their salaries. Further, an employer may require that employees debit their leave banks when they are absent from work, regardless of whether the absence is employer-occasioned. *See U.S. Dept. of Labor Wage & Hour Opinion Letter dated October 24, 2005*, 2005 WL 3308612 (even during office closures due to inclement weather, an employer may direct exempt staff to take leave bank deductions without jeopardizing the employees' exempt status, since "there is no prohibition on an employer giving vacation time and later requiring that such vacation time be taken on a specific day(s)") (attached as Exhibit E). Therefore, even if RHI's CTO policy compelled

11

employees to be absent from work (despite the lack of evidence to support such a contention), deductions taken from their leave banks would not compromise the employees' exempt status under the FLSA. Finally, RHI's CTO policy specifically applies to personal absences, and an absence from work for personal reasons is not an employer-occasioned absence. An employer may take deductions from an employee's salary or leave bank when the employee is absent for personal reasons. *U.S. Dept. of Labor Wage & Hour Opinion Letter dated February 16, 2001*, 2001 WL 1558766 (when an employee is absent from work for personal reasons, an employer may deduct full or partial day from the employee's leave bank; in addition, employer may deduct from salary for full day absences for personal reasons) (Exhibit F). For these reasons, Plaintiffs' speculative theories fail to establish that RHI violated the salary basis test by forcing employee absences from work.

<u>CONCLUSION</u>

For the reasons above, RHI is entitled to summary judgment on Plaintiffs' claims to the extent that those claims are based on putative violations of the salary basis test.

Respectfully submitted,

ROBERT HALF INTERNATIONAL INC.
AND ROBERT HALF CORPORATION
By their Attorneys,

 /s/ C.J. Eaton
Richard L. Alfred (BBO # 015000)
Krista G. Pratt (BBO # 644741)
Barry J. Miller (BBO # 661596 )
C.J. Eaton (BBO # 660726)
SEYFARTH SHAW LLP
World Trade Center East
Two Seaport Lane, Suite 300
Boston, MA 02210-2028
DATED:  May 21, 2006                    Telephone:     (617) 946-4800
Telecopier:     (617) 946-4801

BO1 15833894.2

CERTIFICATE OF SERVICE

I hereby certify that this document was filed through the Court's ECF system and that a true copy of the above document was served on Shannon Liss-Riordan, an attorney for Plaintiffs, Pyle, Rome, Lichten, Ehrenberg, & Liss-Riordan, 18 Tremont Street, Suite 500, Boston, MA 02109, by first class mail on May 21, 2007.

/s/ C.J. Eaton

C.J. Eaton

BO1 15833894.2



Wage and Hour Division
United States Department of Labor

Opinion Letter
Fair Labor Standards Act (FLSA)
FLSA2005-7
January 7, 2005

***

   This is in response to your request for an opinion concerning whether an employer
may deduct from an exempt employee's Paid Time Off Bank (PTO) for absences of less
than a day due to personal reasons, accident, or illness, as well as whether it is
acceptable for the employer to reduce an employee's salary for absences of one or
more full days due to illness or injury when the employee's PTO bank has been
exhausted.

   As you know, section 13(a)(1) of the FLSA provides a complete minimum wage and
overtime pay exemption for any employee employed in a bona fide executive,
administrative, or professional capacity as those terms are defined in Regulations,
Part 541. See copy enclosed. An employee may qualify for exemption if all of the
pertinent tests relating to duties, responsibilities, and salary, as discussed in
the appropriate section of the Regulations, are met. One such test requires that an
otherwise exempt employee be paid on a salary basis, as described in section 541.602
of the final Regulations. [FN1]

   An employee will be considered to be paid on a salary basis if he or she [2]
"regularly receives each pay period on a weekly, or less frequent basis, a
predetermined amount constituting all or part of the employee's compensation, which
amount is not subject to reduction because of variations in the quality or quantity
of the work performed." 29 C.F.R. 541.602(a).

   Deductions from salary may be made, however, when the employee is absent from work
for one or more full days for personal reasons, other than sickness or disability.
Thus, if an employee is absent for two full days to handle personal affairs, the
employee's salaried status will not be affected if deductions are made from the
salary for two full-day absences. However, if an exempt employee is absent for one
and a half days for personal reasons, the employer can deduct only for the one full-
day absence. 541.602(b)(1).

   Deductions from salary may also be made for absences of one or more full days
occasioned by sickness or disability (including work-related accidents), if the
deductions are made "in accordance with a bona fide plan, policy or practice of
providing compensation for loss of salary occasioned by such sickness or
disability." Thus, if the employer's particular plan provides compensation for such
absences, deductions for absences of one or more full days because of sickness or
disability "may be made before the employee has qualified under the plan, policy or
practice, and after the employee has exhausted the leave allowance thereunder."
541.602(b)(2).

   To respond to your specific concern about whether or not an exempt employee's
accrued PTO leave bank may be reduced for partial day absences, the answer is yes.
Where an employer has a benefits plan (e.g., vacation time, sick leave), it is
permissible to substitute or reduce the accrued leave in the plan for the time an
employee is absent from work, whether the absence is a partial day or a full day,
without affecting the salary basis of payment, if the employee nevertheless receives
in payment his or her guaranteed salary. Payment of the employee's guaranteed salary
must be made, even if an employee has no accrued benefits in the leave plan and the
account has a negative balance, where the employee's absence is for less than a full
day. See opinion letters dated February 16, 2001, May 27, 1999; and December 4, 1998

©  2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

2005 WL 330606                                                              Page 2
2005 WL 330606 (DOL WAGE-HOUR)

(enclosed).

   As stated above, the one or more full-day deduction requirement applies to
deductions from an employee's salary, as opposed to a leave bank. Moreover, such
deductions due to absences related to sickness or disability may only be made,
without violating the salary basis of payment requirement, where the employer has a
bona fide sick leave plan. Id. Wage and Hour has found that a plan that has defined
sick leave benefits which have been communicated to eligible employees, and that
operates as described in the plan, will in general qualify as bona fide. In
addition, to be bona fide, the plan must be administered impartially, and its design
should not reflect an effort to evade the requirement that exempt employees be paid
on a salary basis. Whether a particular plan is bona fide would, however, be based
upon the actual design of and practices applicable under the plan. Significantly, a
PTO plan may qualify as bona fide even though it is not exclusively for use during
sickness or disability. Assuming that a bona fide plan exists, an employer may make
deductions from an employee's salary for absences of one or more full days because
of sickness or disability before the employee has qualified under the plan and after
the PTO/sick leave has been exhausted. Of course, an employer is not required to
establish a paid sick leave plan.

   This opinion is based exclusively on the facts and circumstances described in your
request and is given on the basis of your representation, explicit or implied, that
you have provided a full and fair description of all the facts and circumstances
which would be pertinent to our consideration of the question presented. Existence
of any other factual or historical background not contained in your request might
require a different conclusion than the one expressed herein. You have represented
that this opinion is not sought by a party to pending litigation concerning the
issue addressed herein. You have also represented that this opinion is not sought in
connection with an investigation or litigation between a client or firm and the Wage
and Hour Division or the Department of Labor.

   We trust that the above information is responsive to your inquiry.

Sincerely,

Alfred B. Robinson, Jr.

Acting Administrator

Enclosures

FN1. As you are aware, the Department of Labor has published revised Part 541
regulations that took effect on August 23, 2004; see 69 FR 22122. The old rule
addressed the issues you have raised at 29 CFR § 541.118. This opinion cites to the
final regulations, but is applicable under both the old and the revised FLSA
regulations, as there have been no changes in the specific areas about which you
have inquired.

   2005 WL 330606 (DOL WAGE-HOUR)

END OF DOCUMENT

©  2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

1992 WL 845095 (DOL WAGE-HOUR)


Wage and Hour Division
United States Department of Labor
Opinion LetterFair Labor Standards Act (FLSA)


April 14, 1992

***

This is in reply to your letters of July 25 and December 10, 1991, concerning the application of the "salary basis" test, as discussed in section 541.118 of Regulations, 29 CFR Part 541. *** You specifically request an opinion as to whether one of your acute care hospital client's (hospital) method of compensating its exempt employees is in compliance with the "salary basis" test.

You state that the hospital maintains a benefit program for its exempt employees that provides for a variety of benefits including sick leave and vacation pay. The hospital's sick leave plan provides for the accrual of benefits following the initial 90 days of employment. An employee begins to accrue vacation pay on the first day of employment.

An exempt employee with accrued sick leave benefits who is absent all or part of a day because the employee or one of his or her family members is ill will receive his or her normal compensation for the pay period. However, the employee's accrued sick leave bank will be reduced to reflect the time missed. If an employee with no accrued sick leave is absent an entire day or more, the employee's weekly salary will be reduced to reflect the time missed. However, if an employee with no accrued sick leave is absent for less than an entire day, the employee's weekly salary will not be reduced. Vacation benefits are handled in a similar manner.

Section 13(a)(1) of the Fair Labor Standards Act (FLSA) provides a complete minimum wage and overtime pay exemption for any employee employed in a bona fide executive, administrative, or professional capacity, as those terms are defined in Regulations, Part 541. An employee may qualify for exemption if all of the pertinent tests relating to duties, responsibilities and salary, as discussed in the appropriate section of the regulations, are met. One such test requires that an otherwise exempt employee

be paid on a salary basis, as described in section 541.118 of the Regulations. You indicate in your letter that we are to assume that the employees in question otherwise meet all the other requirements for exemption.

An employee will be considered to be paid on a salary basis within the meaning of the Regulations if under his or her employment agreement he or she regularly receives each pay period *** on a weekly, or less frequent basis, a predetermined amount constituting all or part of his or her compensation, which amount is not subject to reduction because of variations in the quality or quantity of the work performed.

Deductions may be made, however, when the employee is absent from work for a day or more days for personal reasons, other than sickness or accident. Thus, if an employee is absent for one or more full days to handle personal affairs, his or her salaried status will not be affected if deductions are made from his or her salary for such absences.

Deductions may also be made for absences of a day or more occasioned by sickness or disability (including industrial accidents) if the deductions are made in accordance with a bona fide plan, policy or practice of providing compensation for loss of salary occasioned by both sickness and disability. Thus, if the employeer's(sic,rld,d093098) particular plan, policy or practice provides compensation for such absences, deductions for absences of one or more full days because of sickness or disability may be made before an employee has qualified under such plan, policy or practice and after he or she has exhausted his or her leave allowance thereunder.

Where an employer has bona fide sick leave and vacation pay benefit plans, it is permissible to substitute or reduce the accrued leave in the plans for the time an employee is absent from work even if it is less than a full day without affecting the salary basis of payment, if by substituting or reducing such leave the employee receives in payment an amount equal to his or her guaranteed salary.

Based on the information contained in your letter and provided all the other requirements of section 541.118 are met, it is our opinion that your client's exempt employees are being paid "on a salary basis" within the meaning of the Regulations.

This opinion is based exclusively on the facts and circumstances described in your request and is given on the basis of your representation, explicit or implied, that you have provided a full and fair description of all the facts and circumstances that

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

1992 WL 845095 (DOL WAGE-HOUR)
(Cite as: 1992 WL 845095 (DOL WAGE-HOUR))

would be pertinent to our consideration and of the question presented. Existence of any other factual or historical background not contained in your request might require a different conclusion than the one expressed herein. You have also represented that this opinion is not sought because of an investigation by the Wage and Hour Division, or because of litigation with respect to, or requiring compliance with, the provisions of the FLSA.

Sincerely,
Karen R. Keesling
Acting Administrator


1992 WL 845095 (DOL WAGE-HOUR)
END OF DOCUMENT

©  2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

2006 WL 2792438 (DOL WAGE-HOUR)

Wage and Hour Division
United States Department of Labor
Opinion LetterFair Labor Standards Act (FLSA)

FLSA2006-24

July 6, 2006

*** [FNa1]

This is in response to your request for an opinion concerning whether cash shortage deductions from commission payments made to salaried exempt employees would affect their exempt status under section 13(a)(1) of the Fair Labor Standards Act (FLSA). For the reasons explained below, we conclude that cash shortage deductions from commission payments made to salaried exempt employees would not affect such employees' exempt status under section 13(a)(1) of the FLSA.

Section 13(a)(1) of the FLSA, 29 U.S.C. § 213(a)(1) (copy enclosed), provides a complete minimum wage and overtime pay exemption for any employee employed in a bona fide executive, administrative, or professional capacity, as those terms are defined in 29 C.F.R. Part 541. An employee may qualify for exemption if all of the pertinent tests relating to duty, salary level, and salary basis are met. Please note that revisions to 29 C.F.R. Part 541 were published as a final rule on April 23, 2004 (69 Fed. Reg. 22,122) and became effective on August 23, 2004 (copy enclosed). Our response is applicable under the final rule.

For discussion purposes, we assume that the affected employees meet both the duty and the guaranteed salary level tests required under the final rule. As stated under 29 C.F.R. § 541.600(a) (copy enclosed), an employee will be considered to satisfy the salary level if the employee is paid on a salary basis at a rate of not less than $455.00 per week. The salary basis test is met if the employee regularly receives each pay period "a predetermined amount constituting all or part of the employee's compensation, which

amount is not subject to reduction because of variations in the quality or quantity of the work performed. Subject to the exceptions provided in [29 C.F.R. § 541.602(b) (copy enclosed)], an exempt employee must receive the full salary for any week in which the employee performs any work without regard to the number of days or hours worked." 29 C.F.R. § 541.602(a) (copy enclosed).

As indicated in 29 C.F.R. § 541.604(a) (copy enclosed),

[a]n employer may provide an exempt employee with additional compensation without losing the exemption or violating the salary basis requirement, if the employment arrangement also includes a guarantee of at least the minimum

weekly-required amount paid on a salary basis. Thus, for example, an exempt employee guaranteed at least $455 each week paid on a salary basis may also receive additional compensation of a one percent commission on sales. An exempt employee also may receive a percentage of the sales or profits of the employer if the employment arrangement also includes a guarantee of at least $455 each week paid on a salary basis. Similarly, the exemption is not lost if an exempt employee who is guaranteed at least $455 each week paid on a salary basis also receives additional compensation based on hours worked for work beyond the normal workweek. Such additional compensation may be paid on any basis (e.g., flat sum, bonus payment, straight-time hourly amount, time and one-half or any other basis), and may include paid time off.

In other words, additional compensation paid on any basis besides the guaranteed salary is not inconsistent with the salary basis of payment. See Field Operations Handbook § 22b01 and Wage and Hour Opinion Letter April 1, 1999 (copies enclosed).

The final rule at 29 C.F.R. § 541.600(a) requires only that exempt employees be paid a guaranteed salary of at least $455 per week, and any additional compensation above this salary amount is generally something that may be agreed upon between the employer and the employee. The prohibition against improper deductions from the guaranteed salary under

29 C.F.R. § 541.602(b) does not extend to any such additional compensation provided to exempt employees. Therefore, it is our opinion that cash shortage deductions may be made from a salaried exempt employee's commission payments without affecting the employee's exempt status under section 13(a)(1) of the FLSA so long as the commission payments are bona fide and are not paid to facilitate otherwise prohibited deductions from the guaranteed salary.

This opinion is based exclusively on the facts and circumstances described in your request and is given based on your representation, express or implied, that you have provided a full and fair description of all the facts and circumstances that would be pertinent to our consideration of the question presented. Existence of any other factual or historical background not contained in your letter might require a conclusion different from the one expressed herein. You have represented that this opinion is not sought by a party to pending private litigation concerning the issues addressed herein. You have also represented that this opinion is not sought in connection with an investigation or litigation between a client or firm and the Wage and Hour Division or the Department of Labor.

We trust that this letter is responsive to your inquiry.

Sincerely,

Alfred B. Robinson, Jr.

Acting Administrator

Enclosures:

FLSA section 13(a)(1) 29 C.F.R. Part 541

Field Operations Handbook § 22b01

Wage and Hour Opinion Letter April 1, 1999

FNa1

. *Note: The actual name(s) was removed to preserve privacy in accordance with* 5 U.S.C. § 552(b)(7).

2006 WL 2792438 (DOL WAGE-HOUR)
END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

LEXSEE 2006 DOL WH LEXIS 59

FLSA2006-24NA

U.S. Department of Labor
Employment Standards Administration
Wage and Hour Division
Washington, D.C. 20210

*2006 DOLWH LEXIS 59*

November 3, 2006

**JUDGES:** Barbara R. Relerford, Office of Enforcement Policy, Fair Labor Standards Team

**OPINION:**

 [*1]
Dear **Name \*:**

> \* **The actual name(s) was removed to preserve privacy in accordance with *5 U.S.C. § 552*(b)(7).**

This is in response to your request for an opinion regarding whether deductions for bad checks or other cash shortages from bonus payments made to salaried exempt employees are permissible and whether the deductions would affect their exempt status under section 13(a)(1) of the Fair Labor Standards Act (FLSA). As described in more detail below, it is our opinion that the deductions from bona fide bonus payments are permissible and do not affect the employees' exempt status.

Section 13(a)(1) of the FLSA n1 provides a complete minimum wage and overtime pay exemption for any employee employed in a bona fide executive, administrative, or professional capacity, as those terms are defined in 29 C.F.R. Part 541.  [*2]  An employee may qualify for exemption if all of the pertinent tests relating to duties and salary are met.

> n1 Unless otherwise noted, any statutes, regulations, opinion letters, or other interpretive material cited in this letter can be found at www.wagehour.dol.gov.

You state that your client employs managers who are exempt as executives under section 13(a)(1) of the FLSA. Your letter does not include any information about the duties of the employees other than to describe them as "managers who are exempt as executives." Without additional information, it is not possible for us to confirm whether these employees would meet the duties requirements for the executive exemption under 29 C.F.R. §§ 541.100-.106. The exemption depends not on occupational titles or job classifications, but rather on whether the individual employee's duties and salary meet  [*3]  the requirements of the regulations. *See* 29 C.F.R. § 541.2. Our analysis, therefore, is limited to addressing the compensation arrangements you describe.

The managers receive a salary in excess of $ 455 each week. They may also receive certain bonuses pursuant to a

written bonus program. Your client determines whether the employee is eligible for the bonus. The bonus amount is determined by a preexisting formula, based upon achieving budgeted profits and the actual percentage of profits at the manager's store. The bonus program also provides that a bonus may be reduced by the amount of bad checks or other cash shortages attributable to an individual manager. These cash shortages are never deducted from the manager's weekly salary.

As stated in 29 C.F.R. § 541.600(a), an employee will be considered to satisfy the salary requirement if the employee is paid on a salary basis at a rate of not less than $ 455 per week. The salary basis test is met if the employee regularly receives each pay period

> a predetermined amount constituting all or part of the employee's compensation, which amount is not subject to reduction because of variations in the quality or quantity of the work [*4] performed. Subject to the exceptions provided in [29 C.F.R. § 541.602(b)], an exempt employee must receive the full salary for any week in which the employee performs any work without regard to the number of days or hours worked.

29 C.F.R. § 541.602(a).

As indicated in 29 C.F.R. § 541.604(a),

> [a]n employer may provide an exempt employee with additional compensation without losing the exemption or violating the salary basis requirement, if the employment arrangement also includes a guarantee of at least the minimum weekly-required amount paid on a salary basis. Thus, for example, an exempt employee guaranteed at least $ 455 each week paid on a salary basis may also receive additional compensation of a one percent commission on sales. An exempt employee also may receive a percentage of the sales or profits of the employer if the employment arrangement also includes a guarantee of at least $ 455 each week paid on a salary basis. Similarly, the exemption is not lost if an exempt employee who is guaranteed at least $ 455 each week paid on a salary basis also receives additional compensation based on hours worked for work beyond the normal workweek. Such additional compensation [*5] may be paid on any basis (*e.g.,* flat sum, bonus payment, straight-time hourly amount, time and one-half or any other basis), and may include paid time off.

In other words, any compensation paid in addition to the guaranteed salary is not inconsistent with the salary basis of payment. *See* Wage and Hour Opinion Letter April 1, 1999 (payment of additional compensation to exempt salaried employees does not defeat the exemption) (copy enclosed).

Section 541.600(a) requires only that exempt employees be paid a guaranteed salary of at least $ 455 per week. Additional compensation above this salary amount is generally something that may be agreed upon between the employer and the employee. The prohibition against improper deductions from the guaranteed salary under 29 C.F.R. § 541.602(b) does not extend to such additional compensation provided to exempt employees. Therefore, it is our opinion that bad check and other cash shortage deductions from bonus payments paid to salaried exempt employees are permissible and do not affect the employees' exempt status under section 13(a)(1) of the FLSA so long as the bonus payments are bona fide and are not paid to facilitate otherwise [*6] prohibited deductions from the guaranteed salary. *See* Wage and Hour Opinion Letter FLSA2006-24 (July 6, 2006); Wage and Hour Opinion Letter October 9, 1991 (copy enclosed).

This opinion is based exclusively on the facts and circumstances described in your request and is given based on your representation, express or implied, that you have provided a full and fair description of all the facts and circumstances that would be pertinent to our consideration of the question presented. Existence of any other factual or historical background not contained in your letter might require a conclusion different from the one expressed herein. You have

2006 DOLWH LEXIS 59, *6

represented that this opinion is not sought by a party to pending private litigation concerning the issue addressed herein. You have also represented that this opinion is not sought in connection with an investigation or litigation between a client or firm and the Wage and Hour Division or the Department of Labor.

We trust that the above is responsive to your inquiry.

Sincerely,

**Legal Topics:**

For related research and practice materials, see the following legal topics:
Administrative LawGovernmental InformationFreedom of InformationDefenses & ExemptionsLaw Enforcement RecordsGeneral OverviewLabor & Employment LawWage & Hour LawsAssignments, Deductions & GarnishmentsLabor & Employment LawWage & Hour LawsDefenses & ExemptionsExecutives & Professional Employees

2005 WL 3308612 (DOL WAGE-HOUR)

Wage and Hour Division
United States Department of Labor
Opinion LetterFair Labor Standards Act (FLSA)

FLSA2005-41

October 24, 2005

***FN[FNa1]

This is in response to your request for an opinion concerning the application of the Fair Labor Standards Act (FLSA) to leave taken by exempt employees, or leave directed by the employer, during situations where inclement weather occurs (such as heavy snow or other types of disasters).

As you know, section 13(a)(1) of the FLSA provides a complete minimum wage and overtime pay exemption for any employee employed in a bona fide executive, administrative, or professional capacity, as those terms are defined in 29 C.F.R. Part 541. An employee may qualify for exemption if all of the pertinent tests relating to duty, salary level and salary basis, as discussed in the appropriate section of the regulations, are met. One such test requires that an otherwise exempt employee be paid on a salary basis, as described in 29 C.F.R. §541.602. Please note that revisions to 29 C.F.R. Part 541 were published as a final rule in the *Federal Register* on April 23, 2004 (69 FR 22122) and became effective on August 23, 2004 (copy enclosed).

An employee will be considered to be paid on a salary basis within the meaning of the regulations if under the employee's employment agreement the employee "regularly receives each pay period on a weekly, or less frequent basis, a predetermined amount constituting all or part of his compensation, which amount is not subject to reduction because of variations in the quality or quantity of the work performed." 29 C.F.R. §541.602(a).

Section 541.602(b) details the limited exceptions to the general rule of the salary basis requirement prohibiting deductions from pay. Deductions may be made when the employee is absent from work for one or more full days for personal reasons, other than sickness or accident. Thus, if an employee is absent for one or more full days to handle personal affairs, the employee's salaried status will not be affected if deductions are made from the employee's salary for such absences. *See* §541.602(b)(1). However, if an employee is "ready, willing and able to work, deductions may not be made for time when work is not available." 29 C.F.R. §541.602(a).

Deductions may also be made for absences of one or more full days occasioned by sickness or disability if the deductions are made in accordance with a bona fide plan, policy or practice of providing compensation for loss of salary occasioned by both sickness or disability. Thus, if the employer's particular plan, policy or practice provides compensation for such absences, deductions for absences of one or more full days because of sickness or disability may be made before an employee has qualified under such plan, policy or practice and after the employee has exhausted the leave allowance thereunder. *See* 29 C.F.R. §541.602(b)(2).

You present three questions for which our responses follow:

1. During office closures due to inclement weather or other disasters, may a private employer direct exempt staff to take vacation (or leave bank deductions) or leave without pay without jeopardizing the employees' exempt status?

The FLSA does not require employer-provided vacation time. Where an employer has proposed a bona fide benefits plan, it is permissible to substitute or reduce the accrued leave in the plan for the time an employee is absent from work, even if it is less than a full day, without affecting the salary basis of payment, if the employee still receives in payment an amount equal to the employee's guaranteed salary. *See* Opinion Letters dated April 15, 1995; March 30, 1994; and April 14, 1992. However, an employee will not be considered to be paid "on a salary basis" if deductions from the predetermined compensation are made for absences occasioned by the employer or by the operating requirements of the business. *See* 29 C.F.R. §541.602(a). Thus, if the employer closes the

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

office due to inclement weather or other disasters for less than a full workweek, the employer must pay the employee's full salary even if: (1) the employer does not have a bona fide benefits plan; (2) the employee has no accrued benefits in the leave bank; (3) the employee has limited accrued leave benefits and reducing that accrued leave will result in a negative balance; or (4) the employee already has a negative balance in the accrued leave bank.

Since employers are not required under the FLSA to provide any vacation time to employees, there is no prohibition on an employer giving vacation time and later requiring that such vacation time be taken on a specific day(s). Therefore, a private employer may direct exempt staff to take vacation or debit their leave bank account in the situation presented above, whether for a full or partial day's absence, provided the employees receive in payment an amount equal to their guaranteed salary. In the same scenario, an exempt employee who has no accrued benefits in the leave bank account or has a negative balance in the leave bank account still must receive the employee's guaranteed salary for any absence(s) occasioned by the employer or the operating requirements of the business.

2. If the private employer's offices remain open during inclement weather or other types of disaster, can exempt staff be directed to take vacation (or leave deductions) or leave without pay if they fail to report to work without jeopardizing the employees' exempt status?

As stated earlier, either leave bank or salary deductions may be made when the employee is absent from work for a day or more for personal reasons, other than sickness or accident. Thus, if an employee is absent for one or more full days for personal reasons, the employee's salaried status will not be affected if deductions are made from the employee's salary for such absences. An absence due to inclement weather does not constitute an absence due to sickness or accident. Therefore, an employee who is absent due to inclement weather, such as because of transportation difficulties, is absent for personal reasons. In the situation described above, a private employer may require an exempt employee who fails to report to work to take vacation or make leave bank deductions without jeopardizing the employee's exempt status.

When the office is open, an exempt employee who has no accrued benefits in the leave bank account does not have to be paid (i.e., may be placed on leave without pay) for the full day(s) s/he fails to report to work due to such circumstances as a heavy snow day.

3. If the private employer's employees are probationary or have used all of their accrued vacation (or leave bank) time, can the employer choose not to pay them for time not worked without jeopardizing the employee's exempt status? When asked to clarify, you stated that in this example an exempt employee chooses to stay home for a half day due to inclement weather.

Deductions from salary for less than a full day's absence are not permitted under the regulations. Therefore, where the employee's absence is for less than a full day, payment of an amount equal to the employee's guaranteed salary must be made even if the employee has no accrued vacation or other leave benefits. However, as stated in response to question #2, a deduction from an employee's leave bank or salary may be made for absences of one or more full days for personal reasons, other than sickness or accident. You may want to review the provisions in 29 C.F.R. §541.603, which address the effect of improper deductions from salary. An employer will lose the exemption if it has an actual practice of making improper deductions that demonstrates it did not intend to pay employees on a salary basis. See 29 C.F.R. §541.603(a). On the other hand, isolated or inadvertent deductions do not result in loss of the exemption if the employer reimburses the employees for the improper deductions. See 29 C.F.R. §541.603(c). Moreover, if an employer has a clearly communicated policy prohibiting improper deductions that includes a complaint mechanism, reimburses employees for any improper deductions and makes a good faith commitment to comply in the future, the employer will not lose the exemption unless it willfully violates the policy by continuing to make improper deductions after receiving employee complaints. See 29 C.F.R. §541.603(d).

This opinion is based exclusively on the facts and circumstances described in your request and is given based on your representation, express or implied, that you have provided a full and fair description of all

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

the facts and circumstances that would be pertinent to our consideration of the question presented. Existence of any other factual or historical background not contained in your letter might require a conclusion different from the one expressed herein. You have represented that this opinion is not sought by a party to pending private litigation concerning the issue addressed herein. You have also represented that this opinion is not sought in connection with an investigation or litigation between a client or firm and the Wage and Hour Division or the Department of Labor. This opinion is issued as an official ruling of the Wage and Hour Division for purposes of the Portal-to-Portal Act, 29 U.S.C. § 259. *See* 29 C.F.R. §§ 790.17(d), 790.19; *Hultgren v. County of Lancaster,* 913 F.2d 498, 507 (8th Cir. 1990).

We trust that this letter is responsive to your inquiry.

Sincerely,

Alfred B. Robinson, Jr.

Deputy Administrator

Enclosure: 29 C.F.R. Part 541

FNa1. *Note: The actual name(s) was removed to preserve privacy in accordance with 5 U.S.C. 552 (b)(7).*

2005 WL 3308612 (DOL WAGE-HOUR)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

2001 WL 1558766 (DOL WAGE-HOUR)

Wage and Hour Division
United States Department of Labor
Opinion LetterFair Labor Standards Act (FLSA)

February 16, 2001

***

This is in response to your request for an opinion as to whether paid time off (PTO) plans qualify as bona fide sick leave plans under the Fair Labor Standards Act (FLSA).

The PTO is a leave accrual bank, similar to a sick leave plan. With a PTO plan, the time accrued may be taken for any reason, including vacation, illness, or personal reasons. You state that many employers are concerned about the trend toward more flexible employment schedules which has led them to opt for PTO plans in place of sick leave plans. PTO plans provide employees with a more comprehensive and a more equitable benefits package. You also state that PTO plans are good for employers because they would substantially ease the recordkeeping burden of tracking sick time, vacation time and other personal leave time taken by employees. With regard to exempt employees, you specifically request an opinion as to whether the PTO plans qualify as bona fide sick leave as discussed in section 541.118 of Regulations, 29 CFR, Part 541 (copy enclosed).

Section 13(a)(1) of the FLSA provides a complete minimum wage and overtime pay exemption for any employee employed in a bona fide executive, administrative, professional, or outside sales capacity. In order to qualify for exemption under this section, an employee must meet all of the tests relating to duties, responsibilities, and salary that are contained in the appropriate section of the Regulations.

An employee will be considered to be on a salary basis within the meaning of the Regulations if under his or her employment agreement or she regularly receives each pay period on a weekly, or less frequent basis, a predetermined amount constituting all or part of his or her compensation, which amount is not subject to reduction because of variations in quality or quantity of the work performed.

As you know, deductions may be made, however, when the employee is absent from work for a day or more for personal reasons, other than sickness or accident. Thus, if an employee is absent for one or more full days to handle personal affairs, his or her salaried status will not be affected if deductions are made from his or her salary for such absences.

Deductions may also be made for absences of a day or more occasioned by sickness or disability (including industrial accidents) if the deductions are made in accordance with a bona fide plan, policy or practice of providing compensation for loss of salary occasioned by both sickness or disability. Thus, if the employer's particular plan, policy or practice provides compensation for such absences, deductions for absences of one or more full days because of sickness or disability may be made before an employee has qualified under such plan, policy or practice and after he or she has exhausted his or her leave allowance thereunder.

Where an employer has proposed a bona fide benefit plan, such as the PTO described in your letter, it is permissible to substitute or reduce the accrued leave in the plan for the time an employee is absent from work even if it is less than a full day without affecting the salary basis of payment, if by substituting or reducing such leave the employee receives in payment an amount equal to his or her guaranteed salary. Payment of an amount equal to the employee's guaranteed salary must be made even if the employee has no accrued benefits in the leave bank account, and the account has a negative balance where the employee's absence is for less than a full day.

Based on the information you have provided, it is our opinion that the proposed PTO plans for exempt employees would qualify as a bona fide sick leave plan as outlined in section 541.118(a)(3).

This opinion is based exclusively on the facts and circumstances described in your request and is given on the basis of your representation, explicit or implied, that you have provided a full and fair description of all the facts and circumstances which would be pertinent to our consideration of the question

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

presented. Existence of any other factual or historical background not contained in your request might require a different conclusion than the one expressed herein. You have also represented that this opinion is not sought on behalf of a client or firm which is under investigation by the Wage and Hour Division, or which is in litigation with respect to, or subject to the terms of any agreement or order applying, or requiring compliance with, the provisions of the FLSA.

We trust that the above information is responsive to your inquiry.

Sincerely,

Barbara Relerford

Office of Enforcement Policy

Fair Labor Standards Team

Enclosure

2001 WL 1558766 (DOL WAGE-HOUR)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.