## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IAN O'DONNELL, DAVID JOLICOEUR, AND STACY MOORE, ON BEHALF OF THEMSELVES AND ALL OTHERS SIMILARLY SITUATED,<br><br>                              Plaintiffs,<br><br>v.<br><br>ROBERT HALF INTERNATIONAL INC. and ROBERT HALF CORPORATION<br><br>                              Defendants. | CIVIL ACTION NO.: 04-12719 NMG |

## PLAINTIFFS' CROSS MOTION FOR SUMMARY JUDGMENT AND OPPOSITION TO DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

## INTRODUCTION

Defendants maintained a written policy that clearly and effectively communicated to exempt employees that in particular circumstances their pay would be docked for taking partial days off from work. The meaning and effect of this policy cannot reasonably be disputed, and its unlawfulness under the Fair Labor Standards Act is equally apparent.

As discussed herein, Defendants' written policies (1) required exempt employees to use leave time to cover partial-day absences (indeed, employees had to take a full day of leave even if they were absent for only a few hours); (2) required these

1

employees to "borrow" against future leave time when they did not have any accrued leave at the time of their partial-day absence; and (3) unequivocally and repeatedly informed employees that the value of any such borrowed leave "will be deducted" from their final paychecks. The import of this policy is clear: in certain circumstances, salaried employees' pay will be reduced for partial-day absences. As the Department of Labor and numerous courts have stated, such deductions violate the salary basis test. As these authorities, including the Supreme Court, have also repeatedly emphasized, there is no requirement that any actual deductions take place for such a violation to occur. Rather, where, as here, purportedly exempt employees are covered by a policy that plainly announces a particular situation in which their pay will be docked for partial-day absences, such employees are facially "subject to" impermissible deductions within the meaning of the Regulations, and therefore not exempt from overtime requirements under the FLSA and Massachusetts law.

Because Defendants' own written policy indisputably subjected Plaintiffs to such deductions, Plaintiffs are entitled to summary judgment on their claim that Defendants violated the salary basis test.[1] For the same reasons, Defendants' motion must be denied.

## STATEMENT OF FACTS

Defendants own and operate a large specialized staffing firm with 16 offices in New England alone. Affidavit of William T. Hayes ¶ 1 (attached as Ex. C to Defs. Mot.

---

[1] As the Court is aware, Plaintiffs have filed this case as a nationwide collective action under the FLSA, with a "subclass" of employees asserting claims under the Massachusetts Wage Act. The Court denied Plaintiffs' renewed motion for conditional certification under the FLSA; Plaintiffs' motion to reconsider this ruling is pending. Plaintiffs will shortly file a Rule 23 motion for certification of a class consisting of employees with Massachusetts Wage Act claims.

for Partial Summ. J.) Each named plaintiff worked for Robert Half as a Staffing Manager, Recruiting Manager, Account Executive, or Account Manager within the past several years. Plaintiffs Rule 56.1 Statement ("Pl. Rule 56.1 St.") ¶¶ 2-4. Robert Half regularly required Plaintiffs to work in excess of forty (40) hours in a work week. *Id.* ¶ 5. Defendants classified Plaintiffs as exempt employees, paid them on a salary basis, and did not pay them overtime wages. *Id.* ¶ 6.

Defendants maintain an Employee Handbook to acquaint their employees with their policies and benefits, and they provide their employees with this employee handbook as a reference guide to their employment policies and practices. *Id.* ¶ 7. The Employee Handbook sets forth "Employee Classifications" "[f]or purposes of salary administration and eligibility for overtime payments and employee benefits," and one of these classifications is defined as follows: "Exempt Employees are employees in positions which are exempt from legal overtime pay requirements. Exempt employees are expected to work whatever hours are necessary to do their jobs properly." *Id.* ¶ 8.

The Employee Handbook sets forth Defendants' "CHOICE Time Off (CTO)" policies, which provide "employees with paid time away from the job for such things as vacation, outside activities, illness, personal business and family matters" and which explicitly apply to both "Exempt and Non-Exempt" employees of Defendants. *Id.* ¶ 9. Defendants' "policy is to record time off in full day increments for exempt employees." *Id.* ¶ 9; Affidavit of Linda Blandford-Beringsmith ¶ 3 (attached as Ex. A to Defs. Mot.) Pursuant to Defendants' CTO policies, "CTO may be taken before it is actually earned," but "[s]hould employment end before used CTO has been earned, that time will be

owed back to [Defendants] and deducted from the final paycheck or other amounts payable to the employee." Pl. Rule 56.1 St. ¶ 11. Defendants' CTO policies also provide that "[t]o the extent that an exempt employee has personal business that results in an absence from work of more than 2 hours, [Defendants'] practice is that the day will be considered a full day of CTO." *Id.* ¶ 12. Defendants' CTO policies further provide that "[u]p to 5 days for exempt employees or ... may be taken in advance of earning the time off. However, if [employees] terminate before [they] have earned the CHOICE Time Off [they] have taken, the amount [they] owe the company will be deducted from [their] final paycheck[s] or any other amounts payable to [them]." *Id.* ¶ 13.

Defendants' policy of deducting unearned CTO from exempt employees' final paychecks is unambiguous and clearly communicated to Defendants' exempt employees. This policy is not only listed in the Employee Handbook, as quoted above, but also repeated on Defendants' "Corporate Employee Exempt Absence Record" (time sheet), which requires exempt employees to sign under the statement, "If your employment terminates while you have a negative CTO balance, the amount you owe the company will be deducted from your final paycheck or any other amounts payable to you," and "Exempt Employee Time Off Request" form, which requires exempt employees to sign under the affirmation, "I understand that if my employment terminates when I have negative CHOICE Time Off balance, the amount I owe the company will be deducted from my final paycheck." *Id.* ¶¶ 14-15. Defendants also have an actual practice of deducting negative CTO balances from employees' final paychecks, as their final paychecks and termination worksheets direct Defendants'

4

payroll employees to make these deductions, and Plaintiff Ian O'Donnell's termination documents show that his unearned CTO balance of 28 hours (equivalent to $484.62 in gross salary) was, in fact, deducted from the total amount due on his final paycheck. *Id.* ¶ 16.

## ARGUMENT

I.     **DEFENDANTS VIOLATED THE SALARY BASIS TEST BECAUSE ALL EXEMPT EMPLOYEES, INCLUDING PLAINTIFFS, WERE SUBJECT TO DEDUCTIONS IN PAY FOR PARTIAL-DAY ABSENCES**

It is undisputed that Defendants maintained a written policy of requiring exempt employees who were absent from work for part of the day to use their leave time to cover such absences. Also not in question is that Defendants' written policy required exempt employees who did not have any accrued leave time to "borrow" against future leave time to cover any absences, including partial-day absences. Finally, it is also uncontested that Defendants' written policy provided that any "negative balance" in an exempt employee's leave bank at the time of her termination would be deducted from his or her final paycheck. In short, as these black-and-white provisions make plain, Defendants' written policy subjected all exempt employees to reductions in pay for partial-day absences. As the overwhelming authority unambiguously establishes, such a policy violates the salary-basis test.

The law is unmistakably clear that an employer may not reduce an exempt employee's pay for partial-day absences. See 29 C.F.R. § 541.602(b)(1); *Spradling v. City of Tulsa*, 95 F.3d 1492, 1501 (10th Cir. 1996) ("[E]mployees governed by policies penalizing them for absences of less than one day (at least when the penalty involves

5

possible loss of pay) are not salaried employees, and therefore not exempt 'executive'

employees."); *Caperci v. Rite Aid Corp.*, 43 F.Supp.2d 83, 93 (D. Mass. 1999) ("It is

generally understood ... that an employee is not paid on a salary basis if the employer

has a policy or regular practice of reducing the amount of the employee's weekly or

other periodic paycheck to reimburse the employer for partial day absences.") (citing

*Donovan v. Carl's Drug, Inc.*, 703 F.2d 650, 652 (2d Cir. 1983)); *accord, e.g.*, Kinney v.

District of Columbia, 994 F.2d 6, 11 (D.C. Cir. 1993); Martin v. Malcolm Pirnie, Inc., 949

F.2d 611, 615 (2d Cir. 1991). The Department of Labor, whose authority Defendants

themselves repeatedly invoke, has emphasized this point over and over. *See e.g. See*

*e.g.*, DOL Opinion Letter dated Feb. 8, 2007, 2007 WL 541649 ("Where the employee's

absence is for less than a full day, payment of the employee's guaranteed salary must

be made even if an employee has no accrued benefits (or a negative balance) in the

leave plan."); DOL Opinion Letter dated Sep. 14, 2006, 2006 WL 2792446 (same); DOL

Opinion Letter dated Oct. 24, 2005, 2005 WL 3308612 (same); DOL Opinion Letter

dated Jan. 7, 2005, 2005 WL 330606 (same) (citing three prior opinion letters); DOL

Opinion Letter dated Apr. 9, 1993, *cited in Caperci*, 43 F.Supp.2d at 93 n.7

("[D]eductions from the salaries of otherwise exempt employees for partial day

absences after they have exhausted their vacation or sick time benefits have never

been permitted under the Regulations.").

Defendants do not and cannot dispute this authority. Nor do they or could they

dispute that their written policy requires exempt employees to record partial-day

absences as leave time, and that it reduces such employees' pay for all unearned leave

time they have taken as of the time of their departure from employment. As an inescapable matter of law and logic, then, Defendants' written policy violates the law by creating a situation where an exempt employee will have his her pay reduced on account of partial-day absences.

In an unsuccessful attempt to avoid the clear import of its written policy, Defendants make two fundamentally flawed arguments – one factual, one legal. Factually, Defendants assert that their policy (despite its plain language) does not actually dock employees' pay, but only their accrued CTO leave. This is simply wrong: the written policy makes perfectly clear that Defendants reduce employees' *pay* when they take unearned leave. That this docking does not occur until the employees' final paycheck does not somehow make it any less of a reduction in pay, or permit the policy to be described as only affecting leave time. Legally, Defendants argue that Plaintiffs' cannot show a violation of the salary basis test because they allegedly cannot show *actual* improper deductions from their paychecks. This suggestion has been squarely rejected by the Supreme Court, which has unanimously held that even if no deductions are made, a policy that "'effectively communicates' that deductions will be made in specified circumstances" is illegal. *Auer v. Robbins*, 519 U.S. 452, 461 (1997).

### A.  Defendants' Policy Deducts from Employees' Pay, Not Merely Their Leave Banks

Defendants mischaracterize the plain meaning of its written leave policy. Apparently acknowledging, as they must, that making deductions from employees' pay for partial-day absences is illegal, Defendants claim that this is not what their policy does. This is simply false: as the handbook repeatedly tells employees, the amount of

7

leave time "you owe the company will be deducted from your final paycheck or any other amounts payable to you." Pl. Ex. D at 137, 148; *see also* Pl. Ex. E. at 105, 115. Although this deduction does not occur until the employee leaves the company, it is a reduction in pay nonetheless.

The following is an example of how Defendants' policy reduces employees' pay for partial-day absences: A salaried employee works for four hours one morning, then leaves for the day to take care of some personal business. Even though the employee is salaried, pursuant to Defendants' written policy he is required to fill out a form to record this partial-day absence. At the time he takes the half-day off, the employee does not have any remaining accrued leave, so he has to borrow a day against future CTO, and now "owes" the company for this leave. (Even though he only takes a half day, he is charged for a full day in accordance with Defendants' policy, Pl. Rule 56.1 St. ¶ 10, a fact that highlights the unfairness to the employee, but does not make the policy any more or less a violation of the salary basis test.) Before the employee earns more CTO, however, he leaves the company permanently. Under Defendants' policy, his final paycheck is reduced by the value of a full day of work. In short, this "salaried" employee has had his pay docked because he was absent for part of a day – an illegal result that is inconsistent with the employee's status as a professional employee who is supposedly given discretion to manage his time. United States Department of Labor, *Defining and Delimiting the Exemptions for Executive, Administrative, Professional, Outside Sales, and Computer Employees,* 69 FR 22122, 22177 (Final Rule, Apr. 23, 2004).

This is not a "speculative" result, as Defendants claim, but the plain

8

consequence of the policy. Nor is this violation of the salary basis test merely a "highly technical theory" that Plaintiffs here have invented. On the contrary, the Department of Labor has specifically considered this very issue and found policies such as Defendants' to be illegal:

> [A] few commenters ... suggest that employers should be able to recover leave ... advances from an employee's final pay. Recovery of partial-day leave advances, however, essentially are deductions for personal absences and would constitute an impermissible deduction. Whether recovery for a full-day leave is permissible depends on whether such a leave is covered by one of of the section 541.602(b) exceptions.

Defining and Delimiting the Exemptions for Executive, Administrative, Professional, Outside Sales, and Computer Employees, 69 FR 22122, 22178 (April 23, 2004). Section 541.602(b) lists exceptions to "[t]he prohibition against deductions from pay in the salary basis requirement," including "when an employee is absent from work *for one or more full days* for personal reasons." 29 CFR § 541.602(b)(1) (emphasis added). However, the regulation does not list an exception for full-day deductions for partial-day absences, so Defendants' policy of requiring such deductions and requiring recovery for full-day leave advances from exempt employees' final paychecks violates the "salary basis" test. *Id.*; 69 FR at 22178; *see also*, e.g., DOL Opinion Letter dated Jan. 7, 2005; DOL Opinion Letter dated April 9, 1993.[2]

---

2       In addition, as previously explained in detail Plaintiffs' Renewed Motion to Facilitate § 216(b) Notice, see *id.* at 10-13, Defendants' policy of requiring a full-day deduction for only a partial-day absence itself gives rise to a violation of the salary basis test. By requiring employees who are not absent from work for a full day – and are, in fact, present for part of the day – to be subject to a full-day reduction in salary nonetheless, Defendants violate the provision that full-day deductions are only permitted "when an exempt employee *is absent* from work for one or more full days." 29 C.F.R. § 541.602(b)(1) (emphasis added). Defendants' policies could not be any plainer on this point. In response to the question, "What should an exempt employee who works less than a full day record as time off?", Defendants' Employee Handbook answers as follows: "To the extent that an exempt employee has personal business that results in an absence from work of more than 2 hours our practice is that the day will be considered a full day of CTO. Eight hours of CTO should be recorded for payroll records." *See* Pl. Ex. D at 148. Defendants then state that "[a]s with any employee on CTO, there is no requirement that the employee be present in the

**B.    Regardless of whether actual deductions were made, all exempt employees were impermissibly "subject to" deductions for partial-day absences**

Defendants maintained a written personnel policy that clearly and repeatedly states that exempt employees' final paychecks "will be" docked if they owe leave days at the time of their termination. This mandatory policy appears in the handbook itself, on the form exempt employees must complete and sign in order to request time off, and on the form for recording exempt employees' absence record, which employees are also required to sign. Pl. Rule 56.1 St. ¶¶ 11-15. There is simply no doubt that these repeated warnings "'effectively communicate[]' that deductions will be made in certain circumstances," Auer, 519 U.S. at 461, and thus violate the salary-basis test irrespective of whether deductions were in fact made.

Tellingly, Defendants do not even mention, much less distinguish, the Supreme Court's unanimous decision in *Auer*. Through a clever manipulation of language made possible only by ignoring *Auer*, Defendants assert that the named plaintiffs were not "subject to" any deductions, either because no actual deductions were made from their final paychecks, or because the deductions that were made were not illegal. Though

---

office for any part of that day." *Id.* However, if Defendants "suffer or permit" an employee to work on a given day, he or she is entitled to be paid for his or her work on that day. *See* 29 U.S.C. § 203(g) (stating that "'[e]mploy' includes to suffer or permit to work"). On the other hand, if Defendants forbid salaried employees who take partial days off from working before or after their time off and then take full-day deductions for those days, they violate the "salary basis" test by making "deductions from the employee's predetermined compensation ... for absences occasioned by the employer." 29 C.F.R. § 541.602(a); *see also Scholtisek v. Eldre Corp.*, 229 F.R.D. 381, 390 (W.D.N.Y. 2005) (policy "that if an employee who has used up all his sick, personal and vacation time is absent from work for more than three hours on any given day, 'the employee cannot and will not be allowed to come to work [and] ... will not be paid for the entire day' .... violate[d] the regulatory provision that salaried employees' pay cannot be docked for absences occasioned by the employer"). Therefore, Defendants' policies make it impossible for a salaried employee to so much as request a partial day off without causing Defendants to violate the "salary basis" test. Indeed, Ms. Moore's testimony that she was encouraged to take a full day off when she only wanted to take a partial day off, and her corresponding testimony that she was therefore frequently discouraged from taking even the partial day off, Pl. Ex. C ¶ 23, confirms the unlawful effect of this policy.

10

Plaintiffs dispute that the deductions made from Mr. O'Donnell's paycheck were legal, this is beside the point. Under *Auer*, and as numerous other authorities have recognized, an employee is "subject to" deductions if he or she works under a policy that merely creates the *potential* for such deductions, regardless of whether he or she in fact has her pay reduced. *Auer*, 519 U.S. at 461; *see, e.g., Kennedy v. Commonwealth Edison Co.*, 410 F.3d 365, 371 (7th Cir. 2005) ("The plaintiffs' wages have never been decreased under this policy, but both the old and new regulations state that being 'subject to' a reduction in pay is sufficient to prevent an employee from being considered 'salaried.' ... The phrase 'subject to' does not require proof that an employer has reduced an employee's wages.");*Ahern v. County of Nassau*, 118 F.3d 118, 122 (2d Cir. 1997) (under *Auer*, a violation occurs when "the [employment] manual communicate[s] that such deductions would in fact be made in specified circumstances" even where "[t]here is no question that an 'actual practice' of making deductions did not exist"); *Kinney*, 994 F.2d at 11 ("Employees paid under a system that subjects them, even theoretically, to docking for absences by the hour lack one of the characteristics explicitly identified in the Department's regulation on salaried pay") (emphasis added); *Sharer v. Tandberg, Inc.*, 2007 WL 676220, at *4 (E.D. Va. 2007) (denying summary judgment to Defendants even though "none of the Plaintiffs claim that actual partial-day docking ever occurred"); *Castro v. Metropolitan Transp. Auth.*, 2006 WL 1418585, *3 (S.D.N.Y. 2006) ("It is not necessary that the employee's pay in fact be docked for the employee to become non-exempt."); *Hoffman v. Sbarro, Inc.*, 982 F.Supp. 249, 262 (S.D.N.Y. 1997) ("[U]nder *Auer*, plaintiffs need not have each suffered actual deductions to show that they and other managers were 'subject to' improper reductions

11

in compensation by virtue of a common policy.").

Explaining why a policy that "even theoretically" results in an employees' being docked for partial-day absences is illegal, the D.C. Circuit has stated that "the [salary basis] regulation is intended, after all, to divide employees into classes based on their status, not to identify employees deserving compensation for individual losses. Payment on salary basis ... indicates employees who are given discretion in managing their time and their activities and who are not answerable merely for the number of hours worked or number of tasks accomplished." Kinney, 994 F.2d at 11.

Defendants' near exclusive emphasis on the fact Plaintiffs Moore and Jolicoeur did not have their final paychecks reduced, and on the (disputed) contention that the deductions from Mr. O'Donnell's were permissible, is thus a red herring. Under Defendants' written policy, which they do not disavow, all of the Plaintiffs, and every other exempt employee, were "subject to deductions" from pay for partial-day absences. There is no additional showing required to establish a violation of the salary basis test, and this Court should reject Defendants' invitation to create one.

The fact that Mr. O'Donnell's final paycheck was in fact reduced by hundreds of dollars because of leave time he "owed" to Defendants merely illustrates the policy, and is not required to prove a violation of the salary basis test. Even if no such reduction had taken place, he would have been "subject to" the policy. In any event, Defendants' attempt to justify these deductions is feeble at best. The fact that Mr. O'Donnell received an amount of "salary continuation" in excess of the amount of the pay reduction is irrelevant and disregards the obvious – namely, that the total amount of Mr. O'Donnell's final paycheck was reduced because he was forced to pay for borrowed

12

leave time. Defendants pointedly do not deny that this deduction would have been made even if the "salary continuation" amount was less than the deduction. Nor do they state that their policy of making deductions was not applied when the amount deducted was not smaller than whatever "salary continuation" payment was made, if any. Indeed, such an assertion is belied by the mandatory language of the deduction policy, which states that deductions "will be" made from the employees "final paycheck of any other amounts payable to [the employee," *see, e.g.,* Pl. Ex. D at 148, and contains no exceptions. In short, Defendants are comparing apples and oranges, and do not deny that the written policy to which all exempt employees were subjected requires deductions to be made for unearned leave in all cases, regardless of whether the employee receives a salary continuation. Because of clear policy subjected Plaintiffs and all exempt employees to impermissible deductions for partial-day absences, there is no issue to be tried in this regard, and Plaintiffs are entitled to judgment as a matter of law.

## CONCLUSION

For the foregoing reasons, the Court should grant Plaintiffs' motion for partial summary judgment on the grounds that Plaintiffs were not exempt employees because they were not paid on a salary basis, and should deny Defendants' motion for partial summary judgment.

13

Respectfully submitted,

IAN O'DONNELL, DAVID JOLICOEUR, and
STACEY MOORE, ON BEHALF OF
THEMSELVES AND ALL OTHERS
SIMILARLY SITUATED,
By their attorneys,


 s/Shannon Liss-Riordan
Shannon Liss-Riordan, BBO #640716
PYLE, ROME, LICHTEN, EHRENBERG
     & LISS-RIORDAN, P.C.
18 Tremont Street, Ste. 500
Boston, MA 02108
(617) 367-7200

Dated: June 4, 2007

## CERTIFICATE OF SERVICE

I hereby certify that on June 4, 2007, I caused a copy of this document to be served by electronic filing on all counsel of record.

 s/Shannon Liss-Riordan
Shannon Liss-Riordan, Esq.

14