**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

|  |  |
|---|---|
| IAN O'DONNELL, DAVID JOLICOEUR, AND STACEY MOORE, on behalf of themselves and all others similarly situated, )<br><br>Plaintiffs, )<br><br>v. )<br><br>ROBERT HALF INTERNATIONAL INC. AND ROBERT HALF CORPORATION, )<br><br>Defendants. ) | CIVIL ACTION NO.  04-CV-12719 NMG |

**DEFENDANTS' OPPOSITION TO PLAINTIFFS'**
**CROSS MOTION FOR SUMMARY JUDGMENT**

Defendants Robert Half International Inc. and Robert Half Corporation (collectively "RHI" or the "Company") submit this Opposition to Plaintiffs' Cross Motion for Summary Judgment ("Cross Motion").  In their Cross Motion, Plaintiffs rely on unsupportable assertions of fact, distortions of the applicable case law, and overblown rhetoric in a misguided attempt to manufacture a violation of the salary basis test.  The simple and unavoidable fact that dooms Plaintiffs' Cross Motion – and requires that summary judgment enter in favor of RHI on this issue – is that each Plaintiff received every cent of his or her full weekly salary for every week in which he or she worked for RHI.  Plaintiffs attempt to avoid the dismissal of their salary basis claims by arguing that RHI's leave policy itself violates the salary basis test because, they claim, the policy leaves room for the possibility that, if a number theoretical events occur, improper deductions could result.  However, they fail to set forth even the slightest <u>evidence</u> to support the convoluted and speculative theory that they have constructed.  Moreover, an employer's policy, standing alone, can give rise to a salary basis violation only if it is substantially certain that the

policy will result in impermissible deductions; the mere <u>possibility</u> of such deductions is insufficient as a matter of law to jeopardize Plaintiffs' exempt status. The Court should, therefore, deny Plaintiffs' Cross Motion in its entirety and grant RHI's Motion for Partial Summary Judgment.

**FACTUAL BACKGROUND**

**I.     RHI's CHOICE Time Off Policy**

RHI's "CHOICE Time Off" ("CTO") benefit includes what are commonly referred to as vacation days, sick days, and other personal days off. Defendants' Statement of Undisputed Material Facts in Support of Their Motion for Partial Summary Judgment (docket no. 63) ("SOF") ¶ 2. RHI employees accrue CTO leave on an incremental basis throughout the year according to a schedule. *Id.* The Company maintains CTO "banks" for employees that track accrued days off. *Id.* The CTO policy applies to both exempt and non-exempt employees. *See* Plaintiffs' Statement of Facts in Support of Cross Motion (docket no. 69) ("Plaintiffs' SOF") ¶ 9.

Each employee's manager makes an individualized decision as to how time off is recorded and whether any CTO is deducted from an employee's bank for a particular absence. SOF ¶ 3. In this way, each manager exercises his or her discretion in determining how to apply the CTO policy in individual circumstances. *Id.* For example, a manager may allow an employee to take time off for personal reasons without any deduction from the employee's CTO bank. *Id.* When a manager elects to apply CTO time to an employee's absence, RHI makes a deduction from the employee's leave bank in full-day increments; partial-day deductions from CTO are not permitted under the policy. *Id.*

Generally, an exempt employee who leaves work after working a substantial part of the day does not use any CTO for the time away from work. *Id.* If approved by the employee's individual supervisor, an exempt employee may borrow up to five days of unearned CTO, which

are advanced only in full-day increments.  SOF ¶ 5.  If the Company allows an employee to borrow CTO time and the employee's employment is terminated before he or she earns the borrowed CTO, the Company may, in certain circumstances, deduct the amount owed from the employee's final paycheck, subject to the employee's manager's discretion.  SOF ¶ 6.

## II.     Payment of Plaintiffs' Salaries

RHI employed Plaintiff David Jolicoeur ("Jolicoeur") from July 22, 2002, until he resigned his employment on September 20, 2003.  SOF ¶ 8.  <u>No deductions</u> were taken from his final paycheck, dated September 30, 2003.  SOF ¶ 9.  In fact, in his final paycheck, Jolicoeur received payment for thirty-two hours of accrued CTO time and his full salary for two days that he did not work.  *Id*.

Similarly, RHI took no deductions from Plaintiff Stacey Moore's ("Moore") final paycheck.  RHI employed Moore from May 19, 2003, until she resigned her employment on February 2, 2004.  SOF ¶ 10.  Moore's last paycheck, dated February 3, 2004, shows that she received payment – not a deduction – for twelve hours of accrued CTO time.  SOF ¶ 11.

Plaintiff Ian O'Donnell ("O'Donnell") resigned his employment with RHI in August 2003.  SOF ¶ 12.  His last day of work was August 6, 2003; however, RHI paid his regular salary through August 15, 2003.  *Id*.  O'Donnell's last paycheck, dated August 20, 2003, shows a deduction for twenty-eight hours (or approximately three days) of overdrawn CTO time.  SOF ¶ 13.  However, in addition to his salary, O'Donnell received salary continuation in the amount of $946.15, amounting to seven days' pay for days he did not work in that same check.  SOF ¶¶ 12-13.  Therefore, O'Donnell's weekly salary was not decreased by the deduction of CTO time from the check.  SOF ¶ 14.  In fact, there is no week in which O'Donnell worked for RHI for which he did not receive his full weekly salary.  *Id*.

**<u>ARGUMENT</u>**

In support of their Cross Motion, Plaintiffs only argue that they are entitled to overtime pay because of an alleged violation of the FLSA's salary basis test. Plaintiffs' argument that RHI violated the salary basis test is, in turn, premised on a convoluted and highly technical theory by which they claim that it <u>might</u> be possible for an employee to work a partial day but have a full day deducted from his or her allotted leave, which <u>might</u> give rise to a deduction from allotted leave that would cause the employee to incur a negative leave balance, which <u>might</u> result in that unearned leave being deducted from the employee's final paycheck, which <u>might</u> result in a reduction in the employee's salary during the final week of employment. Plaintiffs further argue that if each event in this theoretical chain were to occur – even once – RHI would have violated the salary basis test as to each one of its thousands of salaried exempt employees. Plaintiffs go on to claim that the <u>mere possibility</u> that this theoretical chain of events may come to pass destroys the exempt status of all of those thousands of employees – regardless of whether even one deduction actually occurred. This theory of liability is inconsistent with the requirements of the salary basis test, ignores the clear language of RHI's CTO policy, and ignores the stark reality that Plaintiffs unequivocally were not subject to any reductions from their respective salaries.

**I.      Plaintiffs' Cross Motion is Based on a Mischaracterization of the Salary Basis Test**

In order to meet the requirements of the FLSA's white collar exemptions, an employee must be paid on a salary basis. *See* 29 C.F.R. § 541.200. An employee is paid on a salary basis "if the employee regularly receives each pay period on a weekly, or less frequent basis, a predetermined amount constituting all or part of the employee's compensation, which amount is not subject to reduction because of variations in the quality or quantity of the work performed."

Case 1:04-cv-12719-NMG    Document 71    Filed 06/19/2007    Page 5 of 14

29 C.F.R. § 541.602(a); *Cowart v. Ingalls Shipbuilding, Inc.*, 213 F.3d 261, 264-65 (5th Cir. 2000).[1]

In their Cross Motion, Plaintiffs conflate "salary" with "pay" in an attempt to fabricate an impermissible deduction that would undermine their exempt status. The salary basis test only limits deductions that may be taken from an employee's <u>salary</u>, and the FLSA imposes no restrictions on deductions that may be taken from other forms of <u>pay</u>. The salary basis test's prohibition against improper deductions from an employee's weekly salary does not extend to additional, <u>non-salary</u> compensation that an employer may provide to exempt employees. *See, e.g., Phillips v. Capital Toyota, Inc.,* 2006 WL 1408688 (E.D. Tenn.) (holding that reduction affecting bonus payment did not defeat exempt status where plaintiff received predetermined salary); *U.S. Dept. of Labor Wage & Hour Opinion Letter FLSA2006-24, dated July 6, 2006*, 2006 WL 2792438 (employer can make deductions from commission payments to employees without affecting exempt status); *U.S. Dept. of Labor Wage & Hour Opinion Letter FLSA2006-24NA, dated November 3, 2006*, 2006 DOLWH LEXIS 59, *5 (deductions from bonus payments of exempt employees permissible). In their Cross Motion, Plaintiffs repeatedly attempt to

---

[1] There are at least two types of deductions that employers may make without violating the salary basis test. First, an employer may take deductions from a salaried employee's pay in full-day increments for absences due to personal reasons or illness without jeopardizing the employees' exempt status. *See* 29 C.F.R. § 541.602(b); *see also Wolfslayer v. Ikon Office Solutions*, 2004 WL 2536833, *6 (E.D. Pa.) ("only partial-day deductions from salary are prohibited by the salary basis test," "whole day" increments are permissible). Second, deductions from a leave bank do not affect an employee's salaried status. Where an employer's policy directly reduces an employee's sick or vacation leave for partial day absences, but does not reduce the employee's pay for those partial-day absences, the policy does not jeopardize the employee's salaried status. *See, e.g.,* Dept. of Labor Wage & Hour Opinion Letter FLSA2005-7, dated January 7, 2005, 2005 WL 330606 (partial day or full day deduction from leave banks allowed because "the one or more <u>full-day</u> deduction requirement applies to deductions from an employee's <u>salary</u>, as opposed to a leave bank") (emphasis in original); *Webster v. Pub. Sch. Employees of Wash., Inc.*, 247 F.3d 910 (9th Cir. 2001) (holding that term "compensation" in FLSA refers to salary, not accrued leave time, even when accrued leave can later be converted into cash); *Wolfslayer*, 2004 WL 2536833 at *6 ("there is a difference between partial day deductions from base pay and partial day reductions of fringe benefits, such as vacation or sick leave time" and the latter is permissible). Employers can also deduct from an exempt employee's salary to recoup for unearned leave that the employer has advanced to the employee, if the leave was taken in full-day increments. *See* U.S. Dept. of Labor Wage & Hour Opinion Letter FLSA2004-17NA, dated October 6, 2004, 2004 WL 3177901 (negative leave balances can be recouped if employees have been informed of unearned vacation time policy, as advanced leave is similar to *bona fide* loan).

5

conflate salary with pay in order to manufacture a salary basis violation where none exists, and in so doing, they unabashedly mischaracterize the law. For example, Plaintiffs claim that it is "unmistakably clear that an employer may not reduce an exempt employee's <u>pay</u> for partial-day absences." Plaintiffs' Memorandum in Support of Cross Motion for Summary Judgment (docket no. 68) ("Plaintiffs' Memo."), p. 5 (emphasis added). Plaintiffs then rely on this mischaracterization when they claim that the CTO policy "violates the law by creating a situation where an exempt employee will have his or her <u>pay</u> reduced on account of partial-day absences." Plaintiffs' Memo., p. 7. Notwithstanding Plaintiffs' attempt at wordplay, they cannot establish an impermissible deduction unless the pay that is withheld from the affected employee is part of his weekly salary.

The only examples of deductions that Plaintiffs identify are not deductions from salary. Plaintiffs repeatedly claim that O'Donnell was subject to an impermissible deduction. *See, e.g.,* Plaintiffs' Memo., pp. 5, 12. This claim is disingenuous. It is undisputed that the only deduction taken to compensate for O'Donnell's borrowed CTO leave was taken from a gratuitous salary continuation payment. SOF, ¶¶ 12-14. O'Donnell and the two other named Plaintiffs received their full salary for every work in which they worked for RHI, and Plaintiffs' claims to the contrary are pure fabrication. Plaintiffs, therefore, have absolutely no evidence that any of them (or any other RHI employee) was subject to an improper deduction from salary.

## II. Plaintiffs Cannot Establish that a "Significant Likelihood" of Improper Deductions Threatened Their Exempt Status

Knowing that they lack any evidence of even a single impermissible deduction from any salaried RHI employee, Plaintiffs argue that the mere theoretical prospect of an impermissible deduction serves to render all of RHI's employees non-exempt. This is a gross misconstruction of the law. A mere hypothetical possibility of an improper deduction cannot affect an

employee's exempt status. To the contrary, in order to establish that an employer's policy gives rise to a violation of the salary basis test, an employee must show that improper deductions under the policy were substantially certain to occur. Plaintiffs cannot make such a showing because RHI's CTO Policy vests the Company's managers with substantial discretion in deciding whether to charge CTO leave against each of an employee's absences or whether to attempt to recoup a negative CTO balance incurred by a departing employee. Moreover, in evaluating a salary basis test claim based exclusively on the language of an employer's policy, courts do not assume that the policy will be applied in a way that violates the law. Plaintiffs' guesswork about the potential for improper deductions under RHI's CTO Policy cannot support a claimed violation of the salary basis test, and the Court should deny their motion for summary judgment in its entirety.

> **A.** **Plaintiffs Cannot Establish a Salary Basis Test Violation Based on RHI's CTO Policy Alone Because the Policy Does Not Make Impermissible Deductions Inevitable**

Plaintiffs attempt to establish a salary basis test violation based on the mere possibility of an impermissible deduction. Their argument is supported only by selective quotations from *Auer v. Robbins* and other decisions interpreting the Supreme Court's holding in that case. A faithful reading of those cases reveals that Plaintiffs' salary basis claim must fail. In *Auer*, the Supreme Court unanimously held that a plaintiff cannot prevail on a salary basis test claim simply because a personnel policy "nominally subject[ed]" him to deductions or created a "theoretical possibility" that such deductions would occur.[2] 519 U.S. 452, 459-60 (1997). Instead, to

---

[2] Plaintiffs rely heavily on *Kinney v. District of Columbia*, 994 F.2d 6 (D.C. Cir. 1993) in an effort to support their claim that "a policy that 'even theoretically' results in an employees' [sic] being docked for partial-day absences is illegal." Cross Motion, p. 12. This case is not good law. The Supreme Court abrogated *Kinney* with the language in *Auer* noting that a "theoretical possibility" or "mere possibility" of a deduction is insufficient to destroy the salary basis test. In fact, the Supreme Court specifically rejected the holding in *Kinney*, opining that a standard "that requires a clear and particularized policy that 'effectively communicates' that deductions will be made in specified circumstances avoids the imposition of massive and unanticipated overtime liability (including the possibility of

7

substantiate a salary basis claim in the absence of actual impermissible deductions, a plaintiff must show that he was subject to a policy that made such deductions inevitable.[3]  *Id.*  A policy alone will not give rise to a salary basis violation unless employees "in petitioners' category" are subject to deductions "as a practical matter" as a result of "a clear and particularized policy – one which 'effectively communicates' that deductions will be made in specified circumstances."[4]  *Id.* (emphasis added).  A policy that creates only a theoretical possibility of deductions from salary is insufficient to establish a violation of the salary basis test.  *See, e.g., O'Brien v. Town of Agawam*, 350 F.3d 279, 294 (1st Cir. 2003) ("[a]fter *Auer*, the courts of appeals have repeatedly rejected challenges to 'salary status' based only on policies that create a possibility of deductions but do not specify that an improper deduction will in fact be taken"); *Ahern v. County of Nassau*, 118 F.3d 118, 121-22 (2d Cir. 1997) (no salary basis violation even where plaintiffs "definitely showed that their employment manual stated that the relevant deductions could be made from the salaries of employees in their class," because they "did not demonstrate . . . that the manual communicated that such deductions would in fact be made in specified circumstances") (emphasis added); *Kelly v. City of Mount Vernon*, 162 F.3d 765, 768-69 (2nd Cir. 1998)

---

substantial liquidated damages, *see, e.g.*, *Kinney v. District of Columbia*, supra, at 12) in situations in which a vague or broadly worded policy . . . is not 'significantly likely' to be invoked against salaried employees." *Auer*, 519 U.S. at 461.

[3] Unless an employee is subject to a policy that clearly mandates impermissible deductions, even a few actual improper deductions are insufficient to establish a violation of the salary basis test.  *See, e.g., Auer,* 519 U.S. at 463-64 (one actual deduction was not sufficient to substantiate a ruling that the policy violated the salary basis test); *O'Brien v. Town of Agawam*, 350 F.3d 279, 294 (1st Cir. 2003) ("four isolated incidences" of salary deductions insufficient to show "actual practice" that would establish salary basis violation); *DiGiore v. Ryan*, 172 F.3d 454, 464-65 (7th Cir. 1999) (five isolated incidents insufficient to show "actual practice") (overruled on other grounds); *Davis v. City of Hollywood*, 120 F.3d 1178, 1180 (11th Cir. 1997) (six incidents insufficient).

[4] Plaintiffs' subjective understanding of RHI's CTO policy and the possibility of deductions from their salaries is irrelevant.  *See Stanley v. City of Tracy*, 120 F.3d 179, 185 (9th Cir. 1997) ("controlling factor is not whether [the manager] or the employees subjectively believed the employees would be subject to improper deductions "); *Reeves v. Alliant Techsystems*, 77 F. Supp. 2d 242, 252-53 (D. R.I. 1999) (plaintiffs' subjective understanding of policy changed could not support claimed violation of salary basis test).

("hypothetical assertion" that would require that several attenuated contingencies come to pass before improper deduction materializes does create significant likelihood of deduction).[5]

RHI's CTO policy falls dramatically short of imposing inevitable deductions from employee's salary. In fact, no deduction from an employee's salary is even possible under the policy unless a number of contingencies come to pass. The employee must work a partial day, <u>and</u> his manager must exercise his discretion to charge the employee for a full day of CTO leave for that day, <u>and</u> charging that day of CTO leave must cause the employee to incur a negative balance in his leave bank, <u>and</u> the employee must resign or be fired before earning back that particular day of borrowed CTO leave, <u>and</u> the Company must exercise its discretion to take a deduction from the employee's final pay to compensate for the borrowed CTO leave, <u>and</u> the deduction must come from the employee's weekly salary, rather than severance, salary continuation, or some other form of pay, <u>and</u> the deduction must be for that particular day of borrowed leave (versus other days of borrowed leave when the employee was absent for a full day). This scenario cannot plausibly be described as posing a posing a "substantial likelihood"

---

[5] The Circuit Courts of Appeals have overwhelmingly rejected attempts to establish a violation of the salary basis test on the basis of a employer's personnel policy alone. *See, e.g., Whisman v. Ford Motor Co.*, 157 Fed. Appx. 792, 798-99 (6th Cir. 2005) (affirming summary judgment for defendants because there was no more than theoretical possibility of deductions); *Cowart v. Ingalls Shipbuilding, Inc.*, 213 F.3d 261, 264-65 (5th Cir. 2000) (affirming summary judgment for defendant because "mere possibility of a deduction" does not effectively communicate deduction to employees); *Spradling v. City of Tulsa*, 198 F.3d 1219, 1223-24 (10th Cir. 2000) (finding fire chiefs exempt from FLSA even though theoretically subject to disciplinary pay deductions); *Aiken v. City of Memphis*, 190 F.3d 753, 761-62 (6th Cir. 1999s) (affirming summary judgment for defendants because "[plaintiffs] may be theoretically subject to pay reductions, but as a 'practical matter' they are not"); *Kelly v. City of Mount Vernon*, 162 F.3d 765, 768-69 (2nd Cir. 1998) (affirming summary judgment for defendants where there was no evidence that "deductions would in fact be made in specified circumstances") (internal citations omitted); *Balgowan v. State of New Jersey*, 115 F.3d 214, 219 (3rd Cir. 1997) (affirming summary judgment for defendants because policy failed effectively to communicate deductions, defendants did not enforce policy for exempt employees, and plaintiffs failed to present evidence of actual deductions); *West v. Anne Arundel County*, 137 F.3d 752, 762-63 (4th Cir. 1997) (policy that applied to all employees did not effectively communicate deductions for specific categories of employees); *Stanley v. City of Tracy*, 120 F.3d 179, 184 (9th Cir. 1997) (reversing summary judgment for plaintiffs and granting judgment for defendants because policy that authorized deductions did not communicate that "such deductions [would] be made for employees that otherwise satisfy the salary test") (emphasis added); *Carpenter v. City and County of Denver, CO*, 115 F.3d 765, 766-67 (10th Cir. 1997) (affirming summary judgment for defendants because policy did not effectively communicate that deductions would occur).

of an improper deduction from salary, and it does not approach the level of substantial certainty necessary for a policy, standing alone, to constitute a violation of the salary basis test.

> **B.  The "Likelihood" of Impermissible Deductions is Further Reduced By Discretion Extended to the Company's Managers in Implementing the CTO Policy**

In an effort to bolster their claims that RHI's CTO policy creates a substantial likelihood of impermissible violations, Plaintiffs falsely portray the policy as mechanistic and devoid of managerial discretion.  For example, Plaintiffs state that "[i]t is undisputed that Defendants maintained a written policy of <u>requiring</u> exempt employees who were absent from work for part of the day to use their leave time to cover such absences." Plaintiffs' Memo., p. 5 (emphasis added).  Plaintiffs also repeatedly argue that "[t]he written policy is mandatory and does not provide an exception for managerial discretion."  Plaintiffs' SOF, ¶¶ 3, 6.  These allegations are demonstrably false.  The language of RHI's CTO policy itself provides that the policy is to be administered subject to the exercise of discretion by RHI's individual managers.  *See* Plaintiffs' SOF, Exhibit D, (Bates no. RHI 0000148) ("Managers need to look at the individual circumstances and apply judgment as to when to apply greater flexibility").  The Company has also provided a substantial volume of undisputed evidence that reflects that managerial discretion is a crucial component of RHI's implementation of its CTO policy.  In fact, the exercise of managerial discretion is so important to RHI's CTO policy, the Company's Director, Employee Programs and Benefit Operations, issued a six-page memorandum to RHI's supervisory employees explaining the importance of reasonable and proper judgment in administrating the policy.  *See* Clarification of Exempt Time Off Tracking Memorandum ("CTO Memo") attached as Exhibit A to the Second Affidavit of Linda Blandford-Beringsmith ("Second Blandford-Beringsmith Aff.").  Given the level of discretion afforded to RHI's managers in implementing the Company's CTO Policy, Plaintiffs cannot, as a matter of law, establish a substantial

likelihood of improper deductions that could threaten their exempt status.  *See Carlson v. C.H. Robinson Worldwide*, 2005 WL 758601, \*8 (D. Minn. 2005) (holding that plaintiffs could not show improper deductions as practical matter in part because each branch manager used discretion in applying leave policy).

Ironically, Plaintiffs' own allegations serve to demonstrate the discretion vested in RHI's managers to implement the Company's CTO policy in a flexible manner.  Plaintiff Stacey Moore testified that she took two half-days off in order to move in July 2003.  Plaintiffs' SOF, Exhibit C, ¶ 23.  Had her supervisors applied RHI's CTO policy in a rigid and formulaic manner, as Plaintiffs claim the Company's supervisors must do, Moore would have been charged two full days of CTO time for these absences.  *Id*.  In fact, the Company's records unequivocally reflect that Moore's managers exercised their discretion and charged her no CTO time for these two half-day absences.  SOF ¶¶15, 16.  Plaintiffs anecdote in this regard serves as a graphic illustration that their allegations regarding the rigidity of RHI's CTO policy and the "likelihood" of impermissible deductions under that policy are simply false.  Under these circumstances, RHI's' implementation of its CTO Policy does not allow for a finding that Plaintiffs were subject to a significant likelihood of improper deductions.  *See Whisman v. Ford Motor Co.*, 157 Fed. Appx. 792, 798 (6th Cir. 2005) (where employer did not enforce policy stating that deductions would occur, there was no more than "theoretical possibility" that impermissible deduction would occur); *Balgowan v. State of New Jersey*, 115 F.3d 214, 219 (3rd Cir. 1997) (fact that employer did not enforce policy provided strong evidence that policy did not pose "significant likelihood" of deductions).

### C. Plaintiffs' Salary Basis Test Claim Fails Because RHI's CTO Policy Does Not Pose a Risk of Deductions That is Unique to Salaried Employees

Plaintiffs' Cross Motion also fails because the CTO policy to which Plaintiffs point in support of their salary basis claim is not limited to exempt employees. A salary basis test violation premised on a policy alone requires that the policy impose penalties only on salaried employees. *See, e.g., Reeves v. Alliant Techsystems*, 77 F. Supp. 2d 242, 252-53 (D. R.I. 1999) ("the salary basis test requires that there be a policy that communicates to exempt employees that there is a 'significant likelihood' of pay docking . . . . The Court in *Auer* reviewed a policy which applied to both exempt and non-exempt employees . . . [and] held that such a broadly worded policy did not defeat the FLSA exemption."); s*ee also Auer* 519 U.S. at 462 (violation might exist if policy applied "solely to petitioners"); *O'Brien*, 350 F.3d at 293 (same). Courts – including the Supreme Court in *Auer* – have rejected plaintiffs' attempts to establish a violation of the salary basis test based on a policy that applies equally to exempt and non-exempt employees alike because such policies cannot be fairly construed to communicate that the employer will make legally improper deductions from exempt employees' salaries. *See, e.g., Auer*, 519 U.S. at 41-62 (because policy "applies both to [exempt employees] and to employees who are unquestionably not paid on a salary basis . . . [n]o clear inference can be drawn as to the likelihood of a sanction's being applied to employees such as petitioners"); *O'Brien*, 350 F.3d at 293-94 (policy that applied to exempt and non-exempt employees did not "effectively communicate" that deductions were anticipated "for employees *in petitioners' category*") (emphasis in original); *Balgowan v. State of New Jersey*, 115 F.3d 214, 219 (3rd Cir. 1997) (broad-based policy that applied to all employees did not effectively communicate deductions). A policy of general application must be interpreted on the assumption that the employer will not apply and implement the policy in a way that violates the law. *Carpenter v. City and County of*

12

*Denver, CO*, 115 F.3d 765, 766-67 (10th Cir. 1997) (because policy applied to all employees "no clear inference can be drawn as to the likelihood of a [deduction's] being applied to employees such as petitioners"); *Reeves*, 77 F. Supp. 2d at 253 (because "policy nominally covered all employees, it did not effectively communicate a significant likelihood of [deductions] . . . in specified circumstances for exempt employees").

In this case, there can be no claim that RHI's CTO Policy poses unique penalties on the Company's exempt employees. Plaintiffs themselves note that it is undisputed that RHI's CTO Policy "explicitly appl[ies] to both 'Exempt' and 'Non-Exempt' employees" of the Company. Plaintiffs' SOF, ¶ 9. As noted above, in the absence of a clear statement that deductions will be made from the salaries of exempt employees, the law requires that a court reviewing an employer's policy interpret the document on the assumption that the policy will not be applied in a way that violates the law. Thus, where it is an undisputed fact that a policy applied to both exempt and non-exempt employees, summary judgment should be entered in favor of defendants. *See, e.g., Aiken*, 190 F.3d at 762 (affirming dismissal of plaintiffs' case in part because "[b]y plaintiffs own admission, the [policy's] rules apply to all department employees. Thus, the policy does not effectively communicate that captains will be suspended in any specified circumstance"); *West v. Anne Arundel County*, 137 F.3d 752, 762-63 (4th Cir. 1997) ("plaintiffs themselves assert that [exempt employees] are subject to the same . . . potential [deductions] as other employees . . .[t]hus, as in *Auer*, this general policy does not defeat salary basis"). Because RHI's CTO policy does not impose any deductions that are uniquely applicable to exempt employees, that policy cannot give rise to a salary basis test violation that would render Plaintiffs non-exempt.

## CONCLUSION

For the reasons noted above, the Court should DENY Plaintiffs' Motion for Summary Judgment and ALLOW Defendants' Motion for Partial Summary Judgment.

Respectfully submitted,

ROBERT HALF INTERNATIONAL INC.
AND ROBERT HALF CORPORATION
By their Attorneys,

 /s/ C.J. Eaton
Richard L. Alfred (BBO # 015000)
Krista G. Pratt (BBO # 644741)
Barry J. Miller (BBO # 661596 )
C.J. Eaton (BBO # 660726)
SEYFARTH SHAW LLP
World Trade Center East
Two Seaport Lane, Suite 300
Boston, MA 02210-2028
Telephone:    (617) 946-4800

DATED:  June 19, 2007         Telecopier:    (617) 946-4801

---

### CERTIFICATE OF SERVICE

I hereby certify that this document was filed through the Court's ECF system on June 19, 2007, which delivered a true copy of the above document on Shannon Liss-Riordan, an attorney for Plaintiffs, Pyle, Rome, Lichten, Ehrenberg, & Liss-Riordan, 18 Tremont Street, Suite 500, Boston, MA 02109, by first class mail.

 /s/ C.J. Eaton
C.J. Eaton

14