## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| IAN O'DONNELL, DAVID JOLICOEUR, AND STACEY MOORE, on behalf of themselves and others similarly situated | ) ) ) ) |
| Plaintiffs, | ) ) CIVIL ACTION NO.  04-CV-12719 NMG ) |
| v. | ) ) |
| ROBERT HALF INTERNATIONAL INC. AND ROBERT HALF CORPORATION | ) ) ) |
| Defendants. | ) ) |

### SECOND AFFIDAVIT OF LINDA BLANDFORD-BERINGSMITH

I, Linda Blandford-Beringsmith, being duly sworn, hereby depose and state as follows:

1.     I submit this affidavit in support of Defendants' Opposition to Plaintiffs' Cross Motion for Summary Judgment.

2.     In my capacity as Vice President Human Resources for Robert Half International Inc. ("RHI" or the "Company"), I am familiar with RHI's CHOICE Time Off ("CTO") policy.  RHI's CTO policy vests substantial discretion in the Company's managers to implement the policy.

3.     On July 13, 2000, when I was Director, Employee Programs and Benefit Operations, I circulated a memorandum to RHI's managers and supervisors entitled "Clarification of Exempt Time Off Tracking."  A true and accurate copy of that document is attached as Exhibit A.  The purpose of the memorandum was to remind

1

managers to use their own judgment and discretion in applying the CTO policy to exempt employees.

4.      In my current role, I am also familiar with the payroll practices of RHI.  I have reviewed the documents attached as Exhibit F to Plaintiffs' Statement of Undisputed Material Facts.  These documents were prepared by the Payroll Department.  The documents do not provide any "instructions" to anyone in payroll to make deductions from employees' final paychecks, nor do they "instruct" anyone else to take any specified action.

Signed under the pains and penalties of perjury this 18th day of June 2007.

    /s/ Linda Blandford-Beringsmith___
    Linda Blandford-Beringsmith



### Robert Half International Inc.

5720 Stoneridge Drive, Suite Three Pleasanton, CA 94588
(925) 598-8000   Fax  (925) 598-8999

---

## **Memorandum**

**To:**        U.S. Managers and Supervisors

**From:**     Linda Blandford-Beringsmith

**Date:**     July 13, 2000

**Subject:**  Clarification of Exempt Time Off Tracking

---

Questions have arisen on recording Choice Time Off (CTO) for exempt employees who have personal business that requires them to be out of the office less than a full day. **Please communicate the following clarification to your staff immediately and ensure that your payroll records are submitted accordingly.**

In order to preserve the exempt status of our exempt employees, it is necessary that they be given flexibility from time to time to attend to personal matters without recording CTO, so long as they can accomplish their job responsibilities.  That does not mean, however, that exempt employees are entitled to take a significant part of the day off without being charged CTO.

For payroll records, exempt employees record CTO in 8-hour increments.  We recognize that exempt employees may often work significantly more hours than 8 hours per day.  We also recognize that from time to time, exempt employees need to attend to personal matters during their regularly scheduled work hours.

Exempt employees who have personal business that can be accomplished in two hours or less in a standard eight-hour day may take the necessary time off without being charged for a day of CTO. Of course, time must be scheduled in such a way as to not interfere with ongoing business.  Further, any employee who abuses this benefit may be subject to appropriate employment action.

To the extent that an exempt employee has personal business which results in an absence for a period of more than two hours in a standard eight-hour day, our practice is that the day will be considered a full day of CTO.   As with any employee on CTO, there is no requirement that the employee be present in the office for any part of that day.  If an exempt employee has no accrued CTO, the employee will be permitted to "borrow" a day of CTO from as yet unaccrued CTO.  The employee will not be "docked" pay.

C:\TEMP\exempt CTO memo-rev 5-19.doc
07/14/00 10:42 AM

As a manager, it is your job to apply the company's business rules fairly and reasonably. When enforcing the CTO tracking rules, consider the specifics of each situation and use good judgment and common sense to ensure fair and reasonable treatment of your employees. The situation at hand and the employee's record of contribution and past use of time off all should be considered.

In managing CTO, it is important to remember that Robert Half International is an equal opportunity employer. Consequently, management of CTO, like other employment decisions, must be made without regard to race, color, religion, sex, age, handicap, national origin, marital status or veteran status.

Additionally, it is very important for managers to keep track of CTO. Managers are responsible for the accuracy of the on-going CTO record keeping. Each month the Payroll Department prepares the "Choice Time Off Report" which is the official corporate time off record system for CTO. The Choice Time Off Report should be reviewed closely and reconciled with individual time off records to ensure that it is accurate, as it is used to determine the CTO balance payable to employees upon termination.

To assist you with questions you may receive from employees, attached are Manager Guidelines and FAQs specific to this practice. If you have any questions, contact the Benefits Operations Department at (888) 677-6613 or e-mail benefits@rhii.com.

## MANAGER GUIDELINES AND
## FREQUENTLY ASKED QUESTIONS

### Manager Guidelines

As a manager, you have to apply good judgment and understand the impact on the culture and morale of your people when managing CTO. You need to apply common sense and manage fairly and reasonably. There may be times when recording a full day of CTO for an absence of 2 hours is too much, when work missed can be made up or schedules can be adjusted to allow greater flexibility. You must take into account the situation at hand and the employee's record of contribution and past use of time off. The following examples demonstrate some areas where you should apply judgment.

- An employee who habitually is late to work may impact productivity and morale of the whole group and may require employment action. However, it may be appropriate to apply flexibility for a good performer who regularly meets obligations to coworkers and clients.

- Recognize that unplanned personal issues also require your judgment. Personal catastrophe and unscheduled time off due to a car accident, a child's injury at school, or burst pipes at home should be treated with consideration for the overall situation.

- An employee may approach you and ask for flexibility in their schedule for a particular situation. Consider whether they are able to modify their schedule and complete their required work later that day or on another day that week.

Mismanagement of CTO – either too lenient or too harsh – can heavily damage your workgroup's culture and morale. Good management of CTO will enhance the culture and morale of your workgroup.

In managing CTO, it is important to remember that Robert Half International is an equal opportunity employer. Consequently, management of CTO, like other employment decisions, must be made without regard to race, color, religion, sex, age, handicap, national origin, marital status or veteran status.

### Frequently Asked Questions

- **Why bother to track and report CTO?**

  If CTO is not tracked, it can lead to different records of the CTO balance. This can create an employee relations issue and a payment liability for the company. For example, if an employee takes CTO but it is not reported, there is no record in Payroll and a full CTO balance remains in the payroll records. If that employee terminates, you would not have a record of the true CTO balance to be paid in the final check, so Payroll would use their records and pay the full CTO balance. In effect, the employee could get paid a second time for CTO already taken and your profit sheet would suffer.

- **What should an exempt employee who works less than a full day record as time off?**

  Exempt employees who have personal business that can be accomplished in two hours or less in a standard eight-hour day may take the necessary time off without being charged for a day of CTO. Of course, time off must be approved by their manager and scheduled in such a way as to not interfere with ongoing business.

  Managers need to look at the individual circumstances and apply judgment as to when to apply greater flexibility. The situation at hand and the employee's record of contribution and past use of time off all should be considered when determining if greater flexibility is needed.

  To the extent that an exempt employee has personal business that results in an absence from work of more than 2 hours our practice is that the day will be considered a full day of CTO. Eight hours of CTO should be recorded for payroll records. As with any employee on CTO, there is no requirement that the employee be present in the office for any part of that day. The employee can use the opportunity to address a variety of personal needs on that day.

  Employees who have questions on how to record their time should consult with their manager, who will look at the individual circumstances and apply judgment as to how to record the time. **(Note: this FAQ is included in the CHOICE Time Off FAQs on "Bob")**

- **How do I manage an exempt employee who continually works only 6 hours per day?**

  You should examine the employee's history of use and/or abuse of CTO. An employee who abuses CTO may be subject to employment action.

- **Why do non-exempt employees record time off in 15-minute increments and exempt employees record time off in full day increments?**

  In adherence with governing laws, our policy is to record time off in full day increments for exempt employees.
  **(Note: this FAQ is included in the CHOICE Time Off FAQs on "Bob")**

- **I have an employee who worked significantly more than 40 hours for the entire week, yet they worked less than 6 hours one day during the week. Should the employee record a full day of CTO for the day they worked less than 6 hours?**

  In order to preserve the exempt status of our exempt employees, it is necessary that they be given flexibility from time to time to attend to personal matters without recording CTO, so long as they can accomplish their job responsibilities.

  You need to determine if the employee was able to get their work done for the time period in question. If they did, then you have the discretion to tell the employee not to record CTO for the time off from work.

- **Do exempt employees have to record a full day of CTO if they leave work early due to illness?**

  Generally, an exempt employee who works a substantial part of the day and then goes home ill is not required to use CTO for that time. In consideration for the health of the other employees in the work group, they should be encouraged to evaluate their situation before returning to work.
  **(Note: this FAQ is included in the CHOICE Time Off FAQs on "Bob".)**

- **I have an employee with a regularly scheduled medical appointment who is absent more than 2 hours on the days of the appointment. How should the employee record CTO?**

  We recognize that employees need flexibility to take some time off from time to time to attend to personal matters. Employees should be encouraged to schedule their personal appointments at times that minimize their time away from the office and in such a way as to not interfere with ongoing business.

  In the case of an ongoing required medical treatment schedule that regularly results in an absence of more than 2 hours, laws governing disabilities may impact the situation. Check with Benefits Operations at benefits@rhii.com or at (888) 677-6613 to confirm procedures.

- **How should exempt employees with a standard work schedule of 30 to 39 hours per week record time off if they are absent for a portion of the day?**

  As with all exempt employees, it is necessary that they be given flexibility from time to time to attend to personal matters without recording CTO, so long as they can accomplish their job responsibilities.

  As a guideline, if an exempt employee with a standard work schedule of 30 to 39 hours per week has personal business that results in an absence of more than 25% of their standard work day, our practice is to consider it a day of CTO. They should record a full day of CTO based upon their standard work schedule.

- **If an exempt employee needs to attend a personal appointment but does not have any accrued CTO, will their pay be docked?**

  Employees are able to "borrow" up to five (5) days CTO from their as yet unaccrued CTO. If an exempt employee needs time off and has no accrued CTO, the employee will be permitted to "borrow" a day of CTO. The employee will not be "docked" pay.
  **(Note: this FAQ is included in the CHOICE Time Off FAQs on "Bob")**

- **Some exempt employees previously submitted CTO in less than full day increments. Will their CTO balance be adjusted?**

The Payroll Department will not process CTO in less than full day increments for exempt employees. CTO reported to Payroll in less than full day increments for an exempt employee will not be processed or subtracted from the employee's CTO earnings and is therefore not reflected in the monthly Choice Time Off Report generated by Payroll. Managers should check their local records to reconcile them to this report.

To the extent that there are differences between local time records and Payroll records, it is at the manager's discretion to determine if adjustments to the CTO record are necessary.