**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

|  |  |
|---|---|
| IAN O'DONNELL et al., )<br>)<br>          Plaintiffs, )<br>)<br>v. )<br>)<br>ROBERT HALF INTERNATIONAL INC. )<br>and ROBERT HALF CORPORATION )<br>)<br>          Defendants. )<br>) | CIVIL ACTION NO.: 04-12719 NMG |

**PLAINTIFFS' MOTION FOR CERTIFICATION OF A MASSACHUSETTS
CLASS PURSUANT TO FED. R. CIV. P. 23
AND MEMORANDUM IN SUPPORT THEREOF**

Plaintiffs have brought this action on their own behalf and on behalf of all similarly situated employees, who include all salaried employees of Defendants who have been misclassified as exempt from the overtime requirements of the Fair Labor Standards Act ("FLSA") and the Massachusetts Wage Act. The Second Amended Complaint alleges that Defendants have failed to pay overtime to Plaintiffs, even though their positions do not meet the "duties" test and/or the "salary basis" test that must both be met in order for employees to be exempt from the overtime requirement under these laws. Plaintiffs previously moved for conditional certification of a nationwide class under § 216(b) of the FLSA based on Defendants' violations of both tests with respect to Robert Half employees across the country. The Court denied this request, and Plaintiffs' motion for

reconsideration is currently pending. In the instant motion, Plaintiffs seek certification of a Rule 23(b)(3) class of Massachusetts employees only, based on Defendants' violation of the "salary basis" test under Massachusetts law.

## BACKGROUND

Each named plaintiff worked for Robert Half as a salaried employee within the past several years. Exhibits to Affidavit of Shannon Liss-Riordan ("Pl. Ex.") A ¶ 2; B ¶ 2. Robert Half regularly required plaintiffs to work in excess of forty (40) hours in a work week. Pl. Ex. A ¶ 5; Ex. B ¶ 5; Ex. C ¶ 5. Defendants classified plaintiffs as exempt employees, paid them on a salary basis, and did not pay them overtime wages. Pl. Ex. A ¶ 4; Ex. B ¶ 4; Ex. C ¶ 4.

Defendants' Employee Handbook sets forth Defendants' "CHOICE Time Off (CTO)" policies, which provide "employees with paid time away from the job for such things as vacation, outside activities, illness, personal business and family matters." These policies explicitly apply to both "Exempt and Non-Exempt" employees of Defendants. Pl. Ex. D at 137. Defendants' "policy is to record time off in full day increments for exempt employees." Pl. Ex. D at 147-48. Pursuant to Defendants' CTO policies, "CTO may be taken before it is actually earned," but "[s]hould employment end before used CTO has been earned, that time will be owed back to [Defendants] and deducted from the final paycheck or other amounts payable to the employee." Pl. Ex. D at 137. Defendants' CTO policies also provide that "[t]o the extent that an exempt employee has personal business that results in an absence from work of more than 2 hours, [Defendants'] practice is that the day will be considered a full day of CTO." Pl. Ex. D at 148. Defendants'

CTO policies further provide that "[u]p to 5 days for exempt employees … may be taken in advance of earning the time off. However, if [employees] terminate before [they] have earned the CHOICE Time Off [they] have taken, the amount [they] owe the company will be deducted from [their] final paycheck[s] or any other amounts payable to [them]." Pl. Ex. D at 148.

Defendants' policy is not only listed in the Employee Handbook, as quoted above, but also repeated on Defendants' "Corporate Employee Exempt Absence Record" (time sheet), which requires exempt employees to sign under the statement, "If your employment terminates while you have a negative CTO balance, the amount you owe the company will be deducted from your final paycheck or any other amounts payable to you," and "Exempt Employee Time Off Request" form, which requires exempt employees to sign under the affirmation, "I understand that if my employment terminates when I have negative CHOICE Time Off balance, the amount I owe the company will be deducted from my final paycheck." Pl. Ex. E at 105, 115.

The Second Amended Complaint alleges that the foregoing policy violates the salary basis test under the FLSA and Massachusetts law, thereby defeating the exempt status of employees subject to the policy and requiring Defendants to pay "time-and-a-half" for all hours worked in excess of 40 hours a week. The standards governing the exempt status for alleged "executive, or administrative or professional" employees are the same under federal and Massachusetts law. *See* Mass. Regs. Code tit. 455, § 2.02(3) ("The terms '*bona fide* executive, or administrative or professional person' in M.G.L. c 151, § 1(A)(3), shall have the

3

same meaning as set forth in Part 541 of Title 29 of the U.S. Code of Federal Regulations."); *see also Swift v. Autozone,* 441 Mass. 443, 447 (2004) ("the overtime provisions under State law were intended to be 'essentially identical' to Federal law.") (*quoting Valerio v. Putnam Assocs., Inc.*, 173 F.3d 35, 40 (1st Cir. 1999)).

Plaintiffs filed the instant action in Suffolk County Superior Court on December 6, 2004; Defendants thereafter removed the case to this Court on December 29, 2004. The statute of limitations for claims under Mass. Gen. L. c. 151 §1 (the overtime provision) is two years. Mass. Gen. L. c. 151 § 20. Accordingly, Plaintiffs seek certification of the following class:

> All employees who have worked for Defendants in Massachusetts at any time from December 6, 2002, to the present, who have been classified as exempt from the overtime requirements of the FLSA and the Massachusetts Wage Act.

**ARGUMENT**

**I.      PLAINTIFFS SATISFY THE REQUIREMENTS OF RULE 23 FOR CLASS CERTIFICATION.**

As an initial matter, it must be noted that Plaintiffs' claims under the FLSA have no bearing on the propriety of class certification with respect to their Massachusetts Wage Act Claims. "As … courts have noted, the FLSA action and state law remedies are entirely separate rights that may be pursued by the plaintiffs." *McLaughlin v. Liberty Mut. Ins. Co.*, 224 F.R.D. 304, 308 (D. Mass. 2004); *see also, e.g., Lindsay v. GEICO*, 448 F.3d 416, 422 (D.C. Cir. 2006); *Ansoumana v. Gristede's Operating Corp.*, 201 F.R.D. 81, 89-91 (S.D.N.Y. 2001). Accordingly, because the Massachusetts Wage Act contains no opt-in

4

procedure like that included in § 216(b) of the FLSA, Federal Rule of Civil Procedure 23 governs the instant motion. *McLaughlin,* 224 F.R.D. at 308.

Rule 23(a) requires as a prerequisite to class certification that (1) the class is so numerous that joinder of all members is impractical (numerosity); (2) there are questions of law or fact common to the class (commonality); (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class (typicality); and (4) the representative parties will fairly and adequately protect the interests of the class (adequate representation). *See* Fed. R. Civ. P. 23(a); *Smilow v. Southwestern Bell Mobile Sys., Inc.*, 323 F.3d 32, 38 (1st Cir. 2003); *Rodrigues v. Members Mortgage Co.*, 226 F.R.D. 147, 150 (D. Mass. 2005).

Under Rule 23(b)(3), an action may proceed as a class action if the four prerequisites of Rule 23(a) are satisfied and the following requirements are met: (1) "the questions of law or fact common to the members of the class predominate over any questions affecting only individual members," and (2) "a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3).

District courts have "broad power and discretion vested in them by Fed. R. Civ. P. 23 with respect to matters involving the certification" of class actions. *Reiter v. Sonotone Corp.*, 442 U.S. 330, 345 (1979); *see also McCuin v. Sec'y of Health and Human Servs.*, 817 F.2d 161, 167 (1st Cir. 1987) ("[D]istrict courts have broad discretion to grant or deny class certification."). Moreover, "the underlying theme [of class certification] is flexibility." *Lamphere v. Brown University*, 553 F.2d 714, 719 (1st Cir. 1977).

5

It is appropriate for a court to certify a class prior to extensive discovery; accordingly, the appropriate standard for determining whether plaintiffs have presented sufficient basis for class certification resembles the standard for overcoming a motion to dismiss. *See Swack v. Credit Suisse First Boston*, 230 F.R.D. 250, 270 (D. Mass. 2005) ("Considering the required showing that plaintiffs must make to fall along a spectrum from less rigorous (motion to dismiss stage) to most rigorous (summary judgment stage), class certification falls closer to the former, because it is conducted before the completion of substantive discovery.").[1]

### A.     The class satisfies the requirements of Rule 23(a).

#### 1.     The members of the class are so numerous that joinder is impracticable.

Rule 23(a)(1) requires that a class must be "so numerous that joinder … is impracticable." Numerosity may be inferred: "district courts may draw reasonable inferences from the facts presented to find the requisite numerosity." *McCuin v. Sec'y of Health and Human Servs.*, 817 F.2d 161, 167 (1st Cir. 1987). Moreover, the threshold to establish numerosity is relatively low; a class of "forty individuals [is] generally found to establish numerosity." *In re Relafen Antitrust Litig.*, 218

---

[1]     Recently, following the Court's ruling on Plaintiffs' long-pending motion for conditional certification, the defendants informed the plaintiffs that they wished to now pursue discovery. The plaintiffs agreed to proceed with discovery, but the defendants then declined to take the plaintiffs' depositions, based upon their (unsupported) claim that the plaintiffs had not turned over all the documents in their possession related to their employment with Robert Half. The defendants also refused to respond to discovery propounded by the plaintiffs related to their Massachusetts class allegations. Based upon the defendants' refusal to engage in this discovery, the plaintiffs informed the defendants that they would thus move forward with filing this Rule 23 motion prior to this discovery occurring and that they assume that the defendants will not use the plaintiffs' lack of having obtained this discovery in opposing the motion.

F.R.D. 337, 342 (D. Mass. 2003); *accord, e.g., Consolidated Rail Corp. v. Town of Hyde Park,* 47 F.3d 473, 483 (2d Cir. 1995).

It cannot be seriously disputed that the class of Massachusetts salaried employees is sufficiently numerous so as to make joinder impracticable.[2] According to its own website, Robert Half is the world's largest specialized staffing firm, comprising seven separate divisions (each corresponding to a distinct industry or type of employment). *See* www.rhi.com; relevant pages attached to Liss-Riordan Declaration as Pl. Ex. G, at 1-2. The company maintains eight offices throughout Massachusetts. Pl. Ex. G at 3. If an average of only five employees work at each location – an exceedingly conservative assumption – numerosity is satisfied. Indeed, each of the seven divisions of Robert Half has offices in this state; most have several. *See* Ex. G at 4-15. Thus, even if only two or three employees work at each of these division sites, the total easily exceeds the presumptive threshold of 40. Indeed, the actual size of the class is even larger, given that it includes not only current but also former employees who worked at any time since December 2002.

### 2. The claims here satisfy the commonality requirement.

The commonality requirement "does not require that class members' claims be identical," *Mack v. Suffolk County*, 191 F.R.D. 16, 22 (D. Mass. 2000), and "[i]t

---

[2] Plaintiffs have requested discovery from Defendants from which the number of affected exempt employees may be determined with more precision. Because Plaintiffs have not received Defendants' responses to this discovery (*see* note 1), Plaintiffs cannot provide more specific information regarding numerosity. In any event, Plaintiffs have no obligation to provide a more precise estimate of class size at this stage. *See In re Ocean Bank,* 2007 WL 1063042, at *3 (N.D. Ill. 2007) ("While Plaintiffs are unable to provide the precise number of putative plaintiffs at this stage, 'where the exact size of the class is unknown, but it is general knowledge or common sense that it is large, the court will take judicial notice of this fact and will assume that joinder is impracticable.'") (*citing* 3 Alba Conte & Herbert B. Newberg, *Newberg on Class Actions* § 7.22 (4 ed. Dec.2006 Supp.)).

can be met by even a single common legal or factual issue." *Southern States Police Benevolent Ass'n, v. First Choice Armor & Equip., Inc.,* 241 F.R.D. 85, 87 (D. Mass. 2007) (Gorton, J.); *see also In re American Med. Sys., Inc.*, 75 F.3d 1069, 1080 (6th Cir. 1996) ("[T]here need only be a single issue common to all members of the class."); *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992) ("A common nucleus of operative fact is usually enough to satisfy the commonality requirement."). As this Court recently recognized, this requirement is a "low hurdle." *Southern States*, 241 F.R.D. at 87. Moreover, when the claims arise out of a companywide policy or practice, the commonality requirement has been satisfied. *See, e.g., Armstrong v. Davis*, 275 F.3d 849, 868 (9th Cir. 2001) ("[C]ommonality is satisfied where the lawsuit challenges a system-wide practice or policy that affects all of the putative class members.").

Here, Plaintiffs challenge Robert Half's company-wide policy, as expressed in its employee handbook, of subjecting employees to deductions in pay for partial-day absences. Every member of the class is affected by this clear and unambiguous policy, which explicitly applies to all exempt employees and is repeatedly stated in mandatory terms. The existence and legality of this policy are not simply common issues, but the fundamental ones in this case, which is more than sufficient to satisfy the commonality requirement.

### 3. Plaintiffs satisfy the typicality requirement.

The typicality requirement is similar to commonality and is also "not highly demanding" because "the claims only need to share the same essential characteristics, and need not be identical." *Payne v. Goodyear Tire*, 216 F.R.D. 21,

8

24-25 (D. Mass. 2003). "For purposes of demonstrating typicality, '[a] sufficient nexus is established if the claims or defenses of the class and the class representative arise from the same event or pattern or practice and are based on the same legal theory.'" *In re Relafen Antitrust Litig.*, 231 F.R.D. at 69; *see also, e.g., Robinson v. Metro-North Commuter R.R.*, 267 F.3d 147, 155 (2d Cir. 2001); 1 Newberg on Class Actions § 3:13.

As with commonality, the claims of the named Plaintiffs here are undoubtedly typical. Each of the named Plaintiffs was subject to the same policy as every member of the class. Indeed, though not required to establish typicality, the named Plaintiffs' claims here *are* identical to those of the putative class with respect to liability. Because Plaintiffs bring a "facial" challenge to a written policy, their claims rest on the same factual basis, and rely on the same legal theory, as the claims of the entire class. As discussed at length in Plaintiffs' Cross-Motion for Summary Judgment, Plaintiffs allege that the policy as written violates the salary basis test, and there is no requirement that Plaintiffs show, and Plaintiffs here do not rely on any showing, that *actual* impermissible deductions were made to any particular class members' paychecks pursuant to the policy.[3] *See Auer v. Robbins*, 519 U.S. 452, 461 (1997) (liability can be established despite lack of any deductions based on "clear and particularized policy … which 'effectively communicates' that deductions will be made in specified circumstances").

---

[3] As discussed in Plaintiffs' cross-motion for summary judgment, impermissible deductions of more than $400 were in fact made from Plaintiff O'Donnell's final paycheck, and were likely made from numerous other class members' checks as well. However, these deductions merely demonstrate the policy "in action," and are not required to establish liability.

9

The only difference among the class members is in the amount of damages suffered by individual employees – a difference uniformly recognized as failing to defeat typicality. *See, e.g., Smilow,* 323 F.3d at 39-40; *see also* 7A Wright, Miller & Kane, *Fed. Prac. & Proc. Civ. 3d* § 1764 n.13 and accompanying text (collecting cases).

### 4. Plaintiffs and counsel adequately represent the interests of the class.

Federal courts have held that two factors must be satisfied in order to fulfill the adequacy requirement: "(1) the absence of potential conflict between the named plaintiff and the class members and (2) that counsel chosen by the representative parties is qualified, experienced and able to vigorously conduct the proposed litigation." *Adair v. Sorenson*, 134 F.R.D. 13, 18 (D. Mass. 1991) (*quoting Andrews v. Bechtel Power Corp.*, 780 F.2d 124, 130 (1st Cir. 1985)) (internal quotations omitted).

Here, the Plaintiffs satisfy both guidelines. First, there is no conflict between the named Plaintiffs and the class, since their challenge to Defendants' written policy is the same claim asserted on behalf of all of Defendants' other salaried employees who are classified as exempt. If Plaintiffs prevail on their claim that the policy violated the salary basis test, all class members – who will thereby stand to gain overtime payments previously denied – will benefit.

Second, Plaintiffs' counsel are particularly well-qualified and experienced in this type of litigation. Plaintiffs' lead attorney Shannon Liss-Riordan has litigated dozens of class action cases on behalf of employees under Massachusetts and federal law, many of which have resulted in significant court

10

rulings and substantial favorable settlements for the plaintiff classes. Attorney Liss-Riordan is a frequent invited speaker at local and national conferences as an expert on class actions and wage and hour litigation. *See*, for example, Pl. Ex. H at 2 (ABA Program Agenda, ADR in Labor and Employment Law, Section of Labor and Employment Law, Midwinter Meeting, February 2007) (describing her as follows: "Ms. Liss-Riordan is one of the pre-eminent class action attorneys in the country, and she has extensive experience negotiating class action settlements in large regional and national cases.")[4]

      **C.**    **The class satisfies the requirements of Rule 23(b)(3).**

           **1.**    **Common issues of law and fact predominate.**

Predominance "does not require an entire universe of common issues," only "'a sufficient constellation' of them." *In re Relafen Antitrust Litig.*, 231 F.R.D. at 70. Predominance will be found when the class is "sufficiently cohesive to warrant" certification. *Id.* (*quoting Amchem Products Inc. v. Windsor*, 521 U.S. 591, 623 (1997)). When "there are genuinely common issues, issues identical across all the claimants, issues moreover the accuracy of the resolutions of which is unlikely to be enhanced by repeated proceedings, then it makes good sense, especially when the class is large, to resolve those issues in one fell

---

[4] Last year, Attorney Liss-Riordan tried two certified class action cases (which rarely go to trial) and won them both – one in federal court and one in state court: *Bradley et al. v. City of Lynn, et al.,* C.A. No. 05-10213-PBS, 443 F.Supp.2d 145 (D.Mass. 2006) (federal court held following bench trial that Commonwealth's civil service entry-level hiring examination for firefighters had unlawful disparate impact on minority candidates; court has now preliminarily approved settlement which will provide for hiring of more than 66 minority firefighters and police officers statewide and payment by the Commonwealth of $2.15 million); *Calcagno et al. v. High Country Investors, Inc. d/b/a Hilltop Steak House*, Massachusetts Superior Court (Essex County, No. 03-0707) (July 2006) (jury found that restaurant violated state tips law by allowing managers to keep a share of service charge added to function bills; verdict of approximately $1.8 million [not

11

swoop." *Mejdrech v. Met-Coil Sys. Corp.*, 319 F.3d 910, 911 (7th Cir. 2003). Thus, if "the heart of plaintiffs' case will be subject to common proof," predominance should be found. *Margaret Hall Foundation, Inc. v. Atlantic Financial Management, Inc.*, 1987 WL 15884, at *4 (D. Mass. July 30, 1987). Finally, the existence of individual issues, such as those pertaining to affirmative defenses or damages, does not defeat class certification where the common issues predominate. *See Smilow,* 323 F.3d at 39-40.

Defendants' written policy of subjecting employees to deductions in pay for partial-day absences is the common issue at the heart of this case. As explained, whether Plaintiffs and class members prevail on their claims depends solely, and in every case, on whether the policy that governed their employment violates the salary basis test. Because no actual deductions are required to establish liability, there will be no need for individualized inquiries into whether particular class members had their pay reduced. It is enough that Defendants "effectively communicated" to every member of the class – as the employee handbook unarguably does – that their pay would be reduced in particular circumstances not allowed under the salary basis test. *Auer*, 519 U.S. at 461. Defendants' certain response – that many members of the class did not in fact have their pay reduced for partial-day absences – is thus a red herring.

### 2. Class adjudication is superior to other available methods.

"[T]he requirement of superiority, like that of predominance, ensures that resolution by class action will 'achieve economies of time, effort, and expense,

---

counting interest and attorneys' fees] was listed by *Massachusetts Lawyers Weekly* as the

and promote . . . uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results.'" *In re Relafen Antitrust Litig.*, 231 F.R.D. at 70 (quoting *Amchem*, 521 U.S. at 615).

For several reasons, a class action is superior to individual cases here. First, as discussed above, this case challenges a common policy that identically affects a wide class of employees throughout the state. It would be grossly inefficient to require each employee to bring a case challenging this policy individually. Second, because many individuals may have only small recovery – either because they worked only for a short time or only infrequently worked in excess of 40 hours a week – they may not have the incentive to bring an action individually. Allowing class certification is the only way to protect those individuals' rights and to ensure that Defendants are held fully liable for any legal violations.

Finally, class adjudication is decidedly superior in the employment context, especially where, as here, the employer is a multimillion dollar corporation with significant legal resources. This is so because the fear of employer retaliation may have a chilling effect on employees' bringing claims on an individual basis. Risk of reprisal by an employer is well-recognized as weighing in favor of certification. *See Mullen v. Treasure Chest Casino*, 186 F.3d 620, 625 (5th Cir. 1999); *Edmonson v. Simon*, 86 F.R.D. 375 (N.D. Ill. 1980); *Scott v. Aetna Services, Inc.*, 210 F.R.D. 261, 268 (D. Conn. 2002); *Adames v. Mitsubishi Bank, Ltd.*, 133 F.R.D. 82, 89 (E.D.N.Y. 1989); *Slahina v. West Penn Parking Corp.*, 106 F.R.D. 419, 423 (W.D. Pa. 1984). Indeed, one court has explained that fear

---

eleventh largest verdict in Massachusetts in 2006).

of employer retaliation against individuals is "a very important concern" because "the nature of the economic dependency involved in the employment relationship is inherently inhibiting." *O'Brien v. Encotech Const. Servcs., Inc.*, 203 F.R.D. 346, 350 (N.D. Ill. 2001).

For all of these reasons, a class action is superior in this case.

## CONCLUSION

For the reasons stated herein, Plaintiffs request that the Court grant the instant motion for class certification of a Massachusetts class of employees of Defendants pursuant to Rule 23.

Respectfully submitted,

IAN O'DONNELL, et al.
By their attorneys,

 /s/Shannon Liss-Riordan
Shannon Liss-Riordan, BBO #640716
Hillary Schwab, BBO #666029
PYLE, ROME, LICHTEN, EHRENBERG
    & LISS-RIORDAN, P.C.
18 Tremont Street, Ste. 500
Boston, MA 02108
(617) 367-7200

Dated: June 22, 2007

## CERTIFICATE OF SERVICE

I hereby certify that on June 22, 2007, I caused a copy of this document to be served by electronic filing on all counsel of record.

 /s/Shannon Liss-Riordan
Shannon Liss-Riordan, Esq.

14