**United States District Court**
**District of Massachusetts**

```
_____
                              )
IAN O'DONNELL, DAVID JOLICOEUR, )
AND STACEY MOORE, on behalf of  )
themselves and all others       )
similarly situated,             )    Civil Action No.
          Plaintiffs,           )    04-12719-NMG
                                )
          v.                    )
                                )
ROBERT HALF INTERNATIONAL, INC. )
AND ROBERT HALF CORPORATION,    )
          Defendants.           )
_____ )
```

**MEMORANDUM & ORDER**

**GORTON, J.**

_____The plaintiffs in a putative class action have filed a motion for reconsideration or, in the alternative, for certification to the Court of Appeals of this Court's May 10, 2007 decision denying their motion to conditionally certify a class under the rubric of the Fair Labor Standards Act ("the FLSA"). They also seek a tolling of the statute of limitations. In separate motions, the plaintiffs move for summary judgment and to certify a class pursuant to Fed. R. Civ. P. 23. The defendants have countered with a motion for summary judgment on one of the plaintiffs' claims and a motion to stay resolution of the plaintiffs' motion to certify a class pursuant to Rule 23.

-1-

I.    **Factual Background**

The plaintiffs, Ian O'Donnell ("O'Donnell"), David Jolicoeur ("Jolicoeur") and Stacey Moore ("Moore"), on behalf of themselves and others similarly situated (collectively, "the plaintiffs"), initiated an action against Robert Half International, Inc. and Robert Half Corporation (collectively "RHI") for violation of the FLSA and Mass. Gen. Laws, Chapter 151, §§ 1A and 1B ("the Massachusetts Wage Act").

The FLSA requires that employees be compensated for hours worked in excess of 40 per week at a minimum rate of one and one-half times their regular rate of pay.  29 U.S.C. § 207(a)(1). Employees are, however, exempt if they are "employed in a bona fide executive, administrative, or professional capacity".  29 U.S.C. § 213(a)(1).

RHI is a staffing company based in Menlo Park, California, with offices throughout the country.  O'Donnell and Jolicoeur are former Staffing Managers of RHI in the Accountemps Division and Moore is a former Account Manager in the Creative Group Division. All were employed in the Boston, Massachusetts office although O'Donnell worked in other offices in Connecticut and Massachusetts as well.  They allege that RHI has deprived them of overtime pay to which they are entitled by improperly characterizing them as overtime-exempt employees under the FLSA. The plaintiffs' claim they were tightly-controlled telephone

operators who had no discretion or managerial authority and that, therefore, they should have been treated as employees eligible for overtime.

The plaintiffs also contend that, as exempt employees, their salaries and the salaries of all exempt RHI employees were subjected to improper deductions.  RHI has a "CHOICE Time Off" ("CTO") benefit which includes vacation days, sick days and personal days off for both its exempt and non-exempt employees. RHI maintains CTO "banks" for employees in order to keep track of accrued days off.  Time is deducted from the CTO banks in full-day increments.  The RHI Employee Handbook ("the Handbook") states that employees who take more than two hours off during a day for personal reasons should deduct eight hours (a full day) from their CTO bank.  Managers, however, may "look at the individual circumstances and apply judgment as to how to record the time."  The Handbook also permits, subject to supervisor approval, an employee to borrow up to five days of unearned CTO. According to the Handbook and other payroll documents, if an employee's employment is terminated while that employee has a negative CTO balance (i.e., the employee has borrowed days not yet earned), RHI will deduct the CTO amount owed from the employee's final paycheck.

As a result of the policies set forth in the Handbook, it is possible for an exempt employee to take a partial day off, borrow

time for that day off and then have that borrowed time deducted from his/her final paycheck if the borrowed CTO time is not yet earned.  Plaintiffs point out that deducting an exempt employee's salary for partial days off is an impermissible deduction under the FLSA.  See 29 C.F.R. § 541.602(a)-(b)(2).

RHI also offers "salary continuation".  Salary continuation is a payment that RHI typically makes to employees when they provide advance notice of resignation and RHI chooses not to require or allow the employees to work through their notice period.  Generally, RHI pays the employees through the notice period but asks them to leave on the day the resignation is tendered.

Plaintiffs O'Donnell and Jolicoeur received salary continuation payments in their last paycheck but only O'Donnell had money deducted from his final paycheck for borrowed CTO time. There is no allegation or evidence that the CTO deduction resulted from time borrowed as a result of partial day absences. Moreover, O'Donnell's salary continuation payment exceeded the money deducted for his borrowed CTO time.

Pursuant to 29 U.S.C. § 216(b), an action for violation of the FLSA may be maintained "against any employer ... by any one or more employees for and in behalf of himself or themselves and other employees similarly situated."  That provision has been construed to establish an "opt-in" class action scheme whereby

potential plaintiff-employees may affirmatively notify the court of their intent to become parties in order to be bound by the action.  Kane v. Gage Merch. Servs., Inc., 138 F. Supp. 2d 212, 214 (D. Mass. 2001).  District courts have discretion to implement § 216(b) by notifying putative plaintiffs of the pendency of the action.  Id.

A class may be conditionally certified and notified of the pendency of an action only if the putative class members are "similarly situated" with the named plaintiffs.  See id.

## II.  **Procedural History**

On December 1, 2004, the plaintiffs filed a complaint in state court alleging two counts: 1) violation of M.G.L. c. 151, §§ 1A, 1B (mandating payment of overtime wage to certain kinds of employees) and 2) violation of the FLSA, 29 U.S.C. §§ 201-219 (same).  On December 29, 2004, RHI removed the case to this Court on federal question grounds.

On May 11, 2005, the plaintiffs filed a motion to facilitate § 216(b) notice in which it sought conditional certification of the class.  In opposition, the defendants argued that the plaintiffs had failed to demonstrate sufficiently that the putative class members were "similarly situated".

While that motion was pending, on November 30, 2005, the plaintiffs filed a motion to amend the complaint wherein they

-5-

added additional allegations supporting their claim that the
putative class members were similarly situated. On the same day,
they filed a renewed motion to facilitate § 216(b) notice, again
seeking conditional certification of the class, but this time on
the basis of the allegations in the amended complaint. In
opposition, the defendants filed their own motion requesting that
this Court stay resolution of the renewed motion for conditional
certification until the other motions had been resolved and the
defendants had an opportunity to respond.

On March 30, 2006, this Court entered a Memorandum & Order
denying the plaintiff's first motion for conditional class
certification but allowing their motion to amend the complaint.
See O'Donnell v. Robert Half Intern., Inc., 429 F. Supp. 2d 246
(D. Mass. 2006) ("O'Donnell I"). The Court also afforded the
defendants an additional 30 days to file an opposition to the
renewed motion to facilitate § 216(b) notice. In accordance with
that order, the defendants filed their opposition to the
plaintiffs' renewed § 216 motion on May 1, 2006.

Due to an electronic filing error, the renewed motion for
conditional class certification was not resolved by this Court
until May 10, 2007. On that date, this Court entered a
Memorandum & Order (Docket No. 60, "O'Donnell II") denying the
plaintiffs' renewed motion for conditional class certification,
finding that the plaintiffs had failed to demonstrate that there

-6-

were other potential plaintiffs who were similarly situated and
interested in joining the suit.

On May 21, 2007, the plaintiffs filed a motion for
reconsideration, or in the alternative, certification to the
First Circuit Court of Appeals of the decision denying the
renewed motion for conditional class certification and a motion
for tolling the statute of limitations.  On that same day, the
defendants filed a motion for partial summary judgment on the
salary basis claims.  On June 5, 2007, the plaintiffs filed a
motion for summary judgment and, a few weeks later, a motion to
certify a class pursuant to Fed. R. Civ. P. 23.  On July 6, 2007,
the defendants filed a motion to stay resolution of the
plaintiffs' motion to certify a class pursuant to the federal
rules.

III. **Motion for Reconsideration, or in the Alternative,**
     **Certification to the Court of Appeals, and for Tolling**
     **(Docket No. 61)**

A. **Reconsideration**

1. **Legal Standard**

Under Rule 59(e), a party may "direct the district court's
attention to newly discovered material evidence or a manifest
error of law or fact...enabl[ing] the court to correct its own
errors."  Aybar v. Crispin-Reyes, 118 F.3d 10, 15 (1st Cir.
1997).  A motion for reconsideration should be granted only if

–7–

the court has patently misunderstood a party or there is a significant change in the law or facts since the submission of the issues to the court by the parties. Reyes Canada v. Rey Hernandez, 224 F.R.D. 46, 48 (D.P.R. 2004) (citing Bank of Waunakee v. Rochester Cheese Sales, Inc., 906 F.2d 1185, 1191 (7th Cir. 1990)).

Pursuant to 29 U.S.C. § 216(b), the Court must determine whether the putative class members are "similarly situated". As discussed in this Court's Memorandum & Order dated March 30, 2006, at this stage in the proceedings the Court applies a "fairly lenient standard" to determine whether the putative class members were subject to a single decision, policy or plan that violated the law based on the pleadings and affidavits filed in the case. See O'Donnell I, 429 F. Supp. 2d at 249. Courts are split with respect to whether and how plaintiffs must demonstrate that those similarly-situated, putative class members are interested in joining the suit. Compare Dybach v. Fla. Dep't of Corr., 942 F.2d 1562, 1567-68 (11th Cir. 1991)(holding that the district court should determine whether other plaintiffs desire to opt-in before issuing notice); Parker v. Rowland Express, Inc., 492 F. Supp. 2d 1159, 1166-67 (D. Minn. 2007) with Heckler v. DK Funding, LLC, 502 F. Supp. 2d 777, 780 (N.D. Ill. 2007) (finding a demonstration that other employees wish to join the class unnecessary). This Court has, however, held and holds

again today that Plaintiffs must present information, i.e., more than speculation or bald assertions by the plaintiffs, that putative class members are interested in joining the suit.

### 2.  Application

In O'Donnell I, the Court identified two main shortcomings with the plaintiffs' motion for conditional certification.  The first was that the plaintiffs had not shown that all of the putative class members, including RHI staff members who are located in other parts of the country, were subject to a common policy that violated the law.  The second problem was that the plaintiffs failed to demonstrate that any of the putative class members, aside from the named plaintiffs, was interested in joining the suit.

In O'Donnell II, the Court concluded that the plaintiffs had failed to overcome the defects identified in O'Donnell I. Despite the addition of the "salary basis" theory of liability and the introduction of the Handbook and actual employment records in the amended complaint, the Court found that plaintiffs had not shown that all of the putative class members were subject to a common policy that violated the law or that any additional putative class members were interested in joining the suit.  The plaintiffs now contend that the court misunderstood their argument and the law when it denied their renewed motion for conditional class certification.

-9-

### a.   Common Policy

The plaintiffs assert that using either the "duties test" or the "salary basis test" they can demonstrate that employees at RHI were subjected to a common policy that violated the law.  The duties test and the salary basis test are used to determine whether a defendant-employer has misclassified an employee as exempt and consequently withheld overtime pay in violation of law.  Under the duties test, courts look to the employee's job responsibilities to determine the appropriateness of an exempt status.  Employing that theory of liability, the plaintiffs have attempted to demonstrate, in essence, that RHI has an unlawful policy of classifying Staffing Managers, Recruiting Managers and Account Executives as exempt despite the fact that such employees have no management responsibility.  Because the plaintiffs point to no new facts that this Court has not already considered nor to any error of law with regard to this theory of liability, this Court will not reconsider certification based on the duties test.

The plaintiffs do, however, suggest that the Court misunderstood their argument under the salary basis test.  Under that test, courts look to whether an employee classified as exempt has been subjected to improper deductions in pay.  An employee is not properly categorized as exempt if that employee is "subject to reduction [in salary] because of variations in the quality or quantity of the work performed." 29 C.F.R. §

541.602(a); <u>Auer</u> v. <u>Robbins</u>, 519 U.S. 452, 455-57 (1997).  The plaintiffs in this case use the salary basis theory of liability to allege that <u>all</u> exempt employees of the defendant are "subject to" a common policy, contained in the Handbook, whereby the employee is docked pay when he/she takes less than a full day of personal or sick leave.

This Court stated in <u>O'Donnell *II*</u> that "[t]he plaintiffs do not allege that the Employee Handbook, in and of itself, violates the law."  In their motion for reconsideration, the plaintiffs make clear that they do, in fact, allege that the Handbook violates the law.[1]  They argue that because the Handbook states that RHI reduces the pay of employees classified as exempt for partial-day absences in certain situations, it violates the law.

In <u>Auer</u> v. <u>Robbins</u>, 519 U.S. 452 (1997), the Supreme Court determined what sort of policy would violate the salary basis test.  There must be "either an actual practice of making [impermissible] deductions or an employment policy that creates a 'significant likelihood' of such deductions." <u>Id.</u> at 461.  To find an employee not exempt under the salary basis test based on an employment policy "requires a clear and particularized

---

[1] In their motion for reconsideration, the plaintiffs point out a few other discrepancies in the Court's discussion of the salary basis claim in <u>O'Donnell *II*</u> and, although the Court acknowledges that it confused "exempt" with "non-exempt" employees in three instances, that confusion and any other misstatement do not alter its ultimate conclusion.

policy--one which 'effectively communicates' that deductions will be made in specified circumstances." Id.

The plaintiffs argue that the Handbook has three provisions that, together, result in impermissible, partial-day salary deductions for exempt employees:

> 1) a provision that employees should deduct time from their CTO bank for partial day absences,
>
> 2) an allowance that employees, subject to manager approval, may take up to five days of leave time in advance of earning the time off, and
>
> 3) a requirement that, if an employee terminates before earning back any borrowed CTO time, the CTO amount owed will be subtracted from the employee's final paycheck.

Consequently, the plaintiffs argue that, according to the Handbook, an employee could take a partial-day off on borrowed time, terminate before that time off is earned back and then incur a deduction from his/her final paycheck. In that situation, the plaintiffs argue, RHI would have deducted salary of an employee as a result of a partial-day absence, a practice prohibited under the FLSA for exempt employees. See 29 C.F.R. § 541.602(a)-(b)(2).

Plaintiffs also contend that RHI's policy of requiring employees to deduct eight hours of CTO for personal absences longer than two hours encourages employees to take the whole day off.[2] If CTO time is borrowed for such an "employer-occasioned"

---

[2] Plaintiff Moore also asserts in an affidavit that she was encouraged by RHI to take full days off when she sought to take

absence and must later be repaid from the last paycheck, that
too arguably violates the salary basis test.  See 29 C.F.R. §
541.602(a) ("An employee is not paid on a salary basis if
deductions from the employee's predetermined compensation are
made for absences occasioned by the employer....").

     The three cited provisions of the Handbook do not, however,
amount to an employment policy that creates a "significant
likelihood" of impermissible deductions and thus the plaintiffs
have failed to establish that putative class members are subject
to a common policy.  Although the Handbook allows RHI, by virtue
of three separate provisions and events, eventually to deduct pay
from a salaried employee for a partial-day absence, it does not
communicate that such deductions will, in fact, be made.  See
Ahern v. County of Nassau, 118 F.3d 118, 121-22 (2d Cir. 1997)
(holding that plaintiffs must show that impermissible deduction
would, in fact, be made in specified circumstances in order to be
entitled to judgment as a matter of law).

     According to the Handbook, managers have flexibility to
decide how much leave time an employee should take when absent
from work and have complete discretion with respect to whether
employees can borrow CTO time.  Although O'Donnell had CTO time
deducted from his final paycheck, there is no information or

---

only partial days off.  Despite her claim that she took two half-
days off in July 2003, however, employment records do not reflect
a deduction of any CTO time during that time period.

allegation that such borrowed CTO resulted from partial days off or employer-occasioned absences. Moreover, neither Jolicouer nor Moore had any salary deducted from their final paychecks. As a result, the plaintiffs have failed to identify a common policy which violates the law and to which all exempt employees at RHI, which number in the thousands, are subject.

### b. Interest in Joining the Suit

In its two prior decisions, this Court concluded that the plaintiffs had failed to demonstrate that any of the putative class members are interested in joining the suit. Several courts have considered such interest to be a prerequisite to the conditional certification of a class and this Court finds their reasoning persuasive. See, e.g., Parker v. Rowland Express, Inc., 492 F. Supp. 2d 1159, 1166-67 (D. Minn. 2007); Simmons v. T-Mobile USA, 2007 WL 210008, at *9 (S.D. Tex. Jan. 24, 2007).

The plaintiffs, in their motion for reconsideration, make no additional showing that other individuals would be interested in joining this lawsuit. They merely cite the certification of a class under the duties test in California Superior Court to suggest that other putative plaintiffs would be interested in joining the action before this Court. Consequently, the plaintiffs have again failed to demonstrate sufficient interest of other individuals in this lawsuit.

-14-

**B.   Certification to the Court of Appeals**

In their motion for reconsideration, the plaintiffs ask this Court, in the alternative, to certify the question of conditional certification to the First Circuit Court of Appeals. Interlocutory appeals under 28 U.S.C. § 1292(b) are disfavored. Lane v. First Nat. Bank of Boston, 871 F.2d 166, 175 (1st Cir. 1989).  A district court may certify an order for interlocutory appeal, if it finds that 1) the order involves a controlling question of law, 2) as to which there is substantial ground for difference of opinion and 3) an immediate appeal may materially advance the ultimate termination of the litigation.  28 U.S.C. § 1292(b).  Appeal of a denial for conditional certification will not materially advance the resolution of the litigation nor does the order denying conditional certification involve a controlling question of law.  Consequently, this Court will not certify the question of conditional certification to the Court of Appeals.

**C.   Tolling**

Equitable tolling of the statute of limitations is available only in extraordinary circumstances and is to be invoked sparingly.  See Vistamar v. Fagundo-Fagundo, 430 F.3d 66, 71 (1st Cir. 2005) (citations omitted); Guerro-Santana v. Gonzales, 499 F.3d 90, 94 (1st Cir. 2007) (citations omitted).  The plaintiffs move this Court to toll the statute of limitations arguing that their renewed motion for facilitation remained pending for an

extended period of time and is now the subject of a motion for reconsideration.  On reconsideration this Court will again deny the Motion to Facilitate Notice, however, and thus tolling of the statute of limitations is inappropriate.  In deciding not to facilitate notice, this Court has determined that there are no persons entitled to notice who were disadvantaged due to delay. Moreover, as the defendants correctly point out, nothing has prevented other individuals from joining the lawsuit as the third plaintiff, Moore, did.  For these reasons, equitable tolling of the statute of limitations is unwarranted at this time.

## IV.   **Plaintiffs' Motion for Summary Judgment (Docket No. 67)**

The plaintiffs' motion for summary judgment will be denied for substantially the same reasons that the motion for reconsideration will be denied.  The plaintiffs claim that the Handbook subjected them to an unlawful policy under the FLSA.  As discussed above, in order for an employee to be mischaracterized as exempt under the salary basis test, there must be in the workplace "either an actual practice of making [impermissible] deductions or an employment policy that creates a 'significant likelihood' of such deductions."  Auer, 519 U.S. at 461.  The Handbook alone does not create a "significant likelihood" of such deductions because it authorizes managers to use considerable discretion with respect to tracking CTOs.  Consequently, there is

a genuine issue of material fact as to whether the plaintiffs
were subject to impermissible deductions, making summary judgment
in favor of the plaintiffs inappropriate at this time.

## V.    Defendants' Motion for Partial Summary Judgment (Docket No. 62)

RHI is not entitled to summary judgment either.  Although
the plaintiffs have proffered no undisputed facts that prove that
RHI has an actual practice or employment policy that violates the
salary basis test, neither has RHI demonstrated that such
practice does not exist.  RHI argues that the three named
plaintiffs received their full salary for every week they worked
at RHI but even if that is true, proof that RHI violated the FLSA
is not impossible.  The Supreme Court has made clear that
plaintiffs need not prove they were victims of improper
deductions.  It is enough that the plaintiffs were "subject to"
improper deductions.  29 C.F.R. § 541.602(a); Auer, 519 U.S. at
461-62.  RHI has not demonstrated that the plaintiffs were not
subject to such a policy.

The Handbook suggests the possibility of a violation of the
salary basis test.  An employee could take part of one day off
using borrowed CTO and leave RHI before repaying that borrowed
CTO.  Her negative CTO balance could then be deducted from her
final pay check.  RHI contends that such a deduction would be
from the "gratuitous" salary continuation rather than actual

-17-

salary, but there is, at least, a genuine issue of material fact as to whether the CTO reimbursement is actually deducted from salary rather than from the salary continuation.  If the CTO reimbursement is deducted from her salary, RHI may have made an improper deduction from the pay of an employee classified as exempt.  RHI has failed to present undisputed facts to show that there is no practice of making such deductions.  Consequently, there is a genuine issue of material fact as to whether RHI has an actual practice or policy that creates a significant likelihood of making improper deductions and therefore the defendants' motion for summary judgment will be denied.

## VI.   Motion to Certify Class Pursuant to Fed. R. Civ. P. 23 (Docket No. 73)

Plaintiffs move this Court, pursuant to Fed. R. Civ. P. 23(b)(3), to certify a class of Massachusetts employees based only on RHI's alleged violation of the salary basis test under Massachusetts law.[3]  Rather than oppose the motion, RHI has filed a motion to stay certification until the motions for reconsideration and summary judgment have been resolved.  The proposed class would include:

All employees who have worked for Defendants in

---

[3]Massachusetts law mirrors federal law with respect to the definition of exempt employees and the overtime pay provisions. 455 MASS. CODE REGS. 2.02(3); Swift v. Autozone, 441 Mass. 443, 447, 449 (2004).

> Massachusetts at any time from December 6, 2002, to the
> present, who have been classified as exempt from the
> overtime requirements of the FLSA and the Massachusetts
> Wage Act.

The plaintiffs note that, because the Massachusetts Wage Act
contains no opt-in provision procedure like that included in the
FLSA, Rule 23 governs their motion.

### A.   Legal Standard

Rule 23(a) requires that a class meet the following
criteria: 1) "the class is so numerous that joinder of all
members is impracticable" (numerosity), 2) "there are questions
of law or fact common to the class" (commonality), 3) "the claims
or defenses of the representative parties are typical of the
claims or defenses of the class" (typicality), and 4) "the
representative parties will fairly and adequately protect the
interests of the class" (adequate representation).  Under Fed. R.
Civ. P. 23(b)(3), an action may proceed as a class action if the
four described criteria are met as well as if a) "the questions
of law or fact common to class members predominate over any
questions affecting only individual members" and b) "a class
action is superior to other available methods for fairly and
efficiently adjudicating the controversy."

### B.   Application

#### 1.   Rule 23(a) Requirements

The plaintiffs argue persuasively that they have satisfied
the requirements of numerosity, typicality and adequate

representation.  Although they have not alleged an exact number
of class members, the number of RHI offices in Massachusetts
indicates that there could be at least 50 exempt RHI employees
employed in Massachusetts and therefore potential members of the
class.  The plaintiffs also assert claims that would be typical
of other class members in that they all challenge an allegedly
illegal policy and/or practice of RHI that purportedly affected
all exempt employees.  Finally, the plaintiffs have presented
information about their counsel to demonstrate adequacy of
representation.

It is not as clear, however, that the plaintiffs have
successfully shown that there are questions of law or fact common
to the class.  The Rule 23(a) commonality requirement is a "low
hurdle", however, and can be met by demonstrating even a single
common legal or factual issue.  S. States Police Benevolent
Assoc. v. First Choice Armor & Equip., Inc., 241 F.R.D. 85, 87-88
(D. Mass. 2007).  In this case, the plaintiffs contend that all
exempt RHI employees are subject to a common policy and/or
practice permitted by provisions in the Handbook that violate the
Massachusetts Wage Act.  That common question of law or fact is
enough to clear the fourth hurdle.

### 2.   Rule 23(b)(3) Requirements

The plaintiffs are not as convincing when they argue that
common questions of law or fact predominate or that a class

-20-

action is the best way to resolve this dispute.  "The Rule
23(b)(3) predominance inquiry tests whether proposed classes are
sufficiently cohesive to warrant adjudication by representation."
Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 623 (1997). The
plaintiffs' proposed class does not appear cohesive.  As
indicated above, the Handbook, on its own, does not demonstrate a
violation of the salary basis test.  In order to show that RHI
violated the salary basis test, the plaintiffs will have to
present evidence with respect to how the policies in the Handbook
were implemented.  They will have to determine whether 1)
particular managers had a practice of deducting full days from
employees' CTO banks for partial day absences, 2) employees were
required to borrow eight hours of CTO for partial day absences or
3) employees were allowed to borrow CTO time at all.

Determining whether RHI violated the salary basis test with
regard to every exempt employee working in Massachusetts will
require individualized inquiries depending on the office where
the employee worked, who managed the employee and what position
the employee held.  As a result of these individualized
inquiries, common questions of fact or law do not appear to
predominate nor does a class action appear to be the most
efficient way to adjudicate the controversy.  This Court will
reserve judgment on this motion, however, until the defendants
have had an opportunity to file an opposition to the motion, if

any, and the plaintiffs have had an opportunity to address the Court's concerns and reply to the defendants' opposition.

## ORDER

In accordance with the foregoing,

1)    Plaintiffs' Motion for Reconsideration or, in the Alternative, for Certification to the Court of Appeals and for Tolling (Docket No. 61) is **DENIED;**

2)    Plaintiffs' Motion for Summary Judgment (Docket No. 67) is **DENIED;**

3)    Defendants' Motion for Partial Summary Judgment (Docket No. 62) is **DENIED;**

4)    Defendants' Motion to Stay Plaintiffs' Motion to Certify Class Pursuant to Fed. R. Civ. P. 23 (Docket No. 75) is **DENIED**, provided however, that Defendants shall, on or before January 31, 2008, file their opposition to plaintiffs' motion to certify class, if any, and plaintiffs shall, on or before February 15, 2008, reply to such an opposition and address the concerns of the Court with respect to whether a) common questions of law or fact predominate and b) the class action is the best way to resolve the dispute.

**So ordered.**

/s/Nathaniel M. Gorton
Nathaniel M. Gorton
United States District Judge

Dated January 9, 2008