**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

|  |  |
|---|---|
| IAN O'DONNELL et al.,<br><br>　　　　　　Plaintiffs,<br><br>v.<br><br>ROBERT HALF INTERNATIONAL INC.<br>and ROBERT HALF CORPORATION<br><br>　　　　　　Defendants. | CIVIL ACTION NO.: 04-12719 NMG |

**PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR CERTIFICATION OF A
MASSACHUSETTS CLASS PURSUANT TO FED. R. CIV. P. 23**

In its Memorandum & Order of January 9, 2008, the Court recognized that Plaintiffs have satisfied all four prongs of the Rule 23(a) analysis, including commonality. However, the Court expressed uncertainty as to whether the Plaintiffs satisfy the Rule 23(b)(3) requirements of predominance and superiority and requested the plaintiffs to address these factors particularly in additional briefing.

For the same reason that Plaintiffs satisfy the commonality requirement, they satisfy the predominance requirement as well. In its recent Order, the Court determined that the plaintiffs satisfy commonality because they "contend that all exempt RHI employees were subject to a common policy and/or practice permitted by provisions in the Handbook that violate the Massachusetts Wage

Act." Memorandum & Order, at 20. In order to prove a violation of the statute, the plaintiffs need not prove that they were each individually docked improperly, but only that they were "subject" to improper deductions. Memorandum & Order, at 17. Thus, the pertinent inquiry for <u>all</u> class members is how strictly the company enforced the provisions of its Handbook, i.e. whether the Handbook was followed sufficiently often to render them "subject" to improper deductions. Class members will not need to provide individualized evidence as to whether they themselves suffered improper deductions. Instead, the proof needed at trial will be common classwide proof regarding how frequently the Handbook was followed. If the company strictly enforced it, then such proof would create a "likelihood" of improper deductions, rendering all employees "subject" to that policy non-exempt and eligible for overtime payments. Regardless of any alleged discretion afforded to individual managers in implementing the policies, the common issue to the entire class is how strictly the company attempted to require its managers to follow the policies, and thus whether class members had a sufficient "likelihood" of being subject to an improper deduction.

In this case, the Court's conclusion that the commonality requirement is satisfied necessarily leads to the conclusion that the predominance requirement is satisfied. Cases in which commonality is found to be met, but not predominance, are those in which courts have found <u>some</u> issues to be common, but not a predominance of issues. In this case, the <u>only</u> pertinent issue is the very one that the Court has found to be common. That issue is whether class members had a "likelihood" of being subject to improper deductions. Since this is

the only issue pertinent to liability on the plaintiffs' salary basis theory, it is by definition the predominant issue.

Thus, there is no predominance of individualized inquiries here; the entire relevant factual inquiry is common to the class. Although the evidence may include individualized facts showing that the policy did lead to improper deductions in certain instances, whether these deductions sufficed to create a "policy" or "practice" will be a common issue for all class members.

Robert Half has argued that its managers had discretion as to whether to follow the requirements of the Handbook; based on this argument, the Court has now determined that the parties must present proof as to whether the managers did or did not follow the Handbook as written. Thus, all class members share the common inquiry as to whether or not, and how frequently, the Handbook was enforced as written. If it was enforced strictly, then all employees subject to the Handbook's policies would be rendered non-exempt. If, as the defendant claims, managers had "discretion" regarding whether to follow the procedures set forth in the Handbook[1], the common question remains whether that alleged discretion was exercised frequently enough to undermine the policy violation that would result if the Handbook were enforced as written.

Given that implementation of the Handbook policies as written would violate the salary basis test, and given that <u>it is the defendant's burden to prove</u>

---

[1] In the Memorandum & Order, at 21, the Court indicated concern that there might be variations with respect to whether individual managers required employees to borrow CTO time for partial day absences and whether employees were permitted to borrow CTO time at all. If employees were not permitted to borrow CTO at all, then the defendant was admittedly violating the salary basis test (making the plaintiffs' case even easier to prove) by either docking employees for the partial days or creating "employer-occasioned absences" by not permitting employees to work a partial day that they were prepared to work.

3

<u>that an exemption exists</u> (i.e. that the salary basis test was followed), the issue raised here is a class issue.  If the defendant's policies were in fact followed frequently enough to lead to a "likelihood" of improper deductions, then an entire class of employees was thereby rendered non-exempt.  This is not an individualized inquiry; it is a common classwide inquiry.

If discovery reveals that only certain managers implemented the policy as written and others exercised discretion not to enforce the policy as written, then the scope of the class could be narrowed prior to trial.[2]  However, given that the company Handbook itself, if enforced as written, would lead to an improper deduction, the plaintiffs' allegations create a classwide – not individualized – allegation that all employees subject to that Handbook are non-exempt.  Effectively, there are no individualized inquiries here; based on the plaintiffs' salary basis theory, if the named plaintiffs are non-exempt, then so were their co-workers.  Thus, the predominance inquiry is satisfied.

Effectively, the common, predominant inquiry here is created by the company's Handbook.  It would be a perversion of the protections of the overtime laws to allow a company to avoid classwide liability by arguing that its own Handbook was not followed.  As other courts have recently noted: "It is

---

[2]     To date, the defendant has refused to participate in discovery that would allow Plaintiffs to determine whether any improper deductions occurred to anyone other than the named plaintiffs.  However, because the named plaintiffs do not need to prove that they themselves experienced the improper deductions, but (like all class members) were only "subject" to a policy or practice (i.e. had a "likelihood" of experiencing these deductions if certain conditions were met), they need to obtain evidence regarding the application of the CTO policy to other employees.  This discovery will be relevant not only to themselves, but also to other class members.  If they show that they were "subject" to this policy or practice, then other class members would be as well.  Thus, this inquiry is inherently a classwide inquiry, not an individualized inquiry.

manifestly disingenuous for a company to treat a class of employees as a homogenous group for the purposes of internal policies and compensation, and then assert that the same group is too diverse for class treatment in overtime litigation." In re Wells Fargo Home Mortgage Overtime Pay Litigation, 2007 WL 3045994 (N.D. Cal. 2007) (citing Leuthold v. Destination America, Inc., 224 F.R.D. 462, 467 (N.D. Cal. 2004)).  That case, like other recent decisions cited therein, have determined that the commonality requirement is satisfied by virtue of the fact that the employer treats an entire category of employees as exempt; courts are rejecting defendants' attempts to evade class litigation by arguing that their stated companywide policies are not enforced consistently and by arguing that employees with the same job classifications actually perform different duties in different locations.[3]

---

[3]   As the court noted:

> In the context of overtime pay litigation, courts have often found that common issues predominate where an employer treats the putative class members uniformly with respect to compensation, even where the party opposing class certification presents evidence of individualized variations. For example, in Wang v. Chinese Daily News, 231 F.R.D. 602, 613 (C.D. Cal. 2005), the court held that the defendant "cannot, on the one hand, argue that all [putative class members] are exempt from overtime wages and, on the other hand, argue that the Court must inquire into the job duties of each [putative class member] in order to determine whether that individual is 'exempt.'"  Two recent decisions from this district are in accord. In Tierno v. Rite Aid Corp., No. 2006 WL 2535056 (N.D. Cal. Aug. 31, 2006), an overtime class action brought by store managers at Rite Aid, the court held that, given the fact that Rite Aid had historically 'treated all Store Managers as a homogenous group for the purposes of' the applicable labor laws and 'always categorically classified all Store Managers as exempt employees without exception ... Rite-Aid's [sic] contention that each Store Manager position must now be individually assessed to determine whether the position can be categorized as exempt or non-exempt rings hollow.'  Similarly, in Krzesniak v. Cendant Corp., 2007 WL 1795703 (N.D. Cal. June 20, 2007), another manager overtime case, the court held that where a putative class action plaintiff challenges a policy of classifying all employees of a given title as exempt, the defendant cannot then argue that individualized inquiries into the job duties of each employee are necessary to determine whether each employee is exempt.

In re Wells Fargo, 2007 WL 3045994, *8-9.

For these reasons, Plaintiffs have proven commonality.[4]

As to superiority, this requirement is satisfied as well. Even if, as the plaintiffs here allege, the company has violated the law in such a way as to undermine the company's ability to claim an overtime exemption for an entire class of its employees, without a class action, the vast majority of aggrieved employees would not have their rights vindicated.[5]

The majority of Robert Half employees who the plaintiffs claim should have been paid overtime would not have reason to know that they can or should bring individual lawsuits to recover pay that is owed to them. In particular, the salary basis test requirements are sufficiently technical and obscure enough that lay persons are very unlikely to be aware of them.[6] If the company (which, unlike

---

[4] The defendant argues that the plaintiffs lack commonality because class members would have claims for varying amounts of damages. However, differences in individuals' damages has been almost universally rejected as a basis for denying class certification. See, e.g., Smilow v. Southwestern Bell Mobile Sys., Inc., 323 F.3d 32, 40 (1st Cir. 2003); see also 7A Wright, Miller & Kane, Fed. Prac. & Proc. Civ. *3d* § 1764 n.13 and accompanying text (collecting cases).

[5] Class certification would protect the rights of class members, most of whom would otherwise be precluded from pursuing claims for relatively small awards, given the substantial expense that has been and will be required to prosecute this case. See Deposit Guar. Nat'l Bank v. Roper, 445 U.S. 326, 339 (1980) ("Where it is not economically feasible to obtain relief . . . [in separate suits] aggrieved persons may be without any effective redress unless they may employ the class action device."); Local Joint Exec. Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc., 244 F.3d 1152, 1163 (9th Cir. 2001) ("If plaintiffs cannot proceed as a class, some – perhaps most – will be unable to proceed as individuals because of the disparity between their litigation costs and what they hope to recover.").

[6] In its recent order, the Court again concluded that the lack of "opt-in" plaintiffs signals a meaningful lack of interest in this litigation, which led the Court to deny counsel the opportunity to send out notices to inform potential class members of their ability to participate in this litigation. However, without having been informed of the pendency of this action, nor informed of their rights to pursue a claim for overtime pay under these technical rules, there is no reason for potential class members to know that they have these rights and this opportunity. The fact that one class member learned about the case and chose to opt-in does not signal that others had that opportunity and refused it. The plaintiffs, who no longer work for the company, do not have contact information for putative class members; because the defendant has refused to provide this contact information, and the Court denied the plaintiffs' request that the defendant be ordered to provide it, other class members have simply not been notified of their rights and thus have no reason to have known that they could have opted in.

6

its employees, has a legal obligation to know and follow the wage laws) has in fact violated these rules so as to treat employees as non-exempt, but not pay them as non-exempt employees, it would defeat the purpose of the wage laws and the class action mechanism not to allow this claim to proceed on behalf of all similarly affected employees.

As one court recently noted in denying Starbucks' motion to decertify a national FLSA opt-in class:

> It simply cannot be that an employer may establish policies that create strong incentives for managers to encourage or allow employees to work off-the-clock, and avoid a FLSA collective action because a large number of employees at a number of different stores are affected.  To a certain extent, any large class of employees working for a nationwide employer alleging FLSA overtime violations will encounter these difficulties [of somewhat varying factual situations], and there is no indication that Congress intended section 216 to only allow small collective actions involving unpaid overtime to proceed.

Falcon v. Starbucks Corp., 2008 WL 155313 at 18-19 (citing Donohue v. Francis Services, Inc., 2004 WL 1406080 at *1 (E.D. La. June 22, 2004) (refusing to decertify a collective action on allegations that the class was too large and noting that "[a]dopting defendants' reasoning would lead to the absurd result that employers could escape FLSA liability by making sure to underpay vast numbers (rather than smaller numbers) of their employees.").  Similarly, it would defeat the purpose of the overtime laws to allow a company such as Robert Half to create a policy in its Handbook that, if enforced as written, would lead to impermissible deductions of allegedly exempt employees' pay – yet allow the company to escape liability for such a policy by arguing that it is enforced with varying uniformity.

7

Indeed, the practically identical issue to the one raised in this case is also being litigated by Plaintiffs' counsel in another case that was recently reviewed by the First Circuit. In Skirchak et al v. Dynamics Research Corp., 432 F. Supp. 2d 125 (D. Mass. 2006), the plaintiffs raise the same contention that is raised here, namely that their employer violated the salary basis test by virtue of the same scheme of partial day deductions, thus rendering all of their allegedly salaried employees non-exempt under federal and state overtime laws. The employer attempted to prevent this claim from being litigated as a class action by seeking to enforce a "class action waiver" in an arbitration agreement. The district court, Judge Lasker, rejected that attempt, explaining that: "the class action waiver is not only unfair to DRC employees, *but also removes any incentive for DRC to avoid the type of conduct that might lead to class action litigation in the first instance*." 432 F. Supp. 2d at 181 (emphasis added).[7] In November, the First Circuit affirmed that decision and ordered the case to proceed to class arbitration. See Skirchak et al v. Dynamics Research Corp., 508 F.3d 49 (1st Cir. 2007).

---

[7]  The court further observed that:

> By encouraging private civil actions on behalf of groups of affected employees, class actions under the FLSA therefore serve the public interest. Allowing private attorneys to prosecute such actions in the aggregate effectively ensures enforcement of the wage laws by motivating employers to comply or face potentially large-scale litigation, and by providing counsel with an incentive to pursue such claims.

*Id.*

8

## CONCLUSION

For the reasons stated herein and in their previous briefing, Plaintiffs request that the Court grant their motion for class certification.

|  |  |
|---|---|
|  | Respectfully submitted, |
|  | IAN O'DONNELL, et al.<br>By their attorneys, |
|  | /s/Shannon Liss-Riordan<br>Shannon Liss-Riordan, BBO #640716<br>Hillary Schwab, BBO #666029<br>PYLE, ROME, LICHTEN, EHRENBERG<br>    & LISS-RIORDAN, P.C.<br>18 Tremont Street, Ste. 500<br>Boston, MA 02108 |
| Dated: February 15, 2008 | (617) 367-7200 |

## CERTIFICATE OF SERVICE

I hereby certify that on February 15, 2008, I caused a copy of this document to be served by electronic filing on all counsel of record.

 /s/Shannon Liss-Riordan
Shannon Liss-Riordan, Esq.

9