```
                    United States District Court
                      District of Massachusetts
 _____
                               )
IAN O'DONNELL, DAVID JOLICOEUR, )
AND STACEY MOORE, on behalf of )
themselves and all others      )
similarly situated,            )    Civil Action No.
        Plaintiffs,            )    04-12719-NMG
                               )
        v.                     )
                               )
ROBERT HALF INTERNATIONAL, INC.)
AND ROBERT HALF CORPORATION,   )
        Defendants.            )
 _____)
```

**MEMORANDUM & ORDER**

**GORTON, J.**

The plaintiffs in a putative class action have filed a motion to certify a class pursuant to Fed. R. Civ. P. 23.

I. **Background**

   A. **Factual Background**

The plaintiffs, Ian O'Donnell ("O'Donnell"), David Jolicoeur ("Jolicoeur") and Stacey Moore ("Moore"), on behalf of themselves and others similarly situated (collectively, "the plaintiffs"), initiated an action against Robert Half International, Inc. and Robert Half Corporation (collectively "RHI") for violation of the Fair Labor Standards Act ("the FLSA") and Mass. Gen. Laws, Chapter 151, §§ 1A and 1B ("the Massachusetts Wage Act").

RHI is a staffing company based in Menlo Park, California,

with offices throughout the country.  O'Donnell and Jolicoeur are former Staffing Managers of RHI in the Accountemps Division and Moore is a former Account Manager in the Creative Group Division. All were employed in the Boston, Massachusetts office although O'Donnell worked in other offices in Connecticut and Massachusetts as well.  They allege that RHI has withheld from them overtime pay to which they are entitled by improperly characterizing them as overtime-exempt employees under the FLSA.

The plaintiffs contend that, as exempt employees, their salaries and the salaries of all exempt RHI employees were subjected to improper deductions.  RHI has a "CHOICE Time Off" ("CTO") benefit which includes vacation days, sick days and personal days off for both its exempt and non-exempt employees. RHI maintains CTO "banks" for employees in order to keep track of accrued days off.  Time is deducted from the CTO banks in full-day increments.

The RHI Employee Handbook ("the Handbook") states that for employees who take more than two hours off during a day for personal reasons, eight hours (a full day) should be deducted from their CTO bank.  Managers, however, may "look at the individual circumstances and apply judgment as to how to record the time."  The Handbook also permits, subject to supervisor approval, an employee to borrow up to five days of unearned CTO. According to the Handbook and other payroll documents, if an

employee's job is terminated while that employee has a negative CTO balance (i.e., the employee has borrowed days not yet earned), RHI will deduct the CTO amount owed from the employee's final paycheck.

As a result of the policies set forth in the Handbook, it is possible for an exempt employee to take a partial day off, borrow time for that day off and then have that borrowed time deducted from his/her final paycheck if the borrowed CTO time is not yet earned. Plaintiffs point out that deducting an exempt employee's salary for partial days off is an impermissible deduction under the FLSA. See 29 C.F.R. § 541.602(a)-(b)(2).

RHI also offers "salary continuation", i.e., a payment that RHI typically makes to an employee when he/she provides advance notice of resignation and RHI chooses not to require or allow that employee to work through his/her notice period. Generally, RHI pays the employees through the notice period but asks them to leave on the day the resignation is tendered.

Plaintiffs O'Donnell and Jolicoeur received salary continuation payments in their last paycheck but only O'Donnell had money deducted from his final paycheck for borrowed CTO time. There is no allegation or evidence that the CTO deduction resulted from time borrowed as a result of partial day absences. Moreover, O'Donnell's salary continuation payment exceeded the money deducted for his borrowed CTO time.

### B. Procedural History

On December 1, 2004, the plaintiffs filed a complaint in state court alleging: 1) violation of M.G.L. c. 151, §§ 1A, 1B (mandating payment of overtime wages to certain kinds of employees) and 2) violation of the FLSA, 29 U.S.C. §§ 201-219 (same). On December 29, 2004, RHI removed the case to this Court on federal question grounds.

On May 11, 2005, the plaintiffs filed a motion to facilitate § 216(b) notice in which it sought conditional certification of the class. While that motion was pending, on November 30, 2005, the plaintiffs filed a motion to amend the complaint wherein they added additional allegations supporting their claim that the putative class members were similarly situated. On the same day, they filed a renewed motion to facilitate § 216(b) notice, again seeking conditional certification of the class, only this time on the basis of allegations in the amended complaint. The defendants responded by filing their own motion to stay resolution of the conditional certification until the other motions had been resolved and the defendants had an opportunity to respond.

On March 30, 2006, this Court entered a Memorandum & Order denying the plaintiff's first motion for conditional class certification but allowing their motion to amend the complaint. See O'Donnell v. Robert Half Intern., Inc., 429 F. Supp. 2d 246

(D. Mass. 2006) ("O'Donnell I").  The Court also afforded the defendants an additional 30 days to file an opposition to the renewed motion to facilitate § 216(b) notice.  In accordance with that order, the defendants filed their opposition to the plaintiffs' renewed § 216 motion on May 1, 2006.

Due to an electronic filing error, the renewed motion for conditional class certification was not resolved until May 10, 2007.  On that date, this Court entered a Memorandum & Order (Docket No. 60, "O'Donnell II") denying the plaintiffs' renewed motion for conditional class certification on the grounds that the plaintiffs had failed to demonstrate that there were other potential plaintiffs who were similarly situated and interested in joining the suit.

In the two months following O'Donnell II, the plaintiffs filed motions 1) for reconsideration, or in the alternative, certification to the Court of Appeals of the decision denying the renewed motion for conditional class certification and a tolling of the statute of limitations, 2) for summary judgment and 3) to certify a class pursuant to Fed. R. Civ. P. 23. The defendants filed motions for partial summary judgment on the salary basis claims and to stay resolution of the plaintiffs' motion to certify a class.  On January 9, 2008, this Court issued a third Memorandum and Order (Docket No. 80, O'Donnell III) denying the motion for reconsideration, both motions for summary judgment and

the motion to stay. It reserved its ruling on the Motion to Certify Class Pursuant to Fed. R. Civ. P. 23, to permit the defendant to file an opposition and the plaintiffs to file a reply to that opposition. The parties have filed those briefs and the motion will be resolved as follows.

## II. Motion to Certify Class Pursuant to Fed. R. Civ. P. 23 (Docket No. 73)

Plaintiffs move this Court, pursuant to Fed. R. Civ. P. 23(b)(3), to certify a class of Massachusetts employees based on RHI's alleged violation of the salary basis test under Massachusetts law.[1] The proposed class would include:

> [a]ll employees who have worked for Defendants in Massachusetts at any time from December 6, 2002, to the present, who have been classified as exempt from the overtime requirements of the FLSA and the Massachusetts Wage Act.

The plaintiffs note that, because the Massachusetts Wage Act contains no opt-in provision procedure similar to the FLSA, Rule 23 governs their motion.

### A. Legal Standard for Class Certification

Fed. R. Civ. P. 23(a) requires that a class meet the following criteria: 1) "the class is so numerous that joinder of all members is impracticable" (numerosity), 2) "there are

---

[1] Massachusetts law mirrors federal law with respect to the definition of exempt employees and the overtime pay provisions. 455 MASS. CODE REGS. 2.02(3); Swift v. Autozone, 441 Mass. 443, 447, 449 (2004).

questions of law or fact common to the class" (commonality), 3) "the claims or defenses of the representative parties are typical of the claims or defenses of the class" (typicality), and 4) "the representative parties will fairly and adequately protect the interests of the class" (adequate representation). Under subsection (b)(3) of that Rule, an action may proceed as a class action if the four described criteria are met and also if a) "the questions of law or fact common to class members predominate over any questions affecting only individual members" and b) "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."

### B.  Rule 23(a) Requirements

As the Court noted in O'Donnell III, the plaintiffs argue persuasively that they have satisfied the requirements of numerosity, typicality and adequate representation. Although they have not alleged an exact number of class members, the number of RHI offices in Massachusetts indicates that there could be at least 50 exempt RHI employees employed in Massachusetts who are therefore potential members of the class. The plaintiffs also assert claims that would be typical of other class members in that they all challenge an allegedly illegal policy and/or practice of RHI that purportedly affected all exempt employees. Finally, the plaintiffs have presented information about their counsel to demonstrate adequacy of representation.

The plaintiffs have also successfully demonstrated that there are questions of law or fact common to the class. The Rule 23(a) commonality requirement is a "low hurdle" and can be met by demonstrating even a single common legal or factual issue. S. States Police Benevolent Assoc. v. First Choice Armor & Equip., Inc., 241 F.R.D. 85, 87-88 (D. Mass. 2007). In this case, there is at least one common question of law, i.e., whether exempt RHI employees are subject to a policy and/or practice permitted by provisions in the Handbook that violate the Massachusetts Wage Act. That common question of law or fact is enough for the plaintiffs to clear the fourth hurdle.

### 2. Rule 23(b)(3) Requirements

In their reply brief, the plaintiffs still struggle to demonstrate that common questions of law or fact predominate or that a class action is the best way to resolve the dispute. "The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 623 (1997). The plaintiffs argue that the pertinent inquiry for all class members is whether the allegedly illegal practice of partial-day, CTO deductions followed by a deduction for negative CTO time in the final paycheck occurred frequently enough to render the class members subject to improper deductions. The plaintiffs do not explain, however, how, in making that

determination, individualized inquiries would not be required. Even though each class member would not be required to show that RHI improperly deducted salary from that particular employee, he or she must show that he or she was subject to such a deduction.

The plaintiffs have presented no evidence to suggest that determining whether every exempt Massachusetts employee, from entry-level to executive in every Massachusetts RHI office was subject to improper deductions could best be accomplished on a class-wide basis. It is possible that, for example, RHI has an "unspoken" policy, contrary to the policy in the Handbook, of <u>requiring</u> managers to subtract CTO for partial day absences of all exempt employees and to deduct negative CTO balances from the final paycheck. The plaintiffs have not offered evidence that such an "unspoken" policy exists and, in fact, a memorandum written by the Director of Employee Programs and Benefit Operations in 2000 emphasized that managers must use discretion in making decisions regarding time off for exempt employees. Instead, determining whether an RHI employee was subject to improper deductions will more likely require examining the practices of the manager of that particular employee. <u>See</u> 29 C.F.R. § 541.603(b) ("If the facts demonstrate that the employer has an actual practice of making improper deductions, the exemption is lost...for employees in the same job classification working for the same managers responsible for the actual improper

deductions. Employees in different job classifications or who work for different managers do not lose their status as exempt employees.").

The cases that the plaintiffs cite to suggest that the Court should reject RHI's attempt "to evade class litigation by arguing that their stated companywide policies are not enforced consistently" all address cases in which the proposed class consists of employees with one job title and the same compensation scheme. See, e.g., In re Wells Fargo Home Mortgage Overtime Pay Litigation, 2007 WL 3045994 (N.D. Cal. 2007). In this case, plaintiffs are attempting to certify a class that includes every exempt RHI employee in Massachusetts regardless of job title or office location based on a Handbook that explicitly gives managers discretion. The plaintiffs also suggest that if discovery reveals that only certain managers implemented an allegedly illegal practice, the scope of the class could be narrowed prior to trial. Such a suggestion implies that the pertinent inquiry is not a class-wide inquiry but an individualized inquiry focusing on the manager of a particular employee.

The plaintiffs have not demonstrated that common questions of fact or law predominate or that a class action is the most efficient way to adjudicate this controversy. Consequently, this Court will deny the plaintiffs' motion to certify.

-10-

**ORDER**

  In accordance with the foregoing, Plaintiffs' Motion to Certify Class Pursuant to Fed. R. Civ. P. 23 (Docket No. 73) is **DENIED**.

**So ordered.**

              /s/Nathaniel M. Gorton
              Nathaniel M. Gorton
              United States District Judge

Dated March 27, 2008