**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| IAN O'DONNELL et al., | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) |
| | ) |
| ROBERT HALF INTERNATIONAL INC. and ROBERT HALF CORPORATION | ) |
| Defendants. | ) |

CIVIL ACTION NO.: 04-12719 NMG

**PLAINTIFFS' STATEMENT REGARDING STATUS OF CLASS ISSUES IN THIS CASE AND MOTION TO CONDUCT DISCOVERY ON CLASS CLAIMS**

At the conference held on July 31, 2008, the Court asked Plaintiffs to submit a brief statement explaining their position as to why class issues may proceed in this case and to request by motion, if necessary, that discovery include class discovery. Plaintiffs now submit this statement and request that they be permitted to pursue discovery regarding their class claims.

In this case, Plaintiffs contend that Defendant Robert Half has improperly classified its staffing and recruiting managers and account managers and executives as exempt employees and accordingly has failed to pay them overtime in violation of state and federal law. Plaintiffs have two theories as to why these employees were improperly classified as exempt. One theory is that their duties do not, as Defendant contends, place them under the administrative

exemption to overtime (the "duties test"), and the other theory is that Defendant has violated the salary basis test through its policy, as outlined in its Employee Handbook, that would allow impermissible deductions to be made from their pay for partial day absences (the "salary basis test").

The parties have never conducted any substantial discovery under either of these theories. Instead, Plaintiffs moved for class certification under the salary basis test theory (Docket #73), and both sides moved for summary judgment under the salary basis test theory (Docket #62 and 67), based on contentions that these issues could be resolved as legal issues without the need for substantial discovery.[1] The Court, however, rejected the contentions of both parties that this theory could be disposed of as a legal matter; accordingly, the Court denied both parties' motions for summary judgment. *See* Memorandum and Order of January 9, 2008 (Docket #80), at 17-18 (finding that "[t]here is a genuine issue of material fact as to whether RHI has an actual practice or policy that creates a significant likelihood of making improper deductions.")

---

[1] Previously, Plaintiffs had also moved for "conditional certification" of their FLSA claims under 29 U.S. § 216(b) (*see* Docket #11, 36). The Court denied these motions (*see* Docket #48, 60) and denied Plaintiffs' Motion for Reconsideration (Docket # 61, 80) on the ground that Plaintiffs had not established for purposes of sending notice that other employees were "interested" in the litigation. It is well settled that the standard for class certification under Rule 23 is different from the standard for conditional certification for purposes of issuing § 216(b) notice of employees' rights to opt-in to an FLSA claim. *See, e.g., Thiessen v. General Electric Capital Corp.*, 267 F. 3d at 1105 (10th Cir. 2001); *Grayson v. K Mart Corp.*, 79 F. 3d at1096-7 (11th Cir. 1996). The question of whether other employees are "interested" in joining the litigation is not a factor under Rule 23. Although Plaintiffs moved earlier in this case (prior to discovery) for opt-in notice on their "duties test" claim, they have not moved for Rule 23 class certification on this claim, nor has discovery yet been conducted on this claim.

As the Court noted at the recent July 31, 2008, conference, the fact that a California state court has certified a "duties test" class based on the same allegations as those made in this case (and based upon analysis of California Rule 23, which contains the same Federal Rule 23 factors applicable here) may be "enlightening" though not binding on this Court. *See Laffitte et al. v. Robert Half International, Inc. et al.*, Superior Court of the State of California for the County of Los Angeles – Central District, Case No. BC321317 (Nov. 2006) (attached here as Exhibit __).

The Court also denied Plaintiffs' motion for Rule 23 class certification on the salary basis test theory, finding that individualized analyses would be needed to determine whether individual employees were actually "likely" to be subject to the impermissible deduction spelled out in the Employee Handbook, based upon how much discretion their managers exercised in their enforcement of the handbook. *See* Memorandum and Order, March 27, 2008 (Docket # 23).

Having failed to convince the Court that this issue can be resolved on the basis of the Employee Handbook itself, Plaintiffs now plan to conduct discovery on the issue (outlined by the Court in its recent decision) of how strictly the Employee Handbook was in fact enforced.[2]  As a practical matter, this "salary basis test" discovery will be the same whether Plaintiffs are seeking recovery only for the named plaintiffs or for a class.  This is because the discovery will necessarily elicit information on all employees who experienced the improper

---

[2]    By deferring this discovery while awaiting the Court's ruling as a legal matter on whether the Employee Handbook could itself serve as a basis to prove a classwide violation of the salary basis test, the plaintiffs significantly conserved the parties' and counsel's resources.  Now that the Court has determined that such an individualized analysis is necessary, Plaintiffs should not be penalized for having pursued that economical course.  The Defendant has long been aware of Plaintiffs' salary basis test claim but has followed Plaintiffs' lead in not conducting discovery on this claim pending the Court's legal rulings on these issues.  A closing date for discovery has never been established (until the recent conference, when the Court set the close of discovery for January 31, 2009).

Plaintiffs have assumed throughout the course of the case that they would be permitted to engage in discovery necessary to these claims should the Court determine that such an individualized factual showing would be necessary.  By moving for summary judgment and for class certification on the basis of the Employee Handbook alone, prior to the close of discovery, Plaintiffs simply attempted to make this litigation more efficient and not require the parties to conduct time-consuming and expensive discovery that might not be necessary.

Both sides have exchanged document requests and have noticed depositions.  Some (but not all requested) documents have been produced by both sides, and no depositions have yet taken place to date.  Instead, given that there have been a number of legal issues before the court through the course of this lawsuit, both sides have (for the sake of efficiency) held off on conducting more substantive discovery pending these legal rulings.  This postponement of discovery was an efficient conservation of resources and attorney time, given the possibility that these legal rulings could have disposed of or furthered the resolution of this case without the

deduction that Plaintiffs challenge (in order to determine how much discretion

Robert Half allowed its managers to exercise their discretion in enforcing the

handbook ).  As this Court recognized in its decision of January 9, 2008:

> The Supreme Court has made clear that plaintiffs need not prove they
> were victims of improper deductions. It is enough that the plaintiffs were
> "subject to" improper deductions. 29 C.F.R. § 541.602(a); Auer [v.
> Robbins], 519 U.S. [452], 461-62 [1997]. RHI has not demonstrated that
> the plaintiffs were not subject to such a policy.

Memorandum and Order (Docket # 80), at 17.  In order to determine whether the

named plaintiffs were "subject" to such a policy, and what the "likelihood" of the

improper deductions was, Plaintiffs will need to discover which employees were

in fact subject to this deduction that (as the Court recognized) is contained in the

Employee Handbook.[3]  This discovery will be the same whether it is conducted

on a class basis for the named plaintiffs only.  Thus, there should be no question

that Plaintiffs should be permitted to conduct this "class" discovery.[4]

---

need for extensive discovery; it is now clear, based on the posture of the case, that substantive
discovery must now be taken.

[3]     In its decision of January 9, 2008, the Court stated that "[t]he Handbook suggests the
possibility of a violation of the salary basis test."  Memorandum and Order (Docket #80), at 17.

[4]     If, following this discovery, the Court determines that Rule 23 class certification is
warranted on the "salary basis" test theory, the Court has the power to revise its earlier denial of
class certification.  Rule 23(c)(1)(C) provides that "an order that grants or denies class
certification may be altered or amended before final judgment."  Courts have held that this rule
specifically empowers district courts to alter or amend class certification orders "at any time prior
to a decision on the merits."  See Guiterrez v. Johnson & Johnson, 523 F.3d 187, 199 (3rd Cir.
2008) ("plaintiffs may request that the district court alter or amend its order on class certification;
this request can be made at any time prior to the entry of final judgment"); In Re: Initial Public
Offering Securities Litigation, 483 F.3d 70, 73 (2nd Cir. 2007) ("district courts have ample
discretion to consider . . . a revised class certification motion after initial denial"); In Re: Bashore
Ford Truck Sales, Inc., 471 F.3d 1233, 1254 (11th Cir. 2006); Calderon v. Presidio Valley Farmers
Association, 863 F.2d 384, 389 (5th Cir. 1989) (noting that the court had "specifically invited the
district court to reconsider its decision denying class certification on remand" and citing to Rule
23(c)(1)(C)).  District courts have relied upon this rule to grant class certification when further
discovery or argument has convinced the court that the prerequisites for class certification have
been met despite the court's earlier denial of certification.  See, e.g., Kamerman v. Steinberg, 123
F.R.D. 66, 69-70 (S.D.N.Y. 1988) (granting certification upon reconsideration); Land Grantors in

With respect to the Plaintiffs' "duties test" claims, the parties have never conducted any discovery on this theory, nor have the Plaintiffs yet moved for class certification on this theory.[5]  Plaintiffs now intend to conduct this discovery. There is no reason for the plaintiffs to be precluded from conducting this discovery on a classwide basis.

As Plaintiffs have previously noted, Robert Half has been subject to two almost identical lawsuits to this one, brought in California by recruiting and staffing managers and account executives claiming that they were misclassified as exempt employees.  One of those lawsuits, *Laffitte et al. v. Robert Half*, Superior Court of the State of California for the County of Los Angeles – Central District, Case No. BC 321317 (Nov. 2006), has been certified as a class action by the California state court and is scheduled for trial in April 2009.  (*See* Exhibit 1 attached hereto.)  The other lawsuit, *Pellegrino et al. v. Robert Half*, Superior Court of California for the County of Orange, Case No. 06CC04518 (Jan. 2008) (brought by six employees who had opted out of the *Lafitte* class action lawsuit), went to trial and resulted earlier this year in a judgment in favor of the plaintiffs.

---

*Henderson Union, and Webster Counties v. United States*, 71 Fed.Cl. 614, 626 (Fed.Cl. 2006) (same).  These cases instruct that the question of whether to certify or decertify a class, even once that decision has already been made initially, is open for further consideration by the court, particularly where, after discovery, the facts have become more fully developed and indicate either that a class should have been certified initially or that a class initially certified is no longer appropriate.

[5]     Early in the case, having discovered the salary basis test violation in the defendant's Employee Handbook itself, Plaintiffs believed it would be possible to short-circuit the more extensive, potentially fact-intensive analysis regarding the recruiting [and others] managers' duties by placing before the Court the more purely legal issues surrounding the salary basis test. Again, now that the Court has rejected the parties' contentions that the salary basis test theories could be resolved as purely legal matters, it is now necessary for the parties to conduct discovery on the more fact-intensive duties test theory.

The trial was conducted as a bench trial, and the court determined that these employees were non-exempt and should have been paid overtime. (A copy of the judgment in *Pellegrino* is attached here as Exhibit 2. A copy of the excerpt of the transcript containing the Court's oral ruling regarding liability is attached here as Exhibit 3.[6])

Indeed, as evidenced by the California court's ruling in favor of the plaintiffs in the *Pellegrino v. Robert Half* case, as well as the court's class certification in *Laffitte v. Robert Half*, the duties of the Robert Half staffing and recruiting managers and account managers and executives are generally corporate-wide policies. Plaintiffs thus expect that their discovery on the duties test claim will focus primarily on these centralized corporate policies.[7] This discovery should not be unduly burdensome for Defendant to respond to, given that much of this information has already been compiled and produced in the *Pellegrino* and *Laffitte* cases.

Given that much of the class discovery that Plaintiffs will seek here has already been produced by Defendant in the California lawsuits, and given that it would not be burdensome for Defendant to also release to the plaintiffs the list of employees who worked in Massachusetts, the Court should allow this class discovery on their "duties test" claim. Plaintiffs will continue to seek to keep this

---

[6]    Although the *Pellegrino* case was tried under California law, the court's discussion of its reasons for finding in the plaintiffs' favor demonstrates the similarity of the analysis that would be required under Massachusetts and federal law. Moreover, Robert Half may well be barred by the doctrine of issue preclusion from re-litigating issues on which it lost in the *Pellegrino* case.

[7]    In addition, Plaintiffs will seek a list of employees who worked in Massachusetts during the relevant time period, so that they may contact and interview them and present to the Court the evidence of the commonalities in their job duties here, as well as in California.

6

litigation efficient and believe they can conclude the necessary discovery, even

on a classwide basis, by the January 31, 2009, deadline set by the Court.

**CONCLUSION**

For the reasons stated herein, Plaintiffs should be permitted now to

pursue class discovery.


Respectfully submitted,

IAN O'DONNELL, et al.
By their attorneys,


 /s/Shannon Liss-Riordan
Shannon Liss-Riordan, BBO #640716
Hillary Schwab, BBO #666029
PYLE, ROME, LICHTEN, EHRENBERG
    & LISS-RIORDAN, P.C.
18 Tremont Street, Ste. 500
Boston, MA 02108
Dated: August 18, 2008        (617) 367-7200


**CERTIFICATE OF SERVICE**

I hereby certify that on August 18, 2008, I caused a copy of this document
to be served by electronic filing on all counsel of record.


   /s/Shannon Liss-Riordan
Shannon Liss-Riordan, Esq.

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

| | | |
|---|---|---|
| DATE: 09/18/06 | | DEPT. 69 |
| HONORABLE EDWARD A. FERNS    JUDGE | L. MARKMILLER | DEPUTY CLERK |
| HONORABLE 16    JUDGE PRO TEM | | ELECTRONIC RECORDING MONITOR |
| A. AYALA, C.A.    Deputy Sheriff | NONE | Reporter |

| | | | |
|---|---|---|---|
| 8:30 am | BC321317 | Plaintiff Counsel | |
| | MARK LAFITTE VS ROBERT HALF INTERNATIONAL INC | Defendant Counsel | |

---

NATURE OF PROCEEDINGS:

COURT'S RULING ON MATTERS HERETOFORE TAKEN UNDER SUBMISSION ON 6-22-2006:

▪ MOTION BY DEFENDANTS TO STRIKE CLASS ALLEGATIONS

The motion is denied.

---

▪ MOTION BY PLAINTIFF FOR CLASS CERTIFICATION

After further consideration of the pleadings, the evidence, the relevant authority and the oral argument of counsel, the court rules as follows on plaintiff's Motion for Class Certification taken under submission on 6-22-2006.
--------------------------------------------------------
THE FACTS

This is a purported class action filed by Mark Lafitte ("Plaintiff") against his employer, Robert Half International, Inc. ("Defendant") alleging Defendant violated California's wage and hour rules by misclassifying its Account Executives as exempt from overtime and forcing them to work more than 40 hours per week without overtime pay.

The proposed Class that Plaintiff is seeking certification of is defined as follows:

MINUTES ENTERED
09/18/06
COUNTY CLERK

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

DATE: 09/18/06                                                    **DEPT.** 69

HONORABLE EDWARD A. FERNS        JUDGE | L. MARKMILLER        DEPUTY CLERK

HONORABLE                    JUDGE PRO TEM |              ELECTRONIC RECORDING MONITOR
16
         A. AYALA, C.A.        Deputy Sheriff | NONE                Reporter

8:30 am | BC321317                    Plaintiff
                                      Counsel
          MARK LAFITTE
          VS                          Defendant
          ROBERT HALF INTERNATIONAL INC    Counsel

## NATURE OF PROCEEDINGS:

All persons employed by Defendant in California as a
salaried Account Executive or salaried Staffing
Manager since September 10, 2000 who were
misclassified as exempt (the "class").
-----------------------------------------------------
ANALYSIS

Class certification is appropriate when "the question
is one of a common or general interest, of many
persons, or when parties are numerous and it is
impracticable to bring them all before the court."
Code of Civil Procedure § 382. "To obtain certifica-
tion, a party must establish the existence of both an
ascertainable class and a well-defined community of
interest among class members. [Citation] The
community of interest requirement involves three
factors: '[1] predominant questions of law or fact;
[2] class representatives with claims or defenses
typical of the class; and [3] class representatives
who can adequately represent the class. The party
seeking certification has the burden of establishing
the prerequisites for a class action." Sav-On Drug
Stores, Inc. v. Superior Court (2004) 34 Cal.4th 319,
326, citing Lockheed Martin Corporation v. Superior
Court (2003) 29 Cal.4th 1096, 1104.

For the reasons that follow, after considering all of
the relevant factors, the court finds that the
Plaintiff has met his burden for the 1st, 4th, 5th,
and 6th Causes of Action, but that the Plaintiff has
not met this burden with regard to the 2nd and

Page    2 of    9    DEPT. 69

MINUTES ENTERED
09/18/06
COUNTY CLERK

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

| | |
|---|---|
| DATE: 09/18/06 | DEPT. 69 |
| HONORABLE EDWARD A. FERNS          JUDGE | L. MARKMILLER          DEPUTY CLERK |
| HONORABLE                    JUDGE PRO TEM | ELECTRONIC RECORDING MONITOR |
| 16          A. AYALA, C.A.          Deputy Sheriff | NONE          Reporter |

| | | |
|---|---|---|
| 8:30 am | BC321317 | Plaintiff Counsel |
| | MARK LAFITTE VS ROBERT HALF INTERNATIONAL INC | Defendant Counsel |

**NATURE OF PROCEEDINGS:**

3rd Causes of Action.
-------------------------------------------------
ASCERTAINABILITY

Ascertainability is required in order to give notice
to putative class members who may be affected by the
judgment.  It is defined in terms of "objective
characteristics and common transactional facts making
the ultimate identification of class members
possible.  <u>Hicks v. Kaufman & Broad Home Corp.</u> (2001)
89 Cal. App. 4th 908, 915.  Whether a class is
ascertainable is determined by examining (1) the
class definition, (2) the size of the class, and (3)
the means available for identifying class members.
<u>Reyes v. Board of Supervisors of San Diego County</u>
(1987) 196 Cal.App.3d 1263, 1271.

Defendant did not dispute the ascertainability of the
Class. Plaintiff defined a class of employees that he
believed qualified for damages under the instant
facts and contended that the Defendant had already
identified the Account Executives and Staff Managers
who were under their employ during the Class Period
within their discovery responses. Since Robert Half
International, Inc., as an employer, is required to
keep the personnel records for a minimum of three
years in accordance with Labor Code §§ 1174 and
1175, Account Executives and Staff Managers are
identifiable and can be given notice of an action.
-------------------------------------------------

Page    3 of    9    DEPT. 69

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

| | |
|---|---|
| DATE: 09/18/06 | **DEPT. 69** |
| HONORABLE EDWARD A. FERNS    JUDGE | L. MARKMILLER    DEPUTY CLERK |
| HONORABLE    JUDGE PRO TEM | ELECTRONIC RECORDING MONITOR |
| 16 |  |
| A. AYALA, C.A.    Deputy Sheriff | NONE    Reporter |

| | | | |
|---|---|---|---|
| 8:30 am | BC321317 | Plaintiff | |
| | | Counsel | |
| | MARK LAFITTE | | |
| | VS | Defendant | |
| | ROBERT HALF INTERNATIONAL INC | Counsel | |

NATURE OF PROCEEDINGS:

COMMON QUESTIONS OF LAW OR FACT

In order to determine whether common questions of
fact predominate the trial court must examine the
issues framed by the pleadings and the law applicable
to the causes of action alleged.  Hicks v. Kaufman &
Broad Home Corp . (2001) 89 Cal. App. 4th 908,
916.The Court must consider whether the theory of
recovery advanced by the proponents of certification,
is, as an analytical matter, likely to prove amenable
to class treatment.  Sav-On Drug Stores, Inc. v.
Superior Court (2004) 34 Cal.4th 319, 327.

Plaintiff and Defendants presented numerous exhibits
and arguments within their moving papers concerning
the duties of Account Executives and/or Staff
Managers. Both parties proffered Declarations from
current and former employees to support their
respective positions. Since the Declarations were
drafted by the attorneys and are generally
duplicative the Court has given the greatest weight
to the deposition testimony.

Based upon the review of the Deposition testimony and
documentary evidence the argument of individuality
predominating is unpersuasive.  Defendants PMK,
Ms. Ramirez, testified in her deposition that there
are six categories of duties that the putative class
members are responsible for and that the persons that
reported to her performed the same basic duties with
some variation of course. (See Exhibit 36, page 226.)

Page    4 of    9    DEPT. 69

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

| | | |
|---|---|---|
| DATE: 09/18/06 | | DEPT. 69 |
| HONORABLE EDWARD A. FERNS      JUDGE | L. MARKMILLER | DEPUTY CLERK |
| HONORABLE                      JUDGE PRO TEM | | ELECTRONIC RECORDING MONITOR |
| 16          A. AYALA, C.A.     Deputy Sheriff | NONE | Reporter |

| | | |
|---|---|---|
| 8:30 am | BC321317 | Plaintiff Counsel |
| | MARK LAFITTE | |
| | VS | Defendant |
| | ROBERT HALF INTERNATIONAL INC | Counsel |

NATURE OF PROCEEDINGS:

Ms. Ramirez also testified that her employees worked
about eight hours or so on a given sales day, thereby
confirming the overtime hours complained of by
Plaintiff. (See Exhibit 36, page 270.) Mr. Gitlin,
another PMK for Defendants, also testified that every
staffing manager and Account executives were
considered to be salary exempt in all divisions. This
testimony does support commonality with regard to
treatment of the putative class members as a group.
(See Exhibit 37, pages 120-121.)

Defendants' argument concerning the individual
questions that arise based upon the fact that all
Account Executives and Staff Managers obligation to
participate in sales week and/or desk week is
actually supportive of Plaintiff's position because
it infers commonality of treatment. (See Exhibit 36,
page 60 et seq.) However, the actual argument of how
much time is spent doing exempt tasks during desk
week or sales week is a merit issue that needs to be
tried by the trier of fact and is therefore beyond
the scope of the certification motion.  Linder v.
Thrifty Oil Co. (2000) 23 Cal.4th 429, 439-440.
Accordingly, Plaintiff's evidence is supportive of
the commonality element with regard to the 1st, 4th,
5th and 6th Causes of Action.
-------------------------------------------------------
CLASS REPRESENTATIVES WITH CLAIMS OR DEFENSES TYPICAL
OF THE CLASS

The class representative's claim are typical of class

MINUTES ENTERED
09/18/06
COUNTY CLERK

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

| | |
|---|---|
| DATE: 09/18/06 | DEPT. 69 |
| HONORABLE EDWARD A. FERNS    JUDGE | L. MARKMILLER    DEPUTY CLERK |
| HONORABLE    JUDGE PRO TEM | ELECTRONIC RECORDING MONITOR |
| 16 | |
| A. AYALA, C.A.    Deputy Sheriff | NONE    Reporter |

| | | |
|---|---|---|
| 8:30 am | BC321317 | Plaintiff |
| | | Counsel |
| | MARK LAFITTE | |
| | VS | Defendant |
| | ROBERT HALF INTERNATIONAL INC | Counsel |

**NATURE OF PROCEEDINGS:**

claims if the individual facts applicable to the
class representative are very similar, but not
necessarily identical, to the facts which are common
to the class.  <u>Classen v. Weller</u> (1983) 145 Cal.App.3d
27, 46.

Typicality does not depend on the length of time of
employment with Defendant.  As is the case in the
instant facts, Plaintiff must have claims that are
similar to the other class members so that they will
be motivated to litigate on behalf of the class.
<u>Classen</u>, <u>supra</u>, 145 Cal.App.3d at page 46.

---------------------------------------------------

CLASS REPRESENTATIVES ARE ADEQUATE TO REPRESENT THE
CLASS

To maintain a class action, the representative
plaintiff must adequately represent and protect the
interests of other members of the class.
Simons v. Horowitz (1984) 151 Cal. App. 3d 834, 846.
There are two criteria that a Class Representative
has to meet in order to be deemed adequate: (1) that
they are zealous fiduciaries; and (2) that there are
no existing antagonisms or conflicts with the class
members. <u>City of San Jose v. Superior Court (Lands
Unlimited)</u> 1974 12 Cal.3d 447, 464.

Plaintiff has provided evidence to support the
satisfaction of the requisite criteria for an
adequate class representative as articulated in <u>City
of San Jose, Id</u>. Plaintiff is a zealous fiduciary as

Page   6 of   9    DEPT. 69

| MINUTES ENTERED |
|---|
| 09/18/06 |
| COUNTY CLERK |

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

| DATE: 09/18/06 | | | DEPT. 69 |
|---|---|---|---|
| HONORABLE EDWARD A. FERNS | JUDGE | L. MARKMILLER | DEPUTY CLERK |
| HONORABLE 16 | JUDGE PRO TEM | | ELECTRONIC RECORDING MONITOR |
| A. AYALA, C.A. | Deputy Sheriff | NONE | Reporter |

| 8:30 am | BC321317 | Plaintiff Counsel | |
|---|---|---|---|
| | MARK LAFITTE VS ROBERT HALF INTERNATIONAL INC | Defendant Counsel | |

**NATURE OF PROCEEDINGS:**

is evidenced by his representation of the rights of
the group thus far with regard to the Causes of
Actions alleged, discovery propounded and discovery
responded to. Defense counsel did not present any
credible antagonisms or conflicts with the putative
class that would warrant removal of Plaintiff as
class representative.

------------------------------------------------------

SUPERIORITY

The superiority criterion is manifest in the
determination that a class action brought under Code
of Civil Procedure § 382 would produce substantial
benefits to the litigants and the judicial system.
Schneider v. Vennard (1986) 183 Cal.App.3d 1340, 1347.

The court has considered both the benefits that a
class action would yield, as well as the potential
unfairness to the Defendant, which might result from
a litigation of the underlying claims through
aggregate procedures rather than through separate
trials. As discussed above, the court finds that the
Plaintiff did not meet his burden of proof with
regard to the 2nd and 3rd Causes of Action.
Nonetheless, with regard to the 1st, 4th, 5th, and
6th Causes of Action, Plaintiff has established that
he may use common evidence to prove facts and resolve
legal issues which apply to every Class Member's
claim since common issues would be the principal
issues in any individual action.

------------------------------------------------------

MINUTES ENTERED
09/18/06
COUNTY CLERK

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

| | |
|---|---|
| DATE: 09/18/06 | DEPT. 69 |
| HONORABLE EDWARD A. FERNS    JUDGE | L. MARKMILLER    DEPUTY CLERK |
| HONORABLE 16    JUDGE PRO TEM | ELECTRONIC RECORDING MONITOR |
| A. AYALA, C.A.    Deputy Sheriff | NONE    Reporter |

| | | |
|---|---|---|
| 8:30 am | BC321317 | Plaintiff Counsel |
| | MARK LAFITTE VS ROBERT HALF INTERNATIONAL INC | Defendant Counsel |

**NATURE OF PROCEEDINGS:**

JUDICIAL NOTICE

The Court grants Plaintiff's request for judicial notice of the administrative materials contained in Exhibits 2 and 7. The Court denies Plaintiff's request for judicial notice of Exhibit 1 (3/06); Exhibit 1(4/06); Exhibits 3-6; and the 16 Orders granting Certification subsequently filed.

The Court denies Defendant's request for judicial notice of an Order denying Plaintiff's Motion for Class Certification in <u>Dunbar v. Albertson's Inc.</u>

---

■ CASE MANAGEMENT CONFERENCE

The case management conference is continued to 11-14-2006 at 8:30 a.m. in Department 69.

---

■ NOTICE

Moving party plaintiff is directed to give notice.

---

         CLERK'S CERTIFICATE OF MAILING/
            NOTICE OF ENTRY OF ORDER

I, the below named Executive Officer/Clerk of the above-entitled court, do hereby certify that I am not a party to the cause herein, and that this date I

              Page    8 of    9    DEPT. 69

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

| | |
|---|---|
| DATE: 09/18/06 | DEPT. 69 |
| HONORABLE EDWARD A. FERNS          JUDGE | L. MARKMILLER          DEPUTY CLERK |
| HONORABLE 16                   JUDGE PRO TEM | ELECTRONIC RECORDING MONITOR |
|          A. AYALA, C.A.        Deputy Sheriff | NONE                     Reporter |

8:30 am  BC321317

MARK LAFITTE
VS
ROBERT HALF INTERNATIONAL INC

Plaintiff
Counsel

Defendant
Counsel

---

**NATURE OF PROCEEDINGS:**

served Notice of Entry of the above minute order of
9-18-2006 upon each party or counsel named below by
depositing in the United States mail at the courthouse
in Los Angeles, California, one copy of the
original entered herein in a separate sealed envelope
for each, addressed as shown below with the postage
thereon fully prepaid.

Date: 9-18-2006

John A. Clarke, Executive Officer/Clerk

By: _____ *L. Markmiller* _____
           L. MARKILLER

Gregg Lander
LAW OFFICES OF KEVIN T. BARNES
5670 Wilshire Blvd.
Suite 1460
Los Angeles, CA 90035

MINUTES ENTERED
09/18/06
COUNTY CLERK

1

2

3

4

5

6

7

8              **SUPERIOR COURT OF CALIFORNIA**

9          **COUNTY OF ORANGE, CENTRAL JUSTICE CENTER**

10

11   MARIA PELLEGRINO, an            )   CASE NO.    06CC04518
     individual;                     )
12   NADIA BALICI, an individual;    )   ASSIGNED FOR ALL PURPOSES TO:
     CAROLYN COX, an individual;     )       Judge Andrew P. Banks
13   KELLI MARESCH, an individual;   )       Dept. C6
     JENNIFER MCCASLAND, an individual; )
14   JAMES ROSSETTO, an individual   )   COMPLAINT FILED:      March 28, 2006
                                     )
15          Plaintiffs,              )   **AMENDED JUDGMENT**
                                     )
16   v.                              )   Trial Date:   December 3, 2007
                                     )   Time:         9 a.m.
17   ROBERT HALF INTERNATIONAL       )   Dept.:        C6
     INC., a Delaware corporation;   )
18                                   )
            Defendant.               )
19   _____)

20        This action came on regularly for trial on December 3, 2007, in Department C6 of the

21   Superior Court for the County of Orange, the Honorable Andrew P. Banks presiding.  Robert

22   C. Robinson of Quest Law Firm, and Ross E. Shanberg and Shane C. Stafford of Shanberg

23   Stafford LLP appeared as attorneys for plaintiffs Maria Pellegrino, Nadia Balici, Carolyn Cox,

24   Kelli Maresch, Jennifer McCasland, and James Rossetto.  Gilmore F. Diekmann, Jr., Todd C.

25   Hunt, and Michael D. Mandel of Seyfarth Shaw LLP appeared as attorneys for defendant

26   Robert Half International Inc., a Delaware corporation.

27        The court bifurcated the plaintiffs' claims under California Business and Professions

28   Code section 17200 and ordered they be tried first to the court sitting without a jury.  The

---

1

1 | court bifurcated the exemption affirmative defense for all plaintiffs and tried the issues

2 | presented by that defense without a jury. The court ordered the defense to proceed first

3 | because it had the burden of proof on the defense.

4 | The court having ruled against defendant on the exemption affirmative defense, and

5 | the parties having stipulated to the elements of plaintiffs' prima facie case and the amounts of

6 | plaintiffs' damages and other monetary relief, the court has determined there is nothing further

7 | for it or for a jury to determine, and upon (a) the facts stipulated by the parties through their

8 | counsel, and (b) the court's order granting plaintiffs' motion for judgment,

9 | IT IS HEREBY ORDERED, ADJUDGED, AND DECREED, as follows:

10 | 1. That plaintiff Nadia Balici shall recover from defendant Robert Half

11 | International, Inc., a Delaware corporation, the sum of $28,556.14, plus post

12 | judgment interest accruing from the date of entry of judgment; and

13 | 2. That plaintiff Carolyn Cox shall recover from defendant Robert Half

14 | International, Inc., a Delaware corporation, the sum of $314,451.03, plus post

15 | judgment interest accruing from the date of entry of judgment; and

16 | 3. That plaintiff Kelli Maresch shall recover from defendant Robert Half

17 | International, Inc., a Delaware corporation, the sum of $61,114.18, plus post

18 | judgment interest accruing from the date of entry of judgment; and

19 | 4. That plaintiff Jennifer McCasland shall recover from defendant Robert Half

20 | International, Inc., a Delaware corporation, the sum of $82,777.90, plus post

21 | judgment interest accruing from the date of entry of judgment; and

22 | 5. That plaintiff Maria Pellegrino shall recover from defendant Robert Half

23 | International, Inc., a Delaware corporation, the sum of $65,447.18, plus post

24 | judgment interest accruing from the date of entry of judgment; and

25 | 6. That plaintiff James Rossetto shall recover from defendant Robert Half

26 | International, Inc., a Delaware corporation, the sum of $62,653.58, plus post

27 | judgment interest accruing from the date of entry of judgment; and

28 | ///

Amended Judgment

1      7.    That Plaintiffs recover from Defendant their costs in the amount of $16,503.37,

2             with post judgment interest on such amount to accrue from the date of entry of

3             judgment; and

4      8.    That Quest Law Firm and Shanberg Stafford LLP recover from defendant,

5             jointly and severally, attorneys fees in the amount of $978,121.98, with post

6             judgment interest on such amount to accrue from May 20, 2008.

7      Judgment was originally entered on February 8, 2008.  That date is the date from

8 which post judgment interest shall accrue except for the attorneys fees awarded, which shall

9 accrue interest from May 20, 2008.  The Judgment is hereby amended only to fill in the

10 amounts of the costs in item 7 and the attorneys fees in item 8 that were left blank in the

11 Judgment entered on February 8,2008, and to state the date from which interest shall accrue

12 on the attorney fees awarded.

13 DATED:     _____

14

15                             _____

                            Andrew P. Banks, Judge

16                             Orange County Superior Court

17

     Approved as to form and content by the undersigned.

18

19 DATE:_____          DATE:_____

20 QUEST LAW FIRM              SHANBERG STAFFORD LLP

21                            By_____

22 _____            Shane C. Stafford

   Robert C. Robinson               Attorneys for Maria Pellegrino, Nadia

   Attorneys for Plaintiffs Maria Pellegrino,      Balici, Carolyn Cox, Kelli Maresch,

23 Nadia Balici, Carolyn Cox, Kelli Maresch,      Jennifer McCasland, and James Rossetto

   Jennifer McCasland, and James Rossetto

24

25 DATE:_____          SEYFARTH SHAW LLP

26                            By_____

27                             Todd C. Hunt

                           Attorneys for Defendant Robert Half

28                             International Inc.

Amended Judgment

SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF ORANGE - CENTRAL JUSTICE CENTER

DEPARTMENT C-6

MARIA PELLEGRINO, AN INDIVIDUAL;    )
NADIA BALICI, AN INDIVIDUAL;    )
CAROLYN COX, AN INDIVIDUAL;    )
JENNIFER MC CASLAND, AN INDIVIDUAL; )
JAMES ROSSETTO, AN INDIVIDUAL,    )
                  )
      PLAINTIFFS,    )
                 )
     VS.    ) CASE NO. O6CC04518
                 )
ROBERT HALF INTERNATIONAL, INC.,    )
A DELAWARE CORPORATION; AND DOES    )
1 THROUGH 10, INCLUSIVE,    )
                 )
     DEFENDANTS.    )
_____)

HONORABLE ANDREW P. BANKS, JUDGE PRESIDING

REPORTER'S TRANSCRIPT

JANUARY 29, 2008

APPEARANCES OF COUNSEL:

Page 1

FOR PLAINTIFFS:      QUEST LAW FIRM
                    BY: ROBERT C. ROBINSON, ESQ.

                    SHANBERG STAFFORD LLP
                    BY: ROSS E. SHANBERG, ESQ.
                    SHANE C. STAFFORD, ESQ.

FOR DEFENDANTS:      SEYFARTH SHAW
                    BY: GILMORE DIEKMANN, ESQ.
                    MICHAEL D. MANDEL, ESQ.
                    TODD CHRISTOPHER HUNT, ESQ.

                    LISA S. ROULY, CRR, RPR, CSR NO. 9524
                    OFFICIAL COURT REPORTER

                    LISA S. ROULY, CRR, RPR, CSR NO. 9524

                              1966

   1    SANTA ANA, CALIFORNIA - TUESDAY, JANUARY 29, 2008

   2            MORNING SESSION

   3            * * * * * * * *

   4    (THE FOLLOWING PROCEEDINGS WERE HELD IN OPEN
COURT:)

   5        THE COURT:  ALL RIGHT.  WE'RE ON THE RECORD.  AND

   6  COUNSEL ARE ALL HERE.  MR. GOOD'S HERE.

   7        GIVE ME A MINUTE, MR. ROBINSON, AND THEN YOU

                              Page 2

2    JUDGMENT UNDER 631.8 IS ALWAYS DISCRETIONARY, I CAN RESERVE

3    RULING ON IT TILL I HEAR ALL THE EVIDENCE, AND KNOWING THAT

4    YOU HAD ESTIMATED SEVERAL DAYS OF ADDITIONAL EVIDENCE, I WAS

5    TRYING TO DECIDE WHETHER TO RESERVE AND LET YOU PUT IT ON

6    AND SIT HERE FOR THREE MORE DAYS AND THEN RULE ON IT.  BUT

7    IN TRUTH, I WASN'T SURE THAT WAS A PRODUCTIVE USE OF

8    EVERYBODY'S TIME.  THAT'S WHY I WANTED TO KNOW WHAT IT WAS

9    YOU WERE -- SO WHILE MY INCLINATION IS USUALLY TO DO

10   SOMETHING IN WRITING -- I HAVE BEEN THINKING ABOUT THIS

11   SINCE WE LAST APPEARED.  AND I HAVE REREAD RAMIREZ AND

12   EICHER AND BELL.  AND THE BEAUTY OF EICHER AND BELL IS THEY

13   COME AFTER RAMIREZ.  AND EICHER ISN'T EVEN A YEAR OLD.

14          MR. ROBINSON:  UM-HMM.

15          THE COURT:  IT'S THE MOST RECENT APPELLATE

16   DISCUSSION OF THIS ISSUE.

17              AND EICHER AND BELL BOTH INDICATE THAT WHILE

18   RAMIREZ TALKS ABOUT THE QUANTITATIVE ANALYSIS THAT YOU HAVE

19   TO DO, THAT'S IF YOU GET PAST THE FIRST ELEMENT.  AND THE

20   FIRST ELEMENT IS A PERSON WHOSE DUTIES AND RESPONSIBILITIES

21   INVOLVE EITHER THE PERFORMANCE OF OFFICE OR NONMANUAL WORK

22   DIRECTLY RELATED TO MANAGEMENT POLICIES OR GENERAL BUSINESS

23   OPERATIONS OF HIS EMPLOYER OR HIS/HER EMPLOYEE OR ITS

24   CUSTOMERS, OR -- AND WE DON'T NEED TO GO TO THE "OR" BECAUSE

25   WE'VE ALREADY DETERMINED THE "OR" IS NOT WHAT'S INVOLVED.

26              AND I GUESS FOR THE RECORD, WE SHOULD SAY,

LISA S. ROULY, CRR, RPR, CSR NO. 9524

1995

```
 1   WE'RE TALKING ABOUT THE I.W.C. ORDER 4-2001(1)(A)(2)(A)

 2   THROUGH (G) CODIFIED AT 8 CALIFORNIA CODE OF REGULATIONS

 3   SECTION 11040.

 4            RIGHT?  WE ALL AGREE THAT'S IT?

 5        MR. ROBINSON:  YES, YOUR HONOR.

 6        MR. STAFFORD:  YES, YOUR HONOR.

 7        THE COURT:  OKAY.  WELL, THE COURT FINDS THAT THE

 8   DEFENDANT HAS NOT MET THEIR BURDEN OF PROOF WITH RESPECT TO

 9   SUBPART (A)(1).  THE EVIDENCE PRESENTED HAS NOT ESTABLISHED

10   BY A PREPONDERANCE OF THE EVIDENCE THAT WHAT THE PLAINTIFFS

11   IN THE RESPECTIVE DIVISIONS THAT WE HAVE HAD TESTIMONY ON

12   COME WITHIN THAT ELEMENT.

13            NOW, WHEN WE DISCUSSED WHAT ARE THE ELEMENTS

14   THAT WE'RE DEALING WITH ON OR ABOUT JANUARY 14TH, WE

15   CONCLUDED THAT THE FIRST ELEMENT WAS (A)(1).  THE SECOND

16   ELEMENT IS SUBPART (B).  THE THIRD ELEMENT WAS SUBPARTS IN

17   SMALL PARENTHESES D AND E BECAUSE THEY ARE IN THE

18   DISJUNCTIVE.  THE FOURTH WAS ELEMENT (F).  AND THE SIXTH --

19   I'M SORRY -- THE FIFTH ELEMENT IS SMALL (G), BUT THAT WAS

20   STIPULATED TO.

21            FINDING, AS I HAVE AS TO THE FIRST ELEMENT,

22   EICHER AND BELL TELL ME I DON'T HAVE TO GO ANY FURTHER.  IF
```

23    WE GOT TO THE FOURTH ELEMENT, WHICH IS THE SMALL (F), WE'D

24    BE DEALING WITH THE RAMIREZ QUANTITATIVE ANALYSIS TO

25    DETERMINE PRIMARILY ENGAGED.

26         BUT EICHER AND BELL CONVINCED ME, WE DON'T

LISA S. ROULY, CRR, RPR, CSR NO. 9524

1996

1     NEED TO GO THERE IF ONE OF THE PRECEDING ELEMENTS ARE NOT

2     MET.

3          ADDITIONALLY, I NOTE THAT THE BURDEN ON THE

4     DEFENDANTS WAS NOT MET WITH THE SECOND ELEMENT, WHICH IS

5     PARENTHESES SMALL (B), NOR DO I FIND THE THIRD ELEMENT TO

6     HAVE BEEN MET.

7          SO BECAUSE OF THAT, THE EXEMPTION DOESN'T

8     APPLY.

9          I INDEPENDENTLY FIND THAT THERE IS A FAILURE

10    OF PROOF ON THOSE ELEMENTS.

11         I WENT BEYOND THE FIRST ONE BECAUSE AFTER

12    HEARING ALL OF THAT, AND HAVING HAD ALL MY NOTES THERE AND

13    TRACKING IT, I FELT I SHOULD MAKE THAT RECORD AS WELL,

14    BECAUSE SOME PEOPLE BELIEVE YOU SHOULD DO EVERY ELEMENT OF

15    ANALYSIS -- OR STRIKE THAT -- ANALYZE EVERY ELEMENT AND MAKE

16    A FINDING, AND SO MAYBE THAT'S BETTER.

17              I DON'T BELIEVE THAT TO BE THE CASE.  I THINK

18    WHEN YOU FIND ONE ELEMENT'S GONE, YOU CAN STOP.  BUT BECAUSE

19    IT WAS CLEAR TO ME THOSE WERE NOT AS WELL, I'M INCLUDING

20    THAT IN MY DECISION.

21              MR. DIEKMANN:  YOUR HONOR, WHEN YOU SAY THE THIRD

22    ELEMENT, ARE YOU TALKING ABOUT (D) AND (E)?

23              THE COURT:  YES, MR. DIEKMANN, I AM.  I DO NOT

24    THINK OR FIND THAT THEY ARE EMPLOYEES WHO PERFORM UNDER ONLY

25    GENERAL SUPERVISION WORK ALONG SPECIALIZED OR TECHNICAL

26    LINES REQUIRING SPECIALIZED TRAINING, EXPERIENCE OR

                LISA S. ROULY, CRR, RPR, CSR NO. 9524

1997

1    KNOWLEDGE.

2              IN FACT, THEY WERE UNDER VERY STRUCTURED

3    PERFORMANCE REGULATIONS, THE MORNING MEETING, THE EVENING

4    MEETING, THE WHITE BOARD, THE CHANGES, THE -- WE GOT TO

5    ADDRESS THIS, THAT OR THE OTHER THING UNDER THE POLICIES.

6              IT SOUNDED -- IT REMINDED ME A BIT OF THE

7    TRADING FLOOR IN AN INVESTMENT FIRM.

8              AND, LIKEWISE, I DON'T THINK THE (E) APPLIES.

9    THEY EXECUTE UNDER ONLY GENERAL SUPERVISION SPECIAL

10   ASSIGNMENTS AND TASKS.  I DON'T THINK THAT EXISTS.

11              I THINK THAT THE PRODUCTION DICHOTOMY

12 ANALYSIS THAT WE TALKED ABOUT, ITS PRODUCTION -- AND

13 ADMINISTRATIVE DICHOTOMY I GUESS IS THE TECHNICAL TERM FOR

14 IT -- IS PARTICULARLY HELPFUL AND DOES APPLY.

15             AND I THINK THAT, IN FACT, WHETHER THEY'RE A

16 STAFFING MANAGER OR AN ACCOUNT EXECUTIVE, THEY'RE A

17 PRODUCTION EMPLOYEE THAT WAS INVOLVED IN THE DAY-TO-DAY

18 OPERATION OF THE ROBERT HALF INTERNATIONAL BUSINESS.  AND

19 THAT BUSINESS CONSISTS OF BEATING YOUR COMPETITION TO THE

20 PRESENTATION OF A PERSON TO A CUSTOMER WHO'S SAID TO ROBERT

21 HALF AND OTHERS, I NEED AN EMPLOYEE WHO CAN DO THIS TASK,

22 AND THE FIRST ONE TO GET THEM TO ME WHO FITS WITHIN MY

23 GENERAL NEEDS THAT I LIKE, I'M GOING TO HIRE, WHETHER IT'S

24 ROBERT HALF OR ANYBODY ELSE.

25             AND SO THE ACCOUNT EXECUTIVES OR STAFFING

26 MANAGERS, WHICHEVER DIVISION IT IS, ARE IN A RACE AGAINST

                LISA S. ROULY, CRR, RPR, CSR NO. 9524

1998

1 THE COMPETITION TO PUT A WARM BODY WHO FITS A CERTAIN

2 PARAMETER DEFINED BY THE CLIENT BEFORE THE CLIENT TO SAY, IS

3 THIS ONE GOOD ENOUGH?

4             AND THE EVIDENCE WAS THAT ROBERT HALF

5 INTERNATIONAL GENERALLY PUTS FORTH SEVERAL CANDIDATES IF

6   THEY'VE GOT THEM IN THEIR INVENTORY OF CANDIDATES OR STABLE

7   OF CANDIDATES, HOWEVER YOU CHOOSE TO DESCRIBE IT.  AND THE

8   CUSTOMER DECIDES WHICH ONE THEY LIKE.  THE CUSTOMER DOES THE

9   HIRING, JUST LIKE THE CUSTOMER DOES THE FIRING.  THE

10  CUSTOMER TELLS ROBERT HALF EMPLOYEES, DON'T HAVE THIS PERSON

11  SHOW UP ANYMORE.  AND IT FALLS ON THE HEAD OF THE ROBERT

12  HALF EMPLOYEE TO TELL THE PLACED CANDIDATE THAT THEY NO

13  LONGER HAVE A JOB.  THAT'S NOT TERMINATING AN EMPLOYEE.

14  THAT'S JUST DELIVERING THE MESSAGE.  THE DECISION TO

15  TERMINATE WAS MADE BY THE CUSTOMER.  WE DON'T WANT THEM BACK

16  ANYMORE.

17              SO GETTING BACK TO THE DESCRIPTION OF THE

18  BUSINESS BASED ON THE EVIDENCE, WHEN WE STRIP AWAY THE

19  DESCRIPTION BY THE COMPANY, WHICH I FIND OVERSTATES THE REAL

20  ROLE OF THE PERSON -- AND ALSO HAVE TO STRIP AWAY A BIT OF

21  THE PLAINTIFFS' TESTIMONY BECAUSE THEY UNDERSTATE IT -- WHAT

22  WE HAVE IS A RACE TO PRESENT A SUFFICIENT NUMBER OF PEOPLE

23  WHO FALL WITHIN A CERTAIN DEFINED JOB SKILL SET THAT A

24  CUSTOMER SAYS THEY'RE LOOKING FOR, AND TELLING THE CUSTOMER,

25  HERE'S ONE, TWO OR THREE IN OUR INVENTORY.  DO YOU LIKE ANY

26  OF THEM?  IF YOU DO, HERE'S WHAT IT -- WHEN THEY'RE

                    LISA S. ROULY, CRR, RPR, CSR NO. 9524

1999

1  AVAILABLE AND WHAT THE PRICE IS.  AND THEY NEGOTIATE, WITHIN

2  A NARROW RANGE, THE MARKUP, THE BILL RATE.  THEY HAVE

3  AUTHORITY TO ACT WITHIN A CERTAIN RANGE.  THEY'VE GOT

4  TARGETS, AND THERE'S NOTHING WRONG WITH THOSE TARGETS.

5           BUT IF YOU'RE GOING TO DEVIATE FROM WHAT THE

6  EVIDENCE TELLS ME IS A CERTAIN RANGE IN THERE, YOU NEED TO

7  GO TO THE BRANCH MANAGER AND GET THE OKAY.  AND THAT'S WHAT

8  HAPPENED IN THOSE OCCASIONS WHERE THERE WAS EVIDENCE ON THAT

9  ISSUE.

10           THERE WAS SOME TESTIMONY THAT SOME OF THE

11 ACCOUNT EXECUTIVES PREFERRED TO DEAL -- AND THAT WAS IN, I

12 THINK, MANAGEMENT RESOURCES -- WITH THE C.F.O. OR SOMEBODY

13 IN FINANCE AS THEY'RE PLACING PEOPLE BECAUSE THEY DIDN'T

14 LIKE DEALING WITH THE H.R. PEOPLE BECAUSE THE H.R. PEOPLE

15 DIDN'T HAVE NECESSARILY THE QUANTITY OF JOB-RELATED

16 KNOWLEDGE.

17           WELL, IF YOU'RE DEALING WITH THE COMPANY'S

18 H.R. DEPARTMENT, THAT'S CLEAR TO ME THAT WHAT YOU REALLY ARE

19 NOT IS THE H.R. DEPARTMENT FOR THE COMPANY OR FUNCTIONING AS

20 AN H.R. DEPARTMENT.  YOU ARE FINDING CANDIDATES TO PRESENT

21 TO THE CUSTOMER TO MAKE THE ULTIMATE DECISION, DO THESE

22 PEOPLE SEEM ATTRACTIVE TO YOU IN TERMS OF OUR SENDING THEM

23 TO YOU?

24           NOW, THERE COULD BE A NUMBER OF VARIABLES

25 THAT THE CUSTOMER UTILIZES.  THEY ISSUE THE FIRST SKILL SET

26 SAYING, WE NEED SOMEBODY WHO CAN DO THESE THINGS.  THEN,

LISA S. ROULY, CRR, RPR, CSR NO. 9524

2000

1    ACCORDING TO THE EVIDENCE, RESUMES, SANITIZED SO THAT THE

2    CUSTOMER CAN'T MAKE DIRECT CONTACT, CONTACTS THE

3    CANDIDATE -- OR SO THAT THEY WON'T CONTACT THE CANDIDATE,

4    BUT THE CUSTOMER GETS THE RESUMES.  THEY SEE SOMETHING THAT

5    PIQUES THEIR INTEREST, THEY SAY, YES, WE WANT TO INTERVIEW

6    THIS PERSON.  AND THE ACCOUNT EXECUTIVE BRINGS THEM OVER TO

7    THE CLIENT.  AND THERE'S SOME INTERVIEW BY THE CLIENT.  AND

8    THE CLIENT, I IMAGINE, HAVING HIRED PEOPLE IN MY OWN

9    EXPERIENCE, MAKES SURE THEY CAN WALK AND CHEW GUM AT THE

10   SAME TIME, CAN CARRY ON AN INTELLIGENT CONVERSATION, IN

11   FACT, CAN EXHIBIT SOME UNDERSTANDING OF THE JOB AND THE

12   DUTIES THEY'RE SUPPOSED TO DO.  AND THE CLIENT DECIDES,

13   YEAH, THIS IS GOOD ENOUGH FOR ME.  WE'RE GOING TO HIRE THEM,

14   ASSUMING THE ECONOMIC NUMBERS WORK OUT.

15            SO FROM THE STANDPOINT OF THE DECISION TODAY,

16   I WANTED TO COVER MUCH OF WHAT WOULD HAVE TO BE ON THE

17   RECORD IN TERMS OF THE COURT'S DECISION.

18            CREDIBILITY.  BOTH SIDES' WITNESSES SUFFER

19   FROM A LACK OF CREDIBILITY IN THE COURT'S VIEW.  THERE WAS A

20   BIT OF TEMPTATION FOR ME TO SAY, EQUITY ALLOWS ME TO SAY,

21   I'LL LEAVE YOU BOTH IN THE POSITION I FOUND YOU.

22          THE TESTIMONY OF THE WITNESSES -- AND FROM

23   MEMORY I WON'T GO THROUGH THEIR NAMES -- ON THE COMPANY'S

24   SIDE WAS LIKE A ROTE REGURGITATION OF A PROGRAMMED SCRIPT IN

25   TERMS OF PERCENTAGE OF TIME, WHAT PEOPLE DO.

26          I COMMENTED TO SEVERAL WITNESSES ABOUT THEIR

LISA S. ROULY, CRR, RPR, CSR NO. 9524

2001

1    LACK OF RESPONSIVENESS.  I COMMENTED TO ONE OF THE WITNESSES

2    THAT WHAT I SAW WAS AN EXECUTIVE RUNNING FROM A VERY CLEAR

3    DOCUMENT THAT USED CLEAR LANGUAGE IN IT AS HE RAN FROM THE

4    WORD "SALES" AND THE RECITATION OF THE PROCESS AND WHAT THE

5    COMPANY DID AS BEING SALES ACTIVITY.

6          I FOUND MANY, IF NOT ALL, OF THE WITNESSES ON

7    THE DEFENDANT'S SIDE TO SUFFER SERIOUS CREDIBILITY ISSUES.

8          BY THE SAME TOKEN, I THINK A NUMBER OF THE

9    PLAINTIFFS LACKED CREDIBILITY IN SEVERAL AREAS AS WELL.

10   THEY COULDN'T CONCEDE THE SKY WAS BLUE IF MR. DIEKMANN ASKED

11   THEM AND THE DOORS WERE OPEN TO SHOW A CLEAR, BLUE SKY WITH

12   A BRIGHT SUN OUT THERE.  THEY HAD TO CHANGE THE QUESTION OR

13   EVADE IT.  THEY DIDN'T WANT TO ADMIT WHAT WAS OBVIOUSLY AN

14   ACCURATE STATEMENT OR A TRUTHFUL FACT, SEEKING TO CHANGE THE

15   QUESTION OR, GEE, THEY DIDN'T VIEW IT THAT WAY.  OR I THINK

16   I COMMENTED TO ONE WITNESS'S -- OR ONE WITNESS THAT -- WHAT

17    WAS GOING ON IS THEY WERE ASKED A SIMPLE QUESTION, LIKE WHAT

18    TIME IS IT, AND THEY WANTED TO TELL MR. DIEKMANN HOW TO MAKE

19    A WATCH BEFORE THEY WERE GOING TO TELL HIM WHAT TIME IT IS.

20    AND THOSE KINDS OF EVASIVE RESPONSES DIMINISH THE

21    CREDIBILITY, AND I TOLD SEVERAL WITNESSES ON THE PLAINTIFF

22    SIDE THAT THEIR CREDIBILITY WAS DIMINISHED -- OR AT LEAST IT

23    WASN'T HELPED -- BY THAT APPROACH.

24           THE OBVIOUS PERSONAL INTEREST IN EACH SIDE'S

25    DESIRE TO WIN TAINTED THE CREDIBILITY OF THEIR WITNESSES

26    BECAUSE THEY DIDN'T COME ACROSS AS CANDID.

           LISA S. ROULY, CRR, RPR, CSR NO. 9524

2002

1            HOWEVER, A COUPLE DID.  WITNESS BUHLER STRUCK

2    ME -- AND I MADE A NOTE -- THAT SEEMED TO BE THE MOST

3    CREDIBLE WITNESS SO FAR; THOUGH, I DIDN'T FEEL SHE GOT THE

4    COMPANY DEFENDANT OVER THE BURDEN WITH RESPECT TO PLAINTIFF

5    ROSSETTO, WHO SHE WAS CALLED TO TESTIFY AS TO, AND SHE DID

6    LOSE SOME CREDIBILITY ON SOME OF THE WAY SHE ANSWERED SOME

7    OF THE QUESTIONS AFTER A BREAK WHEN SHE SEEMED TO BACK AWAY.

8            MR. HABLIAN, WHILE HE DIDN'T RECALL AS MUCH

9    AS SOME OF THE OTHERS CALLED BY THE DEFENDANTS AND DIDN'T

10   SEEM TO BE STUCK IN THE REGURGITATION OF A PROGRAMMED

11    SCRIPT, GENERALLY HIS CREDIBILITY WAS NOT PARTICULARLY

12    STRONG BECAUSE MY NOTE IS THAT HE WAS WEAK IN CREDIBILITY,

13    BUT HE APPEARED TO BE TRUTHFUL AND NOT IN A CANNED MANNER.

14            SO THAT SEEMS AT FIRST VIEW TO MAYBE BE

15    INCONSISTENT, BUT I DON'T THINK HE TRIED TO STRETCH.  WHAT

16    HE KNEW HE WAS WILLING TO TESTIFY TO.  SOME OF THE THINGS HE

17    SAID WERE NOT HELPFUL NECESSARILY TO THE COMPANY.  BUT HE

18    WAS SUFFICIENTLY DIFFERENT FROM OTHER WITNESSES THAT I MADE

19    NOTE TO LOOK CAREFULLY AND LISTEN CAREFULLY TO SOME OF THE

20    THINGS HE WAS SAYING BECAUSE HE WAS NOT TESTIFYING IN WHAT I

21    HAD COME TO CONCLUDE WAS A CANNED MANNER.

22            SO I THINK THAT'S ALL I NEED MAKE IN TERMS OF

23    A RECORD NOW SIFTING THROUGH THE TESTIMONY TO DETERMINE WHAT

24    I FOUND CREDIBLE, WHAT I'VE FOUND NOT TO BE CREDIBLE.

25            I WAS REMINDED OF THE JURY INSTRUCTION THAT

26    I'VE READ INNUMERABLE TIMES TO THE JURY THAT YOU MAY FIND

                    LISA S. ROULY, CRR, RPR, CSR NO. 9524

2003

1    A -- YOU MAY CHOOSE TO DISREGARD ALL THE TESTIMONY OF A

2    WITNESS YOU BELIEVE IS WILLFULLY FALSE.  YOU MAY FIND THAT

3    SOMEBODY WAS TRUTHFUL IN SOME AREAS AND NOT IN OTHERS; AND

4    IF SO, YOU CAN CHOOSE TO NOT BELIEVE ANYTHING OR EVALUATE

5    THE TESTIMONY YOU THINK IS TRUTHFUL AND TO DISREGARD THE

6    NON-TRUTHFUL.

7              AND QUITE FRANKLY, GENTLEMEN -- SINCE THERE'S
8    ALL GENTLEMEN AT THE COUNSEL TABLE, AND MR. HUNT IS
9    CONSIDERED THERE RIGHT NOW -- THE CREDIBILITY ISSUE MADE
10   SOME OF THE ANALYSIS A BIT DIFFICULT.

11             BUT WHAT CLEARLY COMES THROUGH IS WHAT IS THE
12   BUSINESS THAT ROBERT HALF INTERNATIONAL DOES WITH RESPECT TO
13   THESE PLAINTIFFS IN THOSE POSITIONS.  AND I THINK THAT THE
14   PRODUCTION ADMINISTRATIVE DICHOTOMY GAVE ME THE ANSWER AND
15   THAT IT CLEARLY IS ONE THAT I ARTICULATED A MOMENT AGO; THAT
16   THEY ARE PRODUCTION EMPLOYEES INVOLVED IN THE DAY-TO-DAY
17   OPERATIONS OF THE BUSINESS.

18             AND AS THE COURT IN EICHER INDICATED, THERE
19   IS A LEGISLATIVE PURPOSE TO CONSTRUE THE STATUTORY
20   PROVISIONS LIBERALLY IN TERMS OF THE FACT THAT THEY ARE
21   REMEDIAL IN NATURE AND SHOULD BE LIBERALLY CONSTRUED WITH AN
22   EYE TOWARD PROMOTING PROTECTION OF THE EMPLOYEES.  AND WHEN
23   EMPLOYEES ARE ENGAGED IN AN ACTIVITY THAT CONSTITUTES THE
24   COMPANY'S PRIMARY PURPOSE, THEY ARE LIKELY PRODUCTION
25   WORKERS.  AND IN THIS CASE I THINK THE EVIDENCE CLEARLY
26   SHOWED THAT THAT IS WHAT THEY ARE.

                  LISA S. ROULY, CRR, RPR, CSR NO. 9524

1          SO IF I CHOOSE TO ADD ANYTHING TO ALL OF THIS

2    BY WAY OF ADDITIONAL COMMENTS, I'LL WAIT TILL I HAVE A

3    STATEMENT OF DECISION TO SIGN AND CAN SUPPLEMENT OR MODIFY

4    OR CHANGE IT.  BUT I WON'T BE PREPARING THE FIRST DRAFT.

5    THE PREVAILING PARTY ON THESE ISSUES WILL, AND THAT IS, AT

6    THIS POINT, THE PLAINTIFF ON THAT ISSUE.

7          YOU KNOW, JUST FOR THE RECORD, AND PERHAPS

8    THE BENEFIT OF ALL, THE DISCUSSION IN BELL WHERE THEY TALK

9    ABOUT -- YOU LOOK AT THE NATURE OF THE EMPLOYER'S BUSINESS,

10   AND IN THAT CASE THEY FOUND THAT IN FACT -- OH, AT PAGE 823

11   OF BELL, AT THE BOTTOM, THE TESTIMONY CONFIRMED -- THIS

12   TESTIMONY -- STRIKE THAT.  I'LL START OVER.

13         THIS TESTIMONY IS CONFIRMED BY UNDISPUTED

14   FACTS SHOWING THAT CLAIMS REPRESENTATIVES HAVE NO FORMAL

15   ADVISORY ROLE IN SETTING F.I.E.'S OVERALL CLAIMS HANDLING

16   POLICY AND PROCEDURES OR IN MANAGING F.I.E.'S BUSINESS

17   INFRASTRUCTURE INCLUDING PURCHASING, BUDGETING AND STAFFING.

18         WHEN YOU LOOK AT THE ROBERT HALF MODEL AND

19   THE ACCOUNT EXECUTIVES, PRETTY MUCH THAT SENTENCE COULD BE

20   APPLIED TO THE ACCOUNT EXECUTIVE, STAFFING MANAGERS.  THEY

21   HAVE NO FORMAL ADVISORY ROLE ON THE EVIDENCE IN FRONT OF ME

22   WITH RESPECT TO ROBERT HALF'S OVERALL POLICIES AND

23   PROCEDURES FOR HOW THEY'RE GOING TO RUN THIS BUSINESS.

24   THEY'RE TOLD, THIS IS HOW IT'S RUN.  THERE'S A RECIPE.

25   THERE'S A ROTATION.  YOU'RE GOING TO FOLLOW THAT.  THAT'S

26   GOING TO MAKE YOU SUCCESSFUL.  NOW YOU HAVE TO -- ON A

LISA S. ROULY, CRR, RPR, CSR NO. 9524

2005

1   DAY-TO-DAY OR WEEK BASIS BECAUSE OF BUSINESS SURPRISES OR

2   EXIGENCIES, YOU MAY HAVE TO MODIFY IT A BIT.  BUT GENERALLY

3   YOU'RE TO OPERATE WITHIN THIS STRUCTURE.  BUT IF YOU CAN'T

4   BECAUSE THERE'S ONLY ONE OF YOU, THEN YOU'RE GOING TO FOCUS

5   ON MAKING SURE WE HAVE ORDERS, AND WHEN WE HAVE ORDERS, THAT

6   THEY'RE FILLED BECAUSE THAT'S THE LIFELINE OF THE COMPANY,

7   THE CONTINUATION OF REVENUES TO THE COMPANY.  A WONDERFUL

8   PROCESS IN THE FREE ENTERPRISE SYSTEM.  BUT YOU'VE GOT TO

9   HAVE A CANDIDATE PLACED WITH THE CUSTOMER THAT WE CAN BILL

10  SO THAT WE MAKE MONEY.  THERE'S NOTHING WRONG WITH THAT.

11  BUT THEY'RE NOT INVOLVED IN THE -- MANAGING THE BUSINESS

12  INFRASTRUCTURE OF ROBERT HALF INTERNATIONAL NOR IN

13  SETTING -- OR HAVING A FORMAL SEAT AT THE TABLE, AN ADVISORY

14  ROLE ON THE OVERALL STRUCTURE OF HOW THE COMPANY'S GOING TO

15  OPERATE.

16          THEY ARE THE LINE EMPLOYEES.  THEY ARE THE

17  PRODUCTION EMPLOYEES OF THAT TYPE OF BUSINESS UNDER THE

18  ANALYSIS THAT WE DO UNDER THE CALIFORNIA RULES AND

19  REGULATIONS.

20          AND SO WHILE IT MAY HAVE BEEN A MOST

21  INTERESTING CHALLENGE FOR YOU TO PRESENT AND ME TO GET

22   THROUGH ALL OF THE PRIMARY FUNCTION PART OF THE ANALYSIS,

23   WHICH WOULD HAVE BEEN PRIMARILY ENGAGED IN DUTIES THAT MEET

24   THE TEST OF THE EXEMPTION, IT LOOKS LIKE I'M NOT GOING TO

25   GET TO IT THERE.  THOUGH, SINCE THE CASE IS GOING TO MOVE

26   FORWARD, THERE ARE CERTAINLY GOING TO BE SOME CLAIMS ABOUT

LISA S. ROULY, CRR, RPR, CSR NO. 9524

2006

1   HOURS AND HOW THEY FIGURED THEM; WHERE THERE'S AGREEMENT,

2   DISPUTE AS TO HOW MANY HOURS DID PEOPLE WORK, THERE WAS SOME

3   TESTIMONY ABOUT THEIR AVERAGE WORKWEEKS.

4              AND FROM A GLOBAL PERSPECTIVE, IT'S IN THE

5   RECORD FROM THE PRACTICAL TRIAL PERSPECTIVE OF THE BURDEN

6   NOW SHIFTS TO THE PLAINTIFF FOR PUTTING ON THEIR CASE.

7              I HAVE ALREADY COMMENTED ON THE CREDIBILITY

8   OF THE PLAINTIFFS AND THE DIFFICULTIES THE COURT HAS HAD

9   WITH THEIR TESTIMONY.  AND TO THE EXTENT THAT THE BURDEN NOW

10  LEAVES MR. DIEKMANN'S SHOULDERS AND GOES TO YOURS,

11  MR. ROBINSON, YOU HAVE THE WORK TO DO.

12           MR. ROBINSON:  UM-HMM.

13           THE COURT:  SO LET'S GO TO LUNCH.

14           MR. ROBINSON:  YOUR HONOR, JUST ONE THING.  YOU DID

15  IN THE BEGINNING OF THE TRIAL HAVE US -- YOU PROPOSED THAT

16   WE SIGN SOMETHING, AND I THINK WE AGREED TO WAIVE THE

17   STATEMENT OF DECISION.

18        THE COURT:  OH, IF THAT'S THERE -- I JUST -- I

19   DON'T GO AND CHECK.

20        MR. ROBINSON:  RIGHT.

21        THE COURT:  THIS IS THE COURT'S -- IT'S NOT A

22   TENTATIVE DECISION BECAUSE I HAVE TO RULE ON THE MOTION FOR

23   JUDGMENT.  IT'S THE RULING ON THE MOTION FOR JUDGMENT.  AND

24   I THINK ALL I HAVE TO SAY IS GRANT OR DENY.  I HAVE GONE

25   BEYOND THAT.

26             IN TRUTH, I CAN'T REMEMBER.  I THINK THAT'S

LISA S. ROULY, CRR, RPR, CSR NO. 9524

2007

1   ALL I HAVE TO SAY.

2             AND WHILE MY RULE IS DON'T SAY ANYTHING MORE

3   THAN THAT, I THINK I OWE IT TO SOME DEGREE BECAUSE OF THE

4   PROFESSIONALISM AND THE QUALITY OF THE LAWYERING SO FAR TO

5   AT LEAST SHARE SOME OF MY THINKING BECAUSE I HAVE SAT ON THE

6   DEFENSE SIDE.  AND SOMETIMES YOU'D REALLY LIKE TO KNOW,

7   OKAY, I MAY NOT AGREE WITH YOU, BUT HOW'D YOU GET THERE?

8   AND OUT OF COURTESY AND RESPECT FOR MR. DIEKMANN, I HAVE

9   DONE THAT.  AND IF I WAS SUPPOSED TO DO IT ANYWAY, WELL,

10  THEN I DID WHAT I WAS SUPPOSED TO DO.

```
11              MR. ROBINSON:  YOUR HONOR, I THINK WE WOULD

12   PROBABLY BOTH LIKE TO TALK WITH YOU ABOUT WHERE WE GO FROM

13   HERE.  I DON'T KNOW IF YOU WANT THAT ON THE RECORD.

14              THE COURT:  SURE.  NO.  WE CAN DO THAT OFF THE

15   RECORD, AND WE CAN DO IT STARTING NOW AND DO IT AFTER LUNCH.

16   SO WE CAN JUST GO OFF THE RECORD NOW.

17                          (NOON RECESS.)
```