UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| IAN O'DONNELL & DAVID JOLICOEUR, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | CIVIL ACTION NO. 04-CV-12719 NMG |
| ROBERT HALF INTERNATIONAL INC. & ROBERT HALF CORPORATION, | ) ) ) ) | |
| Defendants. | ) ) | |

## DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR EMERGENCY MOTION TO DISQUALIFY PLAINTIFFS' COUNSEL

Defendants Robert Half International Inc. and Robert Half Corporation (together "RHI" or "Defendants") submit this Memorandum of Law in support of their Emergency Motion to Disqualify Plaintiffs' Counsel, the law firm of Lichten & Liss-Riordan, P.C. ("LLR"), from further representing Ian O'Donnell and David Jolicoeur ("Plaintiffs") in this matter. The Rules of Professional Conduct mandate immediate disqualification of Plaintiffs' counsel, including Attorney Shannon Liss-Riordan, because her newly formed firm, LLR, recently hired a former Associate from Defendants' law firm, Seyfarth Shaw LLP ("Seyfarth"), who personally represented RHI in its defense of this very matter, Sarah Getchell, Esq., with full knowledge and in blatant disregard of defense counsel's prior clear warnings that hiring Attorney Getchell would create a conflict that would disqualify the entire firm. As a result of Attorney Getchell's representation of RHI and her exposure to confidential information while employed at Seyfarth, she possesses privileged and confidential information about RHI's defense of this action. This is not an instance in which a junior associate researched an ancillary legal or procedural issue unrelated to the core of the case. Rather, using confidential information that she was given and that she analyzed in the context of legal research that she performed, Attorney Getchell reached conclusions and wrote a memorandum that relate to Defendants' strategy and defense of this matter. Given the nature of the information that Attorney Getchell possesses, Defendants are compelled to file this motion and there is

no alternative to the disqualification of LLR.  Under Rule 1.10(d), screening is not available because Attorney Getchell possesses "substantial material information," and the disqualification of LLR is mandatory.  This motion is presented on an emergency basis because the purposes of the Rules of Professional Conduct governing conflicts of interest will be vitiated if LLR is allowed to participate further in this action in any capacity, including the upcoming status conference, anticipated motions and hearings, and, ultimately, trial.

## BACKGROUND

Plaintiffs commenced this action on December 1, 2004, alleging violations of state and federal wage and hour laws "on behalf of themselves and all others similarly situated."  *See* docket entry 1, Ex. 2.  Seyfarth has represented RHI in this matter since its inception, first appearing before this Court when it removed the action on December 29, 2004.  *See* docket entry 1.  Shannon Liss-Riordan, Esq. and the law firm of Pyle, Rome, Lichten, Ehrenberg & Liss-Riordan, P.C. ("PRLE") have represented Plaintiffs as lead counsel in this matter since filing an appearance on May 11, 2005.  *See* docket entry 10.  On or about June 1, 2009, Attorney Liss-Riordan left PRLE to form a new firm, LLR, with several PRLE attorneys.  *See* docket entry 114.  While this case was filed several years ago, substantially all discovery was conducted during the seven months since the Court's October 21, 2008, Order (docket entry 92) delimiting the discovery that would be permitted in this matter.

Attorney Getchell was employed by Seyfarth as a Summer Associate from May 21, 2007 – August 6, 2007.  Affidavit of Richard L. Alfred ("Alfred Aff."), filed contemporaneously herewith, ¶ 4.  After completing law school, Attorney Getchell returned to Seyfarth on October 13, 2008, as an Associate in the Labor & Employment Department.  *Id*.  Throughout her employment with Seyfarth, Attorney Getchell had immediate access to all documents and electronically-stored information maintained on the firm's servers for all of the firm's clients, including RHI.  *Id*.

As a Seyfarth Associate, Attorney Getchell performed legal work for RHI in conjunction with the defense of this lawsuit. Alfred Aff., ¶ 5. Attorney Getchell billed 3.8 hours of her time on March 23, 2009, to Seyfarth's billing number for this action for research analyzing and applying the privileged and confidential information that she had been given. *Id*. Attorney Getchell also billed an additional 3.4 hours of her time on March 24, 2009, to the firm's billing number for this action for her preparation of a memorandum regarding issues presented in RHI's defense of this action, and she saved the memorandum to the firm's computer system using the same RHI billing number. *Id*. In conjunction with the legal work that Attorney Getchell performed for RHI as a Seyfarth Associate, more senior attorneys representing RHI in this matter disclosed to Attorney Getchell confidential information about this lawsuit that is subject to both the attorney-client privilege and the work product doctrine (the "Confidential Information"). Alfred Aff., ¶ 6. RHI and its counsel deem the Confidential Information and the work product that Attorney Getchell produced in representing RHI to be strategically important, and RHI does not consent to the disclosure of that information for any purpose or under any circumstances. *Id*.

In addition to the legal work on this matter that Attorney Getchell billed to RHI, she was present at meetings of Seyfarth's Labor & Employment Department and the firm's Wage and Hour Litigation Practice Group at which Confidential Information was discussed. Alfred Aff., ¶7. As one documented example, RHI's defense of this lawsuit, including a confidential discussion of strategic issues presented in the case, was discussed at a meeting of the firm's Wage and Hour Litigation Practice Group on November 19, 2008, and Attorney Getchell attended that meeting. *Id*. RHI's defense of this action was also the subject of regular informal discussions among the Boston attorneys in Seyfarth's Labor & Employment Department and the firm's Wage and Hour Litigation Practice Group, and as a member of both of those groups, Attorney Getchell was likely present at such conversations, especially because her office was in close proximity to the offices of other attorneys working on this case. Alfred Aff., ¶ 8.

A number of significant events occurred in the litigation of this matter during Attorney

Getchell's employment with Seyfarth, including substantially all of the discovery taken in the case. Seyfarth deposed Plaintiffs in November and December 2008 and produced all of its own witnesses for deposition in January and February 2009. The parties also engaged in discovery-related motion practice during Attorney Getchell's employment with Seyfarth, including RHI's motion for a protective order regarding certain depositions Plaintiffs had noticed (*see* docket entry 96), the hearings that Magistrate Judge Collings held on that motion and other discovery issues (*see* docket entries dated January 27 and February 25, 2008), and Plaintiffs' Objection to Judge Collings' ruling (docket entry 103) and RHI's response (docket entry 106).

Attorney Getchell's employment with Seyfarth was terminated in a reduction in force announced on May 1 and effective May 8, 2009. Alfred Aff., ¶ 9. Pursuant to an agreement between Attorney Getchell and Seyfarth, the firm is currently paying her regular salary and will continue to do so during her severance period. *Id*. Seyfarth undertook a number of efforts to assist Attorney Getchell in securing substitute employment after she was terminated. For example, the firm arranged an interview with a Commissioner and an attorney at the Massachusetts Commission Against Discrimination ("MCAD"), after Attorney Getchell expressed an interest in working at that agency. Alfred Aff., ¶ 10. As a result of that interview, the MCAD offered Attorney Getchell a two-month unpaid internship to commence on June 1, 2009. *Id*. Attorney Getchell expressed interest but ultimately declined that internship, explaining to the MCAD that she had "a couple of paying job opportunities" and had decided to accept one of them. *Id*. In addition, when Attorney Getchell expressed an interest in associate positions at law firms which primarily represent plaintiffs, Seyfarth partners reached out to their contacts among the plaintiff's bar to inquire about available job openings and to assist Attorney Getchell in obtaining a new job. *Id*. In addition to the job offer from LLR, Attorney Getchell has acknowledged receiving at least one other offer for a paid position. *Id*.

On or about May 21, 2009, Attorney Liss-Riordan contacted Seyfarth partner Ariel D. Cudkowicz and requested an employment reference for Attorney Getchell, stating that she was

4

considering hiring Attorney Getchell to work at her new firm, LLR. Alfred Aff., ¶11; Affidavit of Ariel D. Cudkowicz ("Cudkowicz Aff."), filed contemporaneously herewith, ¶ 3.

In response, given the possibility that Attorney Liss-Riordan would seek to continue to represent Plaintiffs at her new firm, Seyfarth informed Attorney Liss-Riordan by e-mail dated May 22, 2009, that Attorney Getchell had worked on cases as a Seyfarth associate in which the firm was adverse to Attorney Liss-Riordan and her former firm, PRLE. Alfred Aff., ¶ 12; Cudkowicz Aff ¶ 4. Seyfarth told Attorney Liss-Riordan that Attorney Getchell's "work for [Attorney Liss-Riordan] or [her] firm in any capacity would raise serious conflicts for [Attorney Liss-Riordan and her new firm]." *Id.* Seyfarth further informed Attorney Liss-Riordan that Attorney Getchell was a "personally disqualified lawyer" within the meaning of Mass. R. Prof. C. 1.10 with respect to the cases she worked on as a Seyfarth Associate. Alfred Aff., ¶ 12; Cudkowicz Aff ¶ 4. Seyfarth further stated that because Attorney Getchell had information protected by Mass. R. Prof. C. 1.6 and 1.9, and because she had "substantial involvement" and/or "substantial material information" relating to those cases, screening her from those cases was not available under Mass. R. Prof. C. 1.10(d). Alfred Aff., ¶ 12; Cudkowicz Aff ¶ 4. In closing, Seyfarth stated that none of the firm's clients had waived or was expected to waive the conflicts that Attorney Cudkowicz's email had brought to Attorney Liss-Riordan's attention and warned that if she engaged Attorney Getchell, Seyfarth would be required to move to disqualify Attorney Liss-Riordan and her firm from the cases on which Attorney Getchell had worked at Seyfarth. Alfred Aff., ¶ 12; Cudkowicz Aff ¶ 4. Attorney Getchell was copied by e-mail on Seyfarth's May 22 email to Attorney Liss-Riordan. Alfred Aff., ¶ 12; Cudkowicz Aff ¶ 4.

Later the same day, Attorney Liss-Riordan responded to Seyfarth's communication by noting that she had asked Attorney Getchell to determine whether she had worked on any matters adverse to PRLE as a Seyfarth Associate. Alfred Aff., ¶ 13; Cudkowicz Aff ¶ 5. Attorney Liss-Riordan stated that Attorney Getchell had not identified any such cases, and Attorney Liss-Riordan stated, "If you have a case or cases which you believe create a conflict for her working with [LLR], you must notify us

5

immediately of what cases they are. Should you not do so, we will consider you to have waived any such conflict." Alfred Aff., ¶ 13; Cudkowicz Aff ¶ 5.

Less than two hours later, Seyfarth informed Attorney Liss-Riordan that Attorney Getchell had performed legal work for RHI on the present case, and stated that "No conflicts have been or are being waived." Alfred Aff., ¶ 14; Cudkowicz Aff ¶ 6.

On May 28, 2009, Attorney Liss-Riordan attended a meeting with another Seyfarth partner on a matter unrelated to the present action, and Attorney Liss-Riordan stated at that meeting that she had hired Attorney Getchell to work at her new firm, LLR. Alfred Aff., ¶ 15. Seyfarth wrote to Attorney Liss-Riordan, and sent a copy to Attorney Lichten, later the same day and asked her to confirm that she had hired Attorney Getchell, "in view of the serious conflict issues that this would create in your ability to continue as plaintiffs' counsel in the *O'Donnell v. Robert Half* case . . . ." *Id*.

Attorney Liss-Riordan responded by confirming that she had "hired Sarah Getchell as a contract attorney for our new firm [LLR] that is opening next week." Alfred Aff., ¶ 16. Attorney Liss-Riordan also stated, "We will not discuss the Robert Half case with [Attorney Getchell], nor will she work on the case." *Id*. A few minutes later, Harold Lichten, Esq., the other principal of LLR, also responded, acknowledging that Attorney Getchell had confirmed to the partners of LLR that "she may have done research on a discrete issue." *Id*. He further stated his belief that Attorney Getchell had no substantive knowledge of this matter and asked Seyfarth to "provide us with the facts that support what we understand will be your attempt to disqualify us from the case." *Id*.

The following day, Seyfarth responded to the May 28 e-mails from Attorney Liss-Riordan and Attorney Lichten. Seyfarth noted that it obviously not could not share confidential information with Plaintiffs' counsel regarding the work that Attorney Getchell had performed for RHI. Alfred Aff., ¶ 17. Seyfarth also stated that the fact that Attorney Getchell "may not have a present memory of that confidential information is not germane to . . . whether she in fact possesses confidential information," citing Comment to Mass. R. Prof. C. 1.10[9]. *Id*. Seyfarth again stated that RHI would not waive the

6

conflict arising from LLR's hiring of Attorney Getchell and noted that RHI would have no choice but to move to disqualify LLR unless the firm agreed to withdraw. *Id*. Seyfarth asked that Attorney Liss-Riordan and Attorney Lichten "advise us immediately whether you will do so." *Id*. In response, Attorney Lichten sent another e-mail requesting additional information about the Confidential Information that Attorney Getchell possesses, but as of the filing of this motion, Plaintiffs' counsel has not yet taken a position as to whether they intend to withdraw. Alfred Aff., ¶ 18. Late in the day on June 1, 2009, Attorney Liss-Riordan filed several pleadings in this matter, including a notice of change of address listing her new firm, LLR, as counsel, reflecting that Attorney Liss-Riordan intends to continue to represent Plaintiffs in this matter, and neither she nor her firm has withdrawn as Plaintiffs' counsel in this matter. *See* docket entry no. 114. Also on June 1, 2009, LLR posted a new website for the firm. According to that website, LLR consists of eight attorneys, including Attorney Getchell. *See* Alfred Aff., ¶ 19. Attorney Getchell's biography, photograph, and her statement of her legal experience are included among the other seven attorneys of the firm. Alfred Aff., ¶ 21. On June 3, 2009, Seyfarth sent a response to Attorney Lichten's June 1 email stating that RHI had made its position clear regarding the conflict presented by LLR's hiring of Attorney Getchell, that further email correspondence in an attempt to resolve or narrow the issues presented by LLR's conflict of this interest in this matter would not be fruitful, and that RHI would proceed to file the present motion.

## ARGUMENT

**I.     LLR Is Disqualified from Representing Plaintiffs Because It Has "Associated with" a Disqualified Lawyer.**

As this Court has recognized, in deciding whether to disqualify counsel, a court must attempt "to reconcile an individual's right to counsel of his choice with the obligation of maintaining the highest standards of professional conduct and the scrupulous administration of justice." *Rodriguez v. Montalvo*, 337 F. Supp. 2d 212, 217 (D. Mass. 2004) (Gorton, J.) (internal citations omitted). "The right of a litigant to counsel of his choosing is not absolute and cannot always predominate." *Mailer v. Mailer,* 390 Mass. 371, 373 (1983) (internal citations omitted). Accordingly, it is well established that pursuant

to Mass. R. Prof. C. 1.9 ("Rule 1.9"), an attorney cannot "switch sides" to represent a party adverse to a former client for whom the attorney performed work without the client's express waiver, and any attorney who attempts to do so must be disqualified. Moreover, any such disqualification must be imputed to any firm that associates with the disqualified attorney. *See* Mass. R. Prof. C. 1.10; *see also Rodriguez*, 337 F. Supp. 2d at 218 ("Rule 1.10 extends Rule 1.9's prohibition to any lawyer associated in a firm with a potentially conflicted lawyer."). In addition, where the disqualified attorney acquired confidential material information relating to a case, the disqualification cannot be cured by screening, making disqualification of the attorney's new firm mandatory. *See* Mass. R. Prof. C. 1.10(d).

Here, there can be no doubt that Attorney Getchell is a disqualified lawyer because she performed legal work for RHI in this very case, during the course of which she acquired the Confidential Information that has important strategic value in this litigation. RHI has not and will not waive this conflict. Because LLR has become associated with Attorney Getchell (after ignoring Seyfarth's clear warnings regarding the conflict that association would create), her disqualification must be imputed to the firm as a whole, and the entire firm is precluded from further representing Plaintiffs in this case.

### A. Attorney Getchell Is a Disqualified Lawyer.

Pursuant to Rule 1.9, two circumstances give rise to a conflict of interest with a former client that require disqualification of an attorney:

> (a) A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client consents after consultation.
>
> (b) A lawyer shall not knowingly represent a person in the same or a substantially related matter in which a firm with which the lawyer formerly was associated had previously represented a client
>
>> (1) whose interests are materially adverse to that person; and
>>
>> (2) about whom the lawyer had acquired information protected by Rules 1.6 and 1.9(c) that is material to the matter, unless the former client consents after consultation.

8

Mass. R. Prof. C. 1.9. Both (a) and (b) apply here.

### 1. Attorney Getchell is Disqualified Under Rule 1.9(a) Because She Performed Legal Work for RHI.

Attorney Getchell performed legal work for Defendants <u>on this very case</u>. As Comment 2 to Rule 1.9 explicitly states, "[w]hen a lawyer has been <u>directly</u> involved in a specific transaction, subsequent representation of other clients with materially adverse interests <u>clearly</u> is prohibited." Mass. R. Prof. C. 1.9, Comment 2 (emphasis added). As described above, it is beyond dispute that Attorney Getchell was involved directly in this specific matter: just over two months ago, she engaged in discussions with more senior Seyfarth attorneys regarding the facts and Defendants' litigation strategy in the case, she conducted legal research applying the Confidential Information, she drafted a memorandum analyzing an important legal issue in this case, and she engaged in follow-up communications with her Seyfarth colleagues regarding her findings.[1] This is not an instance in which a junior associate researched an ancillary legal or procedural issue unrelated to the core of the case. Rather, using confidential information that she was given and that she analyzed in the context of legal research that she performed, Attorney Getchell reached conclusions that relate to Defendants' strategy and defense of this matter. Attorney Getchell's direct work on this case is further evidenced by the fact that she billed time to Seyfarth's billing number for this case.[2] Pursuant to the plain language of the Rules, Attorney Getchell is a disqualified attorney.

---

[1] To the extent that Attorney Getchell asserts that she has no memory of the confidential information she acquired, that assertion is irrelevant to this Court's inquiry. *See* Mass. R. Prof. C. 1.10, Comment 9 ("The fact that the lawyer does not immediately remember any details of the former client's representation does not mean that he or she does not in fact possess confidential information material to the matter."); *Smith & Nephew v. Ethicon*, 98 F. Supp. 2d 106, n.7 (D. Mass. 2000) (Stearns, J.) ("a lawyer's assertion of less than perfect recall is not the controlling consideration"); *see also Adams v. Aerojet-Gen. Corp.*, 86 Cal. App. 4th 1324, 1344 (Cal. App. 2001) ("the attorney cannot [avoid disqualification] merely by declaring that he or she does not recall having any discussions regarding confidential information about the opposing party while affiliated with the former law firm") (Kolkey, J., concurring and dissenting); *In re Mortg. & Realty Trust*, 195 B.R. 740, 754 (Bankr. C.D. Cal. 1996) ("It would be entirely improper to permit a fiduciary to undertake a conflict . . . based on lack of memory of confidential information, only to have the memory refreshed and the conflict become actual at a later date. To avoid this possibility, poor memory cannot excuse a conflict of interest in the first instance.").

[2] Attorney Getchell billed 7.2 hours of time to RHI. Courts have found the existence of a conflict of interest in cases where attorneys spent far less time performing work for a client or potential client. *See, e.g., U.S. Filter Corp. v. Ionics*, 189 F.R.D. 26, 29 (D. Mass. 1999) (disqualifying attorney who recorded total of 1.6 hours on client number); *Rodriguez*, 337 F. Supp. 2d at 217-19 (disqualifying attorneys even though there was no evidence that they spent any time working on case and paralegal that one attorney supervised spent only small amount of time on case); *Quinn v. Georgilas*, 2008 WL 123804, at *5 (Mass.

Furthermore, during the course of her legal work for RHI, Attorney Getchell received Confidential Information regarding Defendants. The Rules make disqualification mandatory under these circumstances to prevent lawyers from entering into a situation that could create pressures which might compromise their ethical obligations. As courts have recognized, among the highest duties an attorney owes a client is the duty to maintain the confidentiality of client information. *Com. v. Perkins*, 450 Mass. 834 (2008). Rule 1.9(a) addresses the fact "that an attorney representing a party adverse to his former client would be tempted to betray confidences of that former client in order to serve the interests of the current client." *New England Pro Tour, Inc. v. Hebb*, 2007 WL 1264140, at *7 (Mass. Super. Ct., April 18, 2007) (Gants, J.); *see also Bays v. Theran,* 418 Mass. 685, 691 (1994) (this situation "exposes the attorney to an intolerably strong temptation to breach his duty of confidence to the former client") (internal citations omitted); *Dee v. Conference Holdings, Inc.,* 1998 WL 1247926, at *2 (Mass. Super. Ct., July 14, 1998) (Sosman, J.) (where there is likelihood that attorney possesses useful information from former client, temptation to make use of information arises).

RHI is not required to disclose the Confidential Information that Attorney Getchell possesses to Plaintiffs' counsel or the Court in order to substantiate its Motion to Disqualify. "Rather than force the former client to identify specific confidential information that might be used against him," the court must assume "that confidences were transmitted in the former attorney-client relationship."[3] *New England Pro Tour, Inc. v. Hebb*, 2007 WL 1264140, at *7 (citing *Bays,* 418 Mass. at 691); *see also*

---

Land Ct. 2008) (disqualifying lawyer who spent 5.37 hours performing work for client). As these cases demonstrate, the determining factor is the confidentiality of the information to which the disqualified lawyer was exposed, not the specific amount of time billed to the case.

[3] The Second Circuit has succinctly stated the reason for this presumption:

> [T]he court need not, indeed cannot, inquire whether the lawyer did, *in fact*, receive confidential information during his previous employment which might be used to the client's disadvantage. Such an inquiry would prove destructive of the weighty policy considerations that serve as the pillars of . . . the Code [of Professional Responsibility], for the client's ultimate and compelled response to an attorney's claim of non-access would necessarily be to describe in detail the confidential information previously disclosed and now sought to be preserved. Thus, where it can reasonably be said that in the course of the former representation the attorney *might* have acquired information related to the subject matter of his subsequent representation, it is the court's duty to order the attorney disqualified.

*Emle Indus., v. Patentex, Inc.*, 478 F.2d 562, 571 (2d Cir. 1973) (citations and quotations omitted) (emphasis in original).

10

*Kevlik v. Goldstein,* 724 F.2d 844, 851 (1st Cir. 1984) ("The Court will assume that during the course of the former representation confidences were disclosed to the attorney bearing on the subject matter of the representation."). As this Court has recognized, "[t]he former client is not required to prove that the attorney actually misused the information," but only that the potential exists. *Rodriguez*, 337 F. Supp. 2d at 218. This fact alone requires disqualification under Rule 1.9. *Dee,* 1998 WL 1247926 at *2.

### 2. Attorney Getchell Is Disqualified Under Rule 1.9(b) Because She Possesses Confidential Information Regarding RHI.

Even if Attorney Getchell had not represented RHI directly in this case, she would be disqualified pursuant to Rule 1.9(b) because as an Associate working in the same group as RHI's defense team, she received confidential information material to this case while attending meetings and being exposed to discussions among other Seyfarth lawyers about the case.[4] Under Rule 1.9(b), LLR has the burden of proof in establishing that Attorney Getchell is not a Disqualified Lawyer. Mass. R. Prof. C. 1.9, Comment 7 ("the burden of proof should rest upon the firm whose disqualification is sought"); *see also Inverness Med. Switz. v. Acon Lab.*, 2005 WL 1491233, *5 (D. Mass. 2005) (quoting Comment 7). It simply cannot meet this burden.

First, as described above, Attorney Getchell received confidential information in the course of her direct work on the case. Second, as Comment 6 to Rule 1.9 specifies, an attorney may acquire confidential information through access to a client's files and discussions of a client's affairs:

> Preserving confidentiality is a question of access to information. Access to information, in turn, is essentially a question of fact in particular circumstances, aided by inferences, deductions or working presumptions that reasonably may be made about the way in which lawyers work together. A lawyer may have general access to files of all clients of a law firm and may regularly participate in discussions of their affairs; it should be inferred that such a lawyer in fact is privy to all information about all the firm's clients.

---

[4] The definition of "confidential information" under the Rules is broad and encompasses more than information protected by the attorney-client privilege and/or work product doctrine. Indeed, it includes "virtually all information relating to the representation, whatever its source." Mass. R. Prof. C. 1.6(a), Comment 5. "Confidential information" excludes only "generally known or widely available information." Mass. R. Prof. C. 1.6, Comment 5B.

Mass. R. Prof. C. 1.9, Comment 6. For example, an attorney may acquire confidential information regarding a specific case when the matter is "the subject of discussion with the lawyer generally, for example at firm or working group meetings." Mass. R. Prof. C. 1.10, Comment 9; *see also Ionics*, 189 F.R.D. at 30 (finding fact that lawyers in firm discussed pending matters relevant to disqualification); *Elan Transdermal v. Cyngus Therapeutic Sys.*, 809 F. Supp. 1383, 1390 (N.D. Cal. 1992) (discussing "common-sense notion" that people who work in close quarters discuss their work with one another); *Donohoe v. Consol. Operating & Prod. Corp.*, 691 F. Supp. 109, 115 (N.D. Ill. 1988) (noting that courts generally presume that efficient practice of law requires lawyers who work together to discuss client confidences).

Attorney Getchell had access to Defendants' case files, including those in Seyfarth's document management system, and she in fact created a confidential and privileged memorandum under RHI's billing number in that system. Alfred Aff., ¶ 4, 5. Moreover, she regularly participated in meetings of Seyfarth's Labor & Employment Department and the firm's Wage and Hour Litigation Practice Group at which this action was discussed. Alfred Aff., ¶ 7. Her attendance was documented at one such meeting during which RHI's defense of this action, including a confidential discussion of strategic issues presented in this case, was discussed at length. *Id*. RHI's defense of this action was also the subject of regular informal discussions among the Boston attorneys in Seyfarth's Labor & Employment Department and the firm's Wage and Hour Litigation Practice Group, and as a member of both of those groups, Attorney Getchell was exposed to such conversations. Alfred Aff., ¶ 8. Her office was in close proximity to other lawyers working on this case, which likely further exposed her to confidential discussions. *Id*. In addition to the Confidential Information that Attorney Getchell acquired through her legal work on this case, the circumstances of her employment as an Associate at Seyfarth gave her access to and in fact provided her with additional Confidential Information regarding this case. As such, Attorney Getchell is a disqualified attorney under Rule 1.9(b).

**B.      Attorney Getchell's Disqualification Is Imputed to LLR Because the Firm Has Associated with Her.**

Because Attorney Getchell is a Disqualified Lawyer, her disqualification must be imputed to LLR.[5]  Rule 1.10, entitled "Imputed Disqualification," states as follows:

> When a lawyer becomes associated with a firm, the firm may not undertake to or continue to represent a person in a matter that the firm knows or reasonably should know is the same or substantially related to a matter in which the newly associated lawyer (the "personally disqualified lawyer"), or a firm with which that lawyer was associated, had previously represented a client whose interests are materially adverse to that person unless:
>
> (1) the personally disqualified lawyer has no information protected by Rule 1.6 or Rule 1.9 that is material to the matter ("material information"); or
>
> (2) the personally disqualified lawyer (i) had neither substantial involvement nor substantial material information relating to the matter and (ii) is screened from any participation in the matter in accordance with paragraph (e) of this Rule and is apportioned no part of the fee therefrom.

Mass. R. Prof. C. 1.10(d).  "Rule 1.10 is premised on the undivided loyalty owed to a client, as well as the presumption that lawyers associated in a firm share or have access to confidential information concerning each other's clients."  Constance V. Vecchione, First Assistant Bar Counsel, *SIDEWAYS: Lateral Hires and Conflicts of Interest* ("*Lateral Hires and Conflicts*") (March 2006), available at http://www.mass.gov/obcbbo/sideways.htm (last visited June 2, 2009) (internal citations omitted); *see also* Mass. R. Prof. C. 1.10(d), Comment 6.  The Rule ensures "that attorneys remain faithful to the fiduciary duties of loyalty and confidentiality" and "reinforces an attorney's ethical obligation to avoid the appearance of impropriety."  *Kassis v. Teacher's Insur. & Annuity Assocs.*, 93 N.Y. 2d 611, 616

---

[5] Pursuant to Comment 1 to Rule 1.10, attorneys are members of the same "firm" "if they present themselves to the public in a way suggesting that they are a firm or conduct themselves as a firm."  Mass. R. Prof. C. 1.10, Comment 1; *see also Smith & Nephew*, 98 F. Supp. 2d at n.4 (attorney associated with firm where firm "permit[ed him] to hold himself out" as attorney of firm).  Factors considered when determining whether a firm has associated with an attorney include the sharing of office space, files, staff, and advertising.  *See, e.g.*, *Monroe v. City of Topeka*, 988 P.2d 228 (Kan. 1999) (attorneys associated in a firm where they shared office space, telephone number, mailing address and letterhead); *Tenn. v. Bryan*, 2000 WL 1131890 (Tenn. Crim. App. 2000) (attorneys associated in firm where they shared office space and newspaper advertisement).  As noted above, Attorney Getchell is listed on LLR's website as an attorney at that firm, and she shares a telephone number and a staff assistant with other attorneys at the firm.  *See* http://llrlaw.com/attorneys/sarah.htm.  LLR therefore clearly is associated with Attorney Getchell.

(1999). Therefore, the disqualification of a lawyer will be imputed to a law firm that subsequently associates with her. *See, e.g., Kassis*, 93 N.Y. 2d at 616 ("where an attorney working in a law firm is disqualified from undertaking a subsequent representation opposing a former client, all the attorneys in that firm are likewise precluded from such representation") (internal citations omitted).

To overcome the presumption of mandatory disqualification, LLR must first show that Attorney Getchell had "neither substantial involvement nor substantial material information" relating to this matter.[6] Mass. R. Prof. C. 1.10(d)(2). Even if LLR could show that neither of these absolutely disqualifying factors apply – which it certainly cannot do under the circumstances presented here – the firm would also have to show that it is capable of adequately screening the disqualified lawyer. Mass. R. Prof. C. 1.10(d); *see also Ionics*, 189 F.R.D. at 30. LLR cannot avail itself of any part of this exception to mandatory disqualification under Rule 1.10(d). First, Attorney Getchell acquired highly confidential and privileged information regarding RHI's defense of this action – information that undoubtedly qualifies as "substantial material information" – when she performed legal work for RHI as a Seyfarth Associate. Under those circumstances, the Rule dictates that screening is not available and disqualification is required. Second, even if the material information that Attorney Getchell acquired was not "substantial material information," LLR would be unable to appropriately screen pursuant to Rule 1.10(e) due to the small size of the firm.

### 1. Attorney Getchell Possesses Substantial Material Information.

The term "substantial material information" is not defined in the Rules, and very little case law exists on this point. However, "substantial" is defined as follows: "when used in reference to degree or extent [substantial] denotes a material matter of clear and weighty importance." Mass. R. Prof. C. 9.1(n). In addition, this Court has used the term "material information of a confidential nature" to describe information that requires imputed disqualification of a law firm. *Rodriguez*, 337 F. Supp. 2d at

---

[6] Given the Confidential Information that Attorney Getchell was given as a Seyfarth Associate working for RHI and the confidential and privileged work product that she created in defense of this action, LLR cannot argue that Attorney Getchell has absolutely no "material information" pertaining to the matter, as would be necessary for the firm to avoid disqualification under Rule 1.10(d).

14

219. Other jurisdictions have substituted the term "significant" for "substantial" in similar contexts. *See, e.g., Kassis*, 93 N.Y. 2d at 617 ("the party seeking to avoid [imputed] disqualification must prove that any information acquired by the disqualified lawyer is unlikely to be significant or material in the litigation"). Under any definition, the Confidential Information that Attorney Getchell acquired is "substantial material information." As described above, Attorney Getchell was involved directly in this case: she engaged in discussions with more senior Seyfarth attorneys regarding the facts and Defendant's litigation strategy in the case, she conducted legal research, she drafted a confidential and privileged memorandum analyzing a significant legal issue in this case, and she engaged in follow-up communications with her Seyfarth colleagues regarding her findings. Alfred Aff., ¶ 5, 6. The Confidential Information that Attorney Getchell possesses is subject to both the attorney-client privilege and the work product doctrine, and RHI and its counsel deem the Confidential Information and the work product that Attorney Getchell produced in representing RHI to be highly important and strategically substantial. *Id*. There can be no doubt that Attorney Getchell possesses "substantial material information" about this matter.

    **2. Because Attorney Getchell Has Substantial Material Information, Screening Is Not an Adequate Protection.**

Because Attorney Getchell has substantial material information, LLR cannot avoid disqualification by attempting to screen her or by taking any other steps to cure the conflict. *See, e.g., Smith & Nephew*, 98 F. Supp. 2d at n.10 ("Because predicate (i) of exception (d)(2) is not satisfied, the imperviousness of the 'Chinese Wall' that [the firm] has erected between [disqualified attorney] and the attorneys litigating this case is irrelevant"); *Ionics*, 189 F.R.D. at 30 (same); *Maturi v. McLaughlin Research Corp.*, 2001 U.S. Dist. LEXIS 21893, at n.3 (D. N.H. 2001) ("there is no sort of wall, Chinese or otherwise, that would allow" counsel to represent nonmoving party where disqualified attorney received confidential information). "First and foremost, absent informed consent from the clients on both sides of the case, there is nothing that can be done to prevent disqualification of the new firm if the newly associated attorney is in possession of substantial material information or had substantial

involvement in the pending matter at his or her old firm. In these circumstances, screening is not an adequate protection and the new firm will have to withdraw." Vecchione, *Lateral Hires and Conflicts*.[7] In circumstances such as this, courts must disqualify the firm that associated with the disqualified lawyer. *See, e.g., Bays v. Theran,* 418 Mass. 685 (1994) (affirming disqualification of law firm where attorney had represented adverse party and received confidential information); *Kevlik v. Goldstein,* 724 F.2d 844, 845-46, 850-51 (1st Cir. 1984) (affirming disqualification of firm where attorney had privileged communications with witness relevant to case); *Rodriguez,* 337 F. Supp. 2d at 217-19 (imputing to supervising attorneys confidential information imparted to paralegal and disqualifying attorneys' new firm on that basis); *Atasi Corp. v. Seagate Tech.,* 847 F.2d 826, 828-29 (Fed. Cir. 1988) (affirming disqualification of firm where attorney at firm previously worked at adverse party's law firm and "was personally involved in the matter" while employed there). Simply put, there is nothing LLR can do to cure the "taint" of associating with a disqualified lawyer, and the firm must be disqualified.[8]

### 3. Even if Attorney Getchell Did Not Have Substantial Material Information, LLR Could Not Appropriately or Adequately Screen Her.

Even if the material information that Attorney Getchell possesses did not have substantial strategic importance, in order to avoid disqualification, LLR would be required to follow the screening procedures described in Rule 1.10(e), including the requirement that the disqualified lawyer and the new firm reasonably believe that the screening procedures will be effective. LLR cannot effectively screen Attorney Getchell from this matter because of its small size.[9] *See* Mass. R. Prof. C. 1.10, Comment 10

---

[7] *See also* Mass. R. Prof. C. 1.10, Comment 11 ("In situations where the personally disqualified lawyer was substantially involved in a matter, or had substantial material information, the new firm will generally only be allowed to handle the matter if the former client of the personally disqualified lawyer or of the law firm consents and the firm reasonably believes that the representation will not be adversely affected, all as required by Rule 1.7.") (emphasis added).

[8] Indeed, even departure of the tainted lawyer from the firm would not cure the disqualification. *See, e.g., Bays*, 418 Mass. at 694 ("the fact that [disqualified attorney] has recently left [firm] does not require alteration of the balance struck by the judge between a client's right to counsel of choice and an attorney's responsibility to preserve client confidences and to avoid even the appearance of impropriety"); *see also Cardona v. Gen. Motors Corp.*, 942 F. Supp. 968, 976 (D.N.J. 1996) (disqualified firm cannot cleanse itself of taint merely by dismissing "the side-switching attorney") (internal quotations omitted); *Huntington v. Great W. Res., Inc.*, 655 F. Supp. 565, 574 (S.D.N.Y. 1987) (allowing firm to avoid disqualification upon challenged attorney's departure would "provide an escape hatch to firms and attorneys who take on and continue conflict-laden representation").

[9] Rule 1.10(e), which governs screening of disqualified lawyers in appropriate circumstances, states as follows:

("in a very small firm, it may be difficult to keep information screened"). LLR consists of eight attorneys, including Attorney Getchell. *See* http://llrlaw.com/attorneys.htm. Four of those lawyers are designated as partners on the firm's website. *Id*. The boutique firm also does only one type of work: plaintiffs-side employment and labor litigation. *See* http://www.llrlaw.com/practice_areas.htm (last visited June 2, 2009) ("Lichten & Liss-Riordan is a law firm exclusively devoted to the representation of employees and labor unions"). It is well-established that firm size is a relevant factor in determining whether a screen can be effectively established. *See, e.g., Ionics*, 189 F.R.D. at 30 ("In small firms the work on cases and for clients is likely to be shared among the small staff, at least informally if not formally."); *Schiessle v. Stephens*, 717 F.2d 417 (7th Cir. 1983) (factors "include, but are not limited to, the size and structural divisions of the law firm involved, [and] the likelihood of contact between the 'infected' attorney and the specific attorneys responsible for the present representation"); *see also* Vecchione, *Lateral Hires and Conflicts* ("In practice [] and as noted in comment 10 to the rule, it may be impossible in [] a small firm to set up an effective screen."). Indeed, courts have recognized that it is impossible even for firms much larger than LLR to erect an effective screen, and have disqualified small law firms associated with disqualified attorneys on those grounds. *See, e.g., Kevlik*, 724 F.2d at n.5

---

> For the purposes of paragraph (d) of this Rule and of Rules 1.11 and 1.12, a personally disqualified lawyer in a firm will be deemed to have been screened from any participation in a matter if:
> (1) all material information which the personally disqualified lawyer has has been isolated from the firm;
> (2) the personally disqualified lawyer has been isolated from all contact with the client relating to the matter, and any witness for or against the client;
> (3) the personally disqualified lawyer and the firm have been precluded from discussing the matter with each other;
> (4) the former client of the personally disqualified lawyer or of the firm with which the personally disqualified lawyer was associated receives notice of the conflict and an affidavit of the personally disqualified lawyer and the firm describing the procedures being used effectively to screen the personally disqualified lawyer, and attesting that (i) the personally disqualified lawyer will not participate in the matter and will not discuss the matter or the representation with any other lawyer or employee of his or her current firm; (ii) no material information was transmitted by the personally disqualified lawyer before implementation of the screening procedures and notice to the former client; and (iii) during the period of the lawyer's personal disqualification those lawyers or employees who do participate in the matter will be apprised that the personally disqualified lawyer is screened from participating in or discussing the matter; and
> (5) the personally disqualified lawyer and the firm with which he is associated reasonably believe that the steps taken to accomplish the screening of material information are likely to be effective in preventing material information from being disclosed to the firm and its client.

Mass. R. Prof. C. 1.10(e).

(twenty-five attorneys too small to screen adequately); *Young v. Cent. Square Cent. Sch. Dist.*, 213 F. Supp. 2d 202, 216 (N.D.N.Y. 2002) ("in instances in which the law firm is relatively small, courts have found that there are doubts that even the most stringent screening devices would be effective"); *see also Cheng v. GAF Corp.*, 631 F.2d 1052, 1058 (2d Cir. 1980) (thirty-five attorneys too small to prevent even inadvertent disclosures) (*vacated on other grounds*, 450 U.S. 903); *Crudele v. N.Y. City Police Dept.*, 2001 WL 1033539, *11 (S.D.N.Y. 2001) (fifteen-attorney law firm too small to effectively screen); *Norfolk S. Ry. Co., v. Reading Blue Mountain & N. R.R. Co.*, 397 F. Supp. 2d 551, 555 (M.D. Pa. 2005) (ten-attorney firm too small to prevent conversations from being overheard); *Kassis*, 93 N.Y. 2d at 695 (twenty-six attorneys too small). It would therefore be impossible for LLR to erect an appropriate screen, even if Attorney Getchell were not – as she surely is – a "personally disqualified lawyer" with "substantial material information," and the firm must be disqualified.

**II.     Defendants' Counsel Provided Ample Notice to LLR That Attorney Getchell Is a Disqualified Lawyer, and It Associated with Her Nonetheless.**

Though Attorney Lichten has accused RHI of attempting "to gain a tactical advantage" in this matter (*see* Alfred Aff., ¶ 16), it is in fact the attorneys of LLR who have knowingly and deliberately created the issues raised in this motion. Seyfarth attempted to avoid unnecessary controversy and the specter of very serious ethical issues by immediately informing Attorneys Liss-Riordan and Lichten of Attorney Getchell's status as a "personally disqualified lawyer" under the Rules of Professional Conduct within hours after the firm learned that Attorney Liss-Riordan was considering hiring Attorney Getchell. Alfred Aff., ¶ 12. In its very first communication on the subject, Seyfarth cautioned Attorney Liss-Riordan that hiring Attorney Getchell would "create serious conflicts for [Attorney Liss-Riordan] and [her new firm]." *Id*. In the same message, Seyfarth noted that as a result of the information Attorney Getchell possesses, screening her from certain cases was not available under the ethical rules, and as a result, Seyfarth would "expect to be required to move to disqualify [Attorney Liss-Riordan] and [her new firm]" from those cases. *Id*.

Before LLR hired Attorney Getchell, Seyfarth informed the principals of that new firm that the

*O'Donnell v. RHI* case was a matter as to which Attorney Getchell was a "personally disqualified lawyer," that she had personally performed legal work for RHI, that she possessed "substantial material information" related to this case, and that RHI would not waive the conflict created by LLR hiring her. Alfred Aff., ¶ 12, 14. In overt disregard of the obvious conflict of interest and the applicable ethical rules, and while acknowledging that Attorney Getchell had worked on this case, Attorney Lichten notified RHI's counsel that it had hired Attorney Getchell despite LLR's clear understanding that RHI would move to disqualify Plaintiffs' counsel as a result.[10] Alfred Aff., ¶ 16.

Neither RHI nor Seyfarth has attempted to use this issue to gain a tactical advantage or for any other improper purpose. Indeed, Defendants and their counsel went to considerable lengths to avoid the need for the present motion, and Plaintiffs' counsel ignored and rebuffed warnings from Seyfarth that easily could have allowed the parties to avoid the present controversy. Any suggestion by LLR that disqualification will pose a hardship to them is not relevant, especially where the conflict at issue is the product of their own knowing conduct.[11] *See Van Jackson v. Check 'n Go of Ill., Inc.*, 114 F. Supp. 2d 732, 734 (N.D. Ill. 2000) (noting that "it was [the disqualified firm's] own personnel decision to recruit [the tainted lawyer] away from its courtroom adversary in the midst of this case which led to its disqualification."); *see also FMC Techs., Inc. v. Edwards*, 420 F. Supp. 2d 1153, 1162 (W.D. Wash. 2006) ("Any prejudice Defendants face is due to their attorneys' decision to ignore a conflict of interest, not this Court's decision to grant Plaintiffs' motion."); *U.S. v. Culp*, 934 F. Supp. 394, 400 (M.D. Fla. 1996) (admonishing disqualified attorney that he "cannot in good conscience complain about a situation

---

[10] Attorney Getchell also was aware of the consequences of her associating with the Lichten & Liss-Riordan firm. She was copied on Seyfarth's first message to Attorney Liss-Riordan, in which Seyfarth noted the conflict and the likelihood that it would be required to move to disqualify the Lichten & Liss-Riordan firm from certain cases if Attorney Getchell joined the firm. Alfred Aff., ¶ 12. In addition, Attorney Liss-Riordan and Attorney Lichten separately represented to Seyfarth that they had consulted with Attorney Getchell regarding those issues after learning that she had represented RHI in this action. Alfred Aff., ¶ 13, 16. Attorney Getchell accepted a position with LLR rather than another paying job she had been offered, with the knowledge of the issues presented by this motion. Alfred Aff., ¶ 10.

[11] Any claim that Plaintiffs themselves would be harmed by the disqualification of Plaintiffs' counsel is also misplaced. *Atasi Corp. v. Seagate Tech.*, 847 F.2d 826, 832-33 (Fed. Cir. 1988) (finding fact that client would undoubtedly suffer prejudice as result of disqualification "particularly unfortunate since it was the attorney's action, rather than the client's which resulted in the disqualification"); *Cardona*, 942 F. Supp. at 978 ("Unfortunately, by proceeding in reckless disregard of the [New Jersey Rules of Professional Conduct], the consequences of this self-inflicted wound have also been visited upon their innocent clients.").

which is due in large part to his own professional derelictions"); *Ransburg Corp. v. Champion Spark Plug Co.*, 648 F. Supp. 1040, 1047 (N.D. Ill. 1986) ("One's sympathy for [the disqualified attorneys] is tempered by the knowledge that this is a problem of their own creation and one which could easily have been avoided."); *Trustco Bank v. Melino*, 164 Misc. 2d 999, 1007 (N.Y. Sup. Ct. 1995) (remarking that the disqualified firm and conflicted attorney "knew when they joined forces that there was a potential conflict of interest.  Nothing in this decision can have come as a surprise to them, although they may have wished for a different result.").   Plaintiffs' counsel knowingly created this situation, and they cannot avoid its consequences.

WHEREFORE, for the foregoing reasons, RHI respectfully asks that the Court disqualify the law firm of Lichten & Liss-Riordan, P.C. from representing Plaintiffs in this matter.

|  |  |
|---|---|
| | Respectfully submitted,<br>ROBERT HALF INTERNATIONAL INC.<br>AND ROBERT HALF CORPORATION<br>By their attorneys, |
| | /s/ Richard L. Alfred<br>Richard L. Alfred (BBO # 015000)<br>Krista G. Pratt (BBO # 644741)<br>Barry J. Miller (BBO # 661596 )<br>C.J. Eaton (BBO # 660726)<br>SEYFARTH SHAW LLP<br>Two Seaport Lane, Suite 300<br>Boston, MA 02210-2028 |
| DATED:  June 3, 2009 | Telephone:     (617) 946-4800<br>Telecopier:     (617) 946-4801 |

---

CERTIFICATE OF SERVICE

I, Richard L. Alfred, hereby certify that on June 3, 2009, a true copy of this document was filed through the Court's ECF system and that counsel for Plaintiffs is a registered user of the ECF system designated to receive Notices of Electronic Filings generated by the ECF system in this matter.

/s/ Richard L. Alfred
Richard L. Alfred

---