```
                   United States District Court
                     District of Massachusetts
_____
                               )
IAN O'DONNELL and DAVID         )
JOLICOEUR,                      )
        Plaintiffs,             )
                                )    Civil Action No.
        v.                      )    04-12719-NMG
                                )
ROBERT HALF INTERNATIONAL, INC. )
AND ROBERT HALF CORPORATION,    )
        Defendants.             )
_____)
```

**MEMORANDUM & ORDER**

**GORTON, J.**

The plaintiffs in this case allege that the defendants improperly classified them as "exempt" from the overtime pay provisions of state and federal law. They maintain that both their job duties and the defendants' practice of making certain salary deductions demonstrate that they are not actually exempt employees. Defendants have moved for summary judgment with respect to plaintiffs' claims that they were subject to improper salary deductions.

**I.   Factual Background**

The plaintiffs, Ian O'Donnell ("O'Donnell") and David Jolicoeur ("Jolicoeur"), initiated this action against Robert Half International, Inc. and Robert Half Corporation (collectively "RHI") for violation of the Fair Labor Standards Act ("the FLSA") and Mass. Gen. Laws, Chapter 151, §§ 1A and 1B

("the Massachusetts Wage Act").

RHI is a staffing company based in Menlo Park, California, with offices throughout the country. O'Donnell and Jolicoeur are former Staffing Managers of RHI in the Accountemps Division. Both were employed in the Boston, Massachusetts office although O'Donnell worked in other offices in Connecticut and Massachusetts as well. Plaintiffs allege that RHI has deprived them of overtime pay to which they are entitled by improperly classifying them as overtime-exempt employees under the FLSA.

The FLSA requires that employees be compensated for hours worked in excess of 40 per week at a minimum rate of one and one-half times their regular rate of pay. 29 U.S.C. § 207(a)(1). Employees are, however, exempt if they are "employed in a bona fide executive, administrative, or professional capacity." 29 U.S.C. § 213(a)(1). Plaintiffs claim they had no discretion or managerial authority and, therefore, should have been treated as employees eligible for overtime. Defendants do not seek summary judgment on the issue of whether plaintiffs' duties preclude their classification as exempt employees.

The subject of the defendants motion is the plaintiffs' so-called "salary basis test" claims. Plaintiffs contend that, as exempt employees, their salaries were subject to improper deductions. Those deductions resulted from the implementation of RHI's "CHOICE Time Off" ("CTO") benefit which includes vacation

days, sick days and personal days off for both its exempt and non-exempt employees. RHI maintains CTO "banks" for employees in order to keep track of accrued days off.

Time is deducted from the CTO banks in full-day increments. The RHI Employee Handbook ("the Handbook") states that employees who take more than two hours off during a day for personal reasons should deduct eight hours (a full day) from their CTO bank. Managers, however, may "look at the individual circumstances and apply judgment as to how to record the time." The Handbook also permits, subject to supervisor approval, an employee to borrow up to five days of unearned CTO. According to the Handbook and other payroll documents, if an employee's employment is terminated while that employee has a negative CTO balance (i.e., the employee has borrowed days not yet earned), RHI will deduct the CTO amount owed from the employee's final paycheck.

As a result of the policies set forth in the Handbook, it is possible for an exempt employee to take a partial day off, borrow time for that day off and then have that borrowed time deducted from his or her final paycheck if the borrowed CTO time is not yet earned. Plaintiffs point out that deducting an exempt employee's salary for partial days off is an impermissible deduction under the FLSA. See 29 C.F.R. § 541.602(a)-(b)(2).

RHI also offers "salary continuation". Salary continuation

is a payment that RHI typically makes to employees when they provide advance notice of resignation and RHI chooses not to require or allow the employees to work through their notice period. Generally, RHI pays the employees through the notice period but asks them to leave on the day the resignation is tendered. Plaintiffs O'Donnell and Jolicoeur received salary continuation payments in their last paycheck but only O'Donnell had money deducted from his final paycheck for borrowed CTO time. There is no evidence or even an allegation that the CTO deduction resulted from time borrowed as a result of partial day absences. Moreover, O'Donnell's salary continuation payment exceeded the money deducted for his borrowed CTO time.

## II. Procedural History

On December 1, 2004, the plaintiffs filed a complaint in state court alleging two counts: 1) violation of M.G.L. c. 151, §§ 1A, 1B (mandating payment of overtime wage to certain kinds of employees) and 2) violation of the FLSA, 29 U.S.C. §§ 201-219 (same). On December 29, 2004, RHI removed the case to this Court on federal question grounds.

During the course of this litigation the plaintiffs made numerous efforts to certify a class. Those efforts are recounted in detail in this Court's previous Memoranda and Orders. See O'Donnell v. Robert Half Int'l, Inc. (*O'Donnell I*), 429 F. Supp. 2d 246 (D. Mass. 2006); O'Donnell v. Robert Half Int'l, Inc.

(*O'Donnell II*), Civ. No. 04-12719 (D. Mass. May 10, 2007); O'Donnell v. Robert Half Int'l, Inc. (*O'Donnell III*), 534 F. Supp. 2d 173 (D. Mass. 2008); O'Donnell v. Robert Half Int'l, Inc. (*O'Donnell IV*), 250 F.R.D. 77 (D. Mass. 2008).

In *O'Donnell III*, this Court also denied the parties' cross motions for summary judgment, which were filed before discovery was complete. In doing so it noted that plaintiffs were not entitled to summary judgment on the basis of the Handbook alone because RHI's policies granted significant discretion to individual managers. At the same time, defendants were not entitled to summary judgment because the "Handbook suggests the possibility of a violation of the salary basis test" and genuine issues of material fact existed with respect to how the policies in the handbook were implemented.

On May 18, 2009, following the completion of all discovery, defendants filed the pending motion for partial summary judgment on plaintiffs' salary basis test claims. That motion is opposed and the defendants have filed a reply. Also pending is the defendants' motion to disqualify plaintiffs' counsel. That motion has been referred to United States Magistrate Judge Robert B. Collings at the request of the defendants and is not the subject of this memorandum.

### III. <u>Analysis</u>

#### A.   Legal Standard

The role of summary judgment is "to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." <u>Mesnick</u> v. <u>Gen. Elec. Co.</u>, 950 F.2d 816, 822 (1st Cir. 1991) (quoting <u>Garside</u> v. <u>Osco Drug, Inc.</u>, 895 F.2d 46, 50 (1st Cir. 1990)).  The burden is upon the moving party to show, based upon the pleadings, discovery and affidavits, "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

A fact is material if it "might affect the outcome of the suit under the governing law." <u>Anderson</u> v. <u>Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).  "Factual disputes that are irrelevant or unnecessary will not be counted." <u>Id.</u>  A genuine issue of material fact exists where the evidence with respect to the material fact in dispute "is such that a reasonable jury could return a verdict for the nonmoving party." <u>Id.</u>

Once the moving party has satisfied its burden, the burden shifts to the non-moving party to set forth specific facts showing that there is a genuine, triable issue. <u>Celotex Corp.</u> v. <u>Catrett</u>, 477 U.S. 317, 324 (1986).  The court must view the entire record in the light most hospitable to the non-moving party and indulge all reasonable inferences in that party's

favor. O'Connor v. Steeves, 994 F.2d 905, 907 (1st Cir. 1993). If, after viewing the record in the non-moving party's favor, the court determines that no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law, summary judgment is appropriate.

### B.  Improper Salary Deductions

Certain "white-collar" or "bona fide executive, administrative, or professional" employees are exempt from the overtime pay provisions of the FLSA and the Massachusetts Wage Act. See Cash v. Cycle Craft Co., Inc., 508 F.3d 680, 682-83 (1st Cir. 2007) (quoting 29 U.S.C. § 213(a)(1)); see also 455 Mass. Code Regs. 2.02(3) (adopting the pertinent FLSA definition of exempt employee). According to federal regulations, exempt employees must be paid on a "salary basis," 29 C.F.R. § 541.200, meaning

> the employee regularly receives each pay period on a weekly, or less frequent basis, a predetermined amount constituting all or part of the employee's compensation, which amount is not subject to reduction because of variations in the quality or quantity of the work performed.

Id. § 541.602(a) (emphasis added). But see id. § 541.602(b)(1) (providing exception where an employee is absent for one or more days for personal reasons). Regulations also prohibit salary deductions for employer occasioned absences. See id. § 541.602(a) ("An employee is not paid on a salary basis if deductions from the employee's predetermined compensation are

-7-

made for absences occasioned by the employer . . . .").

The Supreme Court has explained that an employee's salary is "subject to" salary deductions (thus precluding exempt status)

> if there is either an actual practice of making such deductions or an employment policy that creates a "significant likelihood" of such deductions.

Auer v. Robbins, 519 U.S. 452, 461 (1997).  In the absence of actual deductions, that test requires "a clear and particularized policy - one which 'effectively communicates' that deductions will be made in specified circumstances."  Id.

**C.  Application**

As this Court has explained, under RHI's Handbook it is possible that certain exempt employees could be subject to improper salary deductions.  For example, an employee could take a partial-day off on borrowed time, terminate his or her employment before that time is earned back and then incur a salary deduction from his or her final paycheck.  In denying plaintiffs' motion for summary judgment in *O'Donnell III*, however, this Court noted that the Handbook alone does not demonstrate that plaintiffs were subject to improper salary deductions because RHI instills managers with discretion in implementing the Handbook.  Specifically, managers exercise discretion at two critical stages: 1) deciding whether an employee is required to use CTO for an absence and 2) deciding whether to allow CTO to be used before it has accrued.

The defendants assert that discovery has revealed that plaintiffs' managers always exercised their discretion (at all stages) consistent with federal law and, therefore, plaintiffs were not "subject to" improper salary deductions as a matter of law.

### 1. Use of CTO for Partial Day Absences

Although defendants assert that plaintiffs' managers never required their subordinates to take a full day of CTO for partial day absences, the evidence before this Court reveals a genuine dispute of fact with respect to that issue.

Paul Becker ("Becker"), who supervised both plaintiffs during their tenure at RHI's Boston office, testified that he never deducted CTO from someone taking a partial-day off. Luke Howarth ("Howarth"), who supervised plaintiff O'Donnell at RHI's Westborough, Massachusetts office, likewise testified that he was flexible in accounting for CTO, that he "wasn't counting the days and the hours" that employees took off and that "[i]f somebody asked for a half a day, here is a half a day."

Plaintiffs' recollection of RHI's policies (as applied to them) differs. Plaintiff Jolicoeur, for example, testified that "if you take a certain number of hours, you have to take the entire day." Plaintiff O'Donnell similarly testified: "I remember my manager [Howarth] telling me that if I do take a half day it counts as a full day because of the policy." Both

plaintiffs also submitted affidavits asserting that they took full days off when they only needed to be absent for half of the day because of RHI's CTO policy.

Consequently, this Court concludes that genuine issues of material fact persist with respect to how plaintiffs' managers implemented RHI's policy concerning partial day absences.

### 2.   Borrowed CTO

Defendants also maintain that plaintiffs' managers exercised their discretion with respect to borrowed CTO in a manner consistent with the law.  Specifically, the defendants contend that managers reduced an employee's salary continuation payment if he or she terminated employment before earning back borrowed CTO time.  Because salary continuation is a gratuitous payment not part of an employee's salary, defendants argue that such deductions were proper.  See, e.g., Caperci v. Rite Aid Corp., 43 F. Supp. 2d 83, 94 (D. Mass. 1999) (holding that reduction of fringe benefits for partial days off does not defeat employee's salaried status).

In support the defendants have submitted an affidavit from Becker in which he states that it was the "custom and practice" in the Boston RHI office to take deductions for overdrawn CTO from gratuitous benefits such as salary continuation rather than

from an employee's actual salary.[1]  In the very same affidavit, however, Becker admits that, during the relevant time period, no employee ever resigned or was terminated with a negative CTO balance that could not be offset completely by salary continuation.  He goes on to state that it was his understanding that <u>if</u> an employee

> had a negative balance in his or her CTO bank at the time his or her employment with RHI terminated, and if that employee did not receive Salary Continuation in a sufficient amount to offset a deduction for the negative CTO balance, the Supervisors in the Boston office would not make any deduction for CTO from the [employee's] final pay check.

Despite Becker's assertions, the plaintiffs have produced documentary evidence that creates a genuine issue of fact concerning the policy to which they were subject.  Specifically, they have produced "Exempt Employee Absence Records" reflecting CTO taken by employees.  Each form is signed by the employee and Becker, Howarth or another supervisor and each contains the following statement:

> If your employment terminates while you have a negative CTO balance, the amount you owe the company will be deducted from your final paycheck or any other amounts payable to you.

Those forms suggest that borrowed CTO would be taken from an employee's <u>salary</u> and not just salary continuation or other non-

---

[1] Notably there is no similar affidavit from Howarth or another manager in the Westborough office where O'Donnell also worked.

salary benefits. The endorsement of those forms by Becker and other supervisors rests in sharp contrast with Becker's affidavit, thus creating a genuine issue of fact concerning the policy of deducting borrowed CTO in the offices where plaintiffs were employed.

Because genuine issues of material fact exist with respect to how plaintiffs' supervisors exercised their discretion in 1) accounting for time off and 2) treating borrowed CTO time, defendants' motion for partial summary judgment will be denied.

## ORDER

In accordance with the foregoing, defendants' motion for partial summary judgment (Docket No. 110) is **DENIED**.

**So ordered.**

                              /s/ Nathaniel M. Gorton
                              Nathaniel M. Gorton
                              United States District Judge

Dated July 23, 2009