# United States District Court
# District of Massachusetts

IAN O'DONNELL, ETC.,
DAVID JOLICOEUR, ETC.,
    Plaintiffs,

    v.                                CIVIL ACTION NO. 2004-12719-NMG

ROBERT HALF INTERNATIONAL, INC.,
ROBERT HALF CORPORATION,
    Defendants.

## *MEMORANDUM AND ORDER ON DEFENDANTS' EMERGENCY MOTION TO DISQUALIFY PLAINTIFFS' COUNSEL (#117)*

COLLINGS, U.S.M.J.

### *I. Background*

The plaintiffs in this case have been and are represented by the law firm of Lichten & Liss-Riordan, P.C. ("Lichten firm"). The defendants have been and are represented by the law firm of Seyfarth Shaw LLP ("Seyfarth firm"). The plaintiffs' claims arise under the Fair Labor Standards Act. The case has been in litigation for an extended period of time, a great deal of which was taken up

by the question of whether the case would proceed as a class action. It has been determined that it will not, and the individual plaintiffs' claims are set for trial before Judge Gorton on September 21, 2009.

The prayer for the disqualification of plaintiffs' counsel set forth in Defendants' Emergency Motion to Disqualify Plaintiffs' Counsel (#117) ("motion to disqualify") concerns an attorney, Sarah Getchell, Esquire, who graduated from law school in May, 2008 and began working for the Seyfarth firm in October, 2008. In May, 2009, due to a reduction in force at the Seyfarth firm, Attorney Getchell was laid off and began to seek other employment. She explored an opportunity to work at the Lichten firm, and on May 28, 2009, Attorney Liss-Riordan from that firm confirmed that the firm had hired Attorney Getchell. Because Attorney Liss-Riordan had sought a reference from the Seyfarth firm, the Seyfarth firm knew about the possibility that Attorney Getchell would be hired by the Lichten firm. The Seyfarth firm notified Attorney Liss-Riordan that because of the work Attorney Getchell had done while at the Seyfarth firm on the instant case, "serious conflicts" would arise which would require the Lichten firm to be disqualified from further representing the plaintiffs in the instant case. (#120, Exhs. B, D & F) Attorney Liss-Riordan on behalf of the Lichten firm took the position that no conflict existed and that

Attorney Getchell would have nothing to do with the instant case while at the Lichten firm.

## *II. Procedural History*

On June 3, 2009, the Seyfarth firm filed the motion to disqualify, and on June 4, 2009, counsel appeared before Judge Gorton. Judge Gorton ordered that the Lichten firm institute a "Chinese wall" so that henceforth Attorney Getchell would have no exposure whatever to the instant case. *(See* #126 at pp. 15-16) In addition, he entered an Order (#124) referring the motion to disqualify to the undersigned for a decision. He further ordered that if any objections were filed to the undersigned's decision pursuant to Rule 72(a), Fed. R. Civ. P., they would be ruled on by another District Judge who would be selected by the Court's random draw.

After the case was referred to the undersigned, a dispute arose as a result of plaintiffs' attorneys' claim that the material submitted by the defendants *in camera* in support of the motion to disqualify should be disclosed to them. The issue was briefed, and on July 21, 2009, the undersigned issued a Memorandum holding that plaintiffs' counsel would not be allowed to have access to the materials submitted *in camera*. *(See* Memorandum, #155) Thereafter, at a

conference on the same date, counsel agreed that the record on the motion to disqualify was complete except that the plaintiffs wished to offer the testimony of Attorney Getchell. Over defendants' objections, the Court agreed to hear her testimony and also final arguments on the motion, and those events occurred on July 24, 2009. Also on July 24, 2009, counsel stipulated that any objections to the undersigned's decision on the motion would be filed within five (5) days after issuance rather than the ten (10) days provided by statute (28 U.S.C. § 636(b)(1)(A)) and Rule 72(a), Fed. R. Civ. P.[1] The motion to disqualify is now ripe for decision.

### III. Applicable Law

There does not seem to be a dispute between the parties that Attorney Getchell herself is disqualified from representing the plaintiffs in this matter. The dispute is whether the Lichten firm itself is also disqualified. That issue is governed by Rule 1.10 of the Massachusetts Rules of Professional Conduct which provides:

> When a lawyer becomes associated with a firm, the firm may *not* undertake to or continue to represent a

---

[1] In view of Judge Gorton's action in continuing the trial from August 10th to September 21st which occurred after the July 24th hearing, the Court absolves counsel of filing objections within the shorter five-day time frame. Any objections will be due ten days after decision in accordance with the statute and the Federal Rule.

> person in a matter that the firm knows or reasonably should know is the same or substantially related to a matter in which the newly associated lawyer (the "personally disqualified lawyer"), or a firm with which that lawyer was associated, had previously represented a client whose interests are materially adverse to the person unless:
>
> (1) the personally disqualified lawyer has no information protected by Rule 1.6 or Rule 1.9 that is material to the matter ("material information"); or
>
> (2) the personally disqualified lawyer (i) had neither substantial involvement nor substantial material information relating to the matter and (ii) is screened from any participation in the matter in accordance with paragraph (e) of this Rule and is apportioned no part of the fee therefrom.

Mass. R. Prof. C. 1.10(d)(emphasis added).

### IV. Applying the Rule to the Instant Case - The Relevant Factors

Parsing out the subparts of this Rule, the essential question is whether the exception under subpart (2)(i) can be applied to this case. Subpart (1) is inapplicable because based on the *in camera* submissions, I find that Attorney Getchell did receive information protected by Rule 1.6 of the Massachusetts Rules of Professional Conduct which is "material" to the case at hand.

Moving to subpart (2)(i), I find that Attorney Getchell did not have "substantial involvement" in the litigation of this case. The fact is that she spent

5

a total of 7.2 hours on March 23 and 24, 2009 researching a discrete legal issue related to the case for which she wrote a one and one-half page single spaced memorandum summarizing her research. This was the only work she did on the case, and while she can be said to have had "involvement in the matter" to this extent, the Court finds that the involvement was not "substantial."[2] Quite simply, the use of the word "substantial" in the Rule clearly denotes that there are differences in degrees of "involvement." It is only when the attorney has "substantial involvement" that this part of the exception comes into play. On the record before me, I do not find her involvement to have been "substantial."

The much more difficult and close question is whether, during the course of her employment at the Seyfarth firm, she received "substantial material information." As noted, *supra,* the Court has found that Attorney Getchell did receive information protected by Rule 1.6 of the Massachusetts Rules of Professional Conduct which is "material" to the case at hand. The question then becomes whether that "material information" was "substantial."

---

[2] The defendants concede that Attorney Getchell was not on the RHI (Robert Half International) "team" and never entered an appearance on behalf of the defendants in this case. The Court does not view her attendance at a meeting of the Wage and Hour Practice Group at which the case was discussed or the other activities listed in the *in camera* submissions to amount to "substantial involvement" in the instant case; rather, they are relevant on the question, discussed *infra,* as to whether, while at the Seyfarth firm, she received "substantial material information" as a result of those activities.

Again, the use of the word "substantial" indicates that the exception will not be foreclosed in all situations in which the attorney has received "material information"; rather, the exception is foreclosed only when the extent of the material information disclosed is "substantial." The Court then is faced with the task of deciding when the line is crossed from "material information" to "substantial material information." The late Judge Keeton made the point extremely well in a case decided ten years ago. In discussing the terms used in the Rule, including "substantial material information," he wrote:

> These are phrases that require a decision-maker to make an evaluative rather than bright-line determination. They require an exercise of discretion leading to a single choice after taking into account an array of factors.

*United States Filter Corporation, U.S. v. Ionics, Inc.,* 189 F.R.D. 26, 30 (D. Mass., 1999).

Further, in making the decision on this aspect, the Court is faced with somewhat of a dilemma. The evidence on which such a finding is to be made has been submitted to the Court *in camera* and has not been disclosed to either Attorney Getchell or any member of the Lichten firm. *(See* Memorandum,

#155)  In addition, Attorney Getchell, in testimony at an evidentiary hearing before me on July 24, 2009, asserted that she had absolutely no memory of ever having worked on the instant case or of having received information about this case while at the Seyfarth firm.  The Court credits her testimony.  In a situation in which a new attorney is receiving different assignments from different attorneys on an almost daily basis over a period of seven or so months and is being briefed on numerous cases at various practice group sessions, it is not surprising that the attorney would lack a specific memory of specific cases or issues on which he or she might have worked.  But the end result is that the Court is left to rely on the materials submitted *in camera* by counsel for the defendants without the benefit of cross-examination.

Further to protect the confidentiality of the materials submitted *in camera,* the Court is constrained as to what it can include in the within opinion.  Thus, the Court will discuss the issue referencing only specific materials which are in the record which have been shared with plaintiffs' counsel and speak about the *in camera* materials in a manner which does not reveal confidential information.[3]

---

[3] The Court does not consider any assertions by defendants' counsel that there were other revelations to Attorney Getchell which were so sensitive that defendants determined not to include them in the *in*

The first time Attorney Getchell was exposed to confidential information was at a practice group meeting in November, 2008 at which the instant case was discussed. It is asserted that the subject of the discussion was the strategy which the defendants would pursue in this case going forward as a result of Judge Gorton's Order of October 21, 2008. In their *in camera* submissions, defendants contend that the discussion included "substantial confidential information" regarding the instant case; however, the content of the information is not disclosed. The Court infers that the discussion involved no revelation of confidential information received from the clients but rather the type of material protected by the work-product doctrine, which, in the words of Rule 26(b)(3)(B), Fed. R. Civ. P., include the "mental impressions, conclusions, opinions, or legal theories" of defendants' counsel at the Seyfarth firm.

Another time when Attorney Getchell was exposed to confidential information was when she worked with one of defendants' attorneys, Richard L. Alfred, Esq., on an article "on the retroactivity of the treble damages bill in

---

*camera* record for fear that the Court, in considering the matter, or the Court hearing an objection to the undersigned's ruling, might order the material disclosed to counsel for the plaintiffs. The Court shall decide the motion to disqualify solely on the record which has been put before it and shall not consider any hints of juicier aspects of Attorney Getchell's involvement in or knowledge of the case while at the Seyfarth firm which defendants choose not to reveal to the Court.

Massachusetts" which was later published in the June 1st issue of *Massachusetts Lawyers Weekly*. (Transcript of 6/4/2009 hearing before Judge Gorton at p. 21) In discussing the article during its preparation, Attorney Alfred used the instant case, among others, as examples of certain aspects of the issues. Again, it does not appear that any confidential information of the client was revealed to Attorney Getchell during this process; rather, the revelations were of the work-product of the client's attorneys at the Seyfarth firm.[4]

There is nothing in the *in camera* record as to how extensive Attorney Getchell's work was on the article in terms of hours or if the information relayed to her on the instant case occurred on more than the one specific occasion. Further, other than pointing to the instant case as an "example," it does not appear that the work on the article concerned the instant case specifically.

As indicated, *supra,* Attorney Getchell did do a research project on the instant case for Attorney Eaton on a discrete issue in the case and billed the defendants for 3.8 hours of time on March 23, 2009 and 3.4 hours of time on March 24, 2009. In briefing Attorney Getchell on the assignment, Attorney

---

[4] Defendants aver that Attorney Getchell had another conversation on the subject matter of the article and the ramifications of the subject matter on the case against the defendants; however, again the information did not contain confidential information from the client but rather information which is confidential because it is attorney work-product.

Eaton did divulge confidential information of the client - it was a single fact clearly relevant to the issue being researched. Further, Attorney Eaton divulged the legal strategy which she was pursuing with respect to that issue on behalf of the defendants.

### V. Applying the Rule to the Instant Case - The Result

Although the question is admittedly close, the Court is compelled to conclude that in the aggregate, the material information which was communicated to Attorney Getchell is more accurately described as "substantial" as opposed to "insubstantial." The Court emphasizes that it must look at the totality of the material information which Attorney Getchell received while at the Seyfarth firm about the defense of this case. During the November meeting, she received confidential information as to the strategy the defense was going to pursue as a result of Judge Gorton's October 21st Order. In connection with the article she helped prepare for *Massachusetts Lawyers Weekly,* she was briefed on the legal strategy which the defense was going to pursue with respect to the issue which was the subject of the article. Lastly, she actually worked on a project and billed the defendants for work on yet another legal aspect and in so doing, received confidential client information as well as information about the

legal strategy the defense was going to pursue with respect to that issue. Given this record, the Court cannot find that the "material information" Attorney Getchell learned about the case while at the Seyfarth firm was not "substantial."[5]

Judges faced with the issue in this Court have allowed motions to disqualify holding that the record did not support a finding that either of the two exceptions to disqualification of a firm found in Rule 1.10(d)(2)(i) was applicable.

In the case of *Smith & Nephew, Inc. v. Ethicon, Inc.*, 98 F. Supp.2d 106, 100 (D. Mass. 2000), Judge Stearns granted a motion to disqualify a law firm in circumstances in which the personally disqualifying attorney "drafted the very contractual provisions that [were] at the crux of this litigation." Importantly, Judge Stearns concluded that "confidential information in a lawyer's possession need not be admissible under the rules of evidence to cause the disqualification of [a] firm." *Id*. at 110. The focus, according to Judge

---

[5] The Court again emphasizes that it must look at the *totality* of the material information disclosed to Attorney Getchell in connection with the three episodes discussed herein. It may well be that if material information had only been disclosed at one of the practice group meetings or had only been revealed as a result of the collaboration on the newspaper article, the Court might well have found that whatever material information was disclosed was not "substantial." But it is the sum total of the material information which was disclosed which makes it fall into the "substantial" category.

Stearns, was on what the personally disqualifying attorney "knows because of the prior representation *that might prove harmful to the defendant's cause.*" *Id.*[6] (emphasis added). This would include work-product type of disclosures as to legal strategy as well as disclosures of confidential information of the client.

In addition, Judge Stearns noted that, under the rules, "a lawyer's assertion of less than perfect recall is not the controlling consideration." *Id.* at 109 n.7 (citing Rule 1.10, Comment 9). The question is not whether Ms. Getchell has a present memory of what Seyfarth attorneys disclosed to her about the case; rather, the focus is on the nature and scope of the confidential information which was disclosed to her while she worked at the Seyfarth firm.

The case of *United States Filter Corporation, U.S., v. Ionics, Inc., supra*, fell, according to the late Judge Keeton, "outside the area of doubt." 189 F.R.D. at 30. Although the personally disqualifying attorney, formerly an equity partner at a ten-person firm, had billed only 1.6 hours to the matter in question, he had acknowledged that he had consulted with the other equity partner on two separate issues, had reviewed a copy of the patent in suit and a draft of a

---

[6] Judge Stearns' conclusion accords with the broad treatment given to information deemed "confidential" and protected under Rule 1.6. The Commentary to the Rule provides that "[t]he confidentiality rule applies not merely to matters communicated in confidence by the client but also to virtually all information relating to the representation, whatever its source." Rule 1.6., Comment 5.

motion for summary judgment. Based on that record, Judge Keeton was unable to find that the personally disqualifying attorney had not been substantially involved or possessed no substantial material information.

In *Inverness Medical Switzerland GMBH v. Acon Laboratories, Inc.*, 2005 WL 1491233 (D. Mass. June 23, 2005), a case on which the Lichten firm relies, Judge Saris concluded that Goodwin Procter LLP had met its burden to establish that two attorneys it had hired possessed no information "material" to the matter under Rule 1.10(d)(1). In that case, there was no evidence that they billed any time to the matter, and while there was some evidence showing that the lawyers had "minimal contacts" with the litigation, *id.* at *5, there was no persuasive evidence that they received confidential information. Judge Saris categorized this case as one in which "'the lawyer did no work on the matter and the matter was not the subject of discussion with the lawyer generally, for example at firm or working group meetings.'" *Id.* (quoting Rule 1.10, Comment 9). In the Court's view, *Inverness Medical Switzerland GMBH* is readily distinguishable from the instant case. Judge Saris did not have to reach the issue as to whether the lawyer did not have "substantial material information" under Rule 1.10(d)(2) because she concluded that the lawyer had no material

14

information on the case, and, consequently, the matter was resolved by the finding required by subsection (d)(1) of the Rule rather than subsection (d)(2). In the instant case, it is manifest that Attorney Getchell did receive material information on the case, and, indeed, did work on the case which she billed to the defendants.

Without going further into the caselaw, suffice it to say that the Court has been unable to find a case in which the degree of disclosure of "material information" which Attorney Getchell received while at the Seyfarth firm was held to be "insubstantial." Further, the plaintiffs have not been able to point to any such case.

There is another aspect to this issue which bears noting. Both the defendants and counsel for the defendants are entitled to rely on the Rule in regulating the extent to which confidential information is shared with the firm, whether that be with partners or associates. More specifically, they are entitled to rely on an assurance that the Rule will be enforced, and that they will not have to face a law firm on the other side of the case at which a former partner or associate who has been privy to substantial material information is employed.

There is no question that the Rule is rather strict. It involves "...the

lawmaking choice of the Supreme Judicial Court to promulgate [Rule 1.10] with its single choice standard...." *United States Filter Corporation, U.S., supra,* 180 F.R.D. at 30. The single choice is to disqualify or not disqualify a firm. But this follows logically from the reasons behind the Rule as explicated by Judge Gorton in the case of *Rodriguez v. Montalvo,* 337 F. Supp. 2d 212 (D. Mass., 2004) as follows:[7]

> Massachusetts courts have . . . explain[ed] that under the 'substantial relationship' test, a subsequent representation is proscribed on the grounds that the later suit, by virtue of its relationship to the former suit, exposes the attorney to 'an intolerably strong temptation to breach his duty of confidentiality to the former client.' *E.g. Bays v. Theran*, 418 Mass. 685, 691, 639 N.E.2d 720, 724 (1994), citing *Note, Developments in the Law: Conflicts of Interest in the Legal Profession*, 94 Harv. L.Rev. 1244, 1318 (1981). The former client is not required to prove that the attorney actually misused the information, but only need show that the tempting situation existed because of an attorney-client relationship that was established in the former representation, and that the 'former and current representations are both adverse and substantially related.' *Bays*, 418 Mass. at 691, 639 N.E.2d at 724 (internal citation omitted).

---

[7] Although Judge Gorton describes the policy underpinning the "substantial relationship" test (an inquiry unnecessary here because the matters at issue are identical), the concerns he cites are equally at play in Rule 1.10(d).

*Id.* at 218.

The Court is quite mindful of the hardships that its decision will cause. Plaintiffs will have to retain a new law firm, and a five-year old case will further be delayed since new counsel will most likely need time behind the current trial date of September 21st to prepare the case. However, the drafters of the Rule surely knew that application of the Rule could and would cause hardship but as a matter of policy determined that the potential hardships were outweighed by the need to "maintain[] the highest standards of professional conduct." *Rodriguez,* 337 F. Supp. 2d at 217 (citations omitted) Courts must demonstrate a fidelity to that choice even if the consequences are severe.

Lastly, the Court cannot help but comment that the Lichten firm took an enormous risk when they hired Attorney Getchell knowing that she had worked for the Seyfarth firm and knowing that the Seyfarth firm took the position that based on what was disclosed to her, the Lichten firm would be disqualified if they hired her. Just as the Seyfarth firm was entitled to rely on the Rule in disclosing confidential information to associates in the firm, the Lichten firm was on notice that if they hired Attorney Getchell, they would have to meet a challenge to their continued participation in the case. Hopefully, they

thoroughly researched the law with respect to the Rule before hiring Attorney Getchell so that they were aware of the risk they were taking.

### VI. *Order*

It is ORDERED that Defendants' Emergency Motion to Disqualify Plaintiffs' Counsel (#117) be, and the same hereby is, ALLOWED.

/s/ *Robert B. Collings*
ROBERT B. COLLINGS
United States Magistrate Judge

Date: August 10, 2009.