-United States District Court
District of Massachusetts

```
_____
                              )
IAN O'DONNELL and DAVID       )
JOLICOEUR,                    )
        Plaintiffs,           )
                              )   Civil Action No.
        v.                    )   04-12719-NMG
                              )
ROBERT HALF INTERNATIONAL, INC. )
and ROBERT HALF CORPORATION,  )
        Defendants.           )
_____)
```

MEMORANDUM & ORDER

GORTON, J.

Before the Court is defendants' motion for an order to enforce this Court's previous order disqualifying counsel.

I.   **Background**

Although this employment case (a putative class action) about overtime pay has settled, the parties' protracted dispute about appearances of counsel lingers.  In early summer 2009, the case was, after almost five years of discovery, on the eve of trial.  On June 3, 2009, however, defendants filed an emergency motion to disqualify plaintiffs' counsel and so began a tumultuous few months.

The factual basis for defendants' motion is straightforward. Attorney Sarah Getchell ("Getchell") is a 2008 graduate of the University of Michigan Law School who used to work at Seyfarth Shaw ("Seyfarth"), the law firm representing defendants Robert

-1-

Half International and Robert Half Corporation (together, "Half") in this matter.  She was employed as a summer associate in 2007 and then as an associate from October, 2008 to May, 2009 before she was laid off due to a workforce reduction.  On May 3, 2009, Getchell applied for a job with Lichten & Liss-Riordan, P.C. ("LLR"), the firm which, at that time, was and had been representing the plaintiffs in this matter.

During May, 2009, Seyfarth became aware of Getchell's job search when LLR contacted Seyfarth for a reference.  Concerned about the possible conflicts that could arise, Seyfarth cautioned LLR that it would pursue disqualification of the entire firm if Getchell was hired.  LLR took the position that no conflict existed and that Getchell could be isolated from anything to do with this case and, as a result, she was hired on May 28, 2009.  Defendants disagreed and filed a motion to disqualify LLR shortly thereafter.

On June 4, 2009, this Court held a status conference in preparation for trial.  It heard preliminary arguments on the disqualification issue and set trial for August 10, 2009.  Because the motion to disqualify required a review of documents concerning defendants' trial strategy, the judicial officer assigned to preside over that trial agreed to recuse himself from consideration of the motion.  The motion was referred to Magistrate Judge Collings with instructions that any objections

to his recommendation would be referred to another judge in this division.

In support of their motion to disqualify, defendants submitted some materials in camera. On July 21, 2009, over plaintiffs' objection, Magistrate Judge Collings ordered that those documents could not be disclosed to plaintiffs' counsel due to their sensitive nature. Shortly thereafter, on August 10, 2009, Magistrate Judge Collings issued a carefully-reasoned Memorandum and Order ("M&O") allowing defendants' motion to disqualify LLR from this case despite the obvious hardship that would result. Pursuant to Mass. R. Prof. C. 1.10(d), the magistrate judge held that, although Getchell did not have "substantial involvement" in this matter at Seyfarth, she had received "substantial material information" relating to the case. The decision noted that it was "admittedly close" and emphasized that it was based upon the "totality of the material information which Attorney Getchell received while at the Seyfarth firm about the defense of this case". The Court pointed to three particular instances:

1) Getchell attended a practice group meeting discussing the strategy of this case in light of this Court's M&O denying plaintiffs' motion to conduct discovery on class claims. The Magistrate Judge inferred that

> the discussion involved no revelation of confidential
> information received from the clients but rather the type

-3-

of material protected by the work-product doctrine, which
... include the mental impressions, conclusions,
opinions, or legal theories of defendants' counsel at the
Seyfarth firm.

2) Getchell worked on an article with the partner who is
lead counsel on this case.  The instant case was referred to,
along with others, as an example but the work on the article did
not primarily concern this case.  Magistrate Judge Collings found
that

Again, it does not appear that any confidential
information of the client was revealed to Attorney
Getchell during this process; rather, the revelations
were of the work-product of the client's attorneys at the
Seyfarth firm.

3) Getchell drafted a short memorandum on a discrete issue
for which she recorded 7.2 hours of time spent on the matter.  In
that instance, confidential client information was revealed to
Getchell but it was "a single fact".  Getchell was also informed
about "the legal strategy which [Seyfarth] was pursuing with
respect to that issue on behalf of the defendants".  The
magistrate judge held that the fact that Getchell had no specific
memory of her exposure (and thus could not have communicated it
to anyone at LLR) was not controlling.

Pursuant to Magistrate Judge Collings' ruling, this Court
entered an order on August 14, 2009 1) postponing the trial date
set for September, 2009 and 2) prohibiting LLR from filing any
pleadings apart from objections to the subject ruling.  On August
24, 2009, LLR filed objections to the merits of the Collings M&O

-4-

and to the decision to conceal defendants' _in camera_ submissions
from plaintiffs' counsel.  In accordance with this Court's prior
order, the objections were referred to Judge Rya Zobel on August
27, 2009.

On January 6, 2010, Judge Zobel issued an order overruling
LLR's objections and affirming LLR's disqualification.  She found
that the information "clearly support[ed] the magistrate judge's
findings and conclusion" and that the decision to receive
information from defendants _in camera_ (and to withhold it from
the plaintiffs) was also correct.  On January 14, 2010, LLR filed
a motion for reconsideration of Judge Zobel's order affirming
disqualification, primarily relying on the fact that Ms. Getchell
no longer worked at LLR.  Defendants filed an opposition on
January 28, 2010 and, the next day, Judge Zobel denied the motion
for reconsideration.

In the meantime, plaintiffs retained the Boston firm of Todd
and Weld ("T&W") as new counsel.  Because T&W was seeking to
attain files from LLR, a new dispute arose between T&W and
Seyfarth over what could be turned over and what communications,
if any, were appropriate between LLR and T&W.  Unable to resolve
their differences, on October 14, 2009, T&W and Seyfarth each
filed what were essentially cross motions to address the dispute
both of which were timely opposed.  This Court held a hearing on
those motions on February 1, 2010, after which it authorized 1)

the transfer of all LLR work product generated prior to disqualification, provided that Ms. Getchell had nothing to do with it and 2) communication between T&W and LLR regarding information learned before the disqualification, provided that LLR was not to participate in any way in the decision-making process of plaintiffs' counsel going forward.  The Court set trial for early June, 2010.

Shortly before the scheduled trial, the parties informed the Court that they had reached a settlement.  At about the same time, the dispute with respect to the disqualification of counsel also resurfaced.  In particular, two individuals similarly situated to the plaintiffs in this case have brought suit against Half in the United States District Court for the District of New Jersey ("the New Jersey case").  The docket in that case reflects motions for leave to appear pro hac vice filed by 1) attorneys at Seyfarth which has been allowed and 2) Attorney Liss-Riordan which defendants have opposed and remains pending.  On June 4, 2010, apparently aware of LLR's intent to intervene in the New Jersey case, Half's counsel filed a motion in this Court for an order to enforce the prior disqualification order against LLR. Defendants' proposed order seeks to enjoin LLR

> from representing or providing legal advice to any party
> or attorney regarding potential or actual assertion of
> claims against defendants [Half] or any related entities,
> relating to hours of work or payment of wages, including
> without limitation exemption from overtime requirements,
> in any judicial, administrative, or arbitral forum,

including without limitation representation of the
plaintiffs in [the New Jersey case], until such time as
the enjoined parties may come forward and show good cause
why the injunction should no longer apply.

LLR promptly opposed the motion and defendants replied shortly

thereafter.  A motion hearing was held on June 21, 2010.

## II.  <u>Analysis</u>

Two subsections of Rule 1.10 of the Massachusetts Rules of

Professional Conduct are at issue.  Subsection (d), pursuant to

which Magistrate Judge Collings disqualified LLR, provides that:

> When a lawyer becomes associated with a firm, the firm
> may not undertake to or continue to represent a person in
> a matter that the firm knows or reasonably should know is
> the same or substantially related to a matter in which
> the newly associated lawyer (the "personally disqualified
> lawyer"), or a firm with which that lawyer was
> associated, had previously represented a client whose
> interests are materially adverse to that person unless:
>
> ...
>
> (2) the personally disqualified lawyer (i) had neither
> substantial involvement nor substantial material
> information relating to the matter and (ii) is screened
> from any participation in the matter ...

Mass. R. Prof. C. 1.10(d).  Subsection (b) provides that:

> When a lawyer has terminated an association with a firm,
> the firm is not prohibited from thereafter representing
> a person with interests materially adverse to those of a
> client represented by the formerly associated lawyer and
> not currently represented by the firm, unless:
>
> (1) the matter is the same or substantially related to
> that in which the formerly associated lawyer represented
> the client; and
>
> (2) any lawyer remaining in the firm has information
> protected by [the Rules] that is material to the matter.

-7-

Here, defendants move for this Court to enforce the prior disqualification order in this case against LLR and to bar that firm from participating in the New Jersey case or similar cases because the claims against Half are substantively identical. Specifically, defendants contend that 1) LLR is attempting to circumvent the disqualification order of this Court and 2) this Court has authority, pursuant to the All Writs Act, 28 U.S.C. § 1651(a), to prevent that firm from doing so in order to effectuate and protect its own order.  With respect to the first point, Half argues that because the claims are indistinguishable, LLR possesses substantial material information which is equally detrimental to Half in New Jersey.  Moreover, Half should be able to count on not having to face a firm with an attorney who has been privy to such substantial material information.

LLR responds that 1) the All Writs Act should be used sparingly and no exigent circumstances warrant this Court's intervention in the New Jersey case, 2) Half cites no case on point and Mass. R. Prof. C. 1.10(b) expressly permits LLR's involvement in New Jersey and 3) LLR's participation in the New Jersey case would not derogate the Court's prior order which was limited to <u>this</u> case.

LLR focuses on its second and third arguments.  Pursuant to the plain language of Rule 1.10(b), it contends, it may represent different plaintiffs in a different district.  The original

disqualification motion requested disqualification only "in this
matter" and was applicable only to the plaintiffs in this case.
Ms. Getchell no longer works at LLR and, therefore, subsection
(b) allows it to represent a client with interests adverse to
Half unless any lawyer remaining in the firm has material
information protected by the Rules.  No lawyer at LLR has any
such information and LLR has submitted signed affidavits of all
of its attorneys to that effect.  Indeed, LLR insists, it would
be impossible for any LLR attorney to possess information adverse
to Half because Getchell could not recall working on this matter
while at Seyfarth (testimony which Magistrate Judge Collings
credited) and thus could not have passed it on to anyone.  LLR
then cites several cases in which courts refused to disqualify
firms based upon their former association with so-called
"tainted" attorneys.

Defendants reply that LLR's opposition is based upon an
"imagined loophole" in the disciplinary rules that would allow
circumvention of the disqualification order in an identical case.
Defendants contend that subsection (d) must be applied in harmony
with (b) and LLR's position is irreconcilable with well-settled
case law under subsection (d) that prevents absolution of a
conflict merely by terminating the lawyer burdened with
disqualifying information.  Subsection (b), defendants continue,
is meant to apply to different facts, i.e.,

> the situation in which a lawyer with confidential
> information about a client departs from a law firm <u>before</u>
> the firm takes on a matter that is adverse to that
> client.

At oral argument, defendants rephrased, offering that subsection
(b) would apply if, for example, LLR represented no client
adverse to Half during the time Getchell was employed at the firm
but, after she left, was retained by such a client. Defendants
assert that the provision does not apply to a situation where a
firm is disqualified and then is hired to prosecute a similar
complaint against former defendants elsewhere. Defendants add
(in footnotes) that in the context of class actions, LLR's
position would transform any provision about imputed conflicts
into a "nullity" and "make a mockery" of this Court's
disqualification order because firms could readily risk sanction
with impunity and later simply migrate to another district.

Defendants also contend that Getchell's departure has no
effect on LLR's disqualifying conflict of interest. Because the
rationale of Rule 1.10(d)(2) is that the conflicted attorney is
exposed to an intolerably strong temptation to breach her duty of
confidentiality and because LLR placed Getchell in such a
situation, Attorney Liss-Riordan has purportedly been
"irrebuttably deemed to have obtained confidential information"
and cannot undo that taint.

Defendants' argument in support of disqualification is
increasingly vigorous and strident but the Court will

nevertheless deny their motion.  First, the disqualification
order that defendants seek to enforce was very explicitly limited
to this case and, as such, the Court need not impose that ruling
on the New Jersey Court in order to effectuate it.  Magistrate
Judge Collings repeatedly emphasized that his decision was a
close one and based upon the totality of the circumstances
presented here.  See O'Donnell v. Robert Half Int'l, Inc., 641 F.
Supp. 2d 84, 89 & n.5 (D. Mass. 2009).  Two of the three
instances cited for establishing Getchell's exposure to
"substantial material information" pertain to Seyfarth's work
product in this case, not to Half's confidential information.
The first was a practice group meeting about how to react to an
M&O issued by this Court in October, 2008 and the Court finds
that such a unique and specific meeting could not have any clear
carry-over in New Jersey or elsewhere.  Thus, because the
disqualification order was specifically confined to the facts of
this case, the Court declines to "enforce" that order globally
for the indefinite future.

     Defendants' response to plaintiffs' argument to limit the
scope of the disqualification is unpersuasive.  First, defendants
label LLR's contention as "specious" and insist that the thrust
of their previous motion was to disqualify LLR based upon the
nature of the claims not the identity of the plaintiffs.  At oral
argument, they pressed the same theme and asserted that because

the claims in New Jersey are identical, the work product to which
Getchell was exposed is equally applicable.  The Court disagrees
and finds Magistrate Judge Collings' decision not to comport with
defendants' characterization.  Indeed, in support of their
argument, defendants cite Magistrate Judge Collings' statement
that his ruling addressed the materiality of the information that
Getchell possessed "to the case at hand" (emphasis the
defendants').  That modifying phrase is, however, adverse to
defendants' position and simply reiterates the extent to which
the prior order was confined to this case.

That is enough to deny defendants' motion but the Court also
finds that their attempt to distinguish this case from a case
controlled by the exception described in Rule 1.10(b) is
unconvincing.  They contend that, unlike the facts of this case,
the Rule is meant to

> address the situation in which a lawyer with confidential
> information about a client departs from a law firm before
> the firm takes on a matter that is adverse to that
> client.

That is not what the Rule says.  In any event, defendants'
interpretation also captures what happened in New Jersey.
Getchell had left LLR by January, 2010, well before the New
Jersey matter, in which plaintiffs have sought to retain LLR, was
filed in April, 2010.

Defendants' position can be summarized in two related and
oft-repeated propositions: 1) once LLR hired Getchell, the entire

firm was tainted and forever conflicted out of a case involving
the same claims against Half (including the pending New Jersey
case) and 2) Mass. R. Prof. C. 1.10(b) may only be applied if LLR
did not represent any client with interests adverse to Half
during Getchell's tenure with the firm.  The Court disagrees.
The text of subsection 1.10(b) contradicts the first proposition.
In particular, if an identicality of claims precluded the
application of subsection (b), it would make no sense for the
Rule to allow subsequent representation by a firm unless "the
matter is the <u>same</u> ... [and] any lawyer remaining in the firm has
[protected] information ..."  In other words, the Rule explicitly
permits representation in a subsequent matter that is the same as
(or similar to) the case in which the conflicted attorney
(Getchell) represented her former client (Half) so long as no
lawyer remaining in the firm has any protected information.
Subsection 1.10(b)(2) would be meaningless surplusage under
defendants' reading because a determination that the second case
involved the identical fact pattern as the first would bar LLR
whether or not any remaining lawyer had protected information
under (b)(2).

The second proposition (i.e., that subsection (b) may only
be applied if LLR did not represent any client with interests
adverse to Half during Getchell's time at LLR) is also
unavailing.  The Court does not read the Rule to contain any such

-13-

temporal requirement and defendant cites no authority for its position.

Nor is the Court convinced by defendants' supposed parade of horribles pursuant to which class action plaintiffs will risk disqualification sanctions with impunity because, if disqualified, they need simply to re-file elsewhere.  In short, filing a new case after several years of litigation is hardly a result without real consequences and it is quite clear that LLR has suffered for the risk it took in hiring Getchell.  The Court does not anticipate that its decision risks inspiring plaintiffs' firms to hire "tainted" attorneys, in violation of the ethical rules, just to see if it works.

The Court discerns a logical distinction between (and reasoning behind) the two subject provisions of Mass. R. Prof. C. 1.10.  Because an attorney with substantial material information is exposed to an "intolerably strong temptation" to divulge such information, Rule 1.10(d) takes the hard-line position that her entire firm must be disqualified and screening procedures are not enough.  Pursuant to subsection (b), however, once a tainted attorney leaves the employ of the subject firm, any temptation also disappears and thus the firm may, in a subsequent action, represent a client against defendants who would have previously been conflicted with the tainted attorney so long as no trace of the conflict remains with any lawyer at the firm.

Ultimately, a reality check is warranted.  Although defendants' argument is logical on its face, it overstates the potential conflict here.  The reality is that Getchell played a minor role in this case at Seyfarth, apparently remembered nothing about the case and, therefore, did not and could not communicate anything about it to LLR.  She no longer works at LLR and thus to the extent that Magistrate Judge Collings' decision was based upon 1) a risk of recalling the substantial material information to which she was exposed and 2) the subsequent intolerably strong temptation to divulge such information, that temptation dissolved when Getchell moved on.  All lawyers at LLR have sworn to this Court that they received no information from Getchell.  The Court takes them at their word and thus, without any risk that Getchell will impart such information in the future, there is nothing for Half to fear nor are the rules of conduct any longer offended.

The Court will not, therefore, invoke a power intended to be used sparingly in order to disqualify counsel from appearing in an action in another jurisdiction.  The integrity of this Court's order is not in jeopardy and defendants' motion will be denied.

**ORDER**

In accordance with the foregoing, defendants' motion for order to enforce order disqualifying counsel (Docket No. 186) is **DENIED**.

**So ordered.**

                                        /s/ Nathaniel M. Gorton
                                        Nathaniel M. Gorton
                                        United States District Judge

Dated June 29, 2010